1   Naomi Young (SBN 63468)
    youngn@ballardspahr.com
2   John R. Carrigan, Jr. (SBN 217534)
    carriganj@ballardspahr.com
3   Ethan Chernin (SBN 273906)
    chernine@ballardspahr.com
4   **BALLARD SPAHR LLP**
    2029 Century Park East, Suite 800
5   Los Angeles, CA 90067-2909
    Telephone: 424.204.4400
6   Facsimile: 424.204.4350

7   Attorneys for Defendants  New
    Albertsons, Inc., SUPERVALU Inc.,
8   Charles Compston and Lauren Mosley



9

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

12

13  REYNA GARCIA,                    CASE NO. CV 13-05941 CAS (JCG)

14              Plaintiff,           NOTICE OF REMOVAL OF CIVIL
                                     STATE COURT ACTION UNDER
15      v.                           28 U.S.C. § 1332 (DIVERSITY)

16  NEW ALBERTSON'S, INC.;
    SUPERVALU, INC.; CHARLES
17  COMPSTON, an individual; LAUREN
    MOSLEY, an individual; and DOES 5-
18  10, inclusive,

19              Defendants.

20

21  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

22  **CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF REYNA**

23  **GARCIA AND HER ATTORNEYS OF RECORD:**

24          Pursuant to U.S.C. §§ 1332, 1441 and 1446, defendants New Albertsons, Inc.,

25  SUPERVALU Inc., Charles Compston and Lauren Mosley ("Defendants") remove

26  the above-captioned action from the Superior Court of the State of California for the

27  County of San Luis Obispo to the United States District Court, Central District of

28  California, Western Division.  The grounds for removal are as stated below.

DMWEST #10119827 v1

## PROCEDURAL BACKGROUND

1.     On or about June 26, 2013, plaintiff Reyna Garcia ("Plaintiff") filed an action in the Superior Court of the State of California for the County of San Luis Obispo, Case No. CV 130309, entitled *Reyna Garcia, Plaintiff v. New Albertson's, Inc.; SUPERVALU, Inc.; Charles Compston, an individual; Lauren Mosley, an individual; and DOES 5-10, inclusive, Defendants* (the "State Court Action").

2.     Plaintiff purports to assert causes of action in the State Court Action against defendants New Albertsons, Inc. ("Albertsons") and SUPERVALU Inc. ("SUPERVALU") for (1) failure to engage in a timely, good faith interactive process; (2) failure to provide reasonable accommodation; (3) violation of FEHA provisions relating to pregnancy; (4) violation of FEHA retaliation provision; and (5) negligent infliction of emotional distress.  Plaintiff also purports to assert a cause of action for negligent infliction of emotional distress in the State Court Action against defendants Charles Compston ("Compston") and Lauren Mosley ("Mosley").

## TIMELINESS OF REMOVAL

3.     On July 16, 2013, for the first time, Plaintiff sent to each of the Defendants two copies of a Notice and Acknowledgement of Receipt – Civil and a copy of the Summons; Complaint; Civil Case Cover Sheet; Notice of Assignment & Case Management Conference (noticing assignment to Hon. Jac Crawford); Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge); State of California, County of San Luis Obispo, Civil Division, Certificate of Mailing, dated June 23, 2013; Superior Court of California, County of San Luis Obispo, Civil Division, Minutes, dated June 27, 2013; Notice of Assignment & Case Management Conference (noticing assignment to Hon. Martin J. Tangeman); Superior Court, State of California, County of San Luis Obispo, Department 1, Standing Case Management Order for Cases Assigned to the Hon. Martin J. Tangeman; San Luis Obispo County Superior Court Civil Case

1  Management Policy; Case Management Statement form;  Alternative Dispute

2  Resolution Policy Statement; and Superior Court of San Luis Obispo County

3  Stipulation to Use of Alternative Dispute Resolution Process (CRC 201.9) form.

4  These documents were sent via mail and received on July 17, 2013.  True and

5  correct copies of said documents are attached hereto as Exhibit 1 (documents sent to

6  Albertsons), 2 (documents sent to SUPERVALU), 3 (documents sent to Compston)

7  and 4 (documents sent to Mosley).

8        4.      On August 5, 2013, each of the Defendants signed and returned to

9  Plaintiff the executed Notice and Acknowledgement of Receipt – Civil.  True and

10  correct copies of the executed documents are attached hereto as Exhibit 5.

11        5.      Pursuant to California Code of Civil Procedure § 415.30, service upon

12  each of the Defendants was deemed complete on August 5, 2013.

13        6.      Defendants Albertsons and SUPERVALU filed and served answers in

14  the State Court Action on August 12, 2013.  True and correct copies of the answers

15  are attached hereto as Exhibit 6.

16        7.      Exhibits 1 through 6 constitute all process, pleadings and orders served

17  in the State Court Action.

18        8.      The removal is timely, having been accomplished within thirty days of

19  August 5, 2013, the date service of the State Court Action was deemed complete and

20  thus became removable, and having been accomplished within one year of June 26,

21  2013, the date the State Court Action was filed in state court. *See Madren v. Belden,*

22  *Inc.*, 2012 U.S. Dist. LEXIS 91635 (N.D. Cal. 2012) (where service of complaint is

23  made pursuant to California Code of Civil Procedure § 415.30, thirty day removal

24  period begins to run upon execution of acknowledgment and receipt).  The removal

25  was also accomplished within thirty days of July 16, 2013, the date Plaintiff first

26  sent copies of the Complaint and Summons to each of the Defendants.

27

28

DMWEST #10119827 v1

3

## DIVERSITY JURISDICTION

9.    <u>Basis of Original Jurisdiction</u>.  Defendants are entitled to remove the State Court Action on the ground that this Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1332, and it is an action which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b), because it is a civil action between citizens of different states and involves an amount in controversy which exceeds the sum of $75,000, exclusive of interest and costs as described below.

10.    <u>Plaintiff's Citizenship</u>.  Plaintiff is and was at the time of filing her Complaint a citizen of the State of California.  [Complaint, ¶ 13.]

11.    <u>Defendant Albertsons' Citizenship</u>.  At the time of the commencement of the State Court Action, Albertsons was and is a citizen of Ohio and Idaho.  For diversity purposes, a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high level officers direct, control and coordinate the corporation's activities, *i.e.*, its "nerve center," which can typically be found at its corporate headquarters.  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Albertsons is a corporation incorporated in the State of Ohio, with its principal place of business and headquarters located in Boise, Idaho.

12.    <u>Defendant SUPERVALU's Citizenship</u>.  At the time of the commencement of the State Court Action, SUPERVALU was and is a citizen of Delaware and Minnesota.  For diversity purposes, a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high level officers direct, control and coordinate the corporation's activities, *i.e.*, its "nerve center," which can typically be found at its corporate

1  headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). SUPERVALU is a

2  corporation incorporated in the State of Delaware, with its principal place of

3  business and headquarters located in Eden Prairie, Minnesota.

4        13. <u>Defendant Compston's Citizenship.</u> At the time of the commencement

5  of the State Court Action, Compston was and is an individual domiciled in the State

6  of California. For diversity purposes, an individual shall be deemed to be a citizen

7  of the state in which he or she is domiciled. *Munoz v. Small Bus. Admin.*, 644 F.2d

8  1361, 1365 (9th Cir. 1981).

9        14. <u>Defendant Mosley's Citizenship.</u> At the time of the commencement of

10  the State Court Action, Mosley was and is an individual domiciled in the State of

11  California. For diversity purposes, an individual shall be deemed to be a citizen of

12  the state in which he or she is domiciled. *Munoz v. Small Bus. Admin.*, 644 F.2d

13  1361, 1365 (9th Cir. 1981).

14        15. <u>Sham Joinder.</u> Although Plaintiff has named Compston and Mosley as

15  individual defendants in the State Court Action, Compston and Mosley have been

16  fraudulently joined to defeat diversity. A non-diverse defendant named in a state

17  court action may be disregarded if the court determines that a party's joinder is a

18  "sham" or "fraudulent." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th

19  Cir. 2001). Under Ninth Circuit law, a non-diverse defendant is deemed a sham

20  defendant if, after all disputed questions of law and fact and all ambiguities in the

21  controlling state law are resolved in the plaintiff's favor, the plaintiff could not

22  possibly recover against the party whose joinder is questioned. *Kruso v. Int'l Tel. &*

23  *Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). *See also McCabe v. General*

24  *Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (joinder is considered fraudulent

25  "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the

26  failure is obvious according to the settled rules of the state.")

27        16. As set forth in further detail below, while Plaintiff purports to assert a

28  cause of action in the State Court Action against her supervisors, Compston and

Mosley, for negligent infliction of emotional distress ("NIED"), no such claim may lie against Compston or Mosley as a matter of law because: (1) the alleged conduct upon which Plaintiff bases her claim against Compston and Mosley consists of management decisions which are inherently intentional in nature and, therefore, may not give rise to a claim for NIED, and (2) the claim against Compston and Mosley is predicated upon alleged discriminatory conduct for which no personal liability may lie against them under the California Fair Employment and Housing Act ("FEHA") and Compston and Mosley cannot be liable for an NIED claim arising out of the same purported facts. Further, as the NIED claim against Compston and Mosley cannot be based upon alleged discriminatory acts, insofar as it is based upon alleged conduct which is a normal part of the employment relationship, the claim is barred by the exclusive remedy provisions of the California Workers' Compensation Act. Cal. Labor Code § 3601.

17.    In support of her claim against Compston, Plaintiff alleges as follows: "Mr. Compston breached his duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) denying

Plaintiff's request to go home, and forcing her to engage in heaving lifting, on or about November 12, 2012, despite being aware of Plaintiff's medical restrictions and that those restrictions were due to a high-risk pregnancy, and despite being told by Plaintiff that she was exhausted and experiencing tremendous pelvic pressure." [Complaint, ¶ 88.]

18.     In support of her claim against Mosley, Plaintiff alleges as follows: "Defendant Mosley breached her duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) requiring Plaintiff to stock the Liquor Department, which required heaving lifting, on a [sic] least two occasions after Plaintiff's submission of her second doctor's note stating she could not lift more than fifteen pounds or climb ladders." [Complaint, ¶ 89.]

19.     As a California appellate court explained in *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 64-65 (1996), personnel decisions are "an inherent and unavoidable part of the supervisory function.  Without making personnel decisions, a supervisory employee simply cannot perform his or her job duties. . . . [C]ommonly necessary personnel management actions such as hiring and firing, job

1 | or project assignments, . . . promotion or demotion, performance evaluations, the
2 | provision of support, . . . and the like . . . are actions of a type necessary to carry out
3 | the duties of business and personnel management.") (emphasis added).

4 |     20.    Personnel management decisions by supervisors cannot support a claim
5 | for negligent infliction of emotional distress because "supervisory conduct is
6 | inherently 'intentional.'" *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148,
7 | 160 (1987). "[W]here the conduct alleged is intentional, it cannot be used as a basis
8 | for a negligent infliction of emotional distress claim." *Edwards v. US Fidelity and*
9 | *Guar. Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994) (holding that employee's
10 | negligent infliction of emotional distress claim based on employer's personnel
11 | decision failed as a matter of law). *See also Semore v. Pool*, 217 Cal. App. 3d 1087,
12 | 1105 (1990) (citing *Cole* and holding that because employer's supervisory conduct
13 | was "intentional," it could not support a claim for negligent infliction of emotional
14 | distress). Accordingly, no NIED claim may lie against either Compston or Mosley
15 | based on their alleged personnel management decisions.

16 |     21.    The NIED claim against Compston and Mosley also cannot proceed
17 | because it is based on allegations of discriminatory conduct under the FEHA for
18 | which the California Supreme Court has ruled individual supervisors cannot be held
19 | liable. *See Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) (holding ". . . individuals who
20 | do not themselves qualify as employers may not be sued under the FEHA for
21 | alleged discriminatory acts."). As the Supreme Court has made clear, this
22 | prohibition on pursuing individual liability for supervisors persists, even if the
23 | allegations of discriminatory conduct are set forth as part of an alternate cause of
24 | action. Thus, in *Reno*, the Court also held that its conclusion that individual
25 | supervisors may not be sued under the FEHA applies likewise to a cause of action
26 | for wrongful discharge. *Id.* at 664 ("[b]ecause plaintiff may not sue [defendant] as
27 | an individual supervisor under the FEHA, she may not sue her individually for
28 | wrongful discharge in violation of public policy."). Indeed, the Court recognized

1  "[i]t would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then
2  allow essentially the same action under a different rubric." *Id.*

3          Similarly, in *Smith v. International Brotherhood of Electrical Workers*, 109
4  Cal. App. 4th 1637, 1645 (2003), the court held that where a plaintiff employee's
5  claims for intentional and negligent infliction of emotional distress "ar[o]se from the
6  discrimination claims" brought against his individual supervisor, the supervisor's
7  immunity from individual liability for discrimination meant he could not be held
8  liable for the emotional distress claims either.  The court reached an identical result
9  in *Phillips v. Gemini Moving Specialists,* 63 Cal. App. 4th 563 (1998), in which it
10  upheld the lower court's grant of individual supervisor Luni's demurrer to
11  intentional and negligent infliction of emotional distress claims alleged to have
12  arisen out of the plaintiff's termination.  Thus, the court stated, "[t]he validity of
13  plaintiff's causes of action for wrongful infliction of emotional distress is dependent
14  upon his having a viable cause of action for wrongful termination.  Since plaintiff
15  can have no cause of action against Luni for wrongful termination, the trial court
16  correctly sustained, without leave to amend, Luni's demurrer to the causes of action
17  for infliction of emotional distress." *Id.* at 576.

18          Here, Plaintiff's NIED claim against Compston and Mosley is premised upon
19  alleged discriminatory conduct, including "refusing to engage in the required timely,
20  good-faith interactive process to determine a reasonable accommodation for
21  Plaintiff," and "refusing to provide a reasonable accommodation for Plaintiff."
22  [Complaint, ¶¶ 88-89.]  As neither Compston nor Mosley can be held personally
23  liable under the FEHA for the alleged discriminatory acts which form the foundation
24  for Plaintiff's NIED claim, the claim must fail as a matter of law.

25          22.   In the alternative, even if Plaintiff's NIED claim against Compston and
26  Mosley were not precluded by the rule of *Reno, Smith* and *Gemini*, it still could not
27  proceed before this Court.  An employee's claims for emotional distress damages
28  arising out of the conduct of another employee, where that conduct is alleged to

1    have occurred in the course and scope of the other employee's job duties, are subject

2    to the exclusive remedy provisions of the California Workers' Compensation Act.

3    Cal. Labor Code § 3601; *Hendy v. Losse*, 54 Cal. 3d 723, 734 (1991) (Labor Code

4    Section 3601 protects employees acting within the scope of their employment from

5    damage actions from co-employees); *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 717

6    (1994) (an employee's claims are barred under the exclusive remedy provisions of

7    the workers' compensation law if the claims are based on an employer's intentional

8    acts that are "a 'normal' part of the employment relationship"); *Cole*, 43 Cal. 3d at

9    148 (". . . when the misconduct attributed to the employer is actions which are a

10   normal part of the employment relationship . . ., an employee suffering emotional

11   distress . . . may not avoid the exclusive remedy provisions of the Labor Code . . .");

12   *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876 (2008)

13   (emotional distress claims against individual supervisors were preempted by the

14   Workers' Compensation Act where the emotional distress was alleged to have

15   resulted from personnel decisions not alleged to have been discriminatory in

16   violation of the FEHA).

17       23.    Insofar as the allegations against Compston and Mosley are not claims

18   of discrimination, the facts Plaintiff has set forth in support of her NIED claim

19   against Compston and Mosley – that she was required to perform job functions such

20   as lifting, climbing ladders, bending, reaching and balancing, that her assistant was

21   reassigned, and that a request to leave work early was denied [Complaint, ¶¶ 88-89]

22   – are management decisions which are a normal part of the employment

23   relationship.  *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 64-65

24   (1996) (identifying "job or project assignments" and decisions regarding "provision

25   of support" as being "actions of a type necessary to carry out the duties of business

26   and personnel management").  Indeed, Plaintiff alleges in her complaint that

27   Compston and Mosley acted as "the agent or employee of, and/or working in

28   concert with, his/her co-defendants and was acting within the course and scope of

1    such agency, employment, and/or concerted activity." [Complaint, ¶ 19.]

2        Accordingly, in the event Plaintiff's claim against Compston and Mosley

3    were not otherwise barred in its entirety, it would be barred under the exclusivity

4    provisions of the Workers' Compensation Act.  Cal. Labor Code § 3601.

5        24.    Because Plaintiff's claim is based on alleged intentional supervisory

6    conduct which may not support an NIED claim, and because any emotional distress

7    claim against Compston and Mosley would be barred as a matter of law under the

8    rationale set forth in *Reno, Smith* and *Gemini*, or, in the alternative, is barred as a

9    matter of law by the exclusivity provisions of the Workers' Compensation Act, no

10   liability may lie as to either Compston or Mosley for NIED under California law.

11   Accordingly, this Court should find that Compston and Mosley have been

12   fraudulently joined to this action as sham defendants.

13       25.    <u>Doe Defendants</u>.  Although Plaintiff has also named fictitious "DOE"

14   Defendants "5-10," 28 U.S.C. § 1441(a) provides, "[f]or purposes of removal under

15   this chapter, the citizenship of defendants sued under fictitious names shall be

16   disregarded."  *See also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th

17   Cir. 1980) (unnamed defendants are not required to join in a removal petition).

18   Thus, the existence of doe defendants does not deprive the Court of jurisdiction.

19       26.    <u>Amount in Controversy</u>.  It is clear from the allegations and claimed

20   categories of damages sought in the Complaint, that the amount in controversy

21   exceeds the sum or value of $75,000, exclusive of interest and costs.  While

22   Defendants dispute they engaged in any unlawful conduct alleged in the Complaint,

23   which is alleged to constitute claims for (1) failure to engage in a timely, good faith

24   interactive process; (2) failure to provide reasonable accommodation; (3) violation

25   of FEHA provisions relating to pregnancy; (4) violation of FEHA retaliation

26   provision; and (5) negligent infliction of emotional distress, Plaintiff has alleged that

27   Defendants' purported misconduct led to the death of her child.  [Complaint, ¶¶ 36-

28   40.]  Plaintiff alleges she has suffered and continues to suffer economic loss and

1    damages.  [Complaint, ¶¶ 54, 62, 78, 84, 91.]  While Plaintiff does not indicate the

2    amount of such economic loss with specificity, and she does not claim to have been

3    terminated or identify any period during which she claims to have lost wages,

4    Plaintiff is a 40 hour a week employee earning a regular rate of $15.32/hour.  For

5    Plaintiff's health and welfare and pension benefits, respectively, $4.42 and $1.354

6    per hour worked by Plaintiff are paid by her employer.  Plaintiff also is eligible for a

7    bonus, overtime and other premium pay.  In addition, Plaintiff alleges she has

8    suffered and continues to suffer physical ailments, emotional distress, and attorneys'

9    fees.  [Complaint, ¶¶ 54, 55, 62, 63, 78, 79, 84, 85, 91, 93.]  Plaintiff seeks to

10   recover, among other things, compensatory, general and special damages, as well as

11   punitive damages and attorneys' fees, including on her alleged FEHA claims.

12   [Complaint, p. 22.]  The FEHA provides for an award of attorneys' fees and allows

13   recovery of punitive damages.  *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029,

14   1033-34 (N.D. Cal. 2002).  The amount in controversy may include punitive

15   damages when they are recoverable as a matter of law, and attorneys' fees may also

16   be included if recoverable by statute or contract.  *Id.  See also Guglielmino v.*

17   *McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007) (where an underlying statute

18   authorizes an award of attorney's fees, such fees may be included in amount in

19   controversy).  Further, emotional distress damages may be considered when

20   calculating the amount in controversy, even where they are not clearly pled in the

21   complaint.  *Simmons*, 209 F. Supp. 2d at 1034.

22       In *Simmons*, the court held that the amount in controversy was satisfied based

23   upon potential recovery of a combination of alleged emotional distress,

24   compensatory and punitive damages, and attorneys' fees recoverable under the

25   FEHA.  Further, it has been recognized in determining the amount in controversy

26   that emotional distress damages in a successful employment discrimination case

27   may be substantial and exceed $75,000.  *See Simmons*, 209 F. Supp. 2d at 1034.

28       Indeed, both emotional distress and punitive damage awards in cases alleging

DMWEST #10119827 v1                           12

FEHA violations may be substantial and exceed $75,000.  *See McGee v. Tucoemas Federal Credit Union*, 153 Cal. App. 4th 1351 (2007) (upholding $1.2 million punitive damages and $750,000 compensatory damages awards based on retaliation, failure to engage in the interactive process, failure to provide a reasonable accommodation and disability discrimination in violation of the FEHA); *Wysinger v. Auto. Club of Southern California*, 157 Cal. App. 4th 413 (2007) (upholding award of $1 million in punitive damages, $280,000 in compensatory damages and $978,791 in attorneys' fees where jury found employer violated the FEHA by failing to engage in the interactive process and retaliating based on discrimination complaint); *Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610 (N.D. Cal. 2008) (holding that *Wysinger* and *Lopez v. Bimbo Bakeries USA Inc.*, 2007 WL 4339112 (San Francisco Super. Ct.) (jury verdict awarding plaintiff $122,000 in emotional distress damages and $2,000,000 in punitive damages for wrongful termination, failure to prevent discrimination and failure to accommodate a pregnant employee) "establish, by a preponderance of evidence, that emotional distress and punitive damages awards in employment discrimination cases may be substantial.")

Accordingly, although the Complaint does not specify the total amount of monetary damages sought by Plaintiff, there can be no dispute that the amount in controversy exceeds $75,000.

27.     Diversity of citizenship exists inasmuch as Plaintiff is a citizen of the State of California, Albertsons is a citizen of the States of Ohio and Idaho, SUPERVALU is a citizen of the States of Delaware and Minnesota, and the citizenship of sham defendants Compston and Mosley is not to be considered for ascertaining diversity.  The amount in controversy exceeds $75,000.  Accordingly, this Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and Defendants have properly removed the State Court Action to this Court.

1    **WHEREFORE**, Defendants pray that the State Court Action be removed

2    from State Court to this Court.

3    DATED:  August 14, 2013

NAOMI YOUNG
JOHN R. CARRIGAN, JR.
ETHAN CHERNIN
**BALLARD SPAHR LLP**

John R. Carrigan, Jr.

Attorneys for Defendants New
Albertson's, Inc., SUPERVALU Inc.,
Charles Compston and Lauren Mosley

DMWEST #10119827 v1

14

NOTICE OF REMOVAL OF STATE COURT ACTION

EXHIBIT 1

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359,<br>TRABER & VOORHEES<br>128 N. Fair Oaks Ave.<br>Pasadena, CA 91103<br>TELEPHONE NO.: (626) 585-9611      FAX NO. *(Optional):* (626) 585-1400<br>E-MAIL ADDRESS *(Optional):* lt@tvlegal.com; rpf@tvlegal.com<br>ATTORNEY FOR *(Name):* Reyna Garcia | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CV138157 |
|---|---|

TO *(insert name of party being served):* New Albertson's, Inc.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1.  [✓]  A copy of the summons and of the complaint.
2.  [✓]  Other *(specify):*
        See Attachment A

*(To be completed by recipient):*

Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,         (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)               ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

EXHIBIT____1
PAGE____15

Attachment A

1)  Civil Case Cover Sheet
2)  Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3)  Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of
    Civil Procedure (Peremptory Challenge)
4)  Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5)  Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6)  Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7)  Civil Case Management Policy
8)  Case Management Statement (blank)
9)  Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____1
PAGE___16

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 TELEPHONE NO: (626) 585-9611     FAX NO. *(Optional)*: (626) 585-1400 E-MAIL ADDRESS *(Optional)*: lt@tvlegal.com; rpf@tvlegal.com ATTORNEY FOR *(Name)*: Reyna Garcia | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
   STREET ADDRESS: 1035 Palm Street Room 385
   MAILING ADDRESS: 1035 Palm Street Room 385
   CITY AND ZIP CODE: San Luis Obispo, CA 93408
   BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO *(insert name of party being served)*: New Albertson's, Inc.

---

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:

   See Attachment A

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT_____1
PAGE_____17

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____1
PAGE____18

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* NEW ALBERTSON'S, INC.; SUPERVALU, INC.; CHARLES COMPSTON, an individual; LAUREN MOSLEY, an individual; and DOES 5-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* REYNA GARCIA

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**

JUN 26 2013

SAN LUIS OBISPO SUPERIOR COURT
BY _____ M. Zepeda, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of the State of California, County of San Luis Obispo<br>1035 Palm Street, Room 385, San Luis Obispo, California 93408 | CASE NUMBER:<br>*(Número del Caso):*<br>CV 130309 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BALTODANO & BALTODANO LLP; Erica Flores Baltodano, Esq.; Hernaldo J. Baltodano, Esq.
1411 Marsh Street, Suite 102, San Luis Obispo, California 93401; (805) 322-3412

| DATE:<br>*(Fecha)* JUN 26 2013 | SUSAN MATHERLY Clerk, by<br>*(Secretario)* /S/ M. ZEPEDA | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.JuriSearch.com |

EXHIBIT ___1
PAGE ___19

TRABER & VOORHEES
Lauren Teukolsky [SBN 211381]
lt@tvlegal.com
Rebecca Peterson-Fisher [SBN 255359]
rpf@tvlegal.com
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel. (626) 585-9611
Fax (626) 585-1400

BALTODANO & BALTODANO LLP
Hernaldo J. Baltodano [SBN 222286]
hjb@bbemploymentlaw.com
Erica Flores Baltodano [SBN 222331]
efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel. (805) 322-3412
Fax (805) 322-3413

Attorneys for Plaintiff
REYNA GARCÍA

**FILED**

JUN 2 6 2013

SAN LUIS OBISPO SUPERIOR COURT
BY _____
M. Zepeda, Deputy Clerk

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN LUIS OBISPO

(UNLIMITED JURISDICTION)    **CV 130309**

| | |
|---|---|
| REYNA GARCÍA, | CASE NO. |
| Plaintiff, | **COMPLAINT:** |
| v. | 1. Failure to Engage in a Timely, Good Faith Interactive Process, Cal. Gov. Code §12940(n); |
| NEW ALBERTSON'S, INC.; SUPERVALU, INC.; CHARLES COMPSTON, an individual; LAUREN MOSLEY, an individual; and DOES 5-10, inclusive, | 2. Failure to Provide Reasonable Accommodation, Cal. Gov. Code §12940(m); |
| | 3. Violation of FEHA Provisions Regarding Pregnancy, Cal. Gov. Code §12945(3); |
| Defendants. | 4. Retaliation in Violation of Cal. Gov. Code §12940(h); |
| | 5. Negligence, California Common Law |
| | **JURY TRIAL DEMAND** |

1

COMPLAINT

EXHIBIT____1
PAGE____20

**INTRODUCTION**

1.      Plaintiff Reyna García began working for Albertson's grocery stores in November 2007.  Since 2010, she has been the General Merchandise Manager at the Atascadero store, a job which entails loading and unloading large quantities of non-perishable merchandise, such as charcoal and cat litter.  The job requires Ms. García to pull and push a manual pallet jack stacked with hundreds of pounds of totes carrying merchandise, lift heavy boxes, climb ladders, twist to reach shelves, and perform other physically demanding tasks.  Often, Ms. García is required to handle tasks outside the General Merchandise department, such as covering the Customer Service Desk or stocking the Liquor Department.  Ms. García has been an exemplary employee, consistently receiving positive feedback for high scores in Albertson's Customer Service Index Program, continuous sales growth in her department, and low "shrink" figures in her department.  She has been awarded numerous merit-based bonuses.

2.      In July 2012, Ms. García became pregnant.  She and her husband were overjoyed, and soon they learned that they were expecting a little girl.  Ms. García had previously delivered a baby very early at six months.  Based in part on this medical history, and on the rigorous nature of Ms. García's job, her doctor wrote a note stating that she was medically restricted from lifting more than fifteen pounds.

3.      Ms. García presented the doctor's note to her supervisor, Store Manager Charles "Marty" Compston, on August 9, 2012, and requested that he accommodate her pregnancy.  She also told him that she had a history of pre-term delivery.  Despite the requirements under California's Fair Employment & Housing Act ("FEHA") that an employer engage in a good-faith interactive process with an employee who requests an accommodation due to disability, Mr. Compston said "I thought you said nothing was going to change?"  He refused to discuss the matter further.

///

2

COMPLAINT

EXHIBIT___1
PAGE___21

4.      When Ms. García asked Mr. Compston if he would move her temporarily to a position cutting fruit for platters in the Service Deli or to the Customer Service desk, Mr. Compston responded, "No, I'm not moving you," or words to that effect.  He also reassigned Ms. García's only assistant to the night shift, forcing her to pull and push the manual pallet jack, unload totes weighing up to fifty pounds each, and shelve heavy items by herself each day.

5.      Ms. García presented additional doctor's notes to Mr. Compston on two later occasions, but Mr. Compston ignored them and refused to discuss any accommodations.  Lauren Mosley, Assistant Store Director, likewise was aware of Ms. García's pregnancy and medical restrictions, yet continued to force her to lift, push, and pull heavy items, including heavy cases of liquor.  Mr. Compston and Ms. Mosley showed no concern for Ms. García's condition even though she informed them both she was experiencing increasing physical discomfort at work due to her pregnancy.

6.      Although Ms. García was concerned for her health and the health of her baby, she stayed on the job because she needed the income and because her health insurance was provided through Albertson's.

7.      On November 12, 2012, Ms. García told Mr. Compston that she was experiencing tremendous pelvic pressure and requested permission to leave work.  Mr. Compston denied Ms. García's request, saying that he was expecting a store visit from Albertson's corporate representatives and needed her to stay.

8.      When Ms. García returned home from work on November 12, 2012, her amniotic sac began to bulge from between her legs and she was rushed to the emergency room.  At twenty weeks' gestation, her doctor thought her body might rebuild the amniotic sac.  On November 14, 2012, Ms. García's water broke.  Ms. García remained hospitalized and was able to keep her baby inside of her and alive for 3 days, at which point it became clear to her doctor that her baby would not rebuild the amniotic sac and that the baby was brain damaged.  On November 17,

3

COMPLAINT

EXHIBIT____1
PAGE____22

1   2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived

2   for no more than 10 minutes before dying.

3        9.    The minutes Ms. García and her husband spent watching their baby die were

4   heartbreaking. Ms. García and her husband both cried as they watched baby Jade gasp for air

5   and turn from pink, to purple, to almost black. After baby Jade's death, Ms. García was

6   anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby Jade's

7   body, which she kept with her until she was released from the hospital. Ms. García and her

8   husband have been devastated by their loss.

9        10.   Ms. García took about six weeks off from work to recover, pursuant to her rights

10  under the Family Medical Leave Act. While she was recuperating, she sank into a deep

11  depression and became socially withdrawn. She remains depressed and withdrawn, and

12  continues to grieve the loss of baby Jade. She plays an audio recording of baby Jade's beating

13  heart almost daily as a way of remembering and dealing with her loss.

14       11.   On January 2, 2013, when Ms. García returned to work after baby Jade's death,

15  Mr. Compston and Ms. Mosley retaliated against her by eliminating her supervisorial and

16  merchandise ordering responsibilities and issuing her a baseless write-up for alleged

17  insufficiencies in her job performance during a period when she wasn't even at work due to

18  prescheduled days off. When Ms. García asked Mr. Compston why her supervisorial and

19  ordering responsibilities were eliminated from her position, he said she should be happy that they

20  had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

21  you give me help when I was pregnant and asked for it?"

22       12.   On the basis of these facts and those alleged in more detail below, Ms. García

23  brings claims against Defendants for violations of California's Fair Employment & Housing

24  Act's requirements that an employer engage in a good-faith interactive process with an employee

25  who requests an accommodation based on disability; that an employer provide a reasonable

26  accommodation to an employee disabled by pregnancy; and that an employer not retaliate

27

4

COMPLAINT

EXHIBIT____1
PAGE____23

1  against an employee based on a request to take a pregnancy-related leave or request for a

2  reasonable accommodation.  Ms. García also brings claims for negligence.

PARTIES

4      13.    Plaintiff Reyna García is an individual over eighteen years of age residing in the

5  County of San Luis Obispo, California.

6      14.    Defendant New Albertson's, Inc. is an Idaho-based corporation, which operated

7  the Atascadero Albertson's, along with other Albertson's supermarkets, as a wholly-owned

8  subsidiary of SuperValu, Inc., at all relevant times herein.

9      15.    Defendant SuperValu, Inc. is a Minnesota-based corporation, which owned

10  several grocery chains, including the Atascadero Albertson's and other grocery stores operated

11  by New Albertson's, Inc. as Albertson's stores, at all relevant times herein.

12      16.    Defendant Charles "Marty" Compston is an individual who, upon information and

13  belief, resides in the County of San Luis Obispo, California.  Mr. Compston is, and all relevant

14  times has been, the Store Director of the Atascadero Albertson's.

15      17.    Defendant Lauren Mosley is an individual who, upon information and belief,

16  resides in the County of San Luis Obispo, California.  Defendant Mosley is, and all relevant

17  times has been, the Assistant Store Director of the Atascadero Albertson's.

18      18.    The true names and capacities, whether individual, corporate, associate, or

19  otherwise, of defendants sued herein as Does 5 through 10, inclusive, are currently unknown to

20  Plaintiff, who therefore sues such defendants by such fictitious names.  Plaintiff is informed and

21  believes, and on that basis alleges, that each of the defendants designated herein as a Doe

22  defendant is legally responsible in some manner for the unlawful acts and omission alleged

23  herein, and that Plaintiff's injuries were caused by the conduct of each such defendant.  Plaintiff

24  will seek leave of court to amend this Complaint to reflect the true names and capacities of the

25  defendants designated hereinafter as Doe defendants when such defendants' identities become

26  known.

27

5

COMPLAINT

EXHIBIT____1
PAGE____24

19.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, each of the defendants was the agent or employee of, and/or working in concert with, his/her co-defendants and was acting within the course and scope of such agency, employment, and/or concerted activity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain defendants, the remaining defendant or defendants confirmed and ratified said acts and omissions.

20.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, Defendant New Albertson's, Inc. was dominated and controlled by Defendant SuperValu, Inc., and each was the alter-ego of the other.

21.     Whenever and wherever reference is made in this complaint to any act or failure to act by a defendant or defendants, such allegations and references shall also be deemed to mean the acts and failure to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

22.     Venue is proper in this judicial district, pursuant to California Code of Civil Procedure §§395 and 395.5 and California Government Code §12965(b), and the amounts in controversy exceed this Court's jurisdictional minimum.  Defendants Compston and Mosley reside in the County of San Luis Obispo, and all acts and omissions giving rise to liability are alleged to have occurred in the County of San Luis Obispo.

## GENERAL FACTUAL ALLEGATIONS

23.     Plaintiff Reyna García began working at Albertson's supermarket in Paso Robles, California, in November 2007 as a Customer Service Clerk.  In 2010, she was promoted to General Merchandise Manager and transferred to the Albertson's Atascadero store, located at 8200 El Camino Real in Atascadero, California.

24.     Ms. García excelled as General Merchandise Manager, earning discretionary bonuses on multiple occasions and consistently receiving positive feedback from her supervisors

6

COMPLAINT

EXHIBIT____1
PAGE____25

1  for high scores in Albertson's Customer Service Index Program, continuous sales growth in her

2  department, and low "shrink" (merchandise theft/loss) figures.

3      25.    Ms. García's duties were extremely physically demanding, requiring her to pull

4  and push manual pallet jacks (manually-operated forklift-type machines) stacked with multiple

5  totes of merchandise each weighing between 20 and 50 pounds.  Ms. García was required to

6  climb ladders and to frequently stretch up over her head, bend over, squat, and, lift while

7  kneeling in a forward motion.  Often, she was required to handle tasks outside the General

8  Merchandise department, such as covering the Customer Service Desk or stocking heavy cases

9  of liquor for the Liquor Department.  The physical demands of the job were especially

10 pronounced before major holidays when shipments of seasonal merchandise needed to be

11 unloaded and stocked.

12     26.    Ms. García became pregnant in about July 2012, and began receiving prenatal

13 care from a doctor shortly thereafter.  Ms. García and her husband were overjoyed to be

14 expecting a baby, but her doctor became concerned about the effect of the physical demands of

15 Ms. García's job on her pregnancy, especially because Ms. García had previously delivered a

16 baby prematurely at 6-months' gestation.  In light of her job duties, Ms. García's doctor placed

17 medical restrictions on her during her pregnancy.

18     27.    Ms. García's high-risk pregnancy was a disability within the meaning of

19 California Government Code §12926(l) in that it limited her ability to engage in a major life

20 activity, working, and affected several of her body systems, including, but not limited to, her

21 reproductive, cardiovascular, immunological, and endocrine systems.  Cal. Gov. Code

22 §§12926(l)(1)(A) and (B)(iii).

23     28.    On or about August 9, 2012, Ms. García's doctor provided her with a medical

24 note restricting her from lifting more than fifteen pounds and restricting her from pushing.  Ms.

25 García presented the note to her supervisor, Defendant Charles "Marty" Compston, Store

26 Director of the Atascadero Albertson's.  Ms. García informed Mr. Compston that she had a

27

7

COMPLAINT

EXHIBIT___1
PAGE___26

1  history of pre-term delivery and requested a reasonable accommodation to enable her to comply
2  with her medical restrictions.

3       29.    Mr. Compston made no effort to engage in a good-faith interactive process with
4  Ms. García to determine what reasonable accommodation could be made. Instead, upon
5  receiving Ms. García's medical note, he said "I thought you said nothing was going to change?"
6  Mr. Compston and Assistant Store Director Lauren Mosley then proceeded to increase Ms.
7  García's workload by reassigning the General Merchandise Clerk, her only assistant, to a night
8  shift position, forcing Ms. García to push, pull, unload, and shelf pallets of heavy merchandise
9  by herself during the day. When Ms. García asked Mr. Compston if she could be temporarily
10  transferred to a position at the Service Deli cutting fruit for platters or to the Customer Service
11  Desk, Mr. Compston refused, stating, in words or substance, "No, I'm not moving you."

12       30.    As a result of the heavy pulling, pushing, and lifting, which Defendants forced
13  Ms. García to continue performing despite her medical restrictions, Ms. García began to
14  experience serious discomfort related to her pregnancy. When Ms. García informed her doctor
15  that her employer continued to require her to engage in strenuous physical activity, her doctor
16  wrote her another doctor's note, stating she should not lift more than twenty pounds or climb
17  ladders. Ms. García's doctor also issued a Proof of Pregnancy letter confirming that Ms. García
18  was pregnant with an estimated due date of April 3, 2013.

19       31.    Ms. García presented her second medical note, dated September 6, 2012, and her
20  Proof of Pregnancy letter to Mr. Compston, who once again failed to engage in a good-faith
21  interactive process and made no attempt to accommodate Ms. García's medical restrictions. Mr.
22  Compston was dismissive of Ms. García's medical condition, rolling his eyes when she would
23  protest that she was unable to perform a specific job responsibility on account of her medical
24  restrictions. Mr. Compston continued to force Ms. García to engage in heavy lifting and to climb
25  ladders to stock merchandise above the store freezers. On at least three occasions after Mr.
26  Compston received Ms. García's second doctor's note, and knowing about Ms. García's medical

27

8

COMPLAINT

EXHIBIT____1<br/>PAGE____27

1   restrictions and her pregnancy, Defendant Mosley required Ms. García to stock the Liquor
2   Department, a job function that was ordinarily handled by clerks from another department.
3   Stocking liquor was a particularly demanding task because of the weight involved in transporting
4   cases of liquor bottles and lifting heavy cases of liquor.  Ms. García told Ms. Mosley that she
5   should not be used to stock the Liquor Department because of her medical restrictions, but Ms.
6   Mosley insisted that Ms. García obey her.  Ms. García complied with Ms. Mosley's first two
7   requests, but when Ms. Mosley asked her to stock the Liquor Department a third time, Ms.
8   García refused.

9          32.    Ms. García was aware that other employees with temporary disabilities had been
10  accommodated in the past, and continued to request a reasonable accommodation for her high-
11  risk pregnancy.  Upon information and belief, Defendants made no effort to explore the
12  feasibility of any reasonable accommodation for Ms. García.

13         33.    Ms. García continued to suffer increasing pain, discomfort, anxiety, and extreme
14  exhaustion.  At work, she frequently suffered from nausea, pelvic pressure, and excessive
15  sweating.  Completing her job responsibilities became increasingly difficult, as Ms. García
16  frequently needed to use the bathroom and had difficulty standing up from a squatting position.
17  At the same time, Ms. García was wracked with anxiety about her baby's safety, and felt
18  tremendous pressure from Defendants Compston and Mosley to continue to do her job.  When
19  she would return home after work, Ms. García was too exhausted to do anything, so her husband
20  took over most duties in their home.  She continued on the job because her family needed the
21  income and because her health insurance was provided through Albertson's.

22         34.    On or about October 24, 2012, Ms. García had an appointment with her doctor
23  who issued her a third note severely limited her workplace duties on account of ongoing "work
24  stress" and the fact that "no accommodations [are] being made for her preg[nancy]."  Upon
25  returning to work the same day, Ms. García presented her third medical note to Mr. Compston,
26  which repeated that she was restricted from lifting more than twenty pounds, and stated that she
27

9

COMPLAINT

EXHIBIT____1
PAGE____28

1  required frequent access to the bathroom and to water, and that she should avoid prolonged

2  standing and excessive bending, reaching, and balancing.

3       35.    Ms. García submitted the third medical note to Mr. Compston and begged him to

4  either transfer her to another position or provide her with a note stating no other positions were

5  available so she could go out on state disability. Mr. Compton flatly refused, and would not even

6  discuss Ms. García's requests.

7       36.    On or about November 11, 2012, Ms. García felt extremely ill at work and began

8  experiencing tremendous pelvic pressure. At a co-worker's urging, Ms. García left work without

9  seeking permission, because she was certain that permission would be denied. At home, she

10 tried to rest but woke in sweats, exhausted. The next day, Ms. García returned to work,

11 explained her condition to Mr. Compston, and requested permission to go home early. Mr.

12 Compston denied her request, saying that the store was expecting a visit from representatives of

13 Albertson's corporate office. Ms. García was forced to continue working and spent a great deal

14 of the day pulling and pushing pallets, and handling her regular heavy-lifting responsibilities.

15      37.    When she returned home on November 12, 2012, Ms. García's amniotic sac

16 began to bulge between from between her legs and she was rushed to the emergency room. At

17 about 20-weeks' gestation, her doctor initially thought her body might rebuild the amniotic sac.

18 Ms. García remained hospitalized and was able to keep her baby inside of her body and alive for

19 3 days. On November 14, 2012, Ms. García's water broke. On November 15, 2012, her doctor

20 told her that the scratching sensation that she felt was her baby's fingernails and toes, and this

21 meant that the amniotic sac was completely gone. Ms. García's doctor told Ms. García that if her

22 body was going to rebuild the amniotic sac, it would have done so by now. An ultrasound was

23 conducted and Ms. García was able to see an image of her baby inside her. Ms. García's doctor

24 told her that the baby was not getting enough fluids to survive and was becoming increasingly

25 brain damaged each second, and that because there was no amniotic sac, the baby's scratching

26

27

10

COMPLAINT

EXHIBIT____1
PAGE____29

1    was damaging Ms. García's reproductive system and reducing her chances of being able to have

2    children in the future. Ms. García's doctor said it was time to let her baby go.

3         38.    Feeling devastated and hopeless, Ms. García agreed and allowed her doctor to

4    induce labor. On November 17, 2012, Ms. García gave birth to a baby girl named Jade, and

5    spent several heartbreaking minutes watching her baby die. She and her husband both cried as

6    they watched baby Jade gasp for air and turn from pink, to purple, to almost black as her

7    heartbeat slowed and became undetectable. Baby Jade's death over those several minutes was

8    the most painful thing Ms. García had ever experienced. After baby Jade's death, Ms. García

9    was anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby

10   Jade's body to be brought to her. Ms. García kept baby Jade's body with her for a day and a half

11   until she was released from the hospital.

12        39.    As she was entitled to leave under the Family Medical Leave Act ("FMLA") and

13   based on her doctor's advice, Ms. García took about six weeks off from work to recover. She

14   sank into a deep depression, and stopped cleaning her house and showering regularly. Unable to

15   sleep, she frequently went downstairs at night to sit on her couch in the dark and cry. Ms. García

16   became socially withdrawn during this time period, and remains depressed and withdrawn to this

17   day. She does not want to see friends or leave her house, and continues to grieve the loss of baby

18   Jade. Ms. García was able to record the sound of baby Jade's heartbeat before her death, and

19   plays the recording almost daily as a way of remembering and dealing with her loss.

20        40.    When Ms. García returned to work on January 2, 2013, she found that her

21   department had been reconfigured and Defendants had taken away her supervisorial and

22   merchandise ordering responsibilities. When Ms. García asked Mr. Compston why her

23   supervisorial and ordering responsibilities were removed, he said she should be happy that they

24   had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

25   you give me help when I was pregnant and asked for it?"

26

27

                                        11

                                    COMPLAINT

EXHIBIT____1
PAGE____30

41.   On or about March 17, 2013, when Ms. García returned to work after two pre-approved days off, Defendant Mosley further retaliated against Ms. García by issuing her a baseless write-up because her department was not properly "faced," meaning that items were not facing the right way or properly marked by signage on the shelves.

42.   Ms. García has suffered profound physical pain and suffering and emotional distress due to Albertson's' failure to accommodate her pregnancy and subsequent retaliation.

43.   Ms. García filed charges with the Department of Fair Employment and Housing ("DFEH") on or about April 22, 2013, against Defendants New Albertson's, Inc., SuperValu, Inc., Charles Compston, and Lauren Mosley.  All of the causes of action alleged herein were alleged in Ms. García's DFEH charge with supporting factual allegations.  The DFEH issued a Right to Sue letter on or about April 22, 2013, completing the exhaustion of Ms. García's administrative remedies.  Ms. García's DFEH Right to Sue letter and DFEH charge are included in the Right to Sue Attorney Package attached hereto as Exhibit A.  All conditions precedent to the institution of this lawsuit have been fulfilled.

## FIRST CAUSE OF ACTION

### Failure to Engage in a Timely, Good Faith Interactive Process
(California Government Code §12940(n);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

44.   Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

45.   At all times relevant herein, the California Fair Employment and Housing Act ("FEHA"), Government Code §12900 et seq., was in full force and effect and binding upon the corporate Defendants, each of whom, upon information and belief, regularly employs more than five individuals.  Government Code §12940(n) requires employers to "engage in a timely, good faith, interactive process with [a]n employee or applicant to determine effective, reasonable

EXHIBIT____1
PAGE___31

1  accommodations, if any, in response to a request for reasonable accommodation by an employee

2  or applicant with a known physical or mental disability or known medical condition."

3      46.    Employers are required by California law to initiate the interactive process once

4  they are on notice that an accommodation may be needed.  2 C.C.R. §7294(b).  An employer is

5  on notice when an employee with a known physical disability requests a reasonable

6  accommodation, or when the employer becomes aware of the need for accommodation through a

7  third-party or by observation.

8      47.    Plaintiff's high risk pregnancy was a disability within the meaning of California

9  Government Code §12926(l) in that it limited her ability to engage in a major life activity,

10  working, and affected several of her body systems, including but not limited to her reproductive,

11  cardiovascular, immunological, and endocrine systems.  Cal Gov. Code §§12926(l)(1)(A) &

12  (B)(iii).

13      48.    Plaintiff's disability became known to Defendant Compston when Plaintiff

14  informed him in August of 2012 that she was pregnant and had a history of pre-term delivery,

15  and presented him with her doctor's note stating she should not lift more than fifteen pounds.

16  Plaintiff requested a reasonable accommodation, triggering Defendants' duty to engage in the

17  interactive process, through her doctor's note detailing her medical restrictions.

18      49.    Once on notice, Defendants were required to grant any accommodation requested

19  by Plaintiff, or reject it after due consideration and initiate discussion with her regarding

20  alternative accommodations.  2 C.C.R. §7294(c)(1).  The employer's duty to engage in the

21  interactive process includes analyzing the particular job involved and the essential functions of

22  the job, and, in consultation with the employee, identifying potential accommodations and

23  assessing them with respect to their effectiveness in permitting the employee to perform the

24  essential functions of the job or to enjoy equivalent benefits and privileges of employment

25  compared to non-disabled employees. 2 C.C.R. §§7294(c)(5) & (7).

26  ///

27

13

COMPLAINT

EXHIBIT___1
PAGE___32

1      50.    Defendants did not grant Plaintiff's request for a reasonable accommodation, nor

2  did they identify and evaluate alternative accommodations or discuss those alternatives with

3  Plaintiff. Instead, they simply ignored Plaintiff's request and behaved as though her disability

4  did not exist. Plaintiff verbally requested accommodation on multiple later occasions, submitted

5  two more doctor's notes, and requested that Mr. Compston transfer her to a less strenuous

6  position. Mr. Compston refused to temporarily transfer Plaintiff and refused to engage in any

7  discussion of other possible accommodations.

8      51.    Plaintiff satisfied her obligations with respect to the interactive process by

9  providing reasonable medical documentation on three occasions, in the form of doctor's notes

10  and a Proof of Pregnancy letter. 2 C.C.R. §7294(d).

11      52.    Defendants' failure to engage in a timely, good faith, interactive process with

12  Plaintiff after being placed on notice of the need for a reasonable accommodation is an unlawful

13  employment practice in violation of the FEHA. Cal. Gov. Code §12940(n).

14      53.    The unlawful conduct of Defendants as alleged above was a substantial factor in

15  causing damage and/or injury to Plaintiff.

16      54.    As a direct result of Defendants' acts and failures to act as alleged herein, Plaintiff

17  has suffered and continues to suffer economic loss and damages, physical ailments, emotional

18  distress, and attorneys' fees and costs in an amount to be proven at trial.

19      55.    The conduct of Defendants and their agents and employees, as described herein,

20  was malicious and/or oppressive and done with a willful and conscious disregard for Plaintiff's

21  rights and for the deleterious consequences to Plaintiff resulting from Defendants' actions.

22  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful

23  conduct of each other. Consequently, Plaintiff is entitled to punitive damages against

24  Defendants.

25  ///

26  ///

27

14

COMPLAINT

EXHIBIT____1
PAGE____33

## SECOND CAUSE OF ACTION

**Failure to Provide Reasonable Accommodation
(California Government Code §12940(m);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

56.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57.    California Government Code §12940(m) makes it an unlawful employment practice for an employer to fail to make a reasonable accommodation for the known physical or mental disability of an employee.  Employers must make reasonable accommodations for disabilities of employees unless they engage in the interactive process and demonstrate that accommodation would impose an undue hardship.  2 C.C.R §7293.9(a).

58.    Plaintiff made several requests for reasonable accommodation, beginning in August of 2012, when she informed Mr. Compston of her disability, presented him with a doctor's note stating her medical restrictions, and requested that he temporarily transfer her to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk.

59.    Mr. Compston denied all of Plaintiff's requests for reasonable accommodation, instead transferring her only assistant to the night shift and increasing her workload.

60.    Mr. Compston and Defendant Mosely forced Plaintiff to continue to perform duties which violated her medical restrictions as set forth by her doctor, including heavy lifting, pushing, and climbing ladders.

61.    The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

62.    As a direct and proximate result of Defendants' acts and failures to act, as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

63.    The conduct of the Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful ad conscious disregard for

15

COMPLAINT

EXHIBIT____1
PAGE____34

1   Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.

2   Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful

3   conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against

4   Defendants.

### THIRD CAUSE OF ACTION

Violation of FEHA Provisions Relating to Pregnancy
(California Government Code §12945;
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

64.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65.    California Government Code §12945(3)(A) provides that it is an unlawful employment practice to refuse to provide a reasonable accommodation for a "condition related to pregnancy, childbirth, or a related medical condition" if the employee requests an accommodation with the advice of her health care provider.

66.    A "condition related to pregnancy, childbirth or related medical condition" means "a physical or mental condition intrinsic to pregnancy or childbirth." 2 C.C.R. §7291(d). Plaintiff's high-risk pregnancy was a condition intrinsic to pregnancy, and is a condition related to pregnancy within the meaning of Government Code §12945(3)(A).

67.    Plaintiff obtained prenatal care from her health care provider, a licensed doctor, beginning in July 2012, when she learned that she was pregnant.  Plaintiff informed her doctor that she had previously delivered a baby a six months' gestation, and described the nature of her job responsibilities to her doctor.  Plaintiff's doctor advised her that she should not, among other things, lift more than fifteen pounds or climb ladders or push, and that she should avoid prolonged standing and excessive bending, reaching, and balancing.

16

COMPLAINT

EXHIBIT____1
PAGE____35

68.     Plaintiff presented medical notes from her doctor to Mr. Compston stating her pregnancy-related medical restrictions on three occasions, beginning in August 2012, all of which Mr. Compston ignored.

69.     Plaintiff requested reasonable accommodations repeatedly beginning in August of 2012, but Mr. Compston refused to provide a reasonable accommodation in violation of Government Code §12945(3)(A).

70.     California Government Code §12945(3)(B) provides that it is an unlawful employment practice "[f]or an employer who has a policy, practice, or collective bargaining agreement requiring or authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability to refuse to transfer a pregnant female employee who so requests."

71.     Upon information and belief, the Atascadero Albertson's had a policy, practice, or collective bargaining agreement authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability.

72.     Plaintiff requested a temporary transfer to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk when she submitted her first doctor's note to Mr. Compstion, and begged him to transfer her to any less strenuous or hazardous position after submitting her third doctor's note. Despite the fact that numerous less strenuous or hazardous positions exist at the Atascadero Albertson's, including various positions at the Customer Service Desk, the Front Service Deli, the Meat Counter, or Starbucks, Mr. Compston refused to temporarily transfer Plaintiff to a less strenuous or hazardous position in violation of Government Code §12945(3)(B).

73.     Without regard to the existence or nonexistence of a policy or practice of temporarily transferring temporarily disabled employees to less strenuous or hazardous positions for the duration of their disabilities, California Government Code §12945(3)(C) provides that it is an unlawful employment practice "[f]or an employer to refuse to temporarily transfer a

17

COMPLAINT

EXHIBIT _____ 1
PAGE _____ 36

1  pregnant female employee to a less strenuous or hazardous position for the duration of her

2  pregnancy if she so requests, with the advice of her doctor, where that transfer can be reasonably

3  accommodated."

4       74.    Plaintiff submitted three doctor's notes and requested that Defendant

5  accommodate her medical restrictions by transferring her temporarily to a less strenuous or

6  hazardous position.

7       75.    Upon information and belief, Defendants could have reasonably accommodated

8  Plaintiff's temporary transfer for the duration of her pregnancy to a less strenuous or hazardous

9  position.  Instead, Defendants refused to grant Plaintiff a temporary transfer in violation of

10  California Government Code §12945(3)(C) .

11       76.    Defendants' refusal of Plaintiff's request for a temporary transfer to a less

12  strenuous or hazardous position for the duration of her pregnancy violated California

13  Government Code §12945(3)(C).

14       77.    The unlawful conduct of Defendants as alleged above was a substantial factor in

15  causing damage and/or injury to Plaintiff.

16       78.    As a direct and proximate result of Defendants' acts and failures to act as alleged

17  herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical

18  ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

19       79.    The conduct of Defendants, and their agents and employees as described herein,

20  was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's

21  rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and

22  their agents and employees, authorized, condoned, and ratified the unlawful conduct of each

23  other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

24  ///

25  ///

26  ///

27

18

COMPLAINT

EXHIBIT____1
PAGE____37

## FOURTH CAUSE OF ACTION

**Violation of FEHA Retaliation Provision**
**(California Government Code § 12940(h);**
**Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

80.    Plaintiff restates and incorporates by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

81.    California Government Code § 12940(h) provides that it is an unlawful employment practice to discriminate against any person because the person has opposed any practices forbidden by FEHA.

82.    Plaintiff opposed Defendants' violations of §§12940(m) and (n) and 12945(3) by repeatedly requesting reasonable accommodation for her temporary disability, a high-risk pregnancy, and by attempting to engage Defendants in the interactive process.

83.    Defendants retaliated against Plaintiff by increasing her workload, reassigning her only assistant to the night shift, removing her supervisorial and merchandise ordering responsibilities after she returned from leave after her baby's death, and issuing her a baseless write-up shortly after her return to work.  The unlawful conduct of Defendant as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

84.    As a direct and proximate result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

85.    The conduct of Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

19

COMPLAINT

EXHIBIT____1
PAGE____38

### FIFTH CAUSE OF ACTION
Negligent Infliction of Emotional Distress
(California Common Law;
Brought by Plaintiff against All Defendants)

86.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

87.     Defendants Compston and Mosley had and continue to have a duty of reasonable care with respect to Plaintiff.

88.     Mr. Compston breached his duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) denying Plaintiff's request to go home, and forcing her to engage in heavy lifting, on or about November 12, 2012, despite being aware of Plaintiff's medical restrictions and that those restrictions were due to a high-risk pregnancy, and despite being told by Plaintiff that she was exhausted and experiencing tremendous pelvic pressure.

89.     Defendant Mosley breached her duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not

20

COMPLAINT

EXHIBIT____1
PAGE____39

limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) requiring Plaintiff to stock the Liquor Department, which required heavy lifting, on a least two occasions after Plaintiff's submission of her second doctor's note stating she could not lift more than fifteen pounds or climb ladders.

90.    Defendants Compston and Mosley were acting in the scope of their employment when they breached their duties of care to Plaintiff as described herein, rendering Defendants New Albertson's, Inc. and SuperValu, Inc. vicariously liable for their negligence.

91.    As a direct and proximate result of Defendants' breaches of their duty of care to Plaintiff, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

92.    The injuries to Plaintiff proximately caused by Defendants' breaches of their duty of care to Plaintiff, including emotional distress, were reasonably foreseeable.

93.    The conduct of Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions. Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against Defendants.

21

COMPLAINT

EXHIBIT____1
PAGE____40

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1.  For compensatory damages, general damages, and special damages according to proof;

2.  For an interest, including pre-judgment interest, at the legal rate;

3.  For punitive damages in an amount to be proven at trial for all causes of action in which such damages are recoverable;

4.  For reasonable attorneys' fees pursuant to Government Code §12965, subdivision (b), California Code of Civil Procedure §1021.5, and all other applicable statutes;

5.  For costs of suit incurred herein; and

6.  For such other and further relieve as this court may deem just and proper.

Dated: June 26, 2013

Respectfully submitted,

BALTODANO & BALTODANO LLP

TRABER & VOORHEES

By:        *Erica F. Baltodano*
           Erica Flores Baltodano
           Attorneys for Plaintiff Reyna García

22

COMPLAINT

EXHIBIT____1
PAGE____41

Exhibit A

EXHIBIT____1
PAGE____42



STATE OF CALIFORNIA | State and Consumer Services Agency                                    GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING                                    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 22, 2013

Traber & Voorhees
128 N. Fair Oaks Ave.
Pasadena, CA 91103

RE:  Notice to Complainant's Attorney
     DFEH Matter Number: 110694-49003
     Right to Sue: Garcia / New Alnertson`s, Inc.

Dear Attorney:

Attached is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and
Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900
et seq. Also attached is a copy of your client's Notice of Case Closure and Right to Sue. Pursuant to
Government Code section 12962, DFEH will not serve these documents on the employer.

Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private
lawsuit in the State of California.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT_____1
PAGE____43



STATE OF CALIFORNIA | State and Consumer Services Agency                                                                    GOVERNOR EDMUND G. BROWN JR.
                                                                                                                            DIRECTOR PHYLLIS W. CHENG
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Apr 22, 2013

Reyna Garcia
7115 Santa Isabel Ave., #B
Atascadero, CA 93422

RE:  Notice of Case Closure and Right to Sue
      DFEH Matter Number: 110694-49003
      Right to Sue: Garcia / New Alnertson`s, Inc.

Dear Reyna Garcia:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Apr 22, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivion (b), a civil action may be rought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing


Enclosures

cc:  Paul Rowan Agent for Service for New Alnertson`s, Inc.
      Legal Department
      Charles Compston
      Lauren Mosley

EXHIBIT____1
PAGE___44



STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

April 22, 2013

RE: Notice of Filing of Discrimination Complaint
DFEH Matter Number: 110694-49003
Right to Sue: Garcia / New Albertson's, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government code section 12960. This constitutes service of the complaint pursuant to Government Code Section 12962. The complainant has requested an authorization to file a lawsuit. This completed is not being investigated by the DFEH and is being closed immmediately. A copy of the closing letter and Right to Sue notice is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

This letter is for informational purposes only. No response to DFEH is requested or required.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT____1
PAGE____45



STATE OF CALIFORNIA | Department of Fair Employment and Housing                                                    EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE
## CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

COMPLAINANT
Reyna Garcia

NAMED IS THE EMPLOYER, PERSON, AGENCY, ORGANIZATION OR GOVERNMENT ENTITY WHO DISCRIMINATED AGAINST ME

| RESPONDENT | ADDRESS | |
|---|---|---|
| New Alnertson's, Inc. Paul Rowan | Executive Vice President General Counsel 250 E. Parkcenter Blvd. Boise ID 83706 | PHONE |

| AGENT FOR SERVICE | ADDRESS | |
|---|---|---|
| CT Corporation System | 818 West Seventh St. Los Angeles CA 90017 | PHONE |

| NO. OF EMPLOYEES | MOST RECENT DISCRIMINATION TOOK PLACE | TYPE OF EMPLOYER |
|---|---|---|
| 0 | Apr 22, 2013 | Private Employer |

| CO-RESPONDENT(S) | ADDRESS |
|---|---|
| Legal Department SUPERVALU INC. | P.O. Box 20  Boise  ID 83726 |
| Charles Compston New Albertson's Inc./SUPERVALUE INC. | 8200 El Camino Real  Atascadero  CA 93422 |
| Lauren Mosley New Albertson's Inc./SUPERVALU INC. | 8200 El Camino Real  Atascadero  CA 93422 |

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 1/3

EXHIBIT___1
PAGE___46



STATE OF CALIFORNIA | Department of Fair Employment and Housing                    EMPLOYMENT RIGHT TO SUE

COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE
CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

| | |
|---|---|
| I ALLEGE THAT I EXPERIENCED | Discrimination, Retaliation |
| ON OR BEFORE | Apr 22, 2013 |
| BECAUSE OF MY | Disability, Engagement in Protected Activity, Family Care or Medical Leave, Medical Condition - including Cancer, Sex- Gender, Sex - Pregnancy |
| AS A RESULT, I WAS | Demoted, Denied a good faith Interactive process, Denied a work environment free of discrimination and/or retaliation, Denied family care or medical leave, Denied pregnancy leave, Denied reasonable accommodation, Denied reinstatement |

STATEMENT OF FACTS

Reyna Galan Garcia is an employee at an Albertson's store located at 8200 El Camino Real in Atascadero, California. Ms. Garcia's employer failed to accommodate her pregnancy-related disabilities, which caused her to go into labor when she was twenty weeks pregnant and give birth to a baby girl who died approximately 10 minutes later. Albertson's also stripped Ms. Garcia of her managerial job duties when she returned from leave after her baby's death, and has now started disciplining her without cause. On the basis of these actions, which are detailed below, Ms. Garcia alleges that Albertson's has violated the California Fair Employment by discriminating against her based on sex, discriminating against her based on disability, failing to engage in an interactive process, failing to provide reasonable accommodations to Ms. Garcia during her pregnancy, and retaliating against Ms. Garcia for taking pregnancy disability leave. The following statement of facts details the facts and circumstances out of which this DFEH charge arises. A. Reyna Garcia's Employment with Albertson's Ms. Garcia began working at Albertson's in Paso Robles, California in November 2007 as a customer service clerk. A representative from Albertson's corporate office praised Ms. Garcia's job performance and encouraged her to apply for a management position, which she did. Because of her excellent work performance, Albertson's promoted Ms. Garcia to General Merchandise Manager in about November or December 2009, and Ms. Garcia transferred to the Albertson's store in Atascadero. Ms. Garcia's job duties as a General Merchandise Manager included all the duties of a regular store clerk, plus supervising other clerks, ordering merchandise, stocking store shelves, stocking merchandise above freezers using a ladder, and covering the Customer Service Front Desk as needed. The job is extremely physically demanding. Ms. Garcia is required to pull and push heavy pallets stacked with blue totes of merchandise that must be stocked and to lift heavy crates of merchandise on and off pallets. The pallets that must be pushed and pulled on a "6-wheeler" are comprised of several totes each weighing between 20 and 50 pounds. The totes are stacked high, requiring Ms. Garcia to frequently stretch up over her head and to bend over. Certain loads, such as those containing boxes of shampoo, charcoal, cat litter, and firewood are particularly heavy, requiring Ms. Garcia to lift while kneeling on her knees in a forward motion. The physical demands of the job are especially pronounced before major holidays when seasonal displays must be built and shipments of seasonal merchandise must be unloaded and stocked. Ms. Garcia initially had help from an assistant General Merchandise Clerk but, as detailed below, management transferred him to the night shift while she was pregnant. Ms. Garcia is an hourly employee who makes $15.32/hour and is eligible for quarterly discretionary bonuses, which she has earned at least three times during her employment with Albertson's based on store profits and meeting store goals. B. Management Ignores Ms. Garcia's First Request for a Pregnancy-Related Accommodation In about July 2012, Ms. Garcia became pregnant and began receiving prenatal care from an obstetrician. Her obstetrician grew concerned with the physical demands of Ms. Garcia's job at Albertson's and the implications for Ms. Garcia's pregnancy, particularly in light of Ms. Garcia's previous history of delivering a baby prematurely at 6 months' gestation. On about August 9, 2012, Ms. Garcia's obstetrician provided her with a note restricting her from lifting more than 15 pounds. Ms. Garcia presented the note to Store Director Charles "Marty" Compston and informed him that she needed an accommodation to do her job, and that she had a past history of pre-term delivery. Mr. Compston and Assistant Store Director Lauren Mosley ignored Ms. Garcia's request for an accommodation and instead increased her work load. Upon receiving Ms. Garcia's medical note in his private office, Mr. Comptson said, "I thought you said nothing was

EXHIBIT____1
PAGE___47

going to change?" Thereafter, Mr. Compston and Ms. Mosley reassigned Ms. Garcia's assistant General Merchandise Clerk to a night shift position, which meant that for at least a week, Ms. Garcia had to do all of the heavy pushing, pulling, and lifting alone. Albertson's hired a new General Merchandise Clerk, Samantha Brazil, but she quit after a short time because the position was too strenuous. While Ms. Brazil was working with Ms. Garcia, she took several days off, so Ms. Garcia was frequently left alone again, without an assistant to help with the extreme physical demands of the job. After Ms. Brazil quit, Ms. Garcia went without an assistant for another 2 weeks. C. Management Ignores Ms. Garcia's Second Request for An Accommodation As a result of the heavy pushing, pulling, and lifting, Ms. Garcia began to experience serious discomfort related to her pregnancy. A regular part of her job was using a ladder, lifting while on a ladder, and stretching high above her head to stock merchandise on top of freezers. Since she also frequently used to cover the Customer Service Front Desk, she often had to climb on and off the ladder to go between her stocking and Customer Service duties. When Ms. Garcia informed her doctor's office that her supervisor, Mr. Compston, continued to require her to engage in strenuous physical activity, including climbing ladders, her doctor issued a second medical note, again restricting her ability to lift heavy items and stating that she could not climb ladders. In case there was any confusion or misunderstanding, the doctor's office also issued a Proof of Pregnancy letter for Ms. Garcia to provide to her employer, confirming that Ms. Garcia was pregnant with an estimated due date of April 3, 2013. When Ms. Garcia presented the second medical note and Proof of Pregnancy to Mr. Compston in his office, he once again did nothing. Rather than engage in any kind of conversation about possible accommodations, Mr. Compston rolled his eyes each time Ms. Garcia protested that she was unable to perform a specific job responsibility. Because Ms. Garcia is a hard-working employee and she did not want to be fired, she continued to handle all aspects of her job during her pregnancy, including pulling and pushing heavy pallets, lifting heavy totes, and climbing ladders, because that is what her job required. On at least two occasions, Ms. Mosely asked Ms. Garcia to stock the liquor department, a particularly demanding request because of the weight involved in pushing and pulling pallets of liquor and lifting cases of liquor off pallets for stocking. Nevertheless, Ms. Garcia dutifully did what she was told. Ms. Garcia had additional meetings with management in an attempt to receive an accommodation, and specifically suggested to Mr. Compston and Ms. Mosley various accommodations that could be made to address her and her doctor's concerns, but she was ignored. For example, Ms. Garcia suggested she could switch roles with the store clerk who cuts fruit for fruit platters all day. Ms. Garcia felt she could have reasonably been accommodated by being temporarily moved to a Pharmacy Technician position, the Customer Service Desk [especially because she frequently covered this position during the day anyway], the Front Service Deli, Meat Counter, or Starbucks. Ms. Garcia would have also willingly accepted a temporary position at another store in Paso Robles, Morro Bay, or San Luis Obispo. Any of these accommodations would have been reasonable without creating an "undue hardship" for Albertson's because accommodations for pregnancy-related disabilities are relatively short in duration, and other disabled employees have received similar accommodations. D. Management Ignores Ms. Garcia's Third Request for An Accommodation Management's failure to accommodate Ms. Garcia's pregnancy-related disability caused her to suffer pain, discomfort, anxiety, and extreme exhaustion. On about October 24, 2012, Ms. Garcia's doctor issued a third note severely limiting Ms. Garcia's workplace duties on account of ongoing "work stress" and the fact that "no accommodations [are] being made for her pregnancy." The medical records noted that Ms. Garcia would need to be placed on disability pregnancy leave if the employer continued to refuse to make accommodations. This time, when Ms. Garcia presented the third medical note to Mr. Compston upon returning to work that same day, she did so at the front of the store in direct view of the overhead security camera. Once again, Mr. Compston refused Ms. Garcia's request for an accommodation, and refused to engage in an interactive discussion with Ms. Garcia about her pregnancy-related disability. E. Ms. Garcia Goes into Premature Labor and Delivers Baby Girl Jade, Who Dies the Same Day Shortly after Mr. Compston ignored her third request for accommodation, Ms. Garcia began to feel very ill at work. By this time, approximately early November 2012, several of Ms. Garcia's co-workers began to comment that Ms. Garcia did not look well, and that she should slow down. But because she had no other choice, Ms. Garcia kept working. One employee specifically recalls seeing Ms. Garcia awkwardly climbing with her pregnant belly to load toys onto the seasonal holiday display. The employee said to Ms. Garcia in Mr. Compston's presence "you shouldn't be lifting while you're pregnant." On about November 11, 2012, Ms. Garcia felt extremely ill and began experiencing tremendous pelvic pressure. A co-worker urged Ms. Garcia to leave and, out of desperation, Ms. Garcia did eventually leave work without seeking permission because she was certain permission would be denied. She went home, tried to rest, woke in sweats, and continued to feel exhausted. The next day, Ms. Garcia returned to work and explained her condition to Mr. Compston and asked for permission to go home early. Mr. Compston denied her request, saying that the store was expecting a visit from representatives of Albertson's corporate office. Mr. Compston always got very stressed out when corporate visited. Ms. Garcia ended up working overtime that day and she spent a great deal of the day pulling and pushing pallets and handling her regular heavy lifting responsibilities. When she returned home on November 12, 2012, Ms. Garcia's amniotic sac began to bulge from between her legs. She was rushed to the emergency room where the on-call doctor from Ms. Garcia's OB/GYN's practice met her. Eventually, Ms. Garcia's water broke. At around 20-weeks gestation, the doctor initially thought that it might be possible for Ms. Garcia's body to rebuild the amniotic sac. She remained hospitalized and was able to keep her baby alive for 3 days. On November 15, 2012, the doctor said that if her body was going to rebuild the water sac, it would have done so by now. The amniotic sac was not repaired and the baby was now losing critical fluids. Ms. Garcia could

EXHIBIT____1
PAGE    48

feel a scratching sensation caused by the baby's finger and toe nails scratching her insides with hardly any fluid surrounding it. The baby was certainly brain damaged at this point, and Ms. Garcia's doctor said it was time to let her go. On November 17, 2012, the doctor induced labor, and Ms. Garcia delivered a baby girl named Jade who survived for no more than 10 minutes before dying. F. Retaliation against Ms. Garcia Following Pregnancy Disability Leave After the delivery and death of her baby, Ms. Garcia took about 6 weeks off from work. A nurse practitioner at her doctor's office suggested she take an additional month on account of her mental state after the delivery, but Ms. Garcia insisted on returning to work because she couldn't afford to be without a pay check. When Ms. Garcia returned to work on January 2, 2013, her department had been reconfigured and her job duties were different. Ms. Garcia no longer had any ordering or supervisory responsibilities. When she met with management to find out why her job had been changed, but the responsibilities of other managers had not changed, she was not given a direct answer. In fact, Mr. Compston told Ms. Garcia that she should be happy that some of her work duties had been reduced, to which Ms. Garcia's exclaimed "I lost my baby for this job! Why didn't you give me the help when I was pregnant and asked for it?" In addition to stripping her job duties, management has recently started disciplining Ms. Garcia without cause. On or around March 17, 2013, Ms. Mosley [in Mr. Compston's presence], issued Ms. Garcia a write-up because her department was not properly "faced," meaning that items were not facing the right way , or properly marked by signage, on the shelves. Ms. Mosely issued the write-up to Ms. Garcia on the day that Ms. Garcia returned from two days of time-off that Mr. Compston had pre-approved. There was simply no basis to discipline Ms. Garcia for an issue that arose when she was not even present in the store, and, given the timing, it appears that management is retaliating against Ms. Garcia for having exercised her rights under the law.

EXHIBIT_____1
PAGE____49



STATE OF CALIFORNIA | Department of Fair Employment and Housing                          EMPLOYMENT RIGHT TO SUE

### COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

SIGNED UNDER PENALTY OF PERJURY

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that, to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated on my information and belief, and I declare that those matters I believe to be true.

Verified by Rebecca Peterson-Fisher   and dated on April 22, 2013 at Atascadero, CA.

DATE FILED Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 3/3

EXHIBIT____1
PAGE___50

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| BALTODANO & BALTODANO LLP<br>Erica Flores Baltodano (SBN 222331)<br>Hernaldo J. Baltodano (SBN 222286)<br>1411 Marsh Street, Suite 102, San Luis Obispo, California 93401<br>TELEPHONE NO.: (805) 322-3412    FAX NO.: (805) 322-3413<br>ATTORNEY FOR *(Name):* Plaintiff Reyna Garcia | **FILED**<br>JUN 26 2013<br>SAN LUIS OBISPO SUPERIOR COURT<br>BY _____<br>M. Zepeda, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street, Room 385
MAILING ADDRESS: 1035 Palm Street, Room 385
CITY AND ZIP CODE: San Luis Obispo, CA. 93408
BRANCH NAME: San Luis Obispo

| CASE NAME:<br>Reyna Garcia v. New Albertson's, Inc., SuperValu, Inc., et al. | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CV 130309 |
|---|---|---|
| [✓] Unlimited<br>(Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37) | **(Cal. Rules of Court, rules 3.400–3.403)**<br>[ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>[ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | **Enforcement of Judgment**<br>[ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[✓] Other employment (15) | | |

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* Five
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 26, 2013

Hernaldo J. Baltodano
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

EXHIBIT____1
PAGE___51

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

EXHIBIT_____1
PAGE_____52

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | CASE NUMBER |
|---|---|---|
| REYNA GARCIA | | |
| VS. Plaintiff(s), | | CV138157 |
| NEW ALBERTSON'S INC | | |
| Defendant(s). | | **Case Management Conference** |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo     CA   93401

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Jac Crawford, Paso Robles Br.** for all purposes.
Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the
judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed.
**Defendants shall file responsive pleadings within 30 days of service**
unless the parties stipulate to an extension of not more than 15 days.
IT IS HEREBY ORDERED:
1.  The parties must appear for a first Case Management Conference on:
**October 30, 2013  at  9:00 am  in Paso Robles Branch - Dept. 2**
*THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
For information about telephone appearances call COURTCALL at (888) 882-6878

2.  Each party must file & serve a Case Management Statement <u>at least 15 days</u> before the conference.
3.  The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss
suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4.  Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules,
reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear
showing of good cause.
5.  All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6.  <u>Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.</u>
***LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00
and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.
encs.3

EXHIBIT____1
PAGE___53

1  TRABER & VOORHEES
   Lauren Teukolsky [SBN 211381]
2  lt@tvlegal.com
   Rebecca Peterson-Fisher [SBN 255359]
3  rpf@tvlegal.com
   128 North Fair Oaks Avenue
4  Pasadena, California 91103
   Tel. (626) 585-9611
5  Fax (626) 585-1400

6  BALTODANO & BALTODANO LLP
   Hernaldo J. Baltodano [SBN 222286]
7  hjb@bbemploymentlaw.com
   Erica Flores Baltodano [SBN 222331]
8  efb@bbemploymentlaw.com
   1411 Marsh Street, Suite 102
9  San Luis Obispo, California 93401
   Tel. (805) 322-3412
10 Fax (805) 322-3413

11 Attorneys for Plaintiff
   REYNA GARCIA

12

**FILED**

**JUN 27 2013**

SAN LUIS OBISPO SUPERIOR COURT
BY_____
M. Landrum, Deputy Clerk

13         SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              COUNTY OF SAN LUIS OBISPO

15

16 | REYNA GARCIA,                          | CASE NO. CV138157
17 |                                        | Assigned to the Honorable Jac Crawford
18 |            Plaintiff,                   | **PLAINTIFF REYNA GARCIA'S**
   |     v.                                 | **DECLARATION OF PREJUDICE UNDER**
19 |                                        | **SECTION 170.6 OF THE CODE OF CIVIL**
   |                                        | **PROCEDURE**
20 | NEW ALBERTSON'S, INC.; SUPERVALU,      | **(PEREMPTORY CHALLENGE)**
   | INC.; CHARLES COMPSTON, an
21 | individual; LAUREN MOSLEY, an
   | individual; and DOES 5-10, inclusive,
22 |
23 |
   |            Defendants.
24

25 ///

26 ///

27

28

                                    1

           DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT____1
PAGE____54

1    I, Reyna García, declare the following:

2        1.   I am a party to the within action hereinafter called *Reyna Garcia v. New Albertson's,*

3             *Inc. et al.* (Case No. CV130309).

4        2.   The Honorable Jac Crawford, the Judge before whom the trial of the action is pending,

5             is prejudiced against the Plaintiff or the interest of the Plaintiff so that Declarant

6             cannot, or believes that she cannot, have a fair and impartial trial or hearing before such

7             Judge.

8        3.   I declare under penalty of perjury that the foregoing is true and correct.

9

10   Dated: June __, 2013

11                                                          Reyna García

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  2
               DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT___1
PAGE___55

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

*Civil Division*

*CERTIFICATE OF MAILING*

| | |
|---|---|
| REYNA GARCIA<br><br>         VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

Baltodano, Hernaldo J
         *Attorney for Plaintiff*
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo      CA 93401

Teukolsky, Lauren
         *Attorney for Plaintiff*
TRABER & VOORHEES
128 North Fair Oaks Avenue
Pasadena         CA 91103

        *
        *Attached Pleading:*
Notice of Reassignment and Resetting

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                              OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

SUSAN MATHERLY, Court Executive Officer

by _____ , Deputy      Dated: _____

EXHIBIT____1
PAGE___56

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
*Civil Division*

*MINUTES*

| | |
|---|---|
| REYNA GARCIA<br><br>VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

Date: **06/27/13**          Time:                    Room:
Judge: Hon. Martin J. Tangeman
Event Type: *Miscellaneous Minute Order(MISCMO)*

Clerk:  Kim Martin

Judge Crawford having been timely disqualified, the
above entitled action is hereby reassigned for all
purposes to Judge Tangeman.

The Case Management Conference of October 30, 2013 is
unset and reset for October 31, 3013 at 9:00 in
Department 1.

Plaintiff to give notice.

PAGE:     1

06/27/13  16:50:32

EXHIBIT____1
PAGE__57

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| REYNA GARCIA | | CASE NUMBER |
|---|---|---|
| | Plaintiff(s), | CV130309 |
| vs. | | |
| NEW ALBERTSON'S INC | | **Case Management Conference** |
| | Defendant(s). | |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo     CA  93401

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Martin J. Tangeman** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed. **Defendants shall file responsive pleadings within 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1. The parties must appear for a first Case Management Conference on:
**October 31, 2013  at  9:00 am  in Department 1**
*THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
For information about telephone appearances call **COURTCALL** at **(888) 882-6878**

2. Each party must file & serve a Case Management Statement <u>at least 15 days</u> before the conference.

3. The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.

4. Trial will be set within the 11th or 12th month after the filing of the complaint. Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind. Continuances will be granted only on a clear showing of good cause.

5. All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.

6. <u>Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.</u>

7. **LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.

ncs.3

EXHIBIT____1
PAGE____58

**SUPERIOR COURT, STATE OF CALIFORNIA**
**COUNTY OF SAN LUIS OBISPO**
Department 1

STANDING CASE MANAGEMENT ORDER
FOR CASES ASSIGNED TO THE HON. MARTIN J. TANGEMAN

**INSTRUCTIONS TO PLAINTIFF(S)/CROSS-COMPLAINANT(S):**

**YOU shall serve a copy of this Standing Case Management Order on all Defendants/Cross-Defendants at the same time the complaint/cross-complaint is served.**

## I.   GENERAL MATTERS

A.      It is the Court's policy to provide a dignified forum in which to resolve disputes in a peaceful, professional, legally correct and expeditious manner.  All of the following rules are designed to achieve these goals.  It is not the Court's intention to prohibit a party from raising any issue by any means allowed by Rule of Court, Code or statute.  If any of the rules or procedures discussed herein creates a problem, counsel should raise the matter with the Court at the earliest opportunity.

B.      Electronic communication with the courtroom clerk is permissible for routine communications having to do with scheduling, stipulated continuances, and/or joint requests.  Substantive arguments are not permitted unless approved by the Court.  In any correspondence with the clerk, opposing counsel should be copied in order to avoid ex-parte communications.  The clerk's email address is Erin.Brown@slo.courts.ca.gov.

C.      Counsel shall turn off all audible telephones and pagers and instruct their clients and witnesses to do so.  Communication devices worn on the head are not permitted in the courtroom.

## II.   CASE MANAGEMENT CONFERENCES ("CMC")

A.      Unless otherwise specifically ordered, CMC Statements are required.  The Court expects that counsel will be prepared to discuss the current status of the case, discovery, amenability to mediation, and any unusual factual, legal or evidentiary issues that may need resolution.  Counsel who fail to appear will typically be set for an OSC hearing why sanctions should not be issued.  The initial amount is ordinarily $150.00.

B.      Early mediation is strongly encouraged.  Good faith participation in mediation will ordinarily excuse participation in a Mandatory Settlement Conference.  The Court will typically sign an order to mediate at an early CMC.

C.      It is the Court's policy to resolve discovery disputes informally and efficiently.  Accordingly, the Court has instituted special procedures for the resolution of discovery disputes through Pretrial Discovery Conferences, which can be scheduled on forms that are available from the clerk's office (see section IV.C, below).

## III.   MEDIATION

A.      The parties are strongly encouraged to engage in early, meaningful mediation.  Mediation will ordinarily take place within 90-120 days of all parties' appearance, but a longer time may be allowed.  Either private or judical mediation is acceptable.

B.      Parties who select private mediation should comply with the mediator's instructions regarding briefing and payment of fees, which ordinarily should be divided equally.

EXHIBIT____1
PAGE____59

C.    A worthwhile mediation process means that parties, attorneys and any other person whose consent or authority is required to achieve a final disposition of the dispute shall be present, as well as a representative of any insurer who has authority to settle the case for any amount up to the limits of the policy.

D.    Plaintiff should file a one-page Notice of Mediation with the clerk's office notifying the Court of the date of the mediation and name of the mediator.

## IV.    LAW AND MOTION MATTERS

A.    To the extent practicable, the Court will post tentative rulings on law and motion matters on the Court's website no later than the evening before the hearing.   The Court's website is located at www.slocourts.net.

B.    When parties agree to submit the matter based on a tentative ruling, or to have a matter taken off calendar, counsel should promptly notify both the courtroom clerk and the research attorneys via e-mail or by phone.  This is important in order to avoid unnecessary commitment of judicial resources to moot matters.  The contact information for the research attorneys is SloCourtAttorneys@slo.courts.ca.gov .

C.    Resolution of Discovery Disputes

1.    The parties may stipulate to proceeding with an informal Pretrial Discovery Conference in lieu of filing and serving discovery motions under Sections 2016.010 through 2036.050.  In that event, the parties shall proceed as follows:

a.    All parties to the discovery dispute shall sign a written stipulation electing to resolve the specified discovery dispute(s) between them according to the procedure outlined in this section IV.C.  In such event, the parties stipulate to waive their right to proceed with regularly noticed motions and stipulate that the Court can issue binding discovery orders as a full and final resolution of such dispute(s).

b.    Any request for a Pretrial Discovery Conference must be filed with the clerk's office on the approved form (which is available online or can be requested from the clerk), must include a brief summary of the dispute, and must be served on opposing counsel in the same manner as the request is filed with the clerk.  Any opposition to a request for a Pretrial Discovery Conference must also be filed on an approved form (provided by the clerk), must include a brief summary of why the requested discovery should be denied, must be filed within two (2) business days of receipt of the request, and must be served on opposing counsel in the same manner as the opposition is filed with the clerk.

c.    No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.    The parties will be notified by minute order whether the request has been granted or denied and, if granted, the date and time of the Pretrial Discovery Conference.

e.    The Court will issue a binding order at the conclusion of the Pretrial Discovery Conference.

## V.    READINESS CONFERENCE

A.    These conferences are typically scheduled during the week before trial.  At these conferences, trial counsel should be *personally present*, and prepared to discuss at least the following topics:

1.    Estimated trial length. A jury trial will ordinarily be in session from Monday through Friday from 1:30 to 4:45 p.m., although trial days beginning at 10:00 a.m. are not uncommon.

2.    Number, timing and availability of witnesses, as well as any special witness needs, or the need to call witnesses out of order.

a.    Counsel have responsibility for arranging the appearance of all witnesses during their presentation of the case so as to eliminate delays.  Counsel should confer among themselves as to when witnesses will be needed *at least 24-48 hours in advance of a witness' testimony*.

---

EXHIBIT____1
PAGE____60

b.      Counsel are to inquire of their clients and witnesses to determine whether they are in need of any type of accommodation with an interpreter, under the Americans with Disabilities Act, or any other type of assistance.

3.      Numbering and exchange of exhibits. The parties are encouraged to agree upon a reasonable exhibit numbering system.   Exhibits to be used in the case-in-chief should be pre-marked and exchanged *no later than the morning of trial and earlier if feasible*.  The use of exhibit books or binders is strongly encouraged

4.      Voir dire procedures, including mini-opening statements and preinstruction, and jury questionnaires. Counsel should attempt to agree upon a brief neutral statement of the case to be read to the prospective jury panel.

5.      Jury instructions and verdict forms.

a.      Counsel are to deliver all proposed instructions, verdict forms and requests for special findings to the Court and to opposing counsel *no later than the morning of trial*. Proposed instructions shall be complete in all respects without unfilled "blanks" or "bracketed" portions.

b.      Either before or shortly after trial starts, counsel are to meet and confer with the goal of reducing the amount of contested jury instructions and disagreement as to the form of the verdict.  Within two (2) court days after beginning trial, all counsel should notify the Court in writing as to which of the proposed instructions, and which sections of the verdict form, are acceptable to all parties, and which are disputed.

6.      Stipulations to reduce the length of trial.  Counsel should consult with each other regarding all possible stipulations and reduce them to writing.  In particular, counsel should consider waiving the necessity for authentication/foundational evidence regarding all trial exhibits, unless authentication is an important issue

7.      Motions in limine.  Prior to hearings on motions in limine, counsel should review *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669-677, and its progeny.  Counsel should advise their clients and witnesses about rulings on motions in limine that pertain to evidentiary issues.  Counsel will be held responsible for any violations of rulings on motions in limine.

## VI.   TRIAL

A.      The Court will typically hear organizational and scheduling matters, procedural issues and in limine motions at the beginning of trial, including any matters left over or continued from the Readiness Conference.

1.      Originals of all depositions to be used in the trial are to be lodged with the clerk at the beginning of trial. At the end of the trial, these depositions can be picked up from the clerk, or they can be returned by mail at the party's expense.

B.      Jury Selection Procedures

1.      Jury selection ordinarily begins at 1:30 p.m. the first day of trial.

2.      Mini opening statements of no more than 3 minutes per side are encouraged prior to jury selection.

3.      After the entire panel is screened for hardship, eighteen names are drawn at random, and voir dire is conducted.  Unless otherwise ordered, a time limit of thirty minutes per side for 18 prospective jurors will apply.

4.      Challenges for cause are exercised and ruled upon at sidebar.  Upon request, counsel will be given the opportunity to make a record of any unreported sidebar conference once the jury is not present.

5.      At least two alternate jurors are typically selected.  If it becomes necessary to substitute an alternate juror, the first alternate chosen will be the first substitute.

6.      Trial Procedures

EXHIBIT____1
PAGE____61

a.      No charts, diagrams or other exhibits should be shown or read aloud to the jury unless by stipulation or after admission of the item into evidence.

b.      Counsel should provide hard copies of any power point presentations, audio or video recordings and the like to opposing counsel in advance of showing them to the jury

c.      If counsel will seek to introduce an audio recording (or audio portion of a video recording), please review California Rule of Court 2.1040.

d.      Marking documents out of files: Please review *Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 923-924.

e.      Any object that cannot be folded into 8½" x 11" such as models, blowups, etc. should be accompanied by either a photograph or a photocopy to be retained by the Court in lieu of the oversized exhibit.

f.      When objections are made, counsel should state only the legal basis, without speaking objections.

g.      Sidebar conferences are normally held off the record.  Counsel may make a record of any unreported sidebar conference at an appropriate opportunity in the proceedings.  During trial, if counsel wish to place matters on the record, he or she may so request and the Court will provide an opportunity to do so, ordinarily at the end of the trial day once the jury has been excused.

7.      Post-Trial Procedures

a.      After the verdict is rendered by the jury, the prevailing party is expected to prepare the judgment, which should be submitted on the next Court day following trial unless otherwise ordered.

b.      Counsel should make arrangements with the clerk to withdraw exhibits in cases that will not be appealed.  The clerk will hold the exhibits for sixty days after the filing of the notice of entry of judgment.  Any exhibits remaining after that time will be destroyed unless a notice of appeal is filed.

DATED:  November 13, 2012

_____
                              HON. MARTIN J. TANGEMAN
                              *Judge of the Superior Court*
                              *County of San Luis Obispo*

EXHIBIT____1
PAGE___62

# SAN LUIS OBISPO COUNTY SUPERIOR COURT

*"The mission of the court is to resolve disputes in a fair, just and efficient manner and to interpret and apply the law consistently, impartially and independently."*

## CIVIL CASE MANAGEMENT POLICY

All civil actions except those exempted by San Luis Obispo Court Rule 9.02 will be assigned to one judge for all purposes. All cases subject to these rules will be managed in a manner that will meet the case-disposition goals of the Standards of Judicial Administration Sections 2.1 and 2.3. Chapter 9 of the San Luis Obispo County Superior Court Rules describes the policies and procedures of the court for the management of litigated civil disputes. Parties shall be familiar with the rules.

Plaintiff shall serve the documents listed below at the same time the complaint is served. Plaintiff shall serve each of the defendants and file a proof of service within 60 days after the complaint is filed. Documents that must be served with a copy of the complaint include:

1.   A copy of the Notice of Case Management Conference;
2.   A copy of this Civil Case Management Policy statement;
3.   A copy of the Court's Alternative Dispute Resolution Policy Statement
4.   A blank Case Management Statement
5.   A blank Stipulation to Alternative Dispute Resolution.

The first Case Management Conference will be held approximately 150 days after the complaint is filed. The clerk will enter the date of the conference on Notice of First Case Management Conference when the complaint is filed. **The case will be assigned a trial date in the 12th month after the complaint is filed unless the circumstances and the interests of justice require a different trial date.**

**Please note:** Failure to comply with the court's case management rules and policies will result in the issuance of an OSC and the imposition of monetary and other sanctions.

### Alternative Dispute Resolution Policy

The San Luis Obispo Superior Court recognizes that civil litigation can be time consuming and expensive. Delay rarely serves anyone's interests. It often imposes intolerable social and economic burdens on the parties and the court. It is the policy of the court to achieve a disposition of all litigation at the earliest date consistent with a fair and just resolution of the dispute.

Nearly all cases are resolved without trial. Many settlements are achieved only after significant amounts of time and money have been spent on pre-trial procedures and investigation. It is the goal of the San Luis Obispo County Superior Court to produce a fair and just settlement of the dispute early in the process. To achieve this goal, it is the policy of the San Luis Obispo Superior Court to encourage the parties to pursue alternative methods of dispute resolution as early in the process as possible. All cases will be assessed at the first Case Management Conference to determine which method of ADR is most likely to achieve an early resolution.

Alternative Dispute Resolution is more thoroughly explained in the form Alternative Dispute Resolution Policy Statement. It is the obligation of counsel to review the alternatives to trial with their clients and to provide them with a copy of the form.

---

CVDC01
Rev 07/01/02
Mandatory

CIVIL CASE MANAGEMENT POLICY

SLO Rule 9.11.1

www.slocourts.net

EXHIBIT____1

PAGE____63

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:                    Time:                    Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐  Notice of Intent to Appear by Telephone,  by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*

      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐  have had a default entered against them *(specify names):*

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐  complaint     ☐  cross-complaint     *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 1 of 5
Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

EXHIBIT ___1___
PAGE___64___

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐   The trial has been set for *(date):*
b.  ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐   days *(specify number):*
b.  ☐   hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:                                          f.   Fax number:
e.   E-mail address:                                              g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.  **Preference**
☐   This case is entitled to preference *(specify code section):*

10.  **Alternative dispute resolution (ADR)**

a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1)  For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).
(1)  ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2)  ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3)  ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

EXHIBIT ___1___
PAGE ___65___

| PLAINTIFF/PETITIONER: | | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | CASE NUMBER: | |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (*check all that apply and provide the specified information*):

| | The party or parties completing this form **are willing** to participate in the following ADR processes (*check all that apply*): | If the party or parties completing this form in the case have **agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes (*attach a copy of the parties' ADR stipulation*): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (*date*):<br>☐ Agreed to complete mediation by (*date*):<br>☐ Mediation completed on (*date*): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (*date*):<br>☐ Agreed to complete settlement conference by (*date*):<br>☐ Settlement conference completed on (*date*): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (*date*):<br>☐ Agreed to complete neutral evaluation by (*date*):<br>☐ Neutral evaluation completed on (*date*): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (*date*):<br>☐ Agreed to complete judicial arbitration by (*date*):<br>☐ Judicial arbitration completed on (*date*): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (*date*):<br>☐ Agreed to complete private arbitration by (*date*):<br>☐ Private arbitration completed on (*date*): |
| (6) Other (*specify*): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (*date*):<br>☐ Agreed to complete ADR session by (*date*):<br>☐ ADR completed on (*date*): |

CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 3 of 5

EXHIBIT_____1
PAGE___ 66

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

　　(1) Name of case:

　　(2) Name of court:

　　(3) Case number:

　　(4) Status:

　　☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

**CASE MANAGEMENT STATEMENT**

EXHIBIT ___1

PAGE ___67

| | |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

**CM-110**

### 17. Economic litigation

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

### 18. Other Issues

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

### 19. Meet and confer

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

### 20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

EXHIBIT____1
PAGE____68

## ALTERNATIVE DISPUTE RESOLUTION POLICY STATEMENT

### WAYS TO RESOLVE YOUR DISPUTE WITHOUT A TRIAL
Presented by the San Luis Obispo County Superior Court

The mission of your Superior Court is to resolve civil disputes fairly and efficiently. It is the court's policy to encourage persons involved in a lawsuit to consider methods other than a trial to resolve their disputes.

Did you know that 95% of all cases filed in court do not go to trial? Most cases are settled or decided in some other way. In fact, methods of settling disputes that do not require a trial have become the first choice of most businesses, government agencies and unions. Agreements to mediate or arbitrate disputes are now commonly found in contracts covering employment, medical care, banking and insurance.

Alternative Dispute Resolution is a catch-all term that refers to the ways other than a trial that can be used to resolve the dispute you brought to the courthouse. These options are typically less formal than trial and many provide opportunities to reach an agreement through a problem-solving approach rather than the adversarial approach of a trial. ADR can save time, reduce costs and increase your overall satisfaction with the outcome.

### THE ADVANTAGES OF ADR

**Reduce Legal Costs:** Nearly all cases are resolved without a trial. If a settlement is likely anyway, wouldn't it be better to save attorneys fees, court costs and experts fees by settling early? In a recent survey, two thirds said they saved money by using ADR.

**Reduce The Time Spent on the Dispute:** A dispute can usually be decided or settled much sooner by using ADR. It is almost always less expensive.

**Increase Control Over the Result:** Some methods of ADR allow the parties to fashion creative resolutions that are not available in a trial. Other ADR methods permit the parties to entrust a decision about the dispute to an expert in a particular field instead of to a judge or a jury without the same experience or knowledge. And in ADR, both the dispute and its resolution can remain confidential.

**Preserve Relationships:** ADR is generally a less adversarial and hostile forum for dispute resolution than a trial. An experienced mediator or arbitrator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction:** In ADR, the parties usually have a better chance to tell their side of the story than they do in trial. This increases the likelihood the case will settle as well as the parties' overall satisfaction with the outcome.

**Improve Attorney-Client Relationships:** Attorneys may benefit from ADR by being seen as problem-solvers instead of as aggressive advocates. Quick, cost-effective results are likely to produce repeat and new business from clients and their friends and associates.

### WHAT ARE THE ADR OPTIONS?

#### MEDIATION

In mediation, an independent, neutral person called a mediator helps the parties reach a mutually acceptable resolution of their dispute. The mediator does not decide the dispute but is trained to help the parties communicate so they can settle the dispute on terms they design themselves.

If mediation does not result in a settlement, the case is returned to court. And if the case goes to trial, there are laws that protect the confidentiality of the things discussed during mediation.

**Advantages:** Mediation leaves control of the outcome with the parties. It may be a particularly effective tool when the

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT____1
PAGE____69

parties have a continuing relationship to consider such as persons who work together, are neighbors or are members of the same family. Mediation is also effective where emotions are blocking a resolution. An effective neutral mediator can hear the parties out and help them communicate with each other in an effective and non-destructive manner.

**Disadvantages**: Mediation may be ineffective if one of the parties will not cooperate or is unwilling to compromise. And it may not be a good choice if the history of the parties includes abuse or victimization. Mediation may not produce a satisfactory resolution of the dispute if one of the parties has a significant advantage in power or rank than cannot be neutralized by the mediator.

**ARBITRATION**

In arbitration, an independent, neutral person called an arbitrator decides what the outcome of the dispute will be. Each side presents evidence supporting its case in a setting that is more informal than a trial. Rules of evidence are relaxed.

Arbitration may be either binding or non-binding. Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's award as final. Generally, there is no right to appeal an arbitrator's final decision. Non-binding arbitration means that the parties are free to request a trial by a judge or a jury if they are unwilling to accept the arbitrator's findings and award.

**Advantages**: Arbitration is informal and usually less expensive than a trial. If the dispute involves a particularly complex matter, the parties can select an arbitrator who has training or experience in the subject matter of the dispute. If the dispute is not complex, the parties may simply wish to avoid the expense of a trial

**Disadvantages**: Generally, there is no appeal from a arbitrator's finding or award even if it is not supported by the evidence or the law. If a party to a non-binding arbitration requests a trial, there may be penalties for failing to achieve a better result.

**NEUTRAL EVALUATION**

In early neutral evaluation, the parties employ an expert in the subject matter of the dispute and ask him or her to give them an opinion about how the dispute ought to be resolved. The expert's opinion is not binding and the parties use it to negotiate a resolution of the dispute.

**Advantages**: Neutral evaluation can produce early, creative settlements. If the parties are willing to listen to and compromise, the opinion of an expert they mutually select can provide a solid foundation for a long-lasting agreement.

**Disadvantages**: An expert can be expensive. The parties usually agree that neither the expert nor his or her opinion can be used in a trial if they cannot agree.

**COURT-SUPERVISED SETTLEMENT CONFERENCE**

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a court-supervised settlement conference officer. The settlement conference judge or officer does not make a decision that is binding upon the parties. The judge or settlement officer helps the parties evaluate the case and to make decisions about settlement.

**Advantages**: A mandatory settlement conference gives the parties an opportunity before trial to negotiate a settlement in light of what they learned investigating the case and through discovery. The opinion of a settlement judge about the most likely outcome may inspire the parties to reevaluate their positions.

**Disadvantages**: A mandatory settlement conference is usually late in the life of a litigated dispute. It comes only after time and money has been spent preparing for trial. The parties' positions may have been hardened by what they have been through and they may be less willing to compromise.

---

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT ___1
PAGE    70

**SUPERIOR COURT OF SAN LUIS OBISPO COUNTY**

☐ **San Luis Obispo Branch**, 1035 Palm Street, Rm 385, San Luis Obispo, CA 93408
☐ **Grover Beach Branch**, 214 South 16th Street, Grover Beach, CA 93433
☐ **Paso Robles Branch**, 901 Park Street, Paso Robles, CA 93446

| | FOR COURT USE ONLY |
|---|---|

Plaintiff:

Defendant:

| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 201.9)** | CASE NUMBER: |
|---|---|
| | Judge |

The parties and their attorneys hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Mediation                                    ☐ Neutral Case Evaluation

☐ Binding Judicial Arbitration                 ☐ Binding Private Arbitration

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to close 15 days before arbitration under CRC, rule 1612)

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to remain open until 30 days before trial: order required under CRC, rule 1612)

☐ Other


It is also stipulated that the arbitrator, mediator or other neutral shall be:

Name:

Date:                                          Date:


Name of Plaintiff                              Name of Defendant

_____                      _____
Signature                                      Signature


Name of Plaintiff's Attorney                   Name of Defendant's Attorney

_____                      _____
Signature                                      Signature

(Attach another sheet if additional names are necessary)
It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, rule 225.

**IT IS SO ORDERED. IT IS ALSO ORDERED** that no new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

Date: _____                                  _____
                                               JUDGE OF THE SUPERIOR COURT

CVDC05
Rev. 08/01/2009      **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**      SLO Local Rule 9.11 4
Optional

*Martin Dean's*
**ESSENTIAL FORMS™**

EXHIBIT ___1___
PAGE ___71___

EXHIBIT 2

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359,<br>TRABER & VOORHEES<br>128 N. Fair Oaks Ave.<br>Pasadena, CA 91103<br>TELEPHONE NO.: (626) 585-9611   FAX NO. *(Optional)*: (626) 585-1400<br>E-MAIL ADDRESS *(Optional)*: lt@tvlegal.com; rpf@tvlegal.com<br>ATTORNEY FOR *(Name)*: Reyna Garcia | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CV138157 |
|---|---|

TO *(insert name of party being served)*: SuperValu, Inc.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ *Carolyn Slaughter*
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:

    See Attachment A

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

EXHIBIT____2
PAGE____72

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____2
PAGE____73

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES<br>128 N. Fair Oaks Ave.<br>Pasadena, CA 91103<br>TELEPHONE NO.: (626) 585-9611    FAX NO. *(Optional):* (626) 585-1400<br>E-MAIL ADDRESS *(Optional):* lt@tvlegal.com; rpf@tvlegal.com<br>ATTORNEY FOR *(Name):* Reyna García | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CV138157 |
|---|---|

TO *(insert name of party being served):* SuperValu, Inc.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ *Carolyn Slaughter*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
   See Attachment A

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶
_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT ___2___
PAGE ___74___

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____2
PAGE____75

SUM-100

## SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* NEW ALBERTSON'S, INC.; SUPERVALU, INC.; CHARLES COMPSTON, an individual; LAUREN MOSLEY, an individual; and DOES 5-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* REYNA GARCIA

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| **FILED** |
| JUN 26 2013 |
| SAN LUIS OBISPO SUPERIOR COURT |
| BY M. Zepeda, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* CV 130309 |

Superior Court of the State of California, County of San Luis Obispo
1035 Palm Street, Room 385, San Luis Obispo, California 93408

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BALTODANO & BALTODANO LLP; Erica Flores Baltodano, Esq.; Hernaldo J. Baltodano, Esq.
1411 Marsh Street, Suite 102, San Luis Obispo, California 93401 (805) 322-3412

| DATE: | SUSAN MATHERSON | Clerk, by | /s/ M ZEPEDA | , Deputy |
|---|---|---|---|---|
| *(Fecha):* JUN 26 2013 | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use | SUMMONS | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | www.JustSearch.com |
| SUM-100 [Rev. July 1, 2009] | | |

EXHIBIT 2
PAGE 76

1   TRABER & VOORHEES
    Lauren Teukolsky [SBN 211381]
    lt@tvlegal.com
2   Rebecca Peterson-Fisher [SBN 255359]
    rpf@tvlegal.com
3   128 North Fair Oaks Avenue
    Pasadena, California 91103
4   Tel.  (626) 585-9611
    Fax   (626) 585-1400
5

6   BALTODANO & BALTODANO LLP
    Hernaldo J. Baltodano [SBN 222286]
7   hjb@bbemploymentlaw.com
    Erica Flores Baltodano [SBN 222331]
8   efb@bbemploymentlaw.com
    1411 Marsh Street, Suite 102
9   San Luis Obispo, California 93401
    Tel.  (805) 322-3412
10  Fax   (805) 322-3413

11

    Attorneys for Plaintiff
12  REYNA GARCÍA

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA
14                      COUNTY OF SAN LUIS OBISPO

15                      (UNLIMITED JURISDICTION)     CV 130309

16  REYNA GARCÍA,                    | CASE NO.

17          Plaintiff,               | COMPLAINT:

18      v.                           | 1. Failure to Engage in a Timely, Good
                                     | Faith Interactive Process, Cal. Gov. Code
19                                   | §12940(n);

20  NEW ALBERTSON'S, INC.; SUPERVALU, | 2. Failure to Provide Reasonable
    INC.; CHARLES COMPSTON, an individual; | Accommodation, Cal. Gov. Code §12940(m);
21  LAUREN MOSLEY, an individual; and DOES 5-
    10, inclusive,                   | 3.  Violation of FEHA Provisions
22                                   | Regarding Pregnancy, Cal. Gov. Code
                                     | §12945(3);
23          Defendants.             
                                     | 4.  Retaliation in Violation of Cal. Gov.
24                                   | Code §12940(h);

25                                   | 5.  Negligence, California Common Law

26                                   | JURY TRIAL DEMAND

27                              1

                            COMPLAINT

EXHIBIT____2
PAGE____77

**INTRODUCTION**

1.    Plaintiff Reyna García began working for Albertson's grocery stores in November 2007.  Since 2010, she has been the General Merchandise Manager at the Atascadero store, a job which entails loading and unloading large quantities of non-perishable merchandise, such as charcoal and cat litter.  The job requires Ms. García to pull and push a manual pallet jack stacked with hundreds of pounds of totes carrying merchandise, lift heavy boxes, climb ladders, twist to reach shelves, and perform other physically demanding tasks.  Often, Ms. García is required to handle tasks outside the General Merchandise department, such as covering the Customer Service Desk or stocking the Liquor Department.  Ms. García has been an exemplary employee, consistently receiving positive feedback for high scores in Albertson's Customer Service Index Program, continuous sales growth in her department, and low "shrink" figures in her department. She has been awarded numerous merit-based bonuses.

2.    In July 2012, Ms. García became pregnant.  She and her husband were overjoyed, and soon they learned that they were expecting a little girl.  Ms. García had previously delivered a baby very early at six months.  Based in part on this medical history, and on the rigorous nature of Ms. García's job, her doctor wrote a note stating that she was medically restricted from lifting more than fifteen pounds.

3.    Ms. García presented the doctor's note to her supervisor, Store Manager Charles "Marty" Compston, on August 9, 2012, and requested that he accommodate her pregnancy.  She also told him that she had a history of pre-term delivery.  Despite the requirements under California's Fair Employment & Housing Act ("FEHA") that an employer engage in a good-faith interactive process with an employee who requests an accommodation due to disability, Mr. Compston said "I thought you said nothing was going to change?"  He refused to discuss the matter further.

///

2

COMPLAINT

EXHIBIT___2
PAGE___78

4.      When Ms. García asked Mr. Compston if he would move her temporarily to a position cutting fruit for platters in the Service Deli or to the Customer Service desk, Mr. Compston responded, "No, I'm not moving you," or words to that effect.  He also reassigned Ms. García's only assistant to the night shift, forcing her to pull and push the manual pallet jack, unload totes weighing up to fifty pounds each, and shelve heavy items by herself each day.

5.      Ms. García presented additional doctor's notes to Mr. Compston on two later occasions, but Mr. Compston ignored them and refused to discuss any accommodations.  Lauren Mosley, Assistant Store Director, likewise was aware of Ms. García's pregnancy and medical restrictions, yet continued to force her to lift, push, and pull heavy items, including heavy cases of liquor.  Mr. Compston and Ms. Mosley showed no concern for Ms. García's condition even though she informed them both she was experiencing increasing physical discomfort at work due to her pregnancy.

6.      Although Ms. García was concerned for her health and the health of her baby, she stayed on the job because she needed the income and because her health insurance was provided through Albertson's.

7.      On November 12, 2012, Ms. García told Mr. Compston that she was experiencing tremendous pelvic pressure and requested permission to leave work.  Mr. Compston denied Ms. García's request, saying that he was expecting a store visit from Albertson's corporate representatives and needed her to stay.

8.      When Ms. García returned home from work on November 12, 2012, her amniotic sac began to bulge from between her legs and she was rushed to the emergency room.  At twenty weeks' gestation, her doctor thought her body might rebuild the amniotic sac.  On November 14, 2012, Ms. García's water broke.  Ms. García remained hospitalized and was able to keep her baby inside of her and alive for 3 days, at which point it became clear to her doctor that her baby would not rebuild the amniotic sac and that the baby was brain damaged.  On November 17,

3

COMPLAINT

EXHIBIT____2
PAGE____79

1   2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived

2   for no more than 10 minutes before dying.

3        9.     The minutes Ms. García and her husband spent watching their baby die were

4   heartbreaking. Ms. García and her husband both cried as they watched baby Jade gasp for air

5   and turn from pink, to purple, to almost black. After baby Jade's death, Ms. García was

6   anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby Jade's

7   body, which she kept with her until she was released from the hospital. Ms. García and her

8   husband have been devastated by their loss.

9        10.     Ms. García took about six weeks off from work to recover, pursuant to her rights

10   under the Family Medical Leave Act. While she was recuperating, she sank into a deep

11   depression and became socially withdrawn. She remains depressed and withdrawn, and

12   continues to grieve the loss of baby Jade. She plays an audio recording of baby Jade's beating

13   heart almost daily as a way of remembering and dealing with her loss.

14        11.     On January 2, 2013, when Ms. García returned to work after baby Jade's death,

15   Mr. Compston and Ms. Mosley retaliated against her by eliminating her supervisorial and

16   merchandise ordering responsibilities and issuing her a baseless write-up for alleged

17   insufficiencies in her job performance during a period when she wasn't even at work due to

18   prescheduled days off. When Ms. García asked Mr. Compston why her supervisorial and

19   ordering responsibilities were eliminated from her position, he said she should be happy that they

20   had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

21   you give me help when I was pregnant and asked for it?"

22        12.     On the basis of these facts and those alleged in more detail below, Ms. García

23   brings claims against Defendants for violations of California's Fair Employment & Housing

24   Act's requirements that an employer engage in a good-faith interactive process with an employee

25   who requests an accommodation based on disability; that an employer provide a reasonable

26   accommodation to an employee disabled by pregnancy; and that an employer not retaliate

27

4

COMPLAINT

EXHIBIT____2
PAGE____80

1   against an employee based on a request to take a pregnancy-related leave or request for a

2   reasonable accommodation.  Ms. García also brings claims for negligence.

### PARTIES

3

4   13.   Plaintiff Reyna García is an individual over eighteen years of age residing in the

5   County of San Luis Obispo, California.

6   14.   Defendant New Albertson's, Inc. is an Idaho-based corporation, which operated

7   the Atascadero Albertson's, along with other Albertson's supermarkets, as a wholly-owned

8   subsidiary of SuperValu, Inc., at all relevant times herein.

9   15.   Defendant SuperValu, Inc. is a Minnesota-based corporation, which owned

10   several grocery chains, including the Atascadero Albertson's and other grocery stores operated

11   by New Albertson's, Inc. as Albertson's stores, at all relevant times herein.

12   16.   Defendant Charles "Marty" Compston is an individual who, upon information and

13   belief, resides in the County of San Luis Obispo, California.  Mr. Compston is, and all relevant

14   times has been, the Store Director of the Atascadero Albertson's.

15   17.   Defendant Lauren Mosley is an individual who, upon information and belief,

16   resides in the County of San Luis Obispo, California.  Defendant Mosley is, and all relevant

17   times has been, the Assistant Store Director of the Atascadero Albertson's.

18   18.   The true names and capacities, whether individual, corporate, associate, or

19   otherwise, of defendants sued herein as Does 5 through 10, inclusive, are currently unknown to

20   Plaintiff, who therefore sues such defendants by such fictitious names.  Plaintiff is informed and

21   believes, and on that basis alleges, that each of the defendants designated herein as a Doe

22   defendant is legally responsible in some manner for the unlawful acts and omission alleged

23   herein, and that Plaintiff's injuries were caused by the conduct of each such defendant.  Plaintiff

24   will seek leave of court to amend this Complaint to reflect the true names and capacities of the

25   defendants designated hereinafter as Doe defendants when such defendants' identities become

26   known.

27

5

COMPLAINT

EXHIBIT     2
PAGE     81

19.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, each of the defendants was the agent or employee of, and/or working in concert with, his/her co-defendants and was acting within the course and scope of such agency, employment, and/or concerted activity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain defendants, the remaining defendant or defendants confirmed and ratified said acts and omissions.

20.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, Defendant New Albertson's, Inc. was dominated and controlled by Defendant SuperValu, Inc., and each was the alter-ego of the other.

21.     Whenever and wherever reference is made in this complaint to any act or failure to act by a defendant or defendants, such allegations and references shall also be deemed to mean the acts and failure to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

22.     Venue is proper in this judicial district, pursuant to California Code of Civil Procedure §§395 and 395.5 and California Government Code §12965(b), and the amounts in controversy exceed this Court's jurisdictional minimum.  Defendants Compston and Mosley reside in the County of San Luis Obispo, and all acts and omissions giving rise to liability are alleged to have occurred in the County of San Luis Obispo.

## GENERAL FACTUAL ALLEGATIONS

23.     Plaintiff Reyna García began working at Albertson's supermarket in Paso Robles, California, in November 2007 as a Customer Service Clerk.  In 2010, she was promoted to General Merchandise Manager and transferred to the Albertson's Atascadero store, located at 8200 El Camino Real in Atascadero, California.

24.     Ms. García excelled as General Merchandise Manager, earning discretionary bonuses on multiple occasions and consistently receiving positive feedback from her supervisors

6

COMPLAINT

EXHIBIT___2
PAGE___82

1   for high scores in Albertson's Customer Service Index Program, continuous sales growth in her

2   department, and low "shrink" (merchandise theft/loss) figures.

3       25.    Ms. García's duties were extremely physically demanding, requiring her to pull

4   and push manual pallet jacks (manually-operated forklift-type machines) stacked with multiple

5   totes of merchandise each weighing between 20 and 50 pounds.  Ms. García was required to

6   climb ladders and to frequently stretch up over her head, bend over, squat, and, lift while

7   kneeling in a forward motion.  Often, she was required to handle tasks outside the General

8   Merchandise department, such as covering the Customer Service Desk or stocking heavy cases

9   of liquor for the Liquor Department.  The physical demands of the job were especially

10  pronounced before major holidays when shipments of seasonal merchandise needed to be

11  unloaded and stocked.

12      26.    Ms. García became pregnant in about July 2012, and began receiving prenatal

13  care from a doctor shortly thereafter.  Ms. García and her husband were overjoyed to be

14  expecting a baby, but her doctor became concerned about the effect of the physical demands of

15  Ms. García's job on her pregnancy, especially because Ms. García had previously delivered a

16  baby prematurely at 6-months' gestation.  In light of her job duties, Ms. García's doctor placed

17  medical restrictions on her during her pregnancy.

18      27.    Ms. García's high-risk pregnancy was a disability within the meaning of

19  California Government Code §12926(l) in that it limited her ability to engage in a major life

20  activity, working, and affected several of her body systems, including, but not limited to, her

21  reproductive, cardiovascular, immunological, and endocrine systems.  Cal. Gov. Code

22  §§12926(l)(1)(A) and (B)(iii).

23      28.    On or about August 9, 2012, Ms. García's doctor provided her with a medical

24  note restricting her from lifting more than fifteen pounds and restricting her from pushing.  Ms.

25  García presented the note to her supervisor, Defendant Charles "Marty" Compston, Store

26  Director of the Atascadero Albertson's.  Ms. García informed Mr. Compston that she had a

27

7

COMPLAINT

EXHIBIT___2
PAGE___83

1   history of pre-term delivery and requested a reasonable accommodation to enable her to comply

2   with her medical restrictions.

3       29.    Mr. Compston made no effort to engage in a good-faith interactive process with

4   Ms. García to determine what reasonable accommodation could be made. Instead, upon

5   receiving Ms. García's medical note, he said "I thought you said nothing was going to change?"

6   Mr. Compston and Assistant Store Director Lauren Mosley then proceeded to increase Ms.

7   García's workload by reassigning the General Merchandise Clerk, her only assistant, to a night

8   shift position, forcing Ms. García to push, pull, unload, and shelf pallets of heavy merchandise

9   by herself during the day.  When Ms. García asked Mr. Compston if she could be temporarily

10  transferred to a position at the Service Deli cutting fruit for platters or to the Customer Service

11  Desk, Mr. Compston refused, stating, in words or substance, "No, I'm not moving you."

12      30.    As a result of the heavy pulling, pushing, and lifting, which Defendants forced

13  Ms. García to continue performing despite her medical restrictions, Ms. García began to

14  experience serious discomfort related to her pregnancy.  When Ms. García informed her doctor

15  that her employer continued to require her to engage in strenuous physical activity, her doctor

16  wrote her another doctor's note, stating she should not lift more than twenty pounds or climb

17  ladders.  Ms. García's doctor also issued a Proof of Pregnancy letter confirming that Ms. García

18  was pregnant with an estimated due date of April 3, 2013.

19      31.    Ms. García presented her second medical note, dated September 6, 2012, and her

20  Proof of Pregnancy letter to Mr. Compston, who once again failed to engage in a good-faith

21  interactive process and made no attempt to accommodate Ms. García's medical restrictions.  Mr.

22  Compston was dismissive of Ms. García's medical condition, rolling his eyes when she would

23  protest that she was unable to perform a specific job responsibility on account of her medical

24  restrictions.  Mr. Compston continued to force Ms. García to engage in heavy lifting and to climb

25  ladders to stock merchandise above the store freezers.  On at least three occasions after Mr.

26  Compston received Ms. García's second doctor's note, and knowing about Ms. García's medical

27

8

COMPLAINT

EXHIBIT____2
PAGE____84

1   restrictions and her pregnancy, Defendant Mosley required Ms. García to stock the Liquor
2   Department, a job function that was ordinarily handled by clerks from another department.
3   Stocking liquor was a particularly demanding task because of the weight involved in transporting
4   cases of liquor bottles and lifting heavy cases of liquor. Ms. García told Ms. Mosley that she
5   should not be used to stock the Liquor Department because of her medical restrictions, but Ms.
6   Mosley insisted that Ms. García obey her. Ms. García complied with Ms. Mosley's first two
7   requests, but when Ms. Mosley asked her to stock the Liquor Department a third time, Ms.
8   García refused.

9        32.    Ms. García was aware that other employees with temporary disabilities had been
10   accommodated in the past, and continued to request a reasonable accommodation for her high-
11   risk pregnancy. Upon information and belief, Defendants made no effort to explore the
12   feasibility of any reasonable accommodation for Ms. García.

13        33.    Ms. García continued to suffer increasing pain, discomfort, anxiety, and extreme
14   exhaustion. At work, she frequently suffered from nausea, pelvic pressure, and excessive
15   sweating. Completing her job responsibilities became increasingly difficult, as Ms. García
16   frequently needed to use the bathroom and had difficulty standing up from a squatting position.
17   At the same time, Ms. García was wracked with anxiety about her baby's safety, and felt
18   tremendous pressure from Defendants Compston and Mosley to continue to do her job. When
19   she would return home after work, Ms. García was too exhausted to do anything, so her husband
20   took over most duties in their home. She continued on the job because her family needed the
21   income and because her health insurance was provided through Albertson's.

22        34.    On or about October 24, 2012, Ms. García had an appointment with her doctor
23   who issued her a third note severely limited her workplace duties on account of ongoing "work
24   stress" and the fact that "no accommodations [are] being made for her preg[nancy]." Upon
25   returning to work the same day, Ms. García presented her third medical note to Mr. Compston,
26   which repeated that she was restricted from lifting more than twenty pounds, and stated that she

27

9

COMPLAINT

EXHIBIT___2
PAGE___85

1    required frequent access to the bathroom and to water, and that she should avoid prolonged
2    standing and excessive bending, reaching, and balancing.
3          35.    Ms. García submitted the third medical note to Mr. Compston and begged him to
4    either transfer her to another position or provide her with a note stating no other positions were
5    available so she could go out on state disability.  Mr. Compton flatly refused, and would not even
6    discuss Ms. García's requests.
7          36.    On or about November 11, 2012, Ms. García felt extremely ill at work and began
8    experiencing tremendous pelvic pressure.  At a co-worker's urging, Ms. García left work without
9    seeking permission, because she was certain that permission would be denied.  At home, she
10   tried to rest but woke in sweats, exhausted.  The next day, Ms. García returned to work,
11   explained her condition to Mr. Compston, and requested permission to go home early.  Mr.
12   Compston denied her request, saying that the store was expecting a visit from representatives of
13   Albertson's corporate office.  Ms. García was forced to continue working and spent a great deal
14   of the day pulling and pushing pallets, and handling her regular heavy-lifting responsibilities.
15         37.    When she returned home on November 12, 2012, Ms. García's amniotic sac
16   began to bulge between from between her legs and she was rushed to the emergency room.  At
17   about 20-weeks' gestation, her doctor initially thought her body might rebuild the amniotic sac.
18   Ms. García remained hospitalized and was able to keep her baby inside of her body and alive for
19   3 days.  On November 14, 2012, Ms. García's water broke.  On November 15, 2012, her doctor
20   told her that the scratching sensation that she felt was her baby's fingernails and toes, and this
21   meant that the amniotic sac was completely gone.  Ms. García's doctor told Ms. García that if her
22   body was going to rebuild the amniotic sac, it would have done so by now.  An ultrasound was
23   conducted and Ms. García was able to see an image of her baby inside her.  Ms. García's doctor
24   told her that the baby was not getting enough fluids to survive and was becoming increasingly
25   brain damaged each second, and that because there was no amniotic sac, the baby's scratching
26
27

10

COMPLAINT

EXHIBIT       2
PAGE      86

1   was damaging Ms. García's reproductive system and reducing her chances of being able to have

2   children in the future. Ms. García's doctor said it was time to let her baby go.

3       38.    Feeling devastated and hopeless, Ms. García agreed and allowed her doctor to

4   induce labor. On November 17, 2012, Ms. García gave birth to a baby girl named Jade, and

5   spent several heartbreaking minutes watching her baby die. She and her husband both cried as

6   they watched baby Jade gasp for air and turn from pink, to purple, to almost black as her

7   heartbeat slowed and became undetectable. Baby Jade's death over those several minutes was

8   the most painful thing Ms. García had ever experienced. After baby Jade's death, Ms. García

9   was anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby

10   Jade's body to be brought to her. Ms. García kept baby Jade's body with her for a day and a half

11   until she was released from the hospital.

12       39.    As she was entitled to leave under the Family Medical Leave Act ("FMLA") and

13   based on her doctor's advice, Ms. García took about six weeks off from work to recover. She

14   sank into a deep depression, and stopped cleaning her house and showering regularly. Unable to

15   sleep, she frequently went downstairs at night to sit on her couch in the dark and cry. Ms. García

16   became socially withdrawn during this time period, and remains depressed and withdrawn to this

17   day. She does not want to see friends or leave her house, and continues to grieve the loss of baby

18   Jade. Ms. García was able to record the sound of baby Jade's heartbeat before her death, and

19   plays the recording almost daily as a way of remembering and dealing with her loss.

20       40.    When Ms. García returned to work on January 2, 2013, she found that her

21   department had been reconfigured and Defendants had taken away her supervisorial and

22   merchandise ordering responsibilities. When Ms. García asked Mr. Compston why her

23   supervisorial and ordering responsibilities were removed, he said she should be happy that they

24   had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

25   you give me help when I was pregnant and asked for it?"

26

27

11

COMPLAINT

EXHIBIT___2
PAGE___87

41.   On or about March 17, 2013, when Ms. García returned to work after two pre-approved days off, Defendant Mosley further retaliated against Ms. García by issuing her a baseless write-up because her department was not properly "faced," meaning that items were not facing the right way or properly marked by signage on the shelves.

42.   Ms. García has suffered profound physical pain and suffering and emotional distress due to Albertson's' failure to accommodate her pregnancy and subsequent retaliation.

43.   Ms. García filed charges with the Department of Fair Employment and Housing ("DFEH") on or about April 22, 2013, against Defendants New Albertson's, Inc., SuperValu, Inc., Charles Compston, and Lauren Mosley.  All of the causes of action alleged herein were alleged in Ms. García's DFEH charge with supporting factual allegations.  The DFEH issued a Right to Sue letter on or about April 22, 2013, completing the exhaustion of Ms. García's administrative remedies.  Ms. García's DFEH Right to Sue letter and DFEH charge are included in the Right to Sue Attorney Package attached hereto as Exhibit A.  All conditions precedent to the institution of this lawsuit have been fulfilled.

## FIRST CAUSE OF ACTION

### Failure to Engage in a Timely, Good Faith Interactive Process
### (California Government Code §12940(n);
### Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

44.   Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

45.   At all times relevant herein, the California Fair Employment and Housing Act ("FEHA"), Government Code §12900 *et seq.*, was in full force and effect and binding upon the corporate Defendants, each of whom, upon information and belief, regularly employs more than five individuals.  Government Code §12940(n) requires employers to "engage in a timely, good faith, interactive process with [a]n employee or applicant to determine effective, reasonable

12

COMPLAINT

EXHIBIT      2
PAGE      88

accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

46.    Employers are required by California law to initiate the interactive process once they are on notice that an accommodation may be needed.  2 C.C.R. §7294(b).  An employer is on notice when an employee with a known physical disability requests a reasonable accommodation, or when the employer becomes aware of the need for accommodation through a third-party or by observation.

47.    Plaintiff's high risk pregnancy was a disability within the meaning of California Government Code §12926(l) in that it limited her ability to engage in a major life activity, working, and affected several of her body systems, including but not limited to her reproductive, cardiovascular, immunological, and endocrine systems.  Cal Gov. Code §§12926(l)(1)(A) & (B)(iii).

48.    Plaintiff's disability became known to Defendant Compston when Plaintiff informed him in August of 2012 that she was pregnant and had a history of pre-term delivery, and presented him with her doctor's note stating she should not lift more than fifteen pounds. Plaintiff requested a reasonable accommodation, triggering Defendants' duty to engage in the interactive process, through her doctor's note detailing her medical restrictions.

49.    Once on notice, Defendants were required to grant any accommodation requested by Plaintiff, or reject it after due consideration and initiate discussion with her regarding alternative accommodations.  2 C.C. R. §7294(c)(1).  The employer's duty to engage in the interactive process includes analyzing the particular job involved and the essential functions of the job, and, in consultation with the employee, identifying potential accommodations and assessing them with respect to their effectiveness in permitting the employee to perform the essential functions of the job or to enjoy equivalent benefits and privileges of employment compared to non-disabled employees. 2 C.C. R. §§7294(c)(5) & (7).

///

13

COMPLAINT

EXHIBIT___2
PAGE___89

50.     Defendants did not grant Plaintiff's request for a reasonable accommodation, nor did they identify and evaluate alternative accommodations or discuss those alternatives with Plaintiff. Instead, they simply ignored Plaintiff's request and behaved as though her disability did not exist. Plaintiff verbally requested accommodation on multiple later occasions, submitted two more doctor's notes, and requested that Mr. Compston transfer her to a less strenuous position. Mr. Compston refused to temporarily transfer Plaintiff and refused to engage in any discussion of other possible accommodations.

51.     Plaintiff satisfied her obligations with respect to the interactive process by providing reasonable medical documentation on three occasions, in the form of doctor's notes and a Proof of Pregnancy letter. 2 C.C.R. §7294(d).

52.     Defendants' failure to engage in a timely, good faith, interactive process with Plaintiff after being placed on notice of the need for a reasonable accommodation is an unlawful employment practice in violation of the FEHA. Cal. Gov. Code §12940(n).

53.     The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

54.     As a direct result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

55.     The conduct of Defendants and their agents and employees, as described herein, was malicious and/or oppressive and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff resulting from Defendants' actions. Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against Defendants.

///

///

14

COMPLAINT

EXHIBIT____2
PAGE____90

## SECOND CAUSE OF ACTION

**Failure to Provide Reasonable Accommodation**
**(California Government Code §12940(m);**
**Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

56.   Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57.   California Government Code §12940(m) makes it an unlawful employment practice for an employer to fail to make a reasonable accommodation for the known physical or mental disability of an employee.  Employers must make reasonable accommodations for disabilities of employees unless they engage in the interactive process and demonstrate that accommodation would impose an undue hardship.  2 C.C.R §7293.9(a).

58.   Plaintiff made several requests for reasonable accommodation, beginning in August of 2012, when she informed Mr. Compston of her disability, presented him with a doctor's note stating her medical restrictions, and requested that he temporarily transfer her to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk.

59.   Mr. Compston denied all of Plaintiff's requests for reasonable accommodation, instead transferring her only assistant to the night shift and increasing her workload.

60.   Mr. Compston and Defendant Mosely forced Plaintiff to continue to perform duties which violated her medical restrictions as set forth by her doctor, including heavy lifting, pushing, and climbing ladders.

61.   The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

62.   As a direct and proximate result of Defendants' acts and failures to act, as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

63.   The conduct of the Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful ad conscious disregard for

15

COMPLAINT

EXHIBIT___2
PAGE___91

1   Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.

2   Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful

3   conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against

4   Defendants.

5   ### THIRD CAUSE OF ACTION

6   **Violation of FEHA Provisions Relating to Pregnancy**
**(California Government Code §12945;**

7   **Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

8

9       64.     Plaintiff restates and incorporates by reference each and every allegation

contained in the foregoing paragraphs as though fully set forth herein.

10

11      65.     California Government Code §12945(3)(A) provides that it is an unlawful

12  employment practice to refuse to provide a reasonable accommodation for a "condition related to

pregnancy, childbirth, or a related medical condition" if the employee requests an

13  accommodation with the advice of her health care provider.

14

15      66.     A "condition related to pregnancy, childbirth or related medical condition" means

16  "a physical or mental condition intrinsic to pregnancy or childbirth." 2 C.C.R. §7291(d).

Plaintiff's high-risk pregnancy was a condition intrinsic to pregnancy, and is a condition related

17  to pregnancy within the meaning of Government Code §12945(3)(A).

18

19      67.     Plaintiff obtained prenatal care from her health care provider, a licensed doctor,

beginning in July 2012, when she learned that she was pregnant.  Plaintiff informed her doctor

20  that she had previously delivered a baby a six months' gestation, and described the nature of her

21  job responsibilities to her doctor.  Plaintiff's doctor advised her that she should not, among other

22  things, lift more than fifteen pounds or climb ladders or push, and that she should avoid

23  prolonged standing and excessive bending, reaching, and balancing.

24

25

26

27

16

COMPLAINT

EXHIBIT____2
PAGE____92

68.    Plaintiff presented medical notes from her doctor to Mr. Compston stating her pregnancy-related medical restrictions on three occasions, beginning in August 2012, all of which Mr. Compston ignored.

69.    Plaintiff requested reasonable accommodations repeatedly beginning in August of 2012, but Mr. Compston refused to provide a reasonable accommodation in violation of Government Code §12945(3)(A).

70.    California Government Code §12945(3)(B) provides that it is an unlawful employment practice "[f]or an employer who has a policy, practice, or collective bargaining agreement requiring or authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability to refuse to transfer a pregnant female employee who so requests."

71.    Upon information and belief, the Atascadero Albertson's had a policy, practice, or collective bargaining agreement authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability.

72.    Plaintiff requested a temporary transfer to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk when she submitted her first doctor's note to Mr. Compstion, and begged him to transfer her to any less strenuous or hazardous position after submitting her third doctor's note. Despite the fact that numerous less strenuous or hazardous positions exist at the Atascadero Albertson's, including various positions at the Customer Service Desk, the Front Service Deli, the Meat Counter, or Starbucks, Mr. Compston refused to temporarily transfer Plaintiff to a less strenuous or hazardous position in violation of Government Code §12945(3)(B).

73.    Without regard to the existence or nonexistence of a policy or practice of temporarily transferring temporarily disabled employees to less strenuous or hazardous positions for the duration of their disabilities, California Government Code §12945(3)(C) provides that it is an unlawful employment practice "[f]or an employer to refuse to temporarily transfer a

17

COMPLAINT

EXHIBIT_____2
PAGE_____93

1   pregnant female employee to a less strenuous or hazardous position for the duration of her

2   pregnancy if she so requests, with the advice of her doctor, where that transfer can be reasonably

3   accommodated."

4       74.    Plaintiff submitted three doctor's notes and requested that Defendant

5   accommodate her medical restrictions by transferring her temporarily to a less strenuous or

6   hazardous position.

7       75.    Upon information and belief, Defendants could have reasonably accommodated

8   Plaintiff's temporary transfer for the duration of her pregnancy to a less strenuous or hazardous

9   position. Instead, Defendants refused to grant Plaintiff a temporary transfer in violation of

10   California Government Code §12945(3)(C) .

11       76.    Defendants' refusal of Plaintiff's request for a temporary transfer to a less

12   strenuous or hazardous position for the duration of her pregnancy violated California

13   Government Code §12945(3)(C).

14       77.    The unlawful conduct of Defendants as alleged above was a substantial factor in

15   causing damage and/or injury to Plaintiff.

16       78.    As a direct and proximate result of Defendants' acts and failures to act as alleged

17   herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical

18   ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

19       79.    The conduct of Defendants, and their agents and employees as described herein,

20   was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's

21   rights and for the deleterious consequences to Plaintiff of Defendants' actions. Defendants, and

22   their agents and employees, authorized, condoned, and ratified the unlawful conduct of each

23   other. Consequently, Plaintiff is entitled to punitive damages against Defendants.

24   ///

25   ///

26   ///

27

18

COMPLAINT

## FOURTH CAUSE OF ACTION

Violation of FEHA Retaliation Provision
(California Government Code § 12940(h);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

80.   Plaintiff restates and incorporates by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

81.   California Government Code § 12940(h) provides that it is an unlawful employment practice to discriminate against any person because the person has opposed any practices forbidden by FEHA.

82.   Plaintiff opposed Defendants' violations of §§12940(m) and (n) and 12945(3) by repeatedly requesting reasonable accommodation for her temporary disability, a high-risk pregnancy, and by attempting to engage Defendants in the interactive process.

83.   Defendants retaliated against Plaintiff by increasing her workload, reassigning her only assistant to the night shift, removing her supervisorial and merchandise ordering responsibilities after she returned from leave after her baby's death, and issuing her a baseless write-up shortly after her return to work.  The unlawful conduct of Defendant as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

84.   As a direct and proximate result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

85.   The conduct of Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

19

COMPLAINT

EXHIBIT____2
PAGE____95

### FIFTH CAUSE OF ACTION
#### Negligent Infliction of Emotional Distress
(California Common Law;
Brought by Plaintiff against All Defendants)

86.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

87.    Defendants Compston and Mosley had and continue to have a duty of reasonable care with respect to Plaintiff.

88.    Mr. Compston breached his duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) denying Plaintiff's request to go home, and forcing her to engage in heavy lifting, on or about November 12, 2012, despite being aware of Plaintiff's medical restrictions and that those restrictions were due to a high-risk pregnancy, and despite being told by Plaintiff that she was exhausted and experiencing tremendous pelvic pressure.

89.    Defendant Mosley breached her duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not

20

COMPLAINT

EXHIBIT ___ 2
PAGE ___ 96

1   limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for
2   the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby
3   forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise
4   by herself during the day, despite knowing that Plaintiff was medically restricted from lifting
5   more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she
6   was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb
7   ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing
8   Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite
9   knowing that Plaintiff was medically restricted from those activities, and (g) requiring Plaintiff to
10   stock the Liquor Department, which required heavy lifting, on a least two occasions after
11   Plaintiff's submission of her second doctor's note stating she could not lift more than fifteen
12   pounds or climb ladders.

13   90.   Defendants Compston and Mosley were acting in the scope of their employment
14   when they breached their duties of care to Plaintiff as described herein, rendering Defendants
15   New Albertson's, Inc. and SuperValu, Inc. vicariously liable for their negligence.

16   91.   As a direct and proximate result of Defendants' breaches of their duty of care to
17   Plaintiff, Plaintiff has suffered and continues to suffer economic loss and damages, physical
18   ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

19   92.   The injuries to Plaintiff proximately caused by Defendants' breaches of their duty
20   of care to Plaintiff, including emotional distress, were reasonably foreseeable.

21   93.   The conduct of Defendants, and their agents and employees as described herein,
22   was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's
23   rights and for the deleterious consequences to Plaintiff of Defendants' actions. Defendants, and
24   their agents and employees, authorized, condoned, and ratified the unlawful conduct of each
25   other. Consequently, Plaintiff is entitled to punitive damages against Defendants.

26
27

21

COMPLAINT

EXHIBIT____2
PAGE____97

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1. For compensatory damages, general damages, and special damages according to proof;

2. For an interest, including pre-judgment interest, at the legal rate;

3. For punitive damages in an amount to be proven at trial for all causes of action in which such damages are recoverable;

4. For reasonable attorneys' fees pursuant to Government Code §12965, subdivision (b), California Code of Civil Procedure §1021.5, and all other applicable statutes;

5. For costs of suit incurred herein; and

6. For such other and further relieve as this court may deem just and proper.

Dated: June 26, 2013

Respectfully submitted,

BALTODANO & BALTODANO LLP

TRABER & VOORHEES

By: _Erica F. Baltodano_
Erica Flores Baltadano
Attorneys for Plaintiff Reyna García

22

COMPLAINT

EXHIBIT    2
PAGE    98

Exhibit A

EXHIBIT____2
PAGE____99



STATE OF CALIFORNIA | State and Consumer Services Agency                    GOVERNOR EDMUND G. BROWN JR.
                                                                           DIRECTOR PHYLLIS W. CHENG
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 22, 2013

Traber & Voorhees
128 N. Fair Oaks Ave.
Pasadena, CA 91103

RE:  Notice to Complainant's Attorney
     DFEH Matter Number: 110694-49003
     Right to Sue: Garcia / New Alnertson's, Inc.

Dear Attorney:

Attached is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your client's Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.

Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT____2
PAGE___100



STATE OF CALIFORNIA | State and Consumer Services Agency                               GOVERNOR EDMUND G. BROWN JR.
                                                                                        DIRECTOR PHYLLIS W. CHENG
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Apr 22, 2013

Reyna Garcia
7115 Santa Isabel Ave., #B
Atascadero, CA 93422

RE:  Notice of Case Closure and Right to Sue
      DFEH Matter Number: 110694-49003
      Right to Sue: Garcia / New Alnertson`s, Inc.

Dear Reyna Garcia:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Apr 22, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivion (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commsion (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc:  Paul Rowan Agent for Service for New Alnertson`s, Inc.
      Legal Department
      Charles Compston
      Lauren Mosley

EXHIBIT ___2
PAGE ___101



STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

April 22, 2013

RE:  Notice of Filing of Discrimination Complaint
     DFEH Matter Number: 110694-49003
     Right to Sue: Garcia / New Alnertson's, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government code section 12960. This constitutes service of the complaint pursuant to Government Code Section 12962. The complainant has requested an authorization to file a lawsuit. This completed is not being investigated by the DFEH and is being closed immmediately. A copy of the closing letter and Right to Sue notice is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

This letter is for informational purposes only. No response to DFEH is requested or required.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT____2
PAGE___102



STATE OF CALIFORNIA | Department of Fair Employment and Housing                    EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE
## CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

COMPLAINANT
Reyna Garcia

NAMED IS THE EMPLOYER, PERSON, AGENCY, ORGANIZATION OR GOVERNMENT ENTITY WHO DISCRIMINATED AGAINST ME

| RESPONDENT | ADDRESS | PHONE |
|---|---|---|
| New Alnertson's, Inc. Paul Rowan | Executive Vice President General Counsel 250 E. Parkcenter Blvd. Boise ID 83706 | |

| AGENT FOR SERVICE | ADDRESS | PHONE |
|---|---|---|
| CT Corporation System | 818 West Seventh St.  Los Angeles CA 90017 | |

| NO. OF EMPLOYEES | MOST RECENT DISCRIMINATION TOOK PLACE | TYPE OF EMPLOYER |
|---|---|---|
| 0 | Apr 22, 2013 | Private Employer |

| CO-RESPONDENT(S) | ADDRESS |
|---|---|
| Legal Department SUPERVALU INC. | P.O. Box 20  Boise  ID 83726 |
| Charles Compston New Albertson's Inc./SUPERVALUE INC. | 8200 El Camino Real  Atascadero  CA 93422 |
| Lauren Mosley New Albertson's Inc./SUPERVALU INC. | 8200 El Camino Real  Atascadero  CA 93422 |

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 1/3

EXHIBIT___2
PAGE__103



STATE OF CALIFORNIA | Department of Fair Employment and Housing                                                EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

| | |
|---|---|
| I ALLEGE THAT I EXPERIENCED | Discrimination, Retaliation |
| ON OR BEFORE | Apr 22, 2013 |
| BECAUSE OF MY | Disability, Engagement in Protected Activity, Family Care or Medical Leave, Medical Condition - including Cancer, Sex- Gender, Sex - Pregnancy |
| AS A RESULT, I WAS | Demoted, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied family care or medical leave, Denied pregnancy leave, Denied reasonable accommodation, Denied reinstatement |

STATEMENT OF FACTS

Reyna Galan García is an employee at an Albertson's store located at 8200 El Camino Real in Atascadero, California. Ms. García's employer failed to accommodate her pregnancy-related disabilities, which caused her to go into labor when she was twenty weeks pregnant and give birth to a baby girl who died approximately 10 minutes later. Albertson's also stripped Ms. García of her managerial job duties when she returned from leave after her baby's death, and has now started disciplining her without cause. On the basis of these actions, which are detailed below, Ms. García alleges that Albertson's has violated the California Fair Employment by discriminating against her based on sex, discriminating against her based on disability, failing to engage in an interactive process, failing to provide reasonable accommodations to Ms. García during her pregnancy, and retaliating against Ms. García for taking pregnancy disability leave. The following statement of facts details the facts and circumstances out of which this DFEH charge arises. A. Reyna García's Employment with Albertson's Ms. García began working at Albertson's in Paso Robles, California in November 2007 as a customer service clerk. A representative from Albertson's corporate office praised Ms. García's job performance and encouraged her to apply for a management position, which she did. Because of her excellent work performance, Albertson's promoted Ms. García to General Merchandise Manager in about November or December 2009, and Ms. García transferred to the Albertson's store in Atascadero. Ms. García's job duties as a General Merchandise Manager included all the duties of a regular store clerk, plus supervising other clerks, ordering merchandise, stocking store shelves, stocking merchandise above freezers using a ladder, and covering the Customer Service Front Desk as needed. The job is extremely physically demanding. Ms. García is required to pull and push heavy pallets stacked with blue totes of merchandise that must be stocked and to lift heavy crates of merchandise on and off pallets. The pallets that must be pushed and pulled on a "6-wheeler" are comprised of several totes each weighing between 20 and 50 pounds. The totes are stacked high, requiring Ms. García to frequently stretch up over her head and to bend over. Certain loads, such as those containing boxes of shampoo, charcoal, cat litter, and firewood are particularly heavy, requiring Ms. García to lift while kneeling on her knees in a forward motion. The physical demands of the job are especially pronounced before major holidays when seasonal displays must be built and shipments of seasonal merchandise must be unloaded and stocked. Ms. García initially had help from an assistant General Merchandise Clerk but, as detailed below, management transferred him to the night shift while she was pregnant. Ms. García is an hourly employee who makes $15.32/hour and is eligible for quarterly discretionary bonuses, which she has earned at least three times during her employment with Albertson's based on store profits and meeting store goals. B. Management Ignores Ms. García's First Request for a Pregnancy-Related Accommodation In about July 2012, Ms. García became pregnant and began receiving prenatal care from an obstetrician. Her obstetrician grew concerned with the physical demands of Ms. García's job at Albertson's and the implications for Ms. García's pregnancy, particularly in light of Ms. García's previous history of delivering a baby prematurely at 6 months' gestation. On about August 9, 2012, Ms. García's obstetrician provided her with a note restricting her from lifting more than 15 pounds. Ms. García presented the note to Store Director Charles "Marty" Compston and informed him that she needed an accommodation to do her job, and that she had a past history of pre-term delivery. Mr. Compston and Assistant Store Director Lauren Mosley ignored Ms. García's request for an accommodation and instead increased her work load. Upon receiving Ms. García's medical note in his private office, Mr. Compston said, "I thought you said nothing was

EXHIBIT____2
PAGE___104

going to change?" Thereafter, Mr. Compston and Ms. Mosley reassigned Ms. Garcia's assistant General Merchandise Clerk to a night shift position, which meant that for at least a week, Ms. Garcia had to do all of the heavy pushing, pulling, and lifting alone. Albertson's hired a new General Merchandise Clerk, Samantha Brazil, but she quit after a short time because the position was too strenuous. While Ms. Brazil was working with Ms. Garcia, she took several days off, so Ms. Garcia was frequently left alone again, without an assistant to help with the extreme physical demands of the job. After Ms. Brazil quit, Ms. Garcia went without an assistant for another 2 weeks. C. Management Ignores Ms. Garcia's Second Request for An Accommodation As a result of the heavy pushing, pulling, and lifting, Ms. Garcia began to experience serious discomfort related to her pregnancy. A regular part of her job was using a ladder, lifting while on a ladder, and stretching high above her head to stock merchandise on top of freezers. Since she also frequently used to cover the Customer Service Front Desk, she often had to climb on and off the ladder to go between her stocking and Customer Service duties. When Ms. Garcia informed her doctor's office that her supervisor, Mr. Compston, continued to require her to engage in strenuous physical activity, including climbing ladders, her doctor issued a second medical note, again restricting her ability to lift heavy items and stating that she could not climb ladders. In case there was any confusion or misunderstanding, the doctor's office also issued a Proof of Pregnancy letter for Ms. Garcia to provide to her employer, confirming that Ms. Garcia was pregnant with an estimated due date of April 3, 2013. When Ms. Garcia presented the second medical note and Proof of Pregnancy to Mr. Compston in his office, he once again did nothing. Rather than engage in any kind of conversation about possible accommodations, Mr. Compston rolled his eyes each time Ms. Garcia protested that she was unable to perform a specific job responsibility. Because Ms. Garcia is a hard-working employee and she did not want to be fired, she continued to handle all aspects of her job during her pregnancy, including pulling and pushing heavy pallets, lifting heavy totes, and climbing ladders, because that is what her job required. On at least two occasions, Ms. Mosely asked Ms. Garcia to stock the liquor department, a particularly demanding request because of the weight involved in pushing and pulling pallets of liquor bottles and lifting cases of liquor off pallets for stocking. Nevertheless, Ms. Garcia dutifully did what she was told. Ms. Garcia had additional meetings with management in an attempt to receive an accommodation, and specifically suggested to Mr. Compston and Ms. Mosley various accommodations that could be made to address her and her doctor's concerns, but she was ignored. For example, Ms. Garcia suggested she could switch roles with the store clerk who cuts fruit for fruit platters all day. Ms. Garcia felt she could have reasonably been accommodated by being temporarily moved to a Pharmacy Technician position, the Customer Service Desk [especially because she frequently covered this position during the day anyway], the Front Service Deli, Meat Counter, or Starbucks. Ms. Garcia would have also willingly accepted a temporary position at another store in Paso Robles, Morro Bay, or San Luis Obispo, if one had been offered to her. Any of these accommodations would have been reasonable without creating an "undue hardship" for Albertson's because accommodations for pregnancy-related disabilities are relatively short in duration, and other disabled employees have received similar accommodations. D. Management Ignores Ms. Garcia's Third Request for An Accommodation Management's failure to accommodate Ms. Garcia's pregnancy-related disability caused her to suffer pain, discomfort, anxiety, and extreme exhaustion. On about October 24, 2012, Ms. Garcia's doctor issued a third note severely limiting Ms. Garcia's workplace duties on account of ongoing "work stress" and the fact that "no accommodations [are] being made for her preg[nancy]." The medical records noted that Ms. Garcia would need to be placed on disability pregnancy leave if the employer continued to refuse to make accommodations. This time, when Ms. Garcia presented the third medical note to Mr. Compston upon returning to work that same day, she did so at the front of the store in direct view of the overhead security camera. Once again, Mr. Compston refused Ms. Garcia's request for an accommodation, and refused to engage in an interactive discussion with Ms. Garcia about her pregnancy-related disability. E. Ms. Garcia Goes Into Premature Labor and Delivers Baby Girl Jade, Who Dies the Same Day Shortly after Mr. Compston ignored her third request for accommodation, Ms. Garcia began to feel very ill at work. By this time, approximately early November 2012, several of Ms. Garcia's co-workers began to comment that Ms. Garcia did not look well, and that she should slow down. But because she had no other choice, Ms. Garcia kept working. One employee specifically recalls seeing Ms. Garcia awkwardly climbing with her pregnant belly to load toys onto the seasonal holiday display. The employee said to Ms. Garcia in Mr. Compston's presence "you shouldn't be lifting while you're pregnant." On about November 11, 2012, Ms. Garcia felt extremely ill and began experiencing tremendous pelvic pressure. A co-worker urged Ms. Garcia to leave and, out of desperation, Ms. Garcia did eventually leave work without seeking permission because she was certain permission would be denied. She went home, tried to rest, woke in sweats, and continued to feel exhausted. The next day, Ms. Garcia returned to work and explained her condition to Mr. Compston and asked for permission to go home early. Mr. Compston denied her request, saying that the store was expecting a visit from representatives of Albertson's corporate office. Mr. Compston always got very stressed out when corporate visited. Ms. Garcia ended up working overtime that day and she spent a great deal of the day pulling and pushing pallets and handling her regular heavy lifting responsibilities. When she returned home on November 12, 2012, Ms. Garcia's amniotic sac began to bulge from between her legs. She was rushed to the emergency room where the on-call doctor from Ms. Garcia's OB/GYN's practice met her. Eventually, Ms. Garcia's water broke. At around 20-weeks gestation, the doctor initially thought that it might be possible for Ms. Garcia's body to rebuild the amniotic sac. She remained hospitalized and was able to keep her baby alive for 3 days. On November 15, 2012, the doctor said that if her body was going to rebuild the water sac, it would have done so by now. The amniotic sac was not repaired and the baby was now losing critical fluids. Ms. Garcia could

EXHIBIT _____ 2
PAGE _____ 105

feel a scratching sensation caused by the baby's finger and toe nails scratching her insides with hardly any fluid surrounding it. The baby was certainly brain damaged at this point, and Ms. García's doctor said it was time to let her go. On November 17, 2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived for no more than 10 minutes before dying. F. Retaliation against Ms. García Following Pregnancy Disability Leave After the delivery and death of her baby, Ms. García took about 6 weeks off from work. A nurse practitioner at her doctor's office suggested she take an additional month on account of her mental state after the delivery, but Ms. García insisted on returning to work because she couldn't afford to be without a pay check. When Ms. García returned to work on January 2, 2013, her department had been reconfigured and her job duties were different. Ms. García no longer had any ordering or supervisory responsibilities. When she met with management to find out why her job had been changed, but the responsibilities of other managers had not changed, she was not given a direct answer. In fact, Mr. Compston told Ms. García that she should be happy that some of her work duties had been reduced, to which Ms. García's exclaimed "I lost my baby for this job! Why didn't you give me the help when I was pregnant and asked for it?" In addition to stripping her job duties, management has recently started disciplining Ms. García without cause. On or around March 17, 2013, Ms. Mosley [in Mr. Compston's presence], issued Ms. García a write-up because her department was not properly "faced," meaning that items were not facing the right way , or properly marked by signage, on the shelves. Ms. Mosely issued the write-up to Ms. García on the day that Ms. García returned from two days of time-off that Mr. Compston had pre-approved. There was simply no basis to discipline Ms. García for an issue that arose when she was not even present in the store, and, given the timing, it appears that management is retaliating against Ms. García for having exercised her rights under the law.

DATE FILED   Apr 22, 2013                                                            REVISED APRIL 2013
MODIFIED     Apr 22, 2013                                                                        PAGE 2/3

EXHIBIT____2
PAGE___106



STATE OF CALIFORNIA | Department of Fair Employment and Housing                                      EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE
## CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

SIGNED UNDER PENALTY OF PERJURY

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing
provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of
Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I
understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint
once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that,
to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated
on my information and belief, and I declare that those matters I believe to be true.

Verified by Rebecca Peterson-Fisher   and dated on April 22, 2013 at Atascadero, CA.

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 3/3

EXHIBIT____2
PAGE___107

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| BALTODANO & BALTODANO LLP<br>Erica Flores Baltodano (SBN 222331)<br>Hernaldo J. Baltodano (SBN 222286)<br>1411 Marsh Street, Suite 102, San Luis Obispo, California 93401<br>TELEPHONE NO.: (805) 322-3412    FAX NO.: (805) 322-3413<br>ATTORNEY FOR *(Name):* Plaintiff Reyna Garcia | **FILED**<br>JUN 26 2013<br>SAN LUIS OBISPO SUPERIOR COURT<br>BY<br>M. Zepeda, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Luis Obispo
STREET ADDRESS: 1035 Palm Street, Room 385
MAILING ADDRESS: 1035 Palm Street, Room 385
CITY AND ZIP CODE: San Luis Obispo, CA. 93408
BRANCH NAME: San Luis Obispo

CASE NAME:
Reyna Garcia v. New Albertson's, Inc., SuperValu, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CV 130309 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* Five
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 26, 2013
Hernaldo J. Baltodano
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT___2
PAGE___108

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

EXHIBIT____2
PAGE___109

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | |
|---|---|---|
| REYNA GARCIA | | CASE NUMBER |
| | Plaintiff(s), | CV138157 |
| VS. | | |
| NEW ALBERTSON'S INC | | **Case Management Conference** |
| | Defendant(s). | |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo      CA  93401

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Jac Crawford, Paso Robles Br.** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed. **Defendants shall file responsive pleadings within 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1.  The parties must appear for a first Case Management Conference on:
    **October 30, 2013 at 9:00 am in Paso Robles Branch - Dept. 2**
    *THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE* ***
    For information about telephone appearances call COURTCALL at (888) 882-6878

2.  Each party must file & serve a Case Management Statement <u>at least 15 days</u> before the conference.
3.  The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4.  Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear showing of good cause.
5.  All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6.  <u>Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.</u>
***LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.

encs.3

EXHIBIT___2
PAGE___110

FILED

JUN 27 2013

SAN LUIS OBISPO SUPERIOR COURT
BY: _____
M. Landrum, Deputy Clerk

1   TRABER & VOORHEES
    Lauren Teukolsky [SBN 211381]
2   lt@tvlegal.com
    Rebecca Peterson-Fisher [SBN 255359]
3   rpf@tvlegal.com
    128 North Fair Oaks Avenue
4   Pasadena, California 91103
    Tel. (626) 585-9611
5   Fax (626) 585-1400

6   BALTODANO & BALTODANO LLP
    Hernaldo J. Baltodano [SBN 222286]
7   hjb@bbemploymentlaw.com
    Erica Flores Baltodano [SBN 222331]
8   efb@bbemploymentlaw.com
    1411 Marsh Street, Suite 102
9   San Luis Obispo, California 93401
    Tel. (805) 322-3412
10  Fax (805) 322-3413

11  Attorneys for Plaintiff
    REYNA GARCIA
12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                     COUNTY OF SAN LUIS OBISPO

15

16  REYNA GARCIA,                    CASE NO. CV138157

17              Plaintiff,           Assigned to the Honorable Jac Crawford

18        v.                         PLAINTIFF REYNA GARCIA'S
                                     DECLARATION OF PREJUDICE UNDER
19                                   SECTION 170.6 OF THE CODE OF CIVIL
                                     PROCEDURE
20  NEW ALBERTSON'S, INC.; SUPERVALU,   (PEREMPTORY CHALLENGE)
    INC.; CHARLES COMPSTON, an
21  individual; LAUREN MOSLEY, an
    individual; and DOES 5-10, inclusive,
22

23              Defendants.

24

25  ///

26  ///

27

28                                 1

        DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT___2
PAGE___111

1   I, Reyna García, declare the following:

2      1.  I am a party to the within action hereinafter called *Reyna Garcia v. New Albertson's,*

3          *Inc. et al.* (Case No. CV130309).

4      2.  The Honorable Jac Crawford, the Judge before whom the trial of the action is pending,

5          is prejudiced against the Plaintiff or the interest of the Plaintiff so that Declarant

6          cannot, or believes that she cannot, have a fair and impartial trial or hearing before such

7          Judge.

8      3.  I declare under penalty of perjury that the foregoing is true and correct.

10  Dated: June ___, 2013

                                       Reyna García

2

DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT___2
PAGE___112

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

*Civil Division*

*CERTIFICATE OF MAILING*

| | |
|---|---|
| REYNA GARCIA<br><br>VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

Baltodano, Hernaldo J
*Attorney for Plaintiff*
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo       CA 93401

Teukolsky, Lauren
*Attorney for Plaintiff*
TRABER & VOORHEES
128 North Fair Oaks Avenue
Pasadena              CA 91103

\*
*Attached Pleading:*
Notice of Reassignment and Resetting

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

SUSAN MATHERLY, Court Executive Officer

by _____ , Deputy     Dated: JUN 2 3 2013 _____

EXHIBIT____2
PAGE___113

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
*Civil Division*

*MINUTES*

| | |
|---|---|
| REYNA GARCIA<br><br>VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

Date: **06/27/13**          Time:                    Room:
Judge: Hon. Martin J. Tangeman
Event Type: *Miscellaneous Minute Order(MISCMO)*

Clerk:  Kim Martin

Judge Crawford having been timely disqualified, the
above entitled action is hereby reassigned for all
purposes to Judge Tangeman.

The Case Management Conference of October 30, 2013 is
unset and reset for October 31, 3013 at 9:00 in
Department 1.

Plaintiff to give notice.

PAGE:    1                                        06/27/13  16:50:32

EXHIBIT____2
PAGE___114

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| REYNA GARCIA | | CASE NUMBER |
|---|---|---|
| VS.      Plaintiff(s), | | CV130309 |
| NEW ALBERTSON'S INC | | **Case Management Conference** |
| Defendant(s). | | |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo    CA   93401

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Martin J. Tangeman** for all purposes.
Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the
judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed.
**Defendants shall file responsive pleadings within 30 days of service**
unless the parties stipulate to an extension of not more than 15 days.
IT IS HEREBY ORDERED:
1. The parties must appear for a first Case Management Conference on:
**October 31, 2013  at  9:00 am  in Department 1**
*THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
For information about telephone appearances call COURTCALL at (888) 882-6878

2. Each party must file & serve a Case Management Statement at least 15 days before the conference.
3. The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss
   suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4. Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules,
   reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear
   showing of good cause.
5. All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6. Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.
***LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00
and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.
encs.3

EXHIBIT___2
PAGE___115

**SUPERIOR COURT, STATE OF CALIFORNIA**
**COUNTY OF SAN LUIS OBISPO**
Department 1

STANDING CASE MANAGEMENT ORDER
FOR CASES ASSIGNED TO THE HON. MARTIN J. TANGEMAN

---

**INSTRUCTIONS TO PLAINTIFF(S)/CROSS-COMPLAINANT(S):**

**YOU shall serve a copy of this Standing Case Management Order on all Defendants/Cross-Defendants at the same time the complaint/cross-complaint is served.**

---

**I.    GENERAL MATTERS**

A.    It is the Court's policy to provide a dignified forum in which to resolve disputes in a peaceful, professional, legally correct and expeditious manner.  All of the following rules are designed to achieve these goals.  It is not the Court's intention to prohibit a party from raising any issue by any means allowed by Rule of Court, Code or statute.  If any of the rules or procedures discussed herein creates a problem, counsel should raise the matter with the Court at the earliest opportunity.

B.    Electronic communication with the courtroom clerk is permissible for routine communications having to do with scheduling, stipulated continuances, and/or joint requests.  Substantive arguments are not permitted unless approved by the Court.  In any correspondence with the clerk, opposing counsel should be copied in order to avoid ex-parte communications.  The clerk's email address is Erin.Brown@slo.courts.ca.gov.

C.    Counsel shall turn off all audible telephones and pagers and instruct their clients and witnesses to do so.  Communication devices worn on the head are not permitted in the courtroom.

**II.    CASE MANAGEMENT CONFERENCES ("CMC")**

A.    Unless otherwise specifically ordered, CMC Statements are required.  The Court expects that counsel will be prepared to discuss the current status of the case, discovery, amenability to mediation, and any unusual factual, legal or evidentiary issues that may need resolution.  Counsel who fail to appear will typically be set for an OSC hearing why sanctions should not be issued.  The initial amount is ordinarily $150.00.

B.    Early mediation is strongly encouraged.  Good faith participation in mediation will ordinarily excuse participation in a Mandatory Settlement Conference.  The Court will typically sign an order to mediate at an early CMC.

C.    It is the Court's policy to resolve discovery disputes informally and efficiently.  Accordingly, the Court has instituted special procedures for the resolution of discovery disputes through Pretrial Discovery Conferences, which can be scheduled on forms that are available from the clerk's office (see section IV.C, below).

**III.    MEDIATION**

A.    The parties are strongly encouraged to engage in early, meaningful mediation.  Mediation will ordinarily take place within 90-120 days of all parties' appearance, but a longer time may be allowed.  Either private or judicial mediation is acceptable.

B.    Parties who select private mediation should comply with the mediator's instructions regarding briefing and payment of fees, which ordinarily should be divided equally.

---

EXHIBIT___2
PAGE__116

C.     A worthwhile mediation process means that parties, attorneys and any other person whose consent or authority is required to achieve a final disposition of the dispute shall be present, as well as a representative of any insurer who has authority to settle the case for any amount up to the limits of the policy.

D.     Plaintiff should file a one-page Notice of Mediation with the clerk's office notifying the Court of the date of the mediation and name of the mediator.

## IV.     LAW AND MOTION MATTERS

A.     To the extent practicable, the Court will post tentative rulings on law and motion matters on the Court's website no later than the evening before the hearing.  The Court's website is located at www.slocourts.net.

B.     When parties agree to submit the matter based on a tentative ruling, or to have a matter taken off calendar, counsel should promptly notify both the courtroom clerk and the research attorneys via e-mail or by phone.  This is important in order to avoid unnecessary commitment of judicial resources to moot matters.  The contact information for the research attorneys is SloCourtAttorneys@slo.courts.ca.gov .

C.     Resolution of Discovery Disputes

1.     The parties may stipulate to proceeding with an informal Pretrial Discovery Conference in lieu of filing and serving discovery motions under Sections 2016.010 through 2036.050.  In that event, the parties shall proceed as follows:

a.     All parties to the discovery dispute shall sign a written stipulation electing to resolve the specified discovery dispute(s) between them according to the procedure outlined in this section IV.C.  In such event, the parties stipulate to waive their right to proceed with regularly noticed motions and stipulate that the Court can issue binding discovery orders as a full and final resolution of such dispute(s).

b.     Any request for a Pretrial Discovery Conference must be filed with the clerk's office on the approved form (which is available online or can be requested from the clerk), must include a brief summary of the dispute, and must be served on opposing counsel in the same manner as the request is filed with the clerk.  Any opposition to a request for a Pretrial Discovery Conference must also be filed on an approved form (provided by the clerk), must include a brief summary of why the requested discovery should be denied, must be filed within two (2) business days of receipt of the request, and must be served on opposing counsel in the same manner as the opposition is filed with the clerk.

c.     No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.     The parties will be notified by minute order whether the request has been granted or denied and, if granted, the date and time of the Pretrial Discovery Conference.

e.     The Court will issue a binding order at the conclusion of the Pretrial Discovery Conference.

## V.     READINESS CONFERENCE

A.     These conferences are typically scheduled during the week before trial.  At these conferences, trial counsel should be *personally present*, and prepared to discuss at least the following topics:

1.     Estimated trial length. A jury trial will ordinarily be in session from Monday through Friday from 1:30 to 4:45 p.m., although trial days beginning at 10:00 a.m. are not uncommon.

2.     Number, timing and availability of witnesses, as well as any special witness needs, or the need to call witnesses out of order.

a.     Counsel have responsibility for arranging the appearance of all witnesses during their presentation of the case so as to eliminate delays.  Counsel should confer among themselves as to when witnesses will be needed *at least 24-48 hours in advance of a witness' testimony.*

EXHIBIT___2
PAGE__117

b.      Counsel are to inquire of their clients and witnesses to determine whether they are in need of any type of accommodation with an interpreter, under the Americans with Disabilities Act, or any other type of assistance.

3.      Numbering and exchange of exhibits.  The parties are encouraged to agree upon a reasonable exhibit numbering system.   Exhibits to be used in the case-in-chief should be pre-marked and exchanged *no later than the morning of trial and earlier if feasible.*  The use of exhibit books or binders is strongly encouraged

4.      Voir dire procedures, including mini-opening statements and preinstruction, and jury questionnaires. Counsel should attempt to agree upon a brief neutral statement of the case to be read to the prospective jury panel.

5.      Jury instructions and verdict forms.

a.      Counsel are to deliver all proposed instructions, verdict forms and requests for special findings to the Court and to opposing counsel *no later than the morning of trial.*  Proposed instructions shall be complete in all respects without unfilled "blanks" or "bracketed" portions.

b.      Either before or shortly after trial starts, counsel are to meet and confer with the goal of reducing the amount of contested jury instructions and disagreement as to the form of the verdict.  Within two (2) court days after beginning trial, all counsel should notify the Court in writing as to which of the proposed instructions, and which sections of the verdict form, are acceptable to all parties, and which are disputed.

6.      Stipulations to reduce the length of trial.  Counsel should consult with each other regarding all possible stipulations and reduce them to writing.  In particular, counsel should consider waiving the necessity for authentication/foundational evidence regarding all trial exhibits, unless authentication is an important issue

7.      Motions in limine.  Prior to hearings on motions in limine, counsel should review *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669-677, and its progeny.  Counsel should advise their clients and witnesses about rulings on motions in limine that pertain to evidentiary issues.  Counsel will be held responsible for any violations of rulings on motions in limine.

## VI.   TRIAL

A.      The Court will typically hear organizational and scheduling matters, procedural issues and in limine motions at the beginning of trial, including any matters left over or continued from the Readiness Conference.

1.      Originals of all depositions to be used in the trial are to be lodged with the clerk at the beginning of trial. At the end of the trial, these depositions can be picked up from the clerk, or they can be returned by mail at the party's expense.

B.      Jury Selection Procedures

1.      Jury selection ordinarily begins at 1:30 p.m. the first day of trial.

2.      Mini opening statements of no more than 3 minutes per side are encouraged prior to jury selection.

3.      After the entire panel is screened for hardship, eighteen names are drawn at random, and voir dire is conducted.  Unless otherwise ordered, a time limit of thirty minutes per side for 18 prospective jurors will apply.

4.      Challenges for cause are exercised and ruled upon at sidebar. Upon request, counsel will be given the opportunity to make a record of any unreported sidebar conference once the jury is not present.

5.      At least two alternate jurors are typically selected.  If it becomes necessary to substitute an alternate juror, the first alternate chosen will be the first substitute.

6.      Trial Procedures

---

EXHIBIT___2
PAGE__118

a.     No charts, diagrams or other exhibits should be shown or read aloud to the jury unless by stipulation or after admission of the item into evidence.

b.     Counsel should provide hard copies of any power point presentations, audio or video recordings and the like to opposing counsel in advance of showing them to the jury

c.     If counsel will seek to introduce an audio recording (or audio portion of a video recording), please review California Rule of Court 2.1040.

d.     Marking documents out of files: Please review *Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 923-924.

e.     Any object that cannot be folded into 8½" x 11" such as models, blowups, etc. should be accompanied by either a photograph or a photocopy to be retained by the Court in lieu of the oversized exhibit.

f.     When objections are made, counsel should state only the legal basis, without speaking objections.

g.     Sidebar conferences are normally held off the record.  Counsel may make a record of any unreported sidebar conference at an appropriate opportunity in the proceedings.  During trial, if counsel wish to place matters on the record, he or she may so request and the Court will provide an opportunity to do so, ordinarily at the end of the trial day once the jury has been excused.

7.     Post-Trial Procedures

a.     After the verdict is rendered by the jury, the prevailing party is expected to prepare the judgment, which should be submitted on the next Court day following trial unless otherwise ordered.

b.     Counsel should make arrangements with the clerk to withdraw exhibits in cases that will not be appealed.  The clerk will hold the exhibits for sixty days after the filing of the notice of entry of judgment.  Any exhibits remaining after that time will be destroyed unless a notice of appeal is filed.

DATED:  November 13, 2012

_____
HON. MARTIN J. TANGEMAN
*Judge of the Superior Court*
*County of San Luis Obispo*

*w:\clerk\kim\MJTCMO.doc Rev 11/13/12*

EXHIBIT____2
PAGE___119

# SAN LUIS OBISPO COUNTY SUPERIOR COURT

*"The mission of the court is to resolve disputes in a fair, just and efficient manner and
to interpret and apply the law consistently, impartially and independently."*

## CIVIL CASE MANAGEMENT POLICY

All civil actions except those exempted by San Luis Obispo Court Rule 9.02 will be assigned to one judge for all purposes.  All cases subject to these rules will be managed in a manner that will meet the case-disposition goals of the Standards of Judicial Administration Sections 2.1 and 2.3.   Chapter 9 of the San Luis Obispo County Superior Court Rules describes the policies and procedures of the court for the management of litigated civil disputes.  Parties shall be familiar with the rules.

Plaintiff shall serve the documents listed below at the same time the complaint is served.  Plaintiff shall serve each of the defendants and file a proof of service within 60 days after the complaint is filed.  Documents that must be served with a copy of the complaint include:

1.   A copy of the Notice  of Case Management Conference;
2.   A copy of this Civil Case Management Policy statement;
3.   A copy of the Court's Alternative Dispute Resolution Policy Statement
4.   A blank Case Management Statement
5.   A blank Stipulation to Alternative Dispute Resolution.

The first Case Management Conference will be held approximately 150 days after the complaint is filed.  The clerk will enter the date of the conference on Notice of First Case Management Conference when the complaint is filed.  **The case will be assigned a trial date in the 12th month after the complaint is filed unless the circumstances and the interests of justice require a different trial date.**

**Please note:** Failure to comply with the court's case management rules and policies will result in the issuance of an OSC and the imposition of monetary and other sanctions.

### Alternative Dispute Resolution Policy

The San Luis Obispo Superior Court recognizes that civil litigation can be time consuming and expensive.  Delay rarely serves anyone's interests.  It often imposes intolerable social and economic burdens on the parties and the court.  It is the policy of the court to achieve a disposition of all litigation at the earliest date consistent with a fair and just resolution of the dispute.

Nearly all cases are resolved without trial.  Many settlements are achieved only after significant amounts of time and money have been spent on pre-trial procedures and investigation.  It is the goal of the San Luis Obispo County Superior Court to produce a fair and just settlement of the dispute early in the process.  To achieve this goal, it is the policy of the San Luis Obispo Superior Court to encourage the parties to pursue alternative methods of dispute resolution as early in the process as possible.  All cases will be assessed at the first Case Management Conference to determine which method of ADR is most likely to achieve an early resolution.

Alternative Dispute Resolution is more thoroughly explained in the form Alternative Dispute Resolution Policy Statement.  It is the obligation of counsel to review the alternatives to trial with their clients and to provide them with a copy of the form.

CVSC01
Rev 07/01/02
Mandatory

CIVIL CASE MANAGEMENT POLICY

SLO Rule 9.11.1

www.slocourts.net

EXHIBIT____2
PAGE___120

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:                    Time:                    Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐  Notice of Intent to Appear by Telephone,  by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*
      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐  have had a default entered against them *(specify names):*
   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in   ☐ complaint   ☐ cross-complaint   *(Describe, including causes of action):*

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Page 1 of 5 Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

EXHIBIT___2
PAGE___121

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.   b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial. ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐   The trial has been set for *(date):*
b.   ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐   days *(specify number):*
b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:                                f.   Fax number:
e.   E-mail address:                                   g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
   (1)   For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
   (2)   For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.
b.   **Referral to judicial arbitration or civil action mediation** (if available).
   (1)   ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
   (2)   ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   (3)   ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

EXHIBIT____2
PAGE___122

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form **are willing** to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case have **agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

EXHIBIT___2
PAGE__123

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

   ☐ Bankruptcy ☐ Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

   a. ☐ There are companion, underlying, or related cases.

      (1) Name of case:

      (2) Name of court:

      (3) Case number:

      (4) Status:

      ☐ Additional cases are described in Attachment 13a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

      Party             Description            Date

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

EXHIBIT____2
PAGE___124

CM-110

| | |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other Issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▷ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▷ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

EXHIBIT____2
PAGE___125

## ALTERNATIVE DISPUTE RESOLUTION POLICY STATEMENT

### WAYS TO RESOLVE YOUR DISPUTE WITHOUT A TRIAL
Presented by the San Luis Obispo County Superior Court

The mission of your Superior Court is to resolve civil disputes fairly and efficiently.  It is the court's policy to encourage persons involved in a lawsuit to consider methods other than a trial to resolve their disputes.

Did you know that 95% of all cases filed in court do not go to trial?  Most cases are settled or decided in some other way.  In fact, methods of settling disputes that do not require a trial have become the first choice of most businesses, government agencies and unions.  Agreements to mediate or arbitrate disputes are now commonly found in contracts covering employment, medical care, banking and insurance.

Alternative Dispute Resolution is a catch-all term that refers to the ways other than a trial that can be used to resolve the dispute you brought to the courthouse.  These options are typically less formal than trial and many provide opportunities to reach an agreement through a problem-solving approach rather than the adversarial approach of a trial.  ADR can save time, reduce costs and increase your overall satisfaction with the outcome.

### THE ADVANTAGES OF ADR

**Reduce Legal Costs**: Nearly all cases are resolved without a trial.  If a settlement is likely anyway, wouldn't it be better to save attorneys fees, court costs and experts fees by settling early?  In a recent survey, two thirds said they saved money by using ADR.

**Reduce The Time Spent on the Dispute**: A dispute can usually be decided or settled much sooner by using ADR. It is almost always less expensive.

**Increase Control Over the Result**: Some methods of ADR allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR methods permit the parties to entrust a decision about the dispute to an expert in a particular field instead of to a judge or a jury without the same experience or knowledge.  And in ADR, both the dispute and its resolution can remain confidential.

**Preserve Relationships**: ADR is generally a less adversarial and hostile forum for dispute resolution than a trial.  An experienced mediator or arbitrator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction**: In ADR, the parties usually have a better chance to tell their side of the story than they do in trial.  This increases the likelihood the case will settle as well as the parties= overall satisfaction with the outcome.

**Improve Attorney-Client Relationships**: Attorneys may benefit from ADR by being seen as problem-solvers instead of as aggressive advocates.  Quick, cost-effective results are likely to produce repeat and new business from clients and their friends and associates.

### WHAT ARE THE ADR OPTIONS?

#### MEDIATION

In mediation, an independent, neutral person called a mediator helps the parties reach a mutually acceptable resolution of their dispute.  The mediator does not decide the dispute but is trained to help the parties communicate so they can settle the dispute on terms they design themselves.

If mediation does not result in a settlement, the case is returned to court.  And if the case goes to trial, there are laws that protect the confidentiality of the things discussed during mediation.

**Advantages**:  Mediation leaves control of the outcome with the parties.  It may be a particularly effective tool when the

---

EXHIBIT____2
PAGE___126

parties have a continuing relationship to consider such as persons who work together, are neighbors or are members of the same family. Mediation is also effective where emotions are blocking a resolution. An effective neutral mediator can hear the parties out and help them communicate with each other in an effective and non-destructive manner.

**Disadvantages:** Mediation may be ineffective if one of the parties will not cooperate or is unwilling to compromise. And it may not be a good choice if the history of the parties includes abuse or victimization. Mediation may not produce a satisfactory resolution of the dispute if one of the parties has a significant advantage in power or rank than cannot be neutralized by the mediator.

## ARBITRATION

In arbitration, an independent, neutral person called an arbitrator decides what the outcome of the dispute will be. Each side presents evidence supporting its case in a setting that is more informal than a trial. Rules of evidence are relaxed.

Arbitration may be either binding or non-binding. Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's award as final. Generally, there is no right to appeal an arbitrator's final decision. Non-binding arbitration means that the parties are free to request a trial by a judge or a jury if they are unwilling to accept the arbitrator's findings and award.

**Advantages:** Arbitration is informal and usually less expensive than a trial. If the dispute involves a particularly complex matter, the parties can select an arbitrator who has training or experience in the subject matter of the dispute. If the dispute is not complex, the parties may simply wish to avoid the expense of a trial

**Disadvantages:** Generally, there is no appeal from a arbitrator's finding or award even if it is not supported by the evidence or the law. If a party to a non-binding arbitration requests a trial, there may be penalties for failing to achieve a better result.

## NEUTRAL EVALUATION

In early neutral evaluation, the parties employ an expert in the subject matter of the dispute and ask him or her to give them an opinion about how the dispute ought to be resolved. The expert's opinion is not binding and the parties use it to negotiate a resolution of the dispute.

**Advantages:** Neutral evaluation can produce early, creative settlements. If the parties are willing to listen to and compromise, the opinion of an expert they mutually select can provide a solid foundation for a long-lasting agreement.

**Disadvantages:** An expert can be expensive. The parties usually agree that neither the expert nor his or her opinion can be used in a trial if they cannot agree.

## COURT-SUPERVISED SETTLEMENT CONFERENCE

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a court-supervised settlement conference officer. The settlement conference judge or officer does not make a decision that is binding upon the parties. The judge or settlement officer helps the parties evaluate the case and to make decisions about settlement.

**Advantages:** A mandatory settlement conference gives the parties an opportunity before trial to negotiate a settlement in light of what they learned investigating the case and through discovery. The opinion of a settlement judge about the most likely outcome may inspire the parties to reevaluate their positions.

**Disadvantages:** A mandatory settlement conference is usually late in the life of a litigated dispute. It comes only after time and money has been spent preparing for trial. The parties' positions may have been hardened by what they have been through and they may be less willing to compromise.

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT____2
PAGE___127

**SUPERIOR COURT OF SAN LUIS OBISPO COUNTY**

☐ **San Luis Obispo Branch,** 1035 Palm Street, Rm 385, San Luis Obispo, CA 93408
☐ **Grover Beach Branch,** 214 South 16th Street, Grover Beach, CA 93433
☐ **Paso Robles Branch,** 901 Park Street, Paso Robles, CA 93446

*FOR COURT USE ONLY*

Plaintiff:

Defendant:

| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 201.9)** | CASE NUMBER: <br><br> Judge |
|---|---|

The parties and their attorneys hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Mediation                                      ☐ Neutral Case Evaluation

☐ Binding Judicial Arbitration                   ☐ Binding Private Arbitration

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to close 15 days before arbitration under CRC, rule 1612)

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to remain open until 30 days before trial: order required under CRC, rule 1612)

☐ Other

It is also stipulated that the arbitrator, mediator or other neutral shall be:

Name:

Date:                                            Date:

Name of Plaintiff                                Name of Defendant

_____                   _____
Signature                                        Signature

Name of Plaintiff's Attorney                     Name of Defendant's Attorney

_____                   _____
Signature                                        Signature

(Attach another sheet if additional names are necessary)
It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, rule 225.

**IT IS SO ORDERED. IT IS ALSO ORDERED** that no new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

Date:                           _____

JUDGE OF THE SUPERIOR COURT

CVDC05
Rev. 08/01/2009
Optional

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

SLO Local Rule 9.11 4

Martin Dean's
**ESSENTIAL FORMS™**

EXHIBIT____2
PAGE___128

EXHIBIT 3

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 | |

TELEPHONE NO.: (626) 585-9611    FAX NO. *(Optional)*: (626) 585-1400
E-MAIL ADDRESS *(Optional)*: lt@tvlegal.com; rpf@tvlegal.com
ATTORNEY FOR *(Name)*: Reyna Garcia

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO *(insert name of party being served)*: Charles Compston, an individual

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

*Carolyn Slaughter* (signature)
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:

See Attachment A

*(To be completed by recipient)*:

Date this form is signed:

_____      _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |

EXHIBIT____3
PAGE____129

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____3
PAGE___130

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 | |

TELEPHONE NO: (626) 585-9611    FAX NO. (Optional): (626) 585-1400
E-MAIL ADDRESS (Optional): lt@tvlegal.com; rpf@tvlegal.com
ATTORNEY FOR (Name): Reyna Garcia

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO (insert name of party being served): Charles Compston, an individual

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____          _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other (specify):

    See Attachment A

(To be completed by recipient):

Date this form is signed:

_____          _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | Page 1 of 1 |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |

EXHIBIT____3
PAGE____131

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____3
PAGE___132

SUM-100

## SUMMONS
### (CITACIÓN JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**

JUN 26 2013

SAN LUIS OBISPO SUPERIOR COURT

By _____
M. Zepeda, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* NEW ALBERTSON'S, INC.; SUPERVALU,
INC.; CHARLES COMPSTON, an individual; LAUREN MOSLEY, an
individual; and DOES 5-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* REYNA GARCIA

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* CV 130309 |
|---|---|

Superior Court of the State of California, County of San Luis Obispo

1035 Palm Street, Room 385, San Luis Obispo, California  93408

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BALTODANO & BALTODANO LLP; Erica Flores Baltodano, Esq.; Hernaldo J. Baltodano, Esq.
1411 Marsh Street, Suite 102, San Luis Obispo, California  93401   (805) 322-3412

| DATE: *(Fecha)* JUN 26 2013 | Clerk, by *(Secretario)* SUSAN MATHERLY /S/ M ZEPEDA | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.JusSearch.com

EXHIBIT _____3_____
PAGE _____133_____

1   TRABER & VOORHEES
    Lauren Teukolsky [SBN 211381]
2   lt@tvlegal.com
    Rebecca Peterson-Fisher [SBN 255359]
3   rpf@tvlegal.com
    128 North Fair Oaks Avenue
4   Pasadena, California 91103
    Tel. (626) 585-9611
5   Fax (626) 585-1400

6   BALTODANO & BALTODANO LLP
    Hernaldo J. Baltodano [SBN 222286]
7   hjb@bbemploymentlaw.com
    Erica Flores Baltodano [SBN 222331]
8   efb@bbemploymentlaw.com
    1411 Marsh Street, Suite 102
9   San Luis Obispo, California 93401
    Tel. (805) 322-3412
10  Fax (805) 322-3413

11
    Attorneys for Plaintiff
12  REYNA GARCÍA

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA
14                    COUNTY OF SAN LUIS OBISPO

15                      (UNLIMITED JURISDICTION)        CV 130309

16  REYNA GARCÍA,                        CASE NO.

17            Plaintiff,                 COMPLAINT:

18       v.                              1. Failure to Engage in a Timely, Good
                                         Faith Interactive Process, Cal. Gov. Code
19                                       §12940(n);

20  NEW ALBERTSON'S, INC.; SUPERVALU,    2. Failure to Provide Reasonable
    INC.; CHARLES COMPSTON, an individual; Accommodation, Cal. Gov. Code §12940(m);
21  LAUREN MOSLEY, an individual; and DOES 5-
    10, inclusive,                       3. Violation of FEHA Provisions
22                                       Regarding Pregnancy, Cal. Gov. Code
                                         §12945(3);
23            Defendants.
                                         4. Retaliation in Violation of Cal. Gov.
24                                       Code §12940(h);

25                                       5. Negligence, California Common Law

26                                       JURY TRIAL DEMAND

27
                               1
                           COMPLAINT

**FILED**

**JUN 26 2013**

SAN LUIS OBISPO SUPERIOR COURT
BY _____
    M. Zepeda, Deputy Clerk

EXHIBIT___3
PAGE___134

**INTRODUCTION**

1.     Plaintiff Reyna García began working for Albertson's grocery stores in November 2007.  Since 2010, she has been the General Merchandise Manager at the Atascadero store, a job which entails loading and unloading large quantities of non-perishable merchandise, such as charcoal and cat litter.  The job requires Ms. García to pull and push a manual pallet jack stacked with hundreds of pounds of totes carrying merchandise, lift heavy boxes, climb ladders, twist to reach shelves, and perform other physically demanding tasks.  Often, Ms. García is required to handle tasks outside the General Merchandise department, such as covering the Customer Service Desk or stocking the Liquor Department.  Ms. García has been an exemplary employee, consistently receiving positive feedback for high scores in Albertson's Customer Service Index Program, continuous sales growth in her department, and low "shrink" figures in her department. She has been awarded numerous merit-based bonuses.

2.     In July 2012, Ms. García became pregnant.  She and her husband were overjoyed, and soon they learned that they were expecting a little girl.  Ms. García had previously delivered a baby very early at six months.  Based in part on this medical history, and on the rigorous nature of Ms. García's job, her doctor wrote a note stating that she was medically restricted from lifting more than fifteen pounds.

3.     Ms. García presented the doctor's note to her supervisor, Store Manager Charles "Marty" Compston, on August 9, 2012, and requested that he accommodate her pregnancy.  She also told him that she had a history of pre-term delivery.  Despite the requirements under California's Fair Employment & Housing Act ("FEHA") that an employer engage in a good-faith interactive process with an employee who requests an accommodation due to disability, Mr. Compston said "I thought you said nothing was going to change?"  He refused to discuss the matter further.

///

2

COMPLAINT

EXHIBIT____3
PAGE___135

4.      When Ms. García asked Mr. Compston if he would move her temporarily to a position cutting fruit for platters in the Service Deli or to the Customer Service desk, Mr. Compston responded, "No, I'm not moving you," or words to that effect.  He also reassigned Ms. García's only assistant to the night shift, forcing her to pull and push the manual pallet jack, unload totes weighing up to fifty pounds each, and shelve heavy items by herself each day.

5.      Ms. García presented additional doctor's notes to Mr. Compston on two later occasions, but Mr. Compston ignored them and refused to discuss any accommodations.  Lauren Mosley, Assistant Store Director, likewise was aware of Ms. García's pregnancy and medical restrictions, yet continued to force her to lift, push, and pull heavy items, including heavy cases of liquor.  Mr. Compston and Ms. Mosley showed no concern for Ms. García's condition even though she informed them both she was experiencing increasing physical discomfort at work due to her pregnancy.

6.      Although Ms. García was concerned for her health and the health of her baby, she stayed on the job because she needed the income and because her health insurance was provided through Albertson's.

7.      On November 12, 2012, Ms. García told Mr. Compston that she was experiencing tremendous pelvic pressure and requested permission to leave work.  Mr. Compston denied Ms. García's request, saying that he was expecting a store visit from Albertson's corporate representatives and needed her to stay.

8.      When Ms. García returned home from work on November 12, 2012, her amniotic sac began to bulge from between her legs and she was rushed to the emergency room.  At twenty weeks' gestation, her doctor thought her body might rebuild the amniotic sac.  On November 14, 2012, Ms. García's water broke.  Ms. García remained hospitalized and was able to keep her baby inside of her and alive for 3 days, at which point it became clear to her doctor that her baby would not rebuild the amniotic sac and that the baby was brain damaged.  On November 17,

3

COMPLAINT

EXHIBIT___3
PAGE__136

1   2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived

2   for no more than 10 minutes before dying.

3        9.     The minutes Ms. García and her husband spent watching their baby die were

4   heartbreaking.  Ms. García and her husband both cried as they watched baby Jade gasp for air

5   and turn from pink, to purple, to almost black.  After baby Jade's death, Ms. García was

6   anaesthetized and underwent dilation and curettage.  When she awoke, she asked for baby Jade's

7   body, which she kept with her until she was released from the hospital.  Ms. García and her

8   husband have been devastated by their loss.

9        10.    Ms. García took about six weeks off from work to recover, pursuant to her rights

10  under the Family Medical Leave Act.  While she was recuperating, she sank into a deep

11  depression and became socially withdrawn.  She remains depressed and withdrawn, and

12  continues to grieve the loss of baby Jade.  She plays an audio recording of baby Jade's beating

13  heart almost daily as a way of remembering and dealing with her loss.

14       11.    On January 2, 2013, when Ms. García returned to work after baby Jade's death,

15  Mr. Compston and Ms. Mosley retaliated against her by eliminating her supervisorial and

16  merchandise ordering responsibilities and issuing her a baseless write-up for alleged

17  insufficiencies in her job performance during a period when she wasn't even at work due to

18  prescheduled days off.  When Ms. García asked Mr. Compston why her supervisorial and

19  ordering responsibilities were eliminated from her position, he said she should be happy that they

20  had made her job easier, to which Ms. García replied, "I lost my baby for this job!  Why didn't

21  you give me help when I was pregnant and asked for it?"

22       12.    On the basis of these facts and those alleged in more detail below, Ms. García

23  brings claims against Defendants for violations of California's Fair Employment & Housing

24  Act's requirements that an employer engage in a good-faith interactive process with an employee

25  who requests an accommodation based on disability; that an employer provide a reasonable

26  accommodation to an employee disabled by pregnancy; and that an employer not retaliate

27

4

COMPLAINT

EXHIBIT___3
PAGE___137

1  against an employee based on a request to take a pregnancy-related leave or request for a

2  reasonable accommodation.  Ms. García also brings claims for negligence.

## PARTIES

3

4      13.    Plaintiff Reyna García is an individual over eighteen years of age residing in the

5  County of San Luis Obispo, California.

6      14.    Defendant New Albertson's, Inc. is an Idaho-based corporation, which operated

7  the Atascadero Albertson's, along with other Albertson's supermarkets, as a wholly-owned

8  subsidiary of SuperValu, Inc., at all relevant times herein.

9      15.    Defendant SuperValu, Inc. is a Minnesota-based corporation, which owned

10  several grocery chains, including the Atascadero Albertson's and other grocery stores operated

11  by New Albertson's, Inc. as Albertson's stores, at all relevant times herein.

12      16.    Defendant Charles "Marty" Compston is an individual who, upon information and

13  belief, resides in the County of San Luis Obispo, California.  Mr. Compston is, and all relevant

14  times has been, the Store Director of the Atascadero Albertson's.

15      17.    Defendant Lauren Mosley is an individual who, upon information and belief,

16  resides in the County of San Luis Obispo, California.  Defendant Mosley is, and all relevant

17  times has been, the Assistant Store Director of the Atascadero Albertson's.

18      18.    The true names and capacities, whether individual, corporate, associate, or

19  otherwise, of defendants sued herein as Does 5 through 10, inclusive, are currently unknown to

20  Plaintiff, who therefore sues such defendants by such fictitious names.  Plaintiff is informed and

21  believes, and on that basis alleges, that each of the defendants designated herein as a Doe

22  defendant is legally responsible in some manner for the unlawful acts and omission alleged

23  herein, and that Plaintiff's injuries were caused by the conduct of each such defendant.  Plaintiff

24  will seek leave of court to amend this Complaint to reflect the true names and capacities of the

25  defendants designated hereinafter as Doe defendants when such defendants' identities become

26  known.

27

5

COMPLAINT

EXHIBIT____3
PAGE____138

19.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, each of the defendants was the agent or employee of, and/or working in concert with, his/her co-defendants and was acting within the course and scope of such agency, employment, and/or concerted activity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain defendants, the remaining defendant or defendants confirmed and ratified said acts and omissions.

20.     Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, Defendant New Albertson's, Inc. was dominated and controlled by Defendant SuperValu, Inc., and each was the alter-ego of the other.

21.     Whenever and wherever reference is made in this complaint to any act or failure to act by a defendant or defendants, such allegations and references shall also be deemed to mean the acts and failure to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

22.     Venue is proper in this judicial district, pursuant to California Code of Civil Procedure §§395 and 395.5 and California Government Code §12965(b), and the amounts in controversy exceed this Court's jurisdictional minimum.  Defendants Compston and Mosley reside in the County of San Luis Obispo, and all acts and omissions giving rise to liability are alleged to have occurred in the County of San Luis Obispo.

## GENERAL FACTUAL ALLEGATIONS

23.     Plaintiff Reyna García began working at Albertson's supermarket in Paso Robles, California, in November 2007 as a Customer Service Clerk.  In 2010, she was promoted to General Merchandise Manager and transferred to the Albertson's Atascadero store, located at 8200 El Camino Real in Atascadero, California.

24.     Ms. García excelled as General Merchandise Manager, earning discretionary bonuses on multiple occasions and consistently receiving positive feedback from her supervisors

6

COMPLAINT

EXHIBIT____3
PAGE___139

1  for high scores in Albertson's Customer Service Index Program, continuous sales growth in her

2  department, and low "shrink" (merchandise theft/loss) figures.

3      25.    Ms. García's duties were extremely physically demanding, requiring her to pull

4  and push manual pallet jacks (manually-operated forklift-type machines) stacked with multiple

5  totes of merchandise each weighing between 20 and 50 pounds. Ms. García was required to

6  climb ladders and to frequently stretch up over her head, bend over, squat, and, lift while

7  kneeling in a forward motion. Often, she was required to handle tasks outside the General

8  Merchandise department, such as covering the Customer Service Desk or stocking heavy cases

9  of liquor for the Liquor Department. The physical demands of the job were especially

10  pronounced before major holidays when shipments of seasonal merchandise needed to be

11  unloaded and stocked.

12      26.    Ms. García became pregnant in about July 2012, and began receiving prenatal

13  care from a doctor shortly thereafter. Ms. García and her husband were overjoyed to be

14  expecting a baby, but her doctor became concerned about the effect of the physical demands of

15  Ms. García's job on her pregnancy, especially because Ms. García had previously delivered a

16  baby prematurely at 6-months' gestation. In light of her job duties, Ms. García's doctor placed

17  medical restrictions on her during her pregnancy.

18      27.    Ms. García's high-risk pregnancy was a disability within the meaning of

19  California Government Code §12926(l) in that it limited her ability to engage in a major life

20  activity, working, and affected several of her body systems, including, but not limited to, her

21  reproductive, cardiovascular, immunological, and endocrine systems. Cal. Gov. Code

22  §§12926(l)(1)(A) and (B)(iii).

23      28.    On or about August 9, 2012, Ms. García's doctor provided her with a medical

24  note restricting her from lifting more than fifteen pounds and restricting her from pushing. Ms.

25  García presented the note to her supervisor, Defendant Charles "Marty" Compston, Store

26  Director of the Atascadero Albertson's. Ms. García informed Mr. Compston that she had a

27

7

COMPLAINT

1  history of pre-term delivery and requested a reasonable accommodation to enable her to comply

2  with her medical restrictions.

3        29.    Mr. Compston made no effort to engage in a good-faith interactive process with

4  Ms. García to determine what reasonable accommodation could be made. Instead, upon

5  receiving Ms. García's medical note, he said "I thought you said nothing was going to change?"

6  Mr. Compston and Assistant Store Director Lauren Mosley then proceeded to increase Ms.

7  García's workload by reassigning the General Merchandise Clerk, her only assistant, to a night

8  shift position, forcing Ms. García to push, pull, unload, and shelf pallets of heavy merchandise

9  by herself during the day.  When Ms. García asked Mr. Compston if she could be temporarily

10  transferred to a position at the Service Deli cutting fruit for platters or to the Customer Service

11  Desk, Mr. Compston refused, stating, in words or substance, "No, I'm not moving you."

12        30.    As a result of the heavy pulling, pushing, and lifting, which Defendants forced

13  Ms. García to continue performing despite her medical restrictions, Ms. García began to

14  experience serious discomfort related to her pregnancy.  When Ms. García informed her doctor

15  that her employer continued to require her to engage in strenuous physical activity, her doctor

16  wrote her another doctor's note, stating she should not lift more than twenty pounds or climb

17  ladders. Ms. García's doctor also issued a Proof of Pregnancy letter confirming that Ms. García

18  was pregnant with an estimated due date of April 3, 2013.

19        31.    Ms. García presented her second medical note, dated September 6, 2012, and her

20  Proof of Pregnancy letter to Mr. Compston, who once again failed to engage in a good-faith

21  interactive process and made no attempt to accommodate Ms. García's medical restrictions.  Mr.

22  Compston was dismissive of Ms. García's medical condition, rolling his eyes when she would

23  protest that she was unable to perform a specific job responsibility on account of her medical

24  restrictions.  Mr. Compston continued to force Ms. García to engage in heavy lifting and to climb

25  ladders to stock merchandise above the store freezers.  On at least three occasions after Mr.

26  Compston received Ms. García's second doctor's note, and knowing about Ms. García's medical

27

8

COMPLAINT

EXHIBIT____3
PAGE___141

1 restrictions and her pregnancy, Defendant Mosley required Ms. García to stock the Liquor

2 Department, a job function that was ordinarily handled by clerks from another department.

3 Stocking liquor was a particularly demanding task because of the weight involved in transporting

4 cases of liquor bottles and lifting heavy cases of liquor. Ms. García told Ms. Mosley that she

5 should not be used to stock the Liquor Department because of her medical restrictions, but Ms.

6 Mosley insisted that Ms. García obey her. Ms. García complied with Ms. Mosley's first two

7 requests, but when Ms. Mosley asked her to stock the Liquor Department a third time, Ms.

8 García refused.

9      32.    Ms. García was aware that other employees with temporary disabilities had been

10 accommodated in the past, and continued to request a reasonable accommodation for her high-

11 risk pregnancy. Upon information and belief, Defendants made no effort to explore the

12 feasibility of any reasonable accommodation for Ms. García.

13      33.    Ms. García continued to suffer increasing pain, discomfort, anxiety, and extreme

14 exhaustion. At work, she frequently suffered from nausea, pelvic pressure, and excessive

15 sweating. Completing her job responsibilities became increasingly difficult, as Ms. García

16 frequently needed to use the bathroom and had difficulty standing up from a squatting position.

17 At the same time, Ms. García was wracked with anxiety about her baby's safety, and felt

18 tremendous pressure from Defendants Compston and Mosley to continue to do her job. When

19 she would return home after work, Ms. García was too exhausted to do anything, so her husband

20 took over most duties in their home. She continued on the job because her family needed the

21 income and because her health insurance was provided through Albertson's.

22      34.    On or about October 24, 2012, Ms. García had an appointment with her doctor

23 who issued her a third note severely limited her workplace duties on account of ongoing "work

24 stress" and the fact that "no accommodations [are] being made for her preg[nancy]." Upon

25 returning to work the same day, Ms. García presented her third medical note to Mr. Compston,

26 which repeated that she was restricted from lifting more than twenty pounds, and stated that she

27

9

COMPLAINT

EXHIBIT____3
PAGE___142

1  required frequent access to the bathroom and to water, and that she should avoid prolonged

2  standing and excessive bending, reaching, and balancing.

3      35.    Ms. García submitted the third medical note to Mr. Compston and begged him to

4  either transfer her to another position or provide her with a note stating no other positions were

5  available so she could go out on state disability.  Mr. Compton flatly refused, and would not even

6  discuss Ms. García's requests.

7      36.    On or about November 11, 2012, Ms. García felt extremely ill at work and began

8  experiencing tremendous pelvic pressure.  At a co-worker's urging, Ms. García left work without

9  seeking permission, because she was certain that permission would be denied.  At home, she

10  tried to rest but woke in sweats, exhausted.  The next day, Ms. García returned to work,

11  explained her condition to Mr. Compston, and requested permission to go home early.  Mr.

12  Compston denied her request, saying that the store was expecting a visit from representatives of

13  Albertson's corporate office.  Ms. García was forced to continue working and spent a great deal

14  of the day pulling and pushing pallets, and handling her regular heavy-lifting responsibilities.

15      37.    When she returned home on November 12, 2012, Ms. García's amniotic sac

16  began to bulge between from between her legs and she was rushed to the emergency room.  At

17  about 20-weeks' gestation, her doctor initially thought her body might rebuild the amniotic sac.

18  Ms. García remained hospitalized and was able to keep her baby inside of her body and alive for

19  3 days.  On November 14, 2012, Ms. García's water broke.  On November 15, 2012, her doctor

20  told her that the scratching sensation that she felt was her baby's fingernails and toes, and this

21  meant that the amniotic sac was completely gone.  Ms. García's doctor told Ms. García that if her

22  body was going to rebuild the amniotic sac, it would have done so by now.  An ultrasound was

23  conducted and Ms. García was able to see an image of her baby inside her.  Ms. García's doctor

24  told her that the baby was not getting enough fluids to survive and was becoming increasingly

25  brain damaged each second, and that because there was no amniotic sac, the baby's scratching

26

27

10

COMPLAINT

EXHIBIT____3____
PAGE____143____

1   was damaging Ms. García's reproductive system and reducing her chances of being able to have

2   children in the future. Ms. García's doctor said it was time to let her baby go.

3       38.     Feeling devastated and hopeless, Ms. García agreed and allowed her doctor to

4   induce labor. On November 17, 2012, Ms. García gave birth to a baby girl named Jade, and

5   spent several heartbreaking minutes watching her baby die. She and her husband both cried as

6   they watched baby Jade gasp for air and turn from pink, to purple, to almost black as her

7   heartbeat slowed and became undetectable. Baby Jade's death over those several minutes was

8   the most painful thing Ms. García had ever experienced. After baby Jade's death, Ms. García

9   was anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby

10  Jade's body to be brought to her. Ms. García kept baby Jade's body with her for a day and a half

11  until she was released from the hospital.

12      39.     As she was entitled to leave under the Family Medical Leave Act ("FMLA") and

13  based on her doctor's advice, Ms. García took about six weeks off from work to recover. She

14  sank into a deep depression, and stopped cleaning her house and showering regularly. Unable to

15  sleep, she frequently went downstairs at night to sit on her couch in the dark and cry. Ms. García

16  became socially withdrawn during this time period, and remains depressed and withdrawn to this

17  day. She does not want to see friends or leave her house, and continues to grieve the loss of baby

18  Jade. Ms. García was able to record the sound of baby Jade's heartbeat before her death, and

19  plays the recording almost daily as a way of remembering and dealing with her loss.

20      40.     When Ms. García returned to work on January 2, 2013, she found that her

21  department had been reconfigured and Defendants had taken away her supervisorial and

22  merchandise ordering responsibilities. When Ms. García asked Mr. Compston why her

23  supervisorial and ordering responsibilities were removed, he said she should be happy that they

24  had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

25  you give me help when I was pregnant and asked for it?"

26

27

11

COMPLAINT

EXHIBIT___3
PAGE___144

41.    On or about March 17, 2013, when Ms. García returned to work after two pre-approved days off, Defendant Mosley further retaliated against Ms. García by issuing her a baseless write-up because her department was not properly "faced," meaning that items were not facing the right way or properly marked by signage on the shelves.

42.    Ms. García has suffered profound physical pain and suffering and emotional distress due to Albertson's' failure to accommodate her pregnancy and subsequent retaliation.

43.    Ms. García filed charges with the Department of Fair Employment and Housing ("DFEH") on or about April 22, 2013, against Defendants New Albertson's, Inc., SuperValu, Inc., Charles Compston, and Lauren Mosley. All of the causes of action alleged herein were alleged in Ms. García's DFEH charge with supporting factual allegations. The DFEH issued a Right to Sue letter on or about April 22, 2013, completing the exhaustion of Ms. García's administrative remedies. Ms. García's DFEH Right to Sue letter and DFEH charge are included in the Right to Sue Attorney Package attached hereto as Exhibit A. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FIRST CAUSE OF ACTION

**Failure to Engage in a Timely, Good Faith Interactive Process**
**(California Government Code §12940(n);**
**Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

44.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

45.    At all times relevant herein, the California Fair Employment and Housing Act ("FEHA"), Government Code §12900 *et seq.*, was in full force and effect and binding upon the corporate Defendants, each of whom, upon information and belief, regularly employs more than five individuals. Government Code §12940(n) requires employers to "engage in a timely, good faith, interactive process with [a]n employee or applicant to determine effective, reasonable

12

COMPLAINT

EXHIBIT___3
PAGE___145

1  accommodations, if any, in response to a request for reasonable accommodation by an employee

2  or applicant with a known physical or mental disability or known medical condition."

3       46.     Employers are required by California law to initiate the interactive process once

4  they are on notice that an accommodation may be needed.  2 C.C.R. §7294(b).  An employer is

5  on notice when an employee with a known physical disability requests a reasonable

6  accommodation, or when the employer becomes aware of the need for accommodation through a

7  third-party or by observation.

8       47.     Plaintiff's high risk pregnancy was a disability within the meaning of California

9  Government Code §12926(l) in that it limited her ability to engage in a major life activity,

10  working, and affected several of her body systems, including but not limited to her reproductive,

11  cardiovascular, immunological, and endocrine systems.  Cal Gov. Code §§12926(l)(1)(A) &

12  (B)(iii).

13       48.     Plaintiff's disability became known to Defendant Compston when Plaintiff

14  informed him in August of 2012 that she was pregnant and had a history of pre-term delivery,

15  and presented him with her doctor's note stating she should not lift more than fifteen pounds.

16  Plaintiff requested a reasonable accommodation, triggering Defendants' duty to engage in the

17  interactive process, through her doctor's note detailing her medical restrictions.

18       49.     Once on notice, Defendants were required to grant any accommodation requested

19  by Plaintiff, or reject it after due consideration and initiate discussion with her regarding

20  alternative accommodations.  2 C.C. R. §7294(c)(1).  The employer's duty to engage in the

21  interactive process includes analyzing the particular job involved and the essential functions of

22  the job, and, in consultation with the employee, identifying potential accommodations and

23  assessing them with respect to their effectiveness in permitting the employee to perform the

24  essential functions of the job or to enjoy equivalent benefits and privileges of employment

25  compared to non-disabled employees. 2 C.C. R. §§7294(c)(5) & (7).

26  ///

27

13

COMPLAINT

EXHIBIT____3
PAGE___146

50.     Defendants did not grant Plaintiff's request for a reasonable accommodation, nor did they identify and evaluate alternative accommodations or discuss those alternatives with Plaintiff.  Instead, they simply ignored Plaintiff's request and behaved as though her disability did not exist.  Plaintiff verbally requested accommodation on multiple later occasions, submitted two more doctor's notes, and requested that Mr. Compston transfer her to a less strenuous position.  Mr. Compston refused to temporarily transfer Plaintiff and refused to engage in any discussion of other possible accommodations.

51.     Plaintiff satisfied her obligations with respect to the interactive process by providing reasonable medical documentation on three occasions, in the form of doctor's notes and a Proof of Pregnancy letter. 2 C.C.R. §7294(d).

52.     Defendants' failure to engage in a timely, good faith, interactive process with Plaintiff after being placed on notice of the need for a reasonable accommodation is an unlawful employment practice in violation of the FEHA.  Cal. Gov. Code §12940(n).

53.     The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

54.     As a direct result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

55.     The conduct of Defendants and their agents and employees, as described herein, was malicious and/or oppressive and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff resulting from Defendants' actions.  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

///
///

14

COMPLAINT

EXHIBIT___3
PAGE___147

## SECOND CAUSE OF ACTION

**Failure to Provide Reasonable Accommodation**
(California Government Code §12940(m);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

56.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57.     California Government Code §12940(m) makes it an unlawful employment practice for an employer to fail to make a reasonable accommodation for the known physical or mental disability of an employee.  Employers must make reasonable accommodations for disabilities of employees unless they engage in the interactive process and demonstrate that accommodation would impose an undue hardship.  2 C.C.R §7293.9(a).

58.     Plaintiff made several requests for reasonable accommodation, beginning in August of 2012, when she informed Mr. Compston of her disability, presented him with a doctor's note stating her medical restrictions, and requested that he temporarily transfer her to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk.

59.     Mr. Compston denied all of Plaintiff's requests for reasonable accommodation, instead transferring her only assistant to the night shift and increasing her workload.

60.     Mr. Compston and Defendant Mosely forced Plaintiff to continue to perform duties which violated her medical restrictions as set forth by her doctor, including heavy lifting, pushing, and climbing ladders.

61.     The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

62.     As a direct and proximate result of Defendants' acts and failures to act, as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

63.     The conduct of the Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful ad conscious disregard for

15

COMPLAINT

EXHIBIT   3
PAGE   148

1    Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.

2    Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful

3    conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against

4    Defendants.

### THIRD CAUSE OF ACTION

**Violation of FEHA Provisions Relating to Pregnancy**
**(California Government Code §12945;**
**Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

64.    Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65.    California Government Code §12945(3)(A) provides that it is an unlawful employment practice to refuse to provide a reasonable accommodation for a "condition related to pregnancy, childbirth, or a related medical condition" if the employee requests an accommodation with the advice of her health care provider.

66.    A "condition related to pregnancy, childbirth or related medical condition" means "a physical or mental condition intrinsic to pregnancy or childbirth." 2 C.C.R. §7291(d). Plaintiff's high-risk pregnancy was a condition intrinsic to pregnancy, and is a condition related to pregnancy within the meaning of Government Code §12945(3)(A).

67.    Plaintiff obtained prenatal care from her health care provider, a licensed doctor, beginning in July 2012, when she learned that she was pregnant.  Plaintiff informed her doctor that she had previously delivered a baby a six months' gestation, and described the nature of her job responsibilities to her doctor.  Plaintiff's doctor advised her that she should not, among other things, lift more than fifteen pounds or climb ladders or push, and that she should avoid prolonged standing and excessive bending, reaching, and balancing.

16

COMPLAINT

EXHIBIT___3
PAGE___149

68.    Plaintiff presented medical notes from her doctor to Mr. Compston stating her pregnancy-related medical restrictions on three occasions, beginning in August 2012, all of which Mr. Compston ignored.

69.    Plaintiff requested reasonable accommodations repeatedly beginning in August of 2012, but Mr. Compston refused to provide a reasonable accommodation in violation of Government Code §12945(3)(A).

70.    California Government Code §12945(3)(B) provides that it is an unlawful employment practice "[f]or an employer who has a policy, practice, or collective bargaining agreement requiring or authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability to refuse to transfer a pregnant female employee who so requests."

71.    Upon information and belief, the Atascadero Albertson's had a policy, practice, or collective bargaining agreement authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability.

72.    Plaintiff requested a temporary transfer to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk when she submitted her first doctor's note to Mr. Compstion, and begged him to transfer her to any less strenuous or hazardous position after submitting her third doctor's note.  Despite the fact that numerous less strenuous or hazardous positions exist at the Atascadero Albertson's, including various positions at the Customer Service Desk, the Front Service Deli, the Meat Counter, or Starbucks, Mr. Compston refused to temporarily transfer Plaintiff to a less strenuous or hazardous position in violation of Government Code §12945(3)(B).

73.    Without regard to the existence or nonexistence of a policy or practice of temporarily transferring temporarily disabled employees to less strenuous or hazardous positions for the duration of their disabilities, California Government Code §12945(3)(C) provides that it is an unlawful employment practice "[f]or an employer to refuse to temporarily transfer a

17

COMPLAINT

EXHIBIT____3
PAGE___150

1  pregnant female employee to a less strenuous or hazardous position for the duration of her

2  pregnancy if she so requests, with the advice of her doctor, where that transfer can be reasonably

3  accommodated."

4      74.   Plaintiff submitted three doctor's notes and requested that Defendant

5  accommodate her medical restrictions by transferring her temporarily to a less strenuous or

6  hazardous position.

7      75.   Upon information and belief, Defendants could have reasonably accommodated

8  Plaintiff's temporary transfer for the duration of her pregnancy to a less strenuous or hazardous

9  position. Instead, Defendants refused to grant Plaintiff a temporary transfer in violation of

10 California Government Code §12945(3)(C) .

11     76.   Defendants' refusal of Plaintiff's request for a temporary transfer to a less

12 strenuous or hazardous position for the duration of her pregnancy violated California

13 Government Code §12945(3)(C).

14     77.   The unlawful conduct of Defendants as alleged above was a substantial factor in

15 causing damage and/or injury to Plaintiff.

16     78.   As a direct and proximate result of Defendants' acts and failures to act as alleged

17 herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical

18 ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

19     79.   The conduct of Defendants, and their agents and employees as described herein,

20 was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's

21 rights and for the deleterious consequences to Plaintiff of Defendants' actions. Defendants, and

22 their agents and employees, authorized, condoned, and ratified the unlawful conduct of each

23 other. Consequently, Plaintiff is entitled to punitive damages against Defendants.

24 ///

25 ///

26 ///

27

18

COMPLAINT

EXHIBIT___3
PAGE___151

### FOURTH CAUSE OF ACTION

Violation of FEHA Retaliation Provision
(California Government Code § 12940(h);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

80.    Plaintiff restates and incorporates by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

81.    California Government Code § 12940(h) provides that it is an unlawful employment practice to discriminate against any person because the person has opposed any practices forbidden by FEHA.

82.    Plaintiff opposed Defendants' violations of §§12940(m) and (n) and 12945(3) by repeatedly requesting reasonable accommodation for her temporary disability, a high-risk pregnancy, and by attempting to engage Defendants in the interactive process.

83.    Defendants retaliated against Plaintiff by increasing her workload, reassigning her only assistant to the night shift, removing her supervisorial and merchandise ordering responsibilities after she returned from leave after her baby's death, and issuing her a baseless write-up shortly after her return to work.  The unlawful conduct of Defendant as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

84.    As a direct and proximate result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

85.    The conduct of Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

EXHIBIT____3
PAGE___152

### FIFTH CAUSE OF ACTION
#### Negligent Infliction of Emotional Distress
(California Common Law;
Brought by Plaintiff against All Defendants)

86.     Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

87.     Defendants Compston and Mosley had and continue to have a duty of reasonable care with respect to Plaintiff.

88.     Mr. Compston breached his duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) denying Plaintiff's request to go home, and forcing her to engage in heavy lifting, on or about November 12, 2012, despite being aware of Plaintiff's medical restrictions and that those restrictions were due to a high-risk pregnancy, and despite being told by Plaintiff that she was exhausted and experiencing tremendous pelvic pressure.

89.     Defendant Mosley breached her duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not

EXHIBIT____3
PAGE___153

1  limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for

2  the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby

3  forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise

4  by herself during the day, despite knowing that Plaintiff was medically restricted from lifting

5  more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she

6  was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb

7  ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing

8  Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite

9  knowing that Plaintiff was medically restricted from those activities, and (g) requiring Plaintiff to

10  stock the Liquor Department, which required heavy lifting, on a least two occasions after

11  Plaintiff's submission of her second doctor's note stating she could not lift more than fifteen

12  pounds or climb ladders.

13       90.    Defendants Compston and Mosley were acting in the scope of their employment

14  when they breached their duties of care to Plaintiff as described herein, rendering Defendants

15  New Albertson's, Inc. and SuperValu, Inc. vicariously liable for their negligence.

16       91.    As a direct and proximate result of Defendants' breaches of their duty of care to

17  Plaintiff, Plaintiff has suffered and continues to suffer economic loss and damages, physical

18  ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

19       92.    The injuries to Plaintiff proximately caused by Defendants' breaches of their duty

20  of care to Plaintiff, including emotional distress, were reasonably foreseeable.

21       93.    The conduct of Defendants, and their agents and employees as described herein,

22  was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's

23  rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and

24  their agents and employees, authorized, condoned, and ratified the unlawful conduct of each

25  other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

26

27

21

COMPLAINT

EXHIBIT___3
PAGE__154

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1. For compensatory damages, general damages, and special damages according to proof;

2. For an interest, including pre-judgment interest, at the legal rate;

3. For punitive damages in an amount to be proven at trial for all causes of action in which such damages are recoverable;

4. For reasonable attorneys' fees pursuant to Government Code §12965, subdivision (b), California Code of Civil Procedure §1021.5, and all other applicable statutes;

5. For costs of suit incurred herein; and

6. For such other and further relieve as this court may deem just and proper.

Dated: June 26, 2013

Respectfully submitted,

BALTODANO & BALTODANO LLP

TRABER & VOORHEES

By: _Erica F. Baltadano_
Erica Flores Baltadano
Attorneys for Plaintiff Reyna García

22

COMPLAINT

EXHIBIT____3
PAGE___155

Exhibit A

EXHIBIT____3
PAGE__156



STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

April 22, 2013

Traber & Voorhees
128 N. Fair Oaks Ave.
Pasadena, CA 91103

RE:  Notice to Complainant's Attorney
     DFEH Matter Number: 110694-49003
     Right to Sue: Garcia / New Alnertson's, Inc.

Dear Attorney:

Attached is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and
Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900
et seq. Also attached is a copy of your client's Notice of Case Closure and Right to Sue. Pursuant to
Government Code section 12962, DFEH will not serve these documents on the employer.

Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private
lawsuit in the State of California.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT____3
PAGE___157



STATE OF CALIFORNIA | State and Consumer Services Agency                    GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Apr 22, 2013

Reyna Garcia
7115 Santa Isabel Ave., #B
Atascadero, CA 93422

RE:  Notice of Case Closure and Right to Sue
     DFEH Matter Number: 110694-49003
     Right to Sue: Garcia / New Alnertson`s, Inc.

Dear Reyna Garcia:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Apr 22, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivion (b), a civil action may be rought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc:  Paul Rowan Agent for Service for New Alnertson`s, Inc.
     Legal Department
     Charles Compston
     Lauren Mosley

EXHIBIT____3
PAGE___158

 STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

April 22, 2013

RE: Notice of Filing of Discrimination Complaint
    DFEH Matter Number: 110694-49003
    Right to Sue: Garcia / New Alnertson's, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government code section 12960. This constitutes service of the complaint pursuant to Government Code Section 12962. The complainant has requested an authorization to file a lawsuit. This completed is not being investigated by the DFEH and is being closed immmediately. A copy of the closing letter and Right to Sue notice is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

This letter is for informational purposes only. No response to DFEH is requested or required.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT___3
PAGE___159



STATE OF CALIFORNIA | Department of Fair Employment and Housing

EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

COMPLAINANT
Reyna Garcia

NAMED IS THE EMPLOYER, PERSON, AGENCY, ORGANIZATION OR GOVERNMENT ENTITY WHO DISCRIMINATED AGAINST ME

| RESPONDENT | ADDRESS | PHONE |
|---|---|---|
| New Alnertson`s, Inc. Paul Rowan | Executive Vice President General Counsel 250 E. Parkcenter Blvd. Boise ID 83706 | |

| AGENT FOR SERVICE | ADDRESS | PHONE |
|---|---|---|
| CT Corporation System | 818 West Seventh St.  Los Angeles CA 90017 | |

| NO. OF EMPLOYEES | MOST RECENT DISCRIMINATION TOOK PLACE | TYPE OF EMPLOYER |
|---|---|---|
| 0 | Apr 22, 2013 | Private Employer |

| CO-RESPONDENT(S) | ADDRESS |
|---|---|
| Legal Department SUPERVALU INC. | P.O. Box 20  Boise  ID 83726 |
| Charles Compston New Albertson`s Inc./SUPERVALUE INC. | 8200 El Camino Real  Atascadero  CA 93422 |
| Lauren Mosley New Albertson`s Inc./SUPERVALU INC. | 8200 El Camino Real  Atascadero  CA 93422 |

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 1/3

EXHIBIT___3
PAGE___160



STATE OF CALIFORNIA | Department of Fair Employment and Housing                                    EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

| | |
|---|---|
| I ALLEGE THAT I EXPERIENCED | Discrimination, Retaliation |
| ON OR BEFORE | Apr 22, 2013 |
| BECAUSE OF MY | Disability, Engagement in Protected Activity, Family Care or Medical Leave, Medical Condition - including Cancer, Sex- Gender, Sex - Pregnancy |
| AS A RESULT, I WAS | Demoted, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied family care or medical leave, Denied pregnancy leave, Denied reasonable accommodation, Denied reinstatement |

STATEMENT OF FACTS

Reyna Galan Garcia is an employee at an Albertson's store located at 8200 El Camino Real in Atascadero, California. Ms. Garcia's employer failed to accommodate her pregnancy-related disabilities, which caused her to go into labor when she was twenty weeks pregnant and give birth to a baby girl who died approximately 10 minutes later. Albertson's also stripped Ms. Garcia of her managerial job duties when she returned from leave after her baby's death, and has now started disciplining her without cause. On the basis of these actions, which are detailed below, Ms. Garcia alleges that Albertson's has violated the California Fair Employment by discriminating against her based on sex, discriminating against her based on disability, failing to engage in an interactive process, failing to provide reasonable accommodations to Ms. Garcia during her pregnancy, and retaliating against Ms. Garcia for taking pregnancy disability leave. The following statement of facts details the facts and circumstances out of which this DFEH charge arises. A. Reyna Garcia's Employment with Albertson's Ms. Garcia began working at Albertson's in Paso Robles, California in November 2007 as a customer service clerk. A representative from Albertson's corporate office praised Ms. Garcia's job performance and encouraged her to apply for a management position, which she did. Because of her excellent work performance, Albertson's promoted Ms. Garcia to General Merchandise Manager in about November or December 2009, and Ms. Garcia transferred to the Albertson's store in Atascadero. Ms. Garcia's job duties as a General Merchandise Manager included all the duties of a regular store clerk, plus supervising other clerks, ordering merchandise, stocking store shelves, stocking merchandise above freezers using a ladder, and covering the Customer Service Front Desk as needed. The job is extremely physically demanding. Ms. Garcia is required to pull and push heavy pallets stacked with blue totes of merchandise that must be stocked and to lift heavy crates of merchandise on and off pallets. The pallets that must be pushed and pulled on a "6-wheeler" are comprised of several totes each weighing between 20 and 50 pounds. The totes are stacked high, requiring Ms. Garcia to frequently stretch up over her head and to bend over. Certain loads, such as those containing boxes of shampoo, charcoal, cat litter, and firewood are particularly heavy, requiring Ms. Garcia to lift while kneeling on her knees in a forward motion. The physical demands of the job are especially pronounced before major holidays when seasonal displays must be built and shipments of seasonal merchandise must be unloaded and stocked. Ms. Garcia initially had help from an assistant General Merchandise Clerk but, as detailed below, management transferred him to the night shift while she was pregnant. Ms. Garcia is an hourly employee who makes $15.32/hour and is eligible for quarterly discretionary bonuses, which she has earned at least three times during her employment with Albertson's based on store profits and meeting store goals. B. Management Ignores Ms. Garcia's First Request for a Pregnancy-Related Accommodation In about July 2012, Ms. Garcia became pregnant and began receiving prenatal care from an obstetrician. Her obstetrician grew concerned with the physical demands of Ms. Garcia's job at Albertson's and the implications for Ms. Garcia's pregnancy, particularly in light of Ms. Garcia's previous history of delivering a baby prematurely at 6 months' gestation. On about August 9, 2012, Ms. Garcia's obstetrician provided her with a note restricting her from lifting more than 15 pounds. Ms. Garcia presented the note to Store Director Charles "Marty" Compston and informed him that she needed an accommodation to do her job, and that she had a past history of pre-term delivery. Mr. Compston and Assistant Store Director Lauren Mosley ignored Ms. Garcia's request for an accommodation and instead increased her work load. Upon receiving Ms. Garcia's medical note in his private office, Mr. Comptson said, "I thought you said nothing was

EXHIBIT ___3
PAGE ___161

going to change?" Thereafter, Mr. Compston and Ms. Mosley reassigned Ms. García's assistant General Merchandise Clerk to a night shift position, which meant that for at least a week, Ms. García had to do all of the heavy pushing, pulling, and lifting alone. Albertson's hired a new General Merchandise Clerk, Samantha Clerk, but she quit after a short time because the position was too strenuous. While Ms. Brazil was working with Ms. García, she took several days off, so Ms. García was frequently left alone again, without an assistant to help with the extreme physical demands of the job. After Ms. Brazil quit, Ms. García went without an assistant for another 2 weeks. C. Management Ignores Ms. García's Second Request for An Accommodation As a result of the heavy pushing, pulling, and lifting, Ms. García began to experience serious discomfort related to her pregnancy. A regular part of her job was using a ladder, lifting while on a ladder, and stretching high above her head to stock merchandise on top of freezers. Since she also frequently used to cover the Customer Service Front Desk, she often had to climb on and off the ladder to go between her stocking and Customer Service duties. When Ms. García informed her doctor's office that her supervisor, Mr. Compston, continued to require her to engage in strenuous physical activity, including climbing ladders, her doctor issued a second medical note, again restricting her ability to lift heavy items and stating that she could not climb ladders. In case there was any confusion or misunderstanding, the doctor's office also issued a Proof of Pregnancy letter for Ms. García to provide to her employer, confirming that Ms. García was pregnant with an estimated due date of April 3, 2013. When Ms. García presented the second medical note and Proof of Pregnancy to Mr. Compston in his office, he once again did nothing. Rather than engage in any kind of conversation about possible accommodations, Mr. Compston rolled his eyes each time Ms. García protested that she was unable to perform a specific job responsibility. Because Ms. García is a hard-working employee and she did not want to be fired, she continued to handle all aspects of her job during her pregnancy, including pulling and pushing heavy pallets, lifting heavy totes, and climbing ladders, because that is what her job required. On at least two occasions, Ms. Mosely asked Ms. García to stock the liquor department, a particularly demanding request because of the weight involved in pushing and pulling pallets of liquor bottles and lifting cases of liquor off pallets for stocking. Nevertheless, Ms. García dutifully did what she was told. Ms. García had additional meetings with management in an attempt to receive an accommodation, and specifically suggested to Mr. Compston and Ms. Mosley various accommodations that could be made to address her and her doctor's concerns, but she was ignored. For example, Ms. García suggested she could switch roles with the store clerk who cuts fruit for fruit platters all day. Ms. García felt she could have reasonably been accommodated by being temporarily moved to a Pharmacy Technician position, the Customer Service Desk [especially because she frequently covered this position during the day anyway], the Front Service Deli, Meat Counter, or Starbucks. Ms. García would have also willingly accepted a temporary position at another store in El Paso Robles, Morro Bay, or San Luis Obispo, if one had been offered to her. Any of these accommodations would have been reasonable without creating an "undue hardship" for Albertson's because accommodations for pregnancy-related disabilities are relatively short in duration, and other disabled employees have received similar accommodations. D. Management Ignores Ms. García's Third Request for An Accommodation Management's failure to accommodate Ms. García's pregnancy-related disability caused her to suffer pain, discomfort, anxiety, and extreme exhaustion. On about October 24, 2012, Ms. García's doctor issued a third note severely limiting Ms. García's workplace duties on account of ongoing "work stress" and the fact that "no accommodations [are] being made for her preg[nancy]." The medical notes noted that Ms. García would need to be placed on disability pregnancy leave if the employer continued to refuse to make accommodations. This time, when Ms. García presented the third medical note to Mr. Compston upon returning to work that same day, she did so at the front of the store in direct view of the overhead security camera. Once again, Mr. Compston refused Ms. García's request for an accommodation, and refused to engage in an interactive discussion with Ms. García about her pregnancy-related disability. E. Ms. García Goes Into Premature Labor and Delivers Baby Girl Jade, Who Dies the Same Day Shortly after Mr. Compston ignored her third request for accommodation, Ms. García began to feel very ill at work. By this time, approximately early November 2012, several of Ms. García's co-workers began to comment that Ms. García did not look well, and that she should slow down. But because she had no other choice, Ms. García kept working. One employee specifically recalls seeing Ms. García awkwardly climbing with her pregnant belly to load toys onto the seasonal holiday display. The employee said to Ms. García in Mr. Compston's presence "you shouldn't be lifting while you're pregnant." On about November 11, 2012, Ms. García felt extremely ill and began experiencing tremendous pelvic pressure. A co-worker urged Ms. García to leave and, out of desperation, Ms. García did eventually leave work without seeking permission because she was certain permission would be denied. She went home, tried to rest, woke in sweats, and continued to feel exhausted. The next day, Ms. García returned to work and explained her condition to Mr. Compston and asked for permission to go home early. Mr. Compston denied her request, saying that the store was expecting a visit from representatives of Albertson's corporate office. Mr. Compston always got very stressed out when corporate visited. Ms. García ended up working overtime that day and she spent a great deal of the day pulling and pushing pallets and handling her regular heavy lifting responsibilities. When she returned home on November 12, 2012, Ms. García's amniotic sac began to bulge from between her legs. She was rushed to the emergency room where the on-call doctor from Ms. García's OB/GYN's practice met her. Eventually, Ms. García's water broke. At around 20-weeks gestation, the doctor initially thought that it might be possible for Ms. García's body to rebuild the amniotic sac. She remained hospitalized and was able to keep her baby alive for 3 days. On November 15, 2012, the doctor said that if her body was going to rebuild the water sac, it would have done so by now. The amniotic sac was not repaired and the baby was now losing critical fluids. Ms. García could

EXHIBIT_____3
PAGE___162

feel a scratching sensation caused by the baby's finger and toe nails scratching her insides with hardly any fluid surrounding it. The baby was certainly brain damaged at this point, and Ms. García's doctor said it was time to let her go. On November 17, 2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived for no more than 10 minutes before dying. F. Retaliation against Ms. García Following Pregnancy Disability Leave After the delivery and death of her baby, Ms. García took about 6 weeks off from work. A nurse practitioner at her doctor's office suggested she take an additional month on account of her mental state after the delivery, but Ms. García insisted on returning to work because she couldn't afford to be without a pay check. When Ms. García returned to work on January 2, 2013, her department had been reconfigured and her job duties were different. Ms. García no longer had any ordering or supervisory responsibilities. When she met with management to find out why her job had been changed, but the responsibilities of other managers had not changed, she was not given a direct answer. In fact, Mr. Compston told Ms. García that she should be happy that some of her work duties had been reduced, to which Ms. García's exclaimed "I lost my baby for this job! Why didn't you give me the help when I was pregnant and asked for it?" In addition to stripping her job duties, management has recently started disciplining Ms. García without cause. On or around March 17, 2013, Ms. Mosley [in Mr. Compston's presence], issued Ms. García a write-up because her department was not properly "faced," meaning that items were not facing the right way , or properly marked by signage, on the shelves. Ms. Mosely issued the write-up to Ms. García on the day that Ms. García returned from two days of time-off that Mr. Compston had pre-approved. There was simply no basis to discipline Ms. García for an issue that arose when she was not even present in the store, and, given the timing, it appears that management is retaliating against Ms. García for having exercised her rights under the law.

DATE FILED   Apr 22, 2013
MODIFIED      Apr 22, 2013

REVISED APRIL 2013
PAGE 2/3

EXHIBIT____3
PAGE____163



STATE OF CALIFORNIA | Department of Fair Employment and Housing

EMPLOYMENT RIGHT TO SUE

COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE
CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

SIGNED UNDER PENALTY OF PERJURY

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that, to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated on my information and belief, and I declare that those matters I believe to be true.

Verified by Rebecca Peterson-Fisher   and dated on April 22, 2013 at Atascadero, CA.

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 3/3

EXHIBIT____3
PAGE___164

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| BALTODANO & BALTODANO LLP<br>Erica Flores Baltodano (SBN 222331)<br>Hernaldo J. Baltodano (SBN 222286)<br>1411 Marsh Street, Suite 102, San Luis Obispo, California 93401<br>TELEPHONE NO.: **(805) 322-3412**   FAX NO.: **(805) 322-3413**<br>ATTORNEY FOR *(Name)*: Plaintiff Reyna Garcia | **FILED**<br><br>JUN 2 6 2013<br><br>SAN LUIS OBISPO SUPERIOR COURT<br>BY _____<br>M. Zepeda, Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Luis Obispo |
|---|
| STREET ADDRESS: 1035 Palm Street, Room 385 |
| MAILING ADDRESS: 1035 Palm Street, Room 385 |
| CITY AND ZIP CODE: San Luis Obispo, CA  93408 |
| BRANCH NAME: San Luis Obispo |

| CASE NAME:<br>Reyna Garcia v. New Albertson's, Inc., SuperValu, Inc., et al. | |
|---|---|

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: **CV  1 3 0 3 0 9** |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | ☐ Other collections (09)<br>☐ Insurance coverage (18) | ☐ Mass tort (40)<br>☐ Securities litigation (28) |
| ☐ Asbestos (04)<br>☐ Product liability (24) | ☐ Other contract (37)<br>**Real Property** | ☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the |
| ☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08) | ☐ Other real property (26)<br>**Unlawful Detainer** | ☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint** |
| ☐ Defamation (13)<br>☐ Fraud (16) | ☐ Commercial (31)<br>☐ Residential (32) | ☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19)<br>☐ Professional negligence (25) | ☐ Drugs (38)<br>**Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35)<br>**Employment** | ☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11) | ☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36)<br>☑ Other employment (15) | ☐ Writ of mandate (02)<br>☐ Other judicial review (39) | |

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify)*: Five
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 26, 2013

Hernaldo J. Baltodano
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

EXHIBIT____3
PAGE___165

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award *(not unpaid taxes)*
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-harassment)*
 Mechanics Lien
 Other Commercial Complaint Case *(non-tort/non-complex)*
 Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

EXHIBIT____3
PAGE___166

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | CASE NUMBER |
|---|---|---|
| REYNA GARCIA | | |
| VS. | Plaintiff(s), | CV138157 |
| NEW ALBERTSON'S INC | | |
| | Defendant(s). | **Case Management Conference** |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo    CA  93401

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Jac Crawford, Paso Robles Br.** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed.

**Defendants shall file responsive pleadings within 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1.  The parties must appear for a first Case Management Conference on:
    **October 30, 2013  at  9:00 am  in Paso Robles Branch - Dept. 2**
    *THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
    For information about telephone appearances call COURTCALL at (888) 882-6878

2.  Each party must file & serve a Case Management Statement <u>at least 15 days</u> before the conference.
3.  The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4.  Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear showing of good cause.
5.  All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6.  <u>Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.</u>

**\*\*\*LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.

encs.3

EXHIBIT___3
PAGE___167

1  TRABER & VOORHEES
   Lauren Teukolsky [SBN 211381]
2  lt@tvlegal.com
   Rebecca Peterson-Fisher [SBN 255359]
3  rpf@tvlegal.com
   128 North Fair Oaks Avenue
4  Pasadena, California 91103
   Tel. (626) 585-9611
5  Fax (626) 585-1400

6  BALTODANO & BALTODANO LLP
   Hernaldo J. Baltodano [SBN 222286]
7  hjb@bbemploymentlaw.com
   Erica Flores Baltodano [SBN 222331]
8  efb@bbemploymentlaw.com
   1411 Marsh Street, Suite 102
9  San Luis Obispo, California 93401
   Tel. (805) 322-3412
10 Fax (805) 322-3413

11 Attorneys for Plaintiff
   REYNA GARCIA

12

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14               COUNTY OF SAN LUIS OBISPO

15

16 REYNA GARCIA,                    CASE NO. CV138157

17                                  Assigned to the Honorable Jac Crawford
             Plaintiff,
18                                  **PLAINTIFF REYNA GARCIA'S
        v.                          DECLARATION OF PREJUDICE UNDER
19                                  SECTION 170.6 OF THE CODE OF CIVIL
                                    PROCEDURE**
20 NEW ALBERTSON'S, INC.; SUPERVALU, (PEREMPTORY CHALLENGE)
   INC.; CHARLES COMPSTON, an
21 individual; LAUREN MOSLEY, an
   individual; and DOES 5-10, inclusive,
22

23           Defendants.

24

25 ///

26 ///

27

28                              1

        DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

---

**FILED**

**JUN 27 2013**

SAN LUIS OBISPO SUPERIOR COURT
BY: _____
      M. Landrum, Deputy Clerk

EXHIBIT___3
PAGE___168

1  I, Reyna García, declare the following:

2     1.  I am a party to the within action hereinafter called *Reyna García v. New Albertson's,*

3       *Inc. et al.* (Case No. CV130309).

4     2.  The Honorable Jac Crawford, the Judge before whom the trial of the action is pending,

5       is prejudiced against the Plaintiff or the interest of the Plaintiff so that Declarant

6       cannot, or believes that she cannot, have a fair and impartial trial or hearing before such

7       Judge.

8     3.  I declare under penalty of perjury that the foregoing is true and correct.

9

10  Dated: June 12, 2013

11                                  Reyna García

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                             2

DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT____3
PAGE___169

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

*Civil Division*

*CERTIFICATE OF MAILING*

| | |
|---|---|
| REYNA GARCIA<br><br>        VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

**Baltodano, Hernaldo J**
         *Attorney for Plaintiff*
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo      CA 93401

**Teukolsky, Lauren**
         *Attorney for Plaintiff*
TRABER & VOORHEES
128 North Fair Oaks Avenue
Pasadena             CA 91103

*
      *Attached Pleading:*
Notice of Reassignment and Resetting

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                                    OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

SUSAN MATHERLY, Court Executive Officer

by _____ , Deputy      Dated: JUN 2 3 2014 _____

EXHIBIT___3
PAGE__170

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
*Civil Division*

*MINUTES*

| | |
|---|---|
| REYNA GARCIA<br><br>      VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

Date: **06/27/13**          Time:                Room:
Judge: Hon. Martin J. Tangeman
Event Type: *Miscellaneous Minute Order(MISCMO)*

Clerk:  Kim Martin

Judge Crawford having been timely disqualified, the
above entitled action is hereby reassigned for all
purposes to Judge Tangeman.

The Case Management Conference of October 30, 2013 is
unset and reset for October 31, 3013 at 9:00 in
Department 1.

Plaintiff to give notice.

PAGE:   1                                      06/27/13  16:50:32

EXHIBIT___3
PAGE__171

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | CASE NUMBER |
|---|---|---|
| REYNA GARCIA | Plaintiff(s), | CV130309 |
| VS. | | |
| NEW ALBERTSON'S INC | Defendant(s). | Case Management Conference |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo    CA  93401

## NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Martin J. Tangeman** for all purposes.
Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed.
**Defendants shall file responsive pleadings within 30 days of service**
unless the parties stipulate to an extension of not more than 15 days.
IT IS HEREBY ORDERED:
1.  The parties must appear for a first Case Management Conference on:
**October 31, 2013 at 9:00 am in Department 1**
*THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
For information about telephone appearances call COURTCALL at (888) 882-6878

2.  Each party must file & serve a Case Management Statement at least 15 days before the conference.
3.  The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4.  Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear showing of good cause.
5.  All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6.  Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.
**LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.
encs.3

EXHIBIT___3
PAGE___172

**SUPERIOR COURT, STATE OF CALIFORNIA**
**COUNTY OF SAN LUIS OBISPO**
Department 1

STANDING CASE MANAGEMENT ORDER
FOR CASES ASSIGNED TO THE HON. MARTIN J. TANGEMAN

---

### INSTRUCTIONS TO PLAINTIFF(S)/CROSS-COMPLAINANT(S):

**YOU shall serve a copy of this Standing Case Management Order on all Defendants/Cross-Defendants at the same time the complaint/cross-complaint is served.**

---

**I.   GENERAL MATTERS**

A.     It is the Court's policy to provide a dignified forum in which to resolve disputes in a peaceful, professional, legally correct and expeditious manner.  All of the following rules are designed to achieve these goals.  It is not the Court's intention to prohibit a party from raising any issue by any means allowed by Rule of Court, Code or statute.  If any of the rules or procedures discussed herein creates a problem, counsel should raise the matter with the Court at the earliest opportunity.

B.     Electronic communication with the courtroom clerk is permissible for routine communications having to do with scheduling, stipulated continuances, and/or joint requests.  Substantive arguments are not permitted unless approved by the Court.  In any correspondence with the clerk, opposing counsel should be copied in order to avoid ex-parte communications.  The clerk's email address is Erin.Brown@slo.courts.ca.gov.

C.     Counsel shall turn off all audible telephones and pagers and instruct their clients and witnesses to do so.  Communication devices worn on the head are not permitted in the courtroom.

**II.   CASE MANAGEMENT CONFERENCES ("CMC")**

A.     Unless otherwise specifically ordered, CMC Statements are required.  The Court expects that counsel will be prepared to discuss the current status of the case, discovery, amenability to mediation, and any unusual factual, legal or evidentiary issues that may need resolution.  Counsel who fail to appear will typically be set for an OSC hearing why sanctions should not be issued.  The initial amount is ordinarily $150.00.

B.     Early mediation is strongly encouraged.  Good faith participation in mediation will ordinarily excuse participation in a Mandatory Settlement Conference.  The Court will typically sign an order to mediate at an early CMC.

C.     It is the Court's policy to resolve discovery disputes informally and efficiently.  Accordingly, the Court has instituted special procedures for the resolution of discovery disputes through Pretrial Discovery Conferences, which can be scheduled on forms that are available from the clerk's office (see section IV.C, below).

**III.   MEDIATION**

A.     The parties are strongly encouraged to engage in early, meaningful mediation.  Mediation will ordinarily take place within 90-120 days of all parties' appearance, but a longer time may be allowed.  Either private or judical mediation is acceptable.

B.     Parties who select private mediation should comply with the mediator's instructions regarding briefing and payment of fees, which ordinarily should be divided equally.

---

EXHIBIT____3____
PAGE___173____

C.    A worthwhile mediation process means that parties, attorneys and any other person whose consent or authority is required to achieve a final disposition of the dispute shall be present, as well as a representative of any insurer who has authority to settle the case for any amount up to the limits of the policy.

D.    Plaintiff should file a one-page Notice of Mediation with the clerk's office notifying the Court of the date of the mediation and name of the mediator.

## IV.   LAW AND MOTION MATTERS

A.    To the extent practicable, the Court will post tentative rulings on law and motion matters on the Court's website no later than the evening before the hearing.  The Court's website is located at www.slocourts.net.

B.    When parties agree to submit the matter based on a tentative ruling, or to have a matter taken off calendar, counsel should promptly notify both the courtroom clerk and the research attorneys via e-mail or by phone.  This is important in order to avoid unnecessary commitment of judicial resources to moot matters.  The contact information for the research attorneys is SloCourtAttorneys@slo.courts.ca.gov .

C.    Resolution of Discovery Disputes

1.    The parties may stipulate to proceeding with an informal Pretrial Discovery Conference in lieu of filing and serving discovery motions under Sections 2016.010 through 2036.050.  In that event, the parties shall proceed as follows:

a.    All parties to the discovery dispute shall sign a written stipulation electing to resolve the specified discovery dispute(s) between them according to the procedure outlined in this section IV.C.  In such event, the parties stipulate to waive their right to proceed with regularly noticed motions and stipulate that the Court can issue binding discovery orders as a full and final resolution of such dispute(s).

b.    Any request for a Pretrial Discovery Conference must be filed with the clerk's office on the approved form (which is available online or can be requested from the clerk), must include a brief summary of the dispute, and must be served on opposing counsel in the same manner as the request is filed with the clerk.  Any opposition to a request for a Pretrial Discovery Conference must also be filed on an approved form (provided by the clerk), must include a brief summary of why the requested discovery should be denied, must be filed within two (2) business days of receipt of the request, and must be served on opposing counsel in the same manner as the opposition is filed with the clerk.

c.    No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.    The parties will be notified by minute order whether the request has been granted or denied and, if granted, the date and time of the Pretrial Discovery Conference.

e.    The Court will issue a binding order at the conclusion of the Pretrial Discovery Conference.

## V.   READINESS CONFERENCE

A.    These conferences are typically scheduled during the week before trial.  At these conferences, trial counsel should be *personally present*, and prepared to discuss at least the following topics:

1.    Estimated trial length. A jury trial will ordinarily be in session from Monday through Friday from 1:30 to 4:45 p.m., although trial days beginning at 10:00 a.m. are not uncommon.

2.    Number, timing and availability of witnesses, as well as any special witness needs, or the need to call witnesses out of order.

a.    Counsel have responsibility for arranging the appearance of all witnesses during their presentation of the case so as to eliminate delays.  Counsel should confer among themselves as to when witnesses will be needed *at least 24-48 hours in advance of a witness' testimony.*

---

EXHIBIT____3
PAGE___174

b.       Counsel are to inquire of their clients and witnesses to determine whether they are in need of any type of accommodation with an interpreter, under the Americans with Disabilities Act, or any other type of assistance.

3.       Numbering and exchange of exhibits. The parties are encouraged to agree upon a reasonable exhibit numbering system.   Exhibits to be used in the case-in-chief should be pre-marked and exchanged *no later than the morning of trial and earlier if feasible*. The use of exhibit books or binders is strongly encouraged

4.       Voir dire procedures, including mini-opening statements and preinstruction, and jury questionnaires. Counsel should attempt to agree upon a brief neutral statement of the case to be read to the prospective jury panel.

5.       Jury instructions and verdict forms.

a.       Counsel are to deliver all proposed instructions, verdict forms and requests for special findings to the Court and to opposing counsel *no later than the morning of trial*. Proposed instructions shall be complete in all respects without unfilled "blanks" or "bracketed" portions.

b.       Either before or shortly after trial starts, counsel are to meet and confer with the goal of reducing the amount of contested jury instructions and disagreement as to the form of the verdict.   Within two (2) court days after beginning trial, all counsel should notify the Court in writing as to which of the proposed instructions, and which sections of the verdict form, are acceptable to all parties, and which are disputed.

6.       Stipulations to reduce the length of trial. Counsel should consult with each other regarding all possible stipulations and reduce them to writing.  In particular, counsel should consider waiving the necessity for authentication/foundational evidence regarding all trial exhibits, unless authentication is an important issue

7.       Motions in limine.  Prior to hearings on motions in limine, counsel should review *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669-677, and its progeny.  Counsel should advise their clients and witnesses about rulings on motions in limine that pertain to evidentiary issues.  Counsel will be held responsible for any violations of rulings on motions in limine.

## VI.   TRIAL

A.   The Court will typically hear organizational and scheduling matters, procedural issues and in limine motions at the beginning of trial, including any matters left over or continued from the Readiness Conference.

1.       Originals of all depositions to be used in the trial are to be lodged with the clerk at the beginning of trial. At the end of the trial, these depositions can be picked up from the clerk, or they can be returned by mail at the party's expense.

B.   Jury Selection Procedures

1.   Jury selection ordinarily begins at 1:30 p.m. the first day of trial.

2.   Mini opening statements of no more than 3 minutes per side are encouraged prior to jury selection.

3.   After the entire panel is screened for hardship, eighteen names are drawn at random, and voir dire is conducted. Unless otherwise ordered, a time limit of thirty minutes per side for 18 prospective jurors will apply.

4.   Challenges for cause are exercised and ruled upon at sidebar. Upon request, counsel will be given the opportunity to make a record of any unreported sidebar conference once the jury is not present.

5.   At least two alternate jurors are typically selected.  If it becomes necessary to substitute an alternate juror, the first alternate chosen will be the first substitute.

6.   Trial Procedures

EXHIBIT_____3
PAGE___175

a.      No charts, diagrams or other exhibits should be shown or read aloud to the jury unless by stipulation or after admission of the item into evidence.

b.      Counsel should provide hard copies of any power point presentations, audio or video recordings and the like to opposing counsel in advance of showing them to the jury

c.      If counsel will seek to introduce an audio recording (or audio portion of a video recording), please review California Rule of Court 2.1040.

d.      Marking documents out of files: Please review *Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 923-924.

e.      Any object that cannot be folded into 8½" x 11" such as models, blowups, etc. should be accompanied by either a photograph or a photocopy to be retained by the Court in lieu of the oversized exhibit.

f.      When objections are made, counsel should state only the legal basis, without speaking objections.

g.      Sidebar conferences are normally held off the record.  Counsel may make a record of any unreported sidebar conference at an appropriate opportunity in the proceedings.  During trial, if counsel wish to place matters on the record, he or she may so request and the Court will provide an opportunity to do so, ordinarily at the end of the trial day once the jury has been excused.

7.      Post-Trial Procedures

a.      After the verdict is rendered by the jury, the prevailing party is expected to prepare the judgment, which should be submitted on the next Court day following trial unless otherwise ordered.

b.      Counsel should make arrangements with the clerk to withdraw exhibits in cases that will not be appealed.  The clerk will hold the exhibits for sixty days after the filing of the notice of entry of judgment.  Any exhibits remaining after that time will be destroyed unless a notice of appeal is filed.

**DATED:  November 13, 2012**

—————————————————————
     HON. MARTIN J. TANGEMAN
     *Judge of the Superior Court*
     *County of San Luis Obispo*

*w:\clerk\kim\MJTCMO.doc Rev 11/13/12*

EXHIBIT____3
PAGE___176

# SAN LUIS OBISPO COUNTY SUPERIOR COURT

*"The mission of the court is to resolve disputes in a fair, just and efficient manner and
to interpret and apply the law consistently, impartially and independently."*

## CIVIL CASE MANAGEMENT POLICY

All civil actions except those exempted by San Luis Obispo Court Rule 9.02 will be assigned to one judge for all purposes. All cases subject to these rules will be managed in a manner that will meet the case-disposition goals of the Standards of Judicial Administration Sections 2.1 and 2.3. Chapter 9 of the San Luis Obispo Superior Court Rules describes the policies and procedures of the court for the management of litigated civil disputes. Parties shall be familiar with the rules.

Plaintiff shall serve the documents listed below at the same time the complaint is served. Plaintiff shall serve each of the defendants and file a proof of service within 60 days after the complaint is filed. Documents that must be served with a copy of the complaint include:

1. A copy of the Notice of Case Management Conference;
2. A copy of this Civil Case Management Policy statement;
3. A copy of the Court's Alternative Dispute Resolution Policy Statement
4. A blank Case Management Statement
5. A blank Stipulation to Alternative Dispute Resolution.

The first Case Management Conference will be held approximately 150 days after the complaint is filed. The clerk will enter the date of the conference on Notice of First Case Management Conference when the complaint is filed. **The case will be assigned a trial date in the 12th month after the complaint is filed unless the circumstances and the interests of justice require a different trial date.**

**Please note:** Failure to comply with the court's case management rules and policies will result in the issuance of an OSC and the imposition of monetary and other sanctions.

### Alternative Dispute Resolution Policy

The San Luis Obispo Superior Court recognizes that civil litigation can be time consuming and expensive. Delay rarely serves anyone's interests. It often imposes intolerable social and economic burdens on the parties and the court. It is the policy of the court to achieve a disposition of all litigation at the earliest date consistent with a fair and just resolution of the dispute.

Nearly all cases are resolved without trial. Many settlements are achieved only after significant amounts of time and money have been spent on pre-trial procedures and investigation. It is the goal of the San Luis Obispo County Superior Court to produce a fair and just settlement of the dispute early in the process. To achieve this goal, it is the policy of the San Luis Obispo Superior Court to encourage the parties to pursue alternative methods of dispute resolution as early in the process as possible. All cases will be assessed at the first Case Management Conference to determine which method of ADR is most likely to achieve an early resolution.

Alternative Dispute Resolution is more thoroughly explained in the form Alternative Dispute Resolution Policy Statement. It is the obligation of counsel to review the alternatives to trial with their clients and to provide them with a copy of the form.

CVDC01
Rev 07/01/02.
Mandatory

SLO Rule 9.11.1

CIVIL CASE MANAGEMENT POLICY

www.slocourts.net

EXHIBIT____3
PAGE___177

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| | |

TELEPHONE NO.:                          FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:                        Time:                    Dept.:              Div.:              Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone,  by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a. Type of case in   ☐ complaint   ☐ cross-complaint   *(Describe, including causes of action)*:

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Page 1 of 5<br>Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

EXHIBIT____3
PAGE___178

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial. ☐ a nonjury trial.    *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:                                        f.   Fax number:
e. E-mail address:                                           g.   Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
   (1) For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
   (2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).
   (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
   (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

EXHIBIT___3
PAGE___179

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 3 of 6

EXHIBIT____3
PAGE____180

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
   ☐ Bankruptcy ☐ Other *(specify):*
Status:

**13. Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

     Party               Description            Date

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

EXHIBIT___3
PAGE__181

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other Issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

EXHIBIT ___3___
PAGE ___182___

## ALTERNATIVE DISPUTE RESOLUTION POLICY STATEMENT

### WAYS TO RESOLVE YOUR DISPUTE WITHOUT A TRIAL
Presented by the San Luis Obispo County Superior Court

The mission of your Superior Court is to resolve civil disputes fairly and efficiently. It is the court's policy to encourage persons involved in a lawsuit to consider methods other than a trial to resolve their disputes.

Did you know that 95% of all cases filed in court do not go to trial? Most cases are settled or decided in some other way. In fact, methods of settling disputes that do not require a trial have become the first choice of most businesses, government agencies and unions. Agreements to mediate or arbitrate disputes are now commonly found in contracts covering employment, medical care, banking and insurance.

Alternative Dispute Resolution is a catch-all term that refers to the ways other than a trial that can be used to resolve the dispute you brought to the courthouse. These options are typically less formal than trial and many provide opportunities to reach an agreement through a problem-solving approach rather than the adversarial approach of a trial. ADR can save time, reduce costs and increase your overall satisfaction with the outcome.

### THE ADVANTAGES OF ADR

**Reduce Legal Costs**: Nearly all cases are resolved without a trial. If a settlement is likely anyway, wouldn't it be better to save attorneys fees, court costs and experts fees by settling early? In a recent survey, two thirds said they saved money by using ADR.

**Reduce The Time Spent on the Dispute**: A dispute can usually be decided or settled much sooner by using ADR. It is almost always less expensive.

**Increase Control Over the Result**: Some methods of ADR allow the parties to fashion creative resolutions that are not available in a trial. Other ADR methods permit the parties to entrust a decision about the dispute to an expert in a particular field instead of to a judge or a jury without the same experience or knowledge. And in ADR, both the dispute and its resolution can remain confidential.

**Preserve Relationships**: ADR is generally a less adversarial and hostile forum for dispute resolution than a trial. An experienced mediator or arbitrator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction**: In ADR, the parties usually have a better chance to tell their side of the story than they do in trial. This increases the likelihood the case will settle as well as the parties= overall satisfaction with the outcome.

**Improve Attorney-Client Relationships**: Attorneys may benefit from ADR by being seen as problem-solvers instead of as aggressive advocates. Quick, cost-effective results are likely to produce repeat and new business from clients and their friends and associates.

### WHAT ARE THE ADR OPTIONS?

#### MEDIATION

In mediation, an independent, neutral person called a mediator helps the parties reach a mutually acceptable resolution of their dispute. The mediator does not decide the dispute but is trained to help the parties communicate so they can settle the dispute on terms they design themselves.

If mediation does not result in a settlement, the case is returned to court. And if the case goes to trial, there are laws that protect the confidentiality of the things discussed during mediation.

**Advantages**: Mediation leaves control of the outcome with the parties. It may be a particularly effective tool when the

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT____3
PAGE____183

parties have a continuing relationship to consider such as persons who work together, are neighbors or are members of the same family. Mediation is also effective where emotions are blocking a resolution. An effective neutral mediator can hear the parties out and help them communicate with each other in an effective and non-destructive manner.

**Disadvantages**: Mediation may be ineffective if one of the parties will not cooperate or is unwilling to compromise. And it may not be a good choice if the history of the parties includes abuse or victimization. Mediation may not produce a satisfactory resolution of the dispute if one of the parties has a significant advantage in power or rank than cannot be neutralized by the mediator.

## ARBITRATION

In arbitration, an independent, neutral person called an arbitrator decides what the outcome of the dispute will be. Each side presents evidence supporting its case in a setting that is more informal than a trial. Rules of evidence are relaxed.

Arbitration may be either binding or non-binding. Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's award as final. Generally, there is no right to appeal an arbitrator's final decision. Non-binding arbitration means that the parties are free to request a trial by a judge or a jury if they are unwilling to accept the arbitrator's findings and award.

**Advantages**: Arbitration is informal and usually less expensive than a trial. If the dispute involves a particularly complex matter, the parties can select an arbitrator who has training or experience in the subject matter of the dispute. If the dispute is not complex, the parties may simply wish to avoid the expense of a trial.

**Disadvantages**: Generally, there is no appeal from a arbitrator's finding or award even if it is not supported by the evidence or the law. If a party to a non-binding arbitration requests a trial, there may be penalties for failing to achieve a better result.

## NEUTRAL EVALUATION

In early neutral evaluation, the parties employ an expert in the subject matter of the dispute and ask him or her to give them an opinion about how the dispute ought to be resolved. The expert's opinion is not binding and the parties use it to negotiate a resolution of the dispute.

**Advantages**: Neutral evaluation can produce early, creative settlements. If the parties are willing to listen and to compromise, the opinion of an expert they mutually select can provide a solid foundation for a long-lasting agreement.

**Disadvantages**: An expert can be expensive. The parties usually agree that neither the expert nor his or her opinion can be used in a trial if they cannot agree.

## COURT-SUPERVISED SETTLEMENT CONFERENCE

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a court-supervised settlement conference officer. The settlement conference judge or officer does not make a decision that is binding upon the parties. The judge or settlement officer helps the parties evaluate the case and to make decisions about settlement.

**Advantages**: A mandatory settlement conference gives the parties an opportunity before trial to negotiate a settlement in light of what they learned investigating the case and through discovery. The opinion of a settlement judge about the most likely outcome may inspire the parties to reevaluate their positions.

**Disadvantages**: A mandatory settlement conference is usually late in the life of a litigated dispute. It comes only after time and money has been spent preparing for trial. The parties' positions may have been hardened by what they have been through and they may be less willing to compromise.

EXHIBIT____3
PAGE___184

**SUPERIOR COURT OF SAN LUIS OBISPO COUNTY**

☐ **San Luis Obispo Branch,** 1035 Palm Street, Rm 385, San Luis Obispo, CA 93408
☐ **Grover Beach Branch,** 214 South 16th Street, Grover Beach, CA 93433
☐ **Paso Robles Branch,** 901 Park Street, Paso Robles, CA 93446

*FOR COURT USE ONLY*

Plaintiff:

Defendant:

**STIPULATION TO USE OF ALTERNATIVE
DISPUTE RESOLUTION PROCESS (CRC 201.9)**

CASE NUMBER:

Judge

The parties and their attorneys hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Mediation                                          ☐ Neutral Case Evaluation

☐ Binding Judicial Arbitration                       ☐ Binding Private Arbitration

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to close 15 days before arbitration under CRC, rule 1612)

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to remain open until 30 days before trial: order required under CRC, rule 1612)

☐ Other

It is also stipulated that the arbitrator, mediator or other neutral shall be:

Name:

Date:                                                Date:

Name of Plaintiff                                    Name of Defendant

Signature                                            Signature

Name of Plaintiff's Attorney                         Name of Defendant's Attorney

Signature                                            Signature

(Attach another sheet if additional names are necessary)
It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, rule 225.

**IT IS SO ORDERED. IT IS ALSO ORDERED** that no new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

Date:

JUDGE OF THE SUPERIOR COURT

CVDC06
Rev. 08/01/2009
Optional

*Martin Dean's*
**ESSENTIAL FORMS™**

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

SLO Local Rule 9.11 4

EXHIBIT___3
PAGE___185

EXHIBIT 4

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 TELEPHONE NO: (626) 585-9611    FAX NO. *(Optional):* (626) 585-1400 E-MAIL ADDRESS *(Optional):* lt@tvlegal.com; rpf@tvlegal.com ATTORNEY FOR *(Name):* Reyna Garcia | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO *(insert name of party being served):* Lauren Mosley, an individual

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ *Carolyn Slaughter* (signature)
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*

   See Attachment A

*(To be completed by recipient):*

Date this form is signed: _____

_____    ▶    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,            (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                                       ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT____4
PAGE___186

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT___4
PAGE__187

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 | |

TELEPHONE NO.: (626) 585-9611     FAX NO. *(Optional)*: (626) 585-1400
E-MAIL ADDRESS *(Optional)*: lt@tvlegal.com; rpf@tvlegal.com
ATTORNEY FOR *(Name)*: Reyna Garcia

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO *(insert name of party being served)*: Lauren Mosley, an individual

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ *Carolyn Slaughter*
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:
   See Attachment A

*(To be completed by recipient)*:

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT____4
PAGE___188

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____4
PAGE___189

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* NEW ALBERTSON'S, INC.; SUPERVALU, INC.; CHARLES COMPSTON, an individual; LAUREN MOSLEY, an individual; and DOES 5-10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* REYNA GARCIA

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**

JUN 26 2013

SAN LUIS OBISPO SUPERIOR COURT
By _____
M. Zepeda, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* CV 130309 |

Superior Court of the State of California, County of San Luis Obispo

1035 Palm Street, Room 385, San Luis Obispo, California 93408

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BALTODANO & BALTODANO LLP; Erica Flores Baltodano, Esq.; Hernaldo J. Baltodano, Esq.
1411 Marsh Street, Suite 102, San Luis Obispo, California 93401  (805) 322-3412

| | | |
|---|---|---|
| DATE:<br>*(Fecha):* JUN 26 2013 | Clerk, by /S/ M ZEPEDA<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.JurlSearch.com

EXHIBIT _____ 4
PAGE _____ 190

TRABER & VOORHEES
Lauren Teukolsky [SBN 211381]
lt@tvlegal.com
Rebecca Peterson-Fisher [SBN 255359]
rpf@tvlegal.com
128 North Fair Oaks Avenue
Pasadena, California 91103
Tel.   (626) 585-9611
Fax   (626) 585-1400

BALTODANO & BALTODANO LLP
Hernaldo J. Baltodano [SBN 222286]
hjb@bbemploymentlaw.com
Erica Flores Baltodano [SBN 222331]
efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel.   (805) 322-3412
Fax   (805) 322-3413

Attorneys for Plaintiff
REYNA GARCÍA

**FILED**

JUN 26 2013

SAN LUIS OBISPO SUPERIOR COURT
BY _____
M. Zepeda, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

(UNLIMITED JURISDICTION)

CV 130309

| REYNA GARCÍA, | CASE NO. |
|---|---|
| Plaintiff, | **COMPLAINT:** |
| v. | 1. Failure to Engage in a Timely, Good Faith Interactive Process, Cal. Gov. Code §12940(n); |
| NEW ALBERTSON'S, INC.; SUPERVALU, INC.; CHARLES COMPSTON, an individual; LAUREN MOSLEY, an individual; and DOES 5-10, inclusive, | 2. Failure to Provide Reasonable Accommodation, Cal. Gov. Code §12940(m); |
| Defendants. | 3. Violation of FEHA Provisions Regarding Pregnancy, Cal. Gov. Code §12945(3); |
|  | 4. Retaliation in Violation of Cal. Gov. Code §12940(h); |
|  | 5. Negligence, California Common Law |
|  | **JURY TRIAL DEMAND** |

1

COMPLAINT

EXHIBIT___4
PAGE___191

**INTRODUCTION**

1.       Plaintiff Reyna García began working for Albertson's grocery stores in November 2007. Since 2010, she has been the General Merchandise Manager at the Atascadero store, a job which entails loading and unloading large quantities of non-perishable merchandise, such as charcoal and cat litter. The job requires Ms. García to pull and push a manual pallet jack stacked with hundreds of pounds of totes carrying merchandise, lift heavy boxes, climb ladders, twist to reach shelves, and perform other physically demanding tasks. Often, Ms. García is required to handle tasks outside the General Merchandise department, such as covering the Customer Service Desk or stocking the Liquor Department. Ms. García has been an exemplary employee, consistently receiving positive feedback for high scores in Albertson's Customer Service Index Program, continuous sales growth in her department, and low "shrink" figures in her department. She has been awarded numerous merit-based bonuses.

2.       In July 2012, Ms. García became pregnant. She and her husband were overjoyed, and soon they learned that they were expecting a little girl. Ms. García had previously delivered a baby very early at six months. Based in part on this medical history, and on the rigorous nature of Ms. García's job, her doctor wrote a note stating that she was medically restricted from lifting more than fifteen pounds.

3.       Ms. García presented the doctor's note to her supervisor, Store Manager Charles "Marty" Compston, on August 9, 2012, and requested that he accommodate her pregnancy. She also told him that she had a history of pre-term delivery. Despite the requirements under California's Fair Employment & Housing Act ("FEHA") that an employer engage in a good-faith interactive process with an employee who requests an accommodation due to disability, Mr. Compston said "I thought you said nothing was going to change?" He refused to discuss the matter further.

///

2

COMPLAINT

EXHIBIT____4
PAGE___192

4.      When Ms. García asked Mr. Compston if he would move her temporarily to a position cutting fruit for platters in the Service Deli or to the Customer Service desk, Mr. Compston responded, "No, I'm not moving you," or words to that effect.  He also reassigned Ms. García's only assistant to the night shift, forcing her to pull and push the manual pallet jack, unload totes weighing up to fifty pounds each, and shelve heavy items by herself each day.

5.      Ms. García presented additional doctor's notes to Mr. Compston on two later occasions, but Mr. Compston ignored them and refused to discuss any accommodations.  Lauren Mosley, Assistant Store Director, likewise was aware of Ms. García's pregnancy and medical restrictions, yet continued to force her to lift, push, and pull heavy items, including heavy cases of liquor.  Mr. Compston and Ms. Mosley showed no concern for Ms. García's condition even though she informed them both she was experiencing increasing physical discomfort at work due to her pregnancy.

6.      Although Ms. García was concerned for her health and the health of her baby, she stayed on the job because she needed the income and because her health insurance was provided through Albertson's.

7.      On November 12, 2012, Ms. García told Mr. Compston that she was experiencing tremendous pelvic pressure and requested permission to leave work.  Mr. Compston denied Ms. García's request, saying that he was expecting a store visit from Albertson's corporate representatives and needed her to stay.

8.      When Ms. García returned home from work on November 12, 2012, her amniotic sac began to bulge from between her legs and she was rushed to the emergency room.  At twenty weeks' gestation, her doctor thought her body might rebuild the amniotic sac.  On November 14, 2012, Ms. García's water broke.  Ms. García remained hospitalized and was able to keep her baby inside of her and alive for 3 days, at which point it became clear to her doctor that her baby would not rebuild the amniotic sac and that the baby was brain damaged.  On November 17,

3

COMPLAINT

EXHIBIT____4
PAGE___193

1  2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived

2  for no more than 10 minutes before dying.

3        9.     The minutes Ms. García and her husband spent watching their baby die were

4  heartbreaking. Ms. García and her husband both cried as they watched baby Jade gasp for air

5  and turn from pink, to purple, to almost black. After baby Jade's death, Ms. García was

6  anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby Jade's

7  body, which she kept with her until she was released from the hospital. Ms. García and her

8  husband have been devastated by their loss.

9       10.    Ms. García took about six weeks off from work to recover, pursuant to her rights

10 under the Family Medical Leave Act. While she was recuperating, she sank into a deep

11 depression and became socially withdrawn. She remains depressed and withdrawn, and

12 continues to grieve the loss of baby Jade. She plays an audio recording of baby Jade's beating

13 heart almost daily as a way of remembering and dealing with her loss.

14      11.    On January 2, 2013, when Ms. García returned to work after baby Jade's death,

15 Mr. Compston and Ms. Mosley retaliated against her by eliminating her supervisorial and

16 merchandise ordering responsibilities and issuing her a baseless write-up for alleged

17 insufficiencies in her job performance during a period when she wasn't even at work due to

18 prescheduled days off. When Ms. García asked Mr. Compston why her supervisorial and

19 ordering responsibilities were eliminated from her position, he said she should be happy that they

20 had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

21 you give me help when I was pregnant and asked for it?"

22      12.    On the basis of these facts and those alleged in more detail below, Ms. García

23 brings claims against Defendants for violations of California's Fair Employment & Housing

24 Act's requirements that an employer engage in a good-faith interactive process with an employee

25 who requests an accommodation based on disability; that an employer provide a reasonable

26 accommodation to an employee disabled by pregnancy; and that an employer not retaliate

27

4

COMPLAINT

EXHIBIT___4
PAGE___194

1   against an employee based on a request to take a pregnancy-related leave or request for a

2   reasonable accommodation.  Ms. García also brings claims for negligence.

PARTIES

3

4       13.   Plaintiff Reyna García is an individual over eighteen years of age residing in the

5   County of San Luis Obispo, California.

6       14.   Defendant New Albertson's, Inc. is an Idaho-based corporation, which operated

7   the Atascadero Albertson's, along with other Albertson's supermarkets, as a wholly-owned

8   subsidiary of SuperValu, Inc., at all relevant times herein.

9       15.   Defendant SuperValu, Inc. is a Minnesota-based corporation, which owned

10  several grocery chains, including the Atascadero Albertson's and other grocery stores operated

11  by New Albertson's, Inc. as Albertson's stores, at all relevant times herein.

12      16.   Defendant Charles "Marty" Compston is an individual who, upon information and

13  belief, resides in the County of San Luis Obispo, California.  Mr. Compston is, and all relevant

14  times has been, the Store Director of the Atascadero Albertson's.

15      17.   Defendant Lauren Mosley is an individual who, upon information and belief,

16  resides in the County of San Luis Obispo, California.  Defendant Mosley is, and all relevant

17  times has been, the Assistant Store Director of the Atascadero Albertson's.

18      18.   The true names and capacities, whether individual, corporate, associate, or

19  otherwise, of defendants sued herein as Does 5 through 10, inclusive, are currently unknown to

20  Plaintiff, who therefore sues such defendants by such fictitious names.  Plaintiff is informed and

21  believes, and on that basis alleges, that each of the defendants designated herein as a Doe

22  defendant is legally responsible in some manner for the unlawful acts and omission alleged

23  herein, and that Plaintiff's injuries were caused by the conduct of each such defendant.  Plaintiff

24  will seek leave of court to amend this Complaint to reflect the true names and capacities of the

25  defendants designated hereinafter as Doe defendants when such defendants' identities become

26  known.

27

5

COMPLAINT

EXHIBIT____4

PAGE___195

19.   Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, each of the defendants was the agent or employee of, and/or working in concert with, his/her co-defendants and was acting within the course and scope of such agency, employment, and/or concerted activity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain defendants, the remaining defendant or defendants confirmed and ratified said acts and omissions.

20.   Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, Defendant New Albertson's, Inc. was dominated and controlled by Defendant SuperValu, Inc., and each was the alter-ego of the other.

21.   Whenever and wherever reference is made in this complaint to any act or failure to act by a defendant or defendants, such allegations and references shall also be deemed to mean the acts and failure to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

22.   Venue is proper in this judicial district, pursuant to California Code of Civil Procedure §§395 and 395.5 and California Government Code §12965(b), and the amounts in controversy exceed this Court's jurisdictional minimum.  Defendants Compston and Mosley reside in the County of San Luis Obispo, and all acts and omissions giving rise to liability are alleged to have occurred in the County of San Luis Obispo.

## GENERAL FACTUAL ALLEGATIONS

23.   Plaintiff Reyna García began working at Albertson's supermarket in Paso Robles, California, in November 2007 as a Customer Service Clerk.  In 2010, she was promoted to General Merchandise Manager and transferred to the Albertson's Atascadero store, located at 8200 El Camino Real in Atascadero, California.

24.   Ms. García excelled as General Merchandise Manager, earning discretionary bonuses on multiple occasions and consistently receiving positive feedback from her supervisors

6

COMPLAINT

EXHIBIT___4
PAGE___196

1   for high scores in Albertson's Customer Service Index Program, continuous sales growth in her

2   department, and low "shrink" (merchandise theft/loss) figures.

3       25.   Ms. García's duties were extremely physically demanding, requiring her to pull

4   and push manual pallet jacks (manually-operated forklift-type machines) stacked with multiple

5   totes of merchandise each weighing between 20 and 50 pounds. Ms. García was required to

6   climb ladders and to frequently stretch up over her head, bend over, squat, and, lift while

7   kneeling in a forward motion. Often, she was required to handle tasks outside the General

8   Merchandise department, such as covering the Customer Service Desk or stocking heavy cases

9   of liquor for the Liquor Department. The physical demands of the job were especially

10   pronounced before major holidays when shipments of seasonal merchandise needed to be

11   unloaded and stocked.

12       26.   Ms. García became pregnant in about July 2012, and began receiving prenatal

13   care from a doctor shortly thereafter. Ms. García and her husband were overjoyed to be

14   expecting a baby, but her doctor became concerned about the effect of the physical demands of

15   Ms. García's job on her pregnancy, especially because Ms. García had previously delivered a

16   baby prematurely at 6-months' gestation. In light of her job duties, Ms. García's doctor placed

17   medical restrictions on her during her pregnancy.

18       27.   Ms. García's high-risk pregnancy was a disability within the meaning of

19   California Government Code §12926(l) in that it limited her ability to engage in a major life

20   activity, working, and affected several of her body systems, including, but not limited to, her

21   reproductive, cardiovascular, immunological, and endocrine systems. Cal. Gov. Code

22   §§12926(l)(1)(A) and (B)(iii).

23       28.   On or about August 9, 2012, Ms. García's doctor provided her with a medical

24   note restricting her from lifting more than fifteen pounds and restricting her from pushing. Ms.

25   García presented the note to her supervisor, Defendant Charles "Marty" Compston, Store

26   Director of the Atascadero Albertson's. Ms. García informed Mr. Compston that she had a

27

7

COMPLAINT

EXHIBIT___4
PAGE___197

1  history of pre-term delivery and requested a reasonable accommodation to enable her to comply
2  with her medical restrictions.
3      29.    Mr. Compston made no effort to engage in a good-faith interactive process with
4  Ms. García to determine what reasonable accommodation could be made. Instead, upon
5  receiving Ms. García's medical note, he said "I thought you said nothing was going to change?"
6  Mr. Compston and Assistant Store Director Lauren Mosley then proceeded to increase Ms.
7  García's workload by reassigning the General Merchandise Clerk, her only assistant, to a night
8  shift position, forcing Ms. García to push, pull, unload, and shelf pallets of heavy merchandise
9  by herself during the day.  When Ms. García asked Mr. Compston if she could be temporarily
10  transferred to a position at the Service Deli cutting fruit for platters or to the Customer Service
11  Desk, Mr. Compston refused, stating, in words or substance, "No, I'm not moving you."
12      30.    As a result of the heavy pulling, pushing, and lifting, which Defendants forced
13  Ms. García to continue performing despite her medical restrictions, Ms. García began to
14  experience serious discomfort related to her pregnancy.  When Ms. García informed her doctor
15  that her employer continued to require her to engage in strenuous physical activity, her doctor
16  wrote her another doctor's note, stating she should not lift more than twenty pounds or climb
17  ladders.  Ms. García's doctor also issued a Proof of Pregnancy letter confirming that Ms. García
18  was pregnant with an estimated due date of April 3, 2013.
19      31.    Ms. García presented her second medical note, dated September 6, 2012, and her
20  Proof of Pregnancy letter to Mr. Compston, who once again failed to engage in a good-faith
21  interactive process and made no attempt to accommodate Ms. García's medical restrictions.  Mr.
22  Compston was dismissive of Ms. García's medical condition, rolling his eyes when she would
23  protest that she was unable to perform a specific job responsibility on account of her medical
24  restrictions.  Mr. Compston continued to force Ms. García to engage in heavy lifting and to climb
25  ladders to stock merchandise above the store freezers.  On at least three occasions after Mr.
26  Compston received Ms. García's second doctor's note, and knowing about Ms. García's medical
27

8

COMPLAINT

EXHIBIT    4
PAGE    198

1   restrictions and her pregnancy, Defendant Mosley required Ms. García to stock the Liquor
2   Department, a job function that was ordinarily handled by clerks from another department.
3   Stocking liquor was a particularly demanding task because of the weight involved in transporting
4   cases of liquor bottles and lifting heavy cases of liquor.  Ms. García told Ms. Mosley that she
5   should not be used to stock the Liquor Department because of her medical restrictions, but Ms.
6   Mosley insisted that Ms. García obey her.  Ms. García complied with Ms. Mosley's first two
7   requests, but when Ms. Mosley asked her to stock the Liquor Department a third time, Ms.
8   García refused.

9        32.    Ms. García was aware that other employees with temporary disabilities had been
10  accommodated in the past, and continued to request a reasonable accommodation for her high-
11  risk pregnancy.  Upon information and belief, Defendants made no effort to explore the
12  feasibility of any reasonable accommodation for Ms. García.

13       33.    Ms. García continued to suffer increasing pain, discomfort, anxiety, and extreme
14  exhaustion.  At work, she frequently suffered from nausea, pelvic pressure, and excessive
15  sweating.  Completing her job responsibilities became increasingly difficult, as Ms. García
16  frequently needed to use the bathroom and had difficulty standing up from a squatting position.
17  At the same time, Ms. García was wracked with anxiety about her baby's safety, and felt
18  tremendous pressure from Defendants Compston and Mosley to continue to do her job.  When
19  she would return home after work, Ms. García was too exhausted to do anything, so her husband
20  took over most duties in their home.  She continued on the job because her family needed the
21  income and because her health insurance was provided through Albertson's.

22       34.    On or about October 24, 2012, Ms. García had an appointment with her doctor
23  who issued her a third note severely limited her workplace duties on account of ongoing "work
24  stress" and the fact that "no accommodations [are] being made for her preg[nancy]."  Upon
25  returning to work the same day, Ms. García presented her third medical note to Mr. Compston,
26  which repeated that she was restricted from lifting more than twenty pounds, and stated that she

27

9

COMPLAINT

EXHIBIT___4<br>PAGE___199

1   required frequent access to the bathroom and to water, and that she should avoid prolonged

2   standing and excessive bending, reaching, and balancing.

3       35.    Ms. García submitted the third medical note to Mr. Compston and begged him to

4   either transfer her to another position or provide her with a note stating no other positions were

5   available so she could go out on state disability.  Mr. Compton flatly refused, and would not even

6   discuss Ms. García's requests.

7       36.    On or about November 11, 2012, Ms. García felt extremely ill at work and began

8   experiencing tremendous pelvic pressure.  At a co-worker's urging, Ms. García left work without

9   seeking permission, because she was certain that permission would be denied.  At home, she

10  tried to rest but woke in sweats, exhausted.  The next day, Ms. García returned to work,

11  explained her condition to Mr. Compston, and requested permission to go home early.  Mr.

12  Compston denied her request, saying that the store was expecting a visit from representatives of

13  Albertson's corporate office.  Ms. García was forced to continue working and spent a great deal

14  of the day pulling and pushing pallets, and handling her regular heavy-lifting responsibilities.

15      37.    When she returned home on November 12, 2012, Ms. García's amniotic sac

16  began to bulge between from between her legs and she was rushed to the emergency room.  At

17  about 20-weeks' gestation, her doctor initially thought her body might rebuild the amniotic sac.

18  Ms. García remained hospitalized and was able to keep her baby inside of her body and alive for

19  3 days.  On November 14, 2012, Ms. García's water broke.  On November 15, 2012, her doctor

20  told her that the scratching sensation that she felt was her baby's fingernails and toes, and this

21  meant that the amniotic sac was completely gone.  Ms. García's doctor told Ms. García that if her

22  body was going to rebuild the amniotic sac, it would have done so by now.  An ultrasound was

23  conducted and Ms. García was able to see an image of her baby inside her.  Ms. García's doctor

24  told her that the baby was not getting enough fluids to survive and was becoming increasingly

25  brain damaged each second, and that because there was no amniotic sac, the baby's scratching

26

27

10

COMPLAINT

EXHIBIT___4
PAGE___200

1   was damaging Ms. García's reproductive system and reducing her chances of being able to have

2   children in the future. Ms. García's doctor said it was time to let her baby go.

3       38.     Feeling devastated and hopeless, Ms. García agreed and allowed her doctor to

4   induce labor. On November 17, 2012, Ms. García gave birth to a baby girl named Jade, and

5   spent several heartbreaking minutes watching her baby die. She and her husband both cried as

6   they watched baby Jade gasp for air and turn from pink, to purple, to almost black as her

7   heartbeat slowed and became undetectable. Baby Jade's death over those several minutes was

8   the most painful thing Ms. García had ever experienced. After baby Jade's death, Ms. García

9   was anaesthetized and underwent dilation and curettage. When she awoke, she asked for baby

10   Jade's body to be brought to her. Ms. García kept baby Jade's body with her for a day and a half

11   until she was released from the hospital.

12       39.     As she was entitled to leave under the Family Medical Leave Act ("FMLA") and

13   based on her doctor's advice, Ms. García took about six weeks off from work to recover. She

14   sank into a deep depression, and stopped cleaning her house and showering regularly. Unable to

15   sleep, she frequently went downstairs at night to sit on her couch in the dark and cry. Ms. García

16   became socially withdrawn during this time period, and remains depressed and withdrawn to this

17   day. She does not want to see friends or leave her house, and continues to grieve the loss of baby

18   Jade. Ms. García was able to record the sound of baby Jade's heartbeat before her death, and

19   plays the recording almost daily as a way of remembering and dealing with her loss.

20       40.     When Ms. García returned to work on January 2, 2013, she found that her

21   department had been reconfigured and Defendants had taken away her supervisorial and

22   merchandise ordering responsibilities. When Ms. García asked Mr. Compston why her

23   supervisorial and ordering responsibilities were removed, he said she should be happy that they

24   had made her job easier, to which Ms. García replied, "I lost my baby for this job! Why didn't

25   you give me help when I was pregnant and asked for it?"

26

27

EXHIBIT___4
PAGE___201

41.   On or about March 17, 2013, when Ms. García returned to work after two pre-approved days off, Defendant Mosley further retaliated against Ms. García by issuing her a baseless write-up because her department was not properly "faced," meaning that items were not facing the right way or properly marked by signage on the shelves.

42.   Ms. García has suffered profound physical pain and suffering and emotional distress due to Albertson's' failure to accommodate her pregnancy and subsequent retaliation.

43.   Ms. García filed charges with the Department of Fair Employment and Housing ("DFEH") on or about April 22, 2013, against Defendants New Albertson's, Inc., SuperValu, Inc., Charles Compston, and Lauren Mosley.  All of the causes of action alleged herein were alleged in Ms. García's DFEH charge with supporting factual allegations.  The DFEH issued a Right to Sue letter on or about April 22, 2013, completing the exhaustion of Ms. García's administrative remedies.  Ms. García's DFEH Right to Sue letter and DFEH charge are included in the Right to Sue Attorney Package attached hereto as Exhibit A.  All conditions precedent to the institution of this lawsuit have been fulfilled.

## FIRST CAUSE OF ACTION

### Failure to Engage in a Timely, Good Faith Interactive Process
### (California Government Code §12940(n);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

44.   Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

45.   At all times relevant herein, the California Fair Employment and Housing Act ("FEHA"), Government Code §12900 *et seq.*, was in full force and effect and binding upon the corporate Defendants, each of whom, upon information and belief, regularly employs more than five individuals.  Government Code §12940(n) requires employers to "engage in a timely, good faith, interactive process with [a]n employee or applicant to determine effective, reasonable

EXHIBIT___4
PAGE___202

1   accommodations, if any, in response to a request for reasonable accommodation by an employee

2   or applicant with a known physical or mental disability or known medical condition."

3       46.    Employers are required by California law to initiate the interactive process once

4   they are on notice that an accommodation may be needed.  2 C.C.R. §7294(b).  An employer is

5   on notice when an employee with a known physical disability requests a reasonable

6   accommodation, or when the employer becomes aware of the need for accommodation through a

7   third-party or by observation.

8       47.    Plaintiff's high risk pregnancy was a disability within the meaning of California

9   Government Code §12926(l) in that it limited her ability to engage in a major life activity,

10   working, and affected several of her body systems, including but not limited to her reproductive,

11   cardiovascular, immunological, and endocrine systems.  Cal Gov. Code §§12926(l)(1)(A) &

12   (B)(iii).

13       48.    Plaintiff's disability became known to Defendant Compston when Plaintiff

14   informed him in August of 2012 that she was pregnant and had a history of pre-term delivery,

15   and presented him with her doctor's note stating she should not lift more than fifteen pounds.

16   Plaintiff requested a reasonable accommodation, triggering Defendants' duty to engage in the

17   interactive process, through her doctor's note detailing her medical restrictions.

18       49.    Once on notice, Defendants were required to grant any accommodation requested

19   by Plaintiff, or reject it after due consideration and initiate discussion with her regarding

20   alternative accommodations.  2 C.C.R. §7294(c)(1).  The employer's duty to engage in the

21   interactive process includes analyzing the particular job involved and the essential functions of

22   the job, and, in consultation with the employee, identifying potential accommodations and

23   assessing them with respect to their effectiveness in permitting the employee to perform the

24   essential functions of the job or to enjoy equivalent benefits and privileges of employment

25   compared to non-disabled employees. 2 C.C. R. §§7294(c)(5) & (7).

26   ///

27

13

COMPLAINT

EXHIBIT____4
PAGE___203

50.     Defendants did not grant Plaintiff's request for a reasonable accommodation, nor did they identify and evaluate alternative accommodations or discuss those alternatives with Plaintiff.  Instead, they simply ignored Plaintiff's request and behaved as though her disability did not exist.  Plaintiff verbally requested accommodation on multiple later occasions, submitted two more doctor's notes, and requested that Mr. Compston transfer her to a less strenuous position.  Mr. Compston refused to temporarily transfer Plaintiff and refused to engage in any discussion of other possible accommodations.

51.     Plaintiff satisfied her obligations with respect to the interactive process by providing reasonable medical documentation on three occasions, in the form of doctor's notes and a Proof of Pregnancy letter. 2 C.C.R. §7294(d).

52.     Defendants' failure to engage in a timely, good faith, interactive process with Plaintiff after being placed on notice of the need for a reasonable accommodation is an unlawful employment practice in violation of the FEHA.  Cal. Gov. Code §12940(n).

53.     The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

54.     As a direct result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

55.     The conduct of Defendants and their agents and employees, as described herein, was malicious and/or oppressive and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff resulting from Defendants' actions.  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

///

///

14

COMPLAINT

EXHIBIT____4
PAGE___204

## SECOND CAUSE OF ACTION

**Failure to Provide Reasonable Accommodation**
**(California Government Code §12940(m);**
**Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

56.   Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57.   California Government Code §12940(m) makes it an unlawful employment practice for an employer to fail to make a reasonable accommodation for the known physical or mental disability of an employee.  Employers must make reasonable accommodations for disabilities of employees unless they engage in the interactive process and demonstrate that accommodation would impose an undue hardship.  2 C.C.R §7293.9(a).

58.   Plaintiff made several requests for reasonable accommodation, beginning in August of 2012, when she informed Mr. Compston of her disability, presented him with a doctor's note stating her medical restrictions, and requested that he temporarily transfer her to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk.

59.   Mr. Compston denied all of Plaintiff's requests for reasonable accommodation, instead transferring her only assistant to the night shift and increasing her workload.

60.   Mr. Compston and Defendant Mosely forced Plaintiff to continue to perform duties which violated her medical restrictions as set forth by her doctor, including heavy lifting, pushing, and climbing ladders.

61.   The unlawful conduct of Defendants as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

62.   As a direct and proximate result of Defendants' acts and failures to act, as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

63.   The conduct of the Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful ad conscious disregard for

15

COMPLAINT

EXHIBIT___4
PAGE___205

1   Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.

2   Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful

3   conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against

4   Defendants.

5                      <u>**THIRD CAUSE OF ACTION**</u>

6                **Violation of FEHA Provisions Relating to Pregnancy**
                        **(California Government Code §12945;**
7       **Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)**

8        64.    Plaintiff restates and incorporates by reference each and every allegation

9    contained in the foregoing paragraphs as though fully set forth herein.

10       65.    California Government Code §12945(3)(A) provides that it is an unlawful

11   employment practice to refuse to provide a reasonable accommodation for a "condition related to

12   pregnancy, childbirth, or a related medical condition" if the employee requests an

13   accommodation with the advice of her health care provider.

14       66.    A "condition related to pregnancy, childbirth or related medical condition" means

15   "a physical or mental condition intrinsic to pregnancy or childbirth." 2 C.C.R. §7291(d).

16   Plaintiff's high-risk pregnancy was a condition intrinsic to pregnancy, and is a condition related

17   to pregnancy within the meaning of Government Code §12945(3)(A).

18       67.    Plaintiff obtained prenatal care from her health care provider, a licensed doctor,

19   beginning in July 2012, when she learned that she was pregnant. Plaintiff informed her doctor

20   that she had previously delivered a baby a six months' gestation, and described the nature of her

21   job responsibilities to her doctor.  Plaintiff's doctor advised her that she should not, among other

22   things, lift more than fifteen pounds or climb ladders or push, and that she should avoid

23   prolonged standing and excessive bending, reaching, and balancing.

24

25

26

27

16

COMPLAINT

EXHIBIT___4
PAGE___206

68.     Plaintiff presented medical notes from her doctor to Mr. Compston stating her pregnancy-related medical restrictions on three occasions, beginning in August 2012, all of which Mr. Compston ignored.

69.     Plaintiff requested reasonable accommodations repeatedly beginning in August of 2012, but Mr. Compston refused to provide a reasonable accommodation in violation of Government Code §12945(3)(A).

70.     California Government Code §12945(3)(B) provides that it is an unlawful employment practice "[f]or an employer who has a policy, practice, or collective bargaining agreement requiring or authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability to refuse to transfer a pregnant female employee who so requests."

71.     Upon information and belief, the Atascadero Albertson's had a policy, practice, or collective bargaining agreement authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability.

72.     Plaintiff requested a temporary transfer to a position in the Service Deli cutting fruit for platters or staffing the Customer Service Desk when she submitted her first doctor's note to Mr. Compstion, and begged him to transfer her to any less strenuous or hazardous position after submitting her third doctor's note.  Despite the fact that numerous less strenuous or hazardous positions exist at the Atascadero Albertson's, including various positions at the Customer Service Desk, the Front Service Deli, the Meat Counter, or Starbucks, Mr. Compston refused to temporarily transfer Plaintiff to a less strenuous or hazardous position in violation of Government Code §12945(3)(B).

73.     Without regard to the existence or nonexistence of a policy or practice of temporarily transferring temporarily disabled employees to less strenuous or hazardous positions for the duration of their disabilities, California Government Code §12945(3)(C) provides that it is an unlawful employment practice "[f]or an employer to refuse to temporarily transfer a

17

COMPLAINT

EXHIBIT___4
PAGE___207

1    pregnant female employee to a less strenuous or hazardous position for the duration of her

2    pregnancy if she so requests, with the advice of her doctor, where that transfer can be reasonably

3    accommodated."

4         74.    Plaintiff submitted three doctor's notes and requested that Defendant

5    accommodate her medical restrictions by transferring her temporarily to a less strenuous or

6    hazardous position.

7         75.    Upon information and belief, Defendants could have reasonably accommodated

8    Plaintiff's temporary transfer for the duration of her pregnancy to a less strenuous or hazardous

9    position.  Instead, Defendants refused to grant Plaintiff a temporary transfer in violation of

10   California Government Code §12945(3)(C) .

11        76.    Defendants' refusal of Plaintiff's request for a temporary transfer to a less

12   strenuous or hazardous position for the duration of her pregnancy violated California

13   Government Code §12945(3)(C).

14        77.    The unlawful conduct of Defendants as alleged above was a substantial factor in

15   causing damage and/or injury to Plaintiff.

16        78.    As a direct and proximate result of Defendants' acts and failures to act as alleged

17   herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical

18   ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

19        79.    The conduct of Defendants, and their agents and employees as described herein,

20   was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's

21   rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and

22   their agents and employees, authorized, condoned, and ratified the unlawful conduct of each

23   other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

24   ///

25   ///

26   ///

27

18

COMPLAINT

EXHIBIT____4
PAGE___208

## FOURTH CAUSE OF ACTION

Violation of FEHA Retaliation Provision
(California Government Code § 12940(h);
Brought by Plaintiff against Defendants New Albertson's, Inc. and SuperValu, Inc.)

80.     Plaintiff restates and incorporates by reference each and every allegation in the foregoing paragraphs as though fully set forth herein.

81.     California Government Code § 12940(h) provides that it is an unlawful employment practice to discriminate against any person because the person has opposed any practices forbidden by FEHA.

82.     Plaintiff opposed Defendants' violations of §§12940(m) and (n) and 12945(3) by repeatedly requesting reasonable accommodation for her temporary disability, a high-risk pregnancy, and by attempting to engage Defendants in the interactive process.

83.     Defendants retaliated against Plaintiff by increasing her workload, reassigning her only assistant to the night shift, removing her supervisorial and merchandise ordering responsibilities after she returned from leave after her baby's death, and issuing her a baseless write-up shortly after her return to work.  The unlawful conduct of Defendant as alleged above was a substantial factor in causing damage and/or injury to Plaintiff.

84.     As a direct and proximate result of Defendants' acts and failures to act as alleged herein, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

85.     The conduct of Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions.  Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other.  Consequently, Plaintiff is entitled to punitive damages against Defendants.

EXHIBIT___4
PAGE___209

### FIFTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress
(California Common Law;
Brought by Plaintiff against All Defendants)**

86.  Plaintiff restates and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

87.  Defendants Compston and Mosley had and continue to have a duty of reasonable care with respect to Plaintiff.

88.  Mr. Compston breached his duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) denying Plaintiff's request to go home, and forcing her to engage in heavy lifting, on or about November 12, 2012, despite being aware of Plaintiff's medical restrictions and that those restrictions were due to a high-risk pregnancy, and despite being told by Plaintiff that she was exhausted and experiencing tremendous pelvic pressure.

89.  Defendant Mosley breached her duty of care to Plaintiff by (a) refusing to engage in the required timely, good-faith interactive process to determine a reasonable accommodation for Plaintiff, (b) refusing to provide a reasonable accommodation for Plaintiff, including, but not

COMPLAINT

EXHIBIT____4
PAGE____210

limited to, refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy, (c) transferring Plaintiff's only assistant to the night shift, thereby forcing Plaintiff to push and pull forklifts and unload and stock shipments of heavy merchandise by herself during the day, despite knowing that Plaintiff was medically restricted from lifting more than fifteen pounds, (d) forcing Plaintiff to engage in heavy lifting despite knowing that she was medically restricted from lifting more than fifteen pounds, (e) forcing Plaintiff to climb ladders despite knowing that Plaintiff was medically restricted from climbing ladders, (f) forcing Plaintiff to engage in prolonged standing and excessive bending, reaching, and balancing despite knowing that Plaintiff was medically restricted from those activities, and (g) requiring Plaintiff to stock the Liquor Department, which required heavy lifting, on a least two occasions after Plaintiff's submission of her second doctor's note stating she could not lift more than fifteen pounds or climb ladders.

90.    Defendants Compston and Mosley were acting in the scope of their employment when they breached their duties of care to Plaintiff as described herein, rendering Defendants New Albertson's, Inc. and SuperValu, Inc. vicariously liable for their negligence.

91.    As a direct and proximate result of Defendants' breaches of their duty of care to Plaintiff, Plaintiff has suffered and continues to suffer economic loss and damages, physical ailments, emotional distress, and attorneys' fees and costs in an amount to be proven at trial.

92.    The injuries to Plaintiff proximately caused by Defendants' breaches of their duty of care to Plaintiff, including emotional distress, were reasonably foreseeable.

93.    The conduct of Defendants, and their agents and employees as described herein, was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences to Plaintiff of Defendants' actions. Defendants, and their agents and employees, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against Defendants.

21

COMPLAINT

EXHIBIT___4
PAGE___211

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1.  For compensatory damages, general damages, and special damages according to proof;

2.  For an interest, including pre-judgment interest, at the legal rate;

3.  For punitive damages in an amount to be proven at trial for all causes of action in which such damages are recoverable;

4.  For reasonable attorneys' fees pursuant to Government Code §12965, subdivision (b), California Code of Civil Procedure §1021.5, and all other applicable statutes;

5.  For costs of suit incurred herein; and

6.  For such other and further relieve as this court may deem just and proper.

Dated: June 26, 2013

Respectfully submitted,

BALTODANO & BALTODANO LLP

TRABER & VOORHEES

By:  _Erica F. Baltodano_

Erica Flores Baltodano
Attorneys for Plaintiff Reyna García

22

COMPLAINT

EXHIBIT___4
PAGE___212

Exhibit A

EXHIBIT____4
PAGE__213



STATE OF CALIFORNIA | State and Consumer Services Agency

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I Videophone 916-226-5285 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

April 22, 2013

Traber & Voorhees
128 N. Fair Oaks Ave.
Pasadena, CA 91103

RE:  Notice to Complainant's Attorney
     DFEH Matter Number: 110694-49003
     Right to Sue: Garcia / New Alnertson's, Inc.

Dear Attorney:

Attached is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your client's Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.

Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT____4
PAGE__214



STATE OF CALIFORNIA | State and Consumer Services Agency                                    GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                                      DIRECTOR PHYLLIS W. CHENG
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Apr 22, 2013

Reyna Garcia
7115 Santa Isabel Ave., #B
Atascadero, CA 93422

RE: Notice of Case Closure and Right to Sue
    DFEH Matter Number: 110694-49003
    Right to Sue: Garcia / New Alnertson's, Inc.

Dear Reyna Garcia:

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective Apr 22, 2013 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivion (b), a civil action may be rought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commision (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

Enclosures

cc: Paul Rowan Agent for Service for New Alnertson's, Inc.
    Legal Department
    Charles Compston
    Lauren Mosley

EXHIBIT____4
PAGE___215



STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | Videophone 916-226-5285 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.
DIRECTOR PHYLLIS W. CHENG

April 22, 2013

RE: Notice of Filing of Discrimination Complaint
DFEH Matter Number: 110694-49003
Right to Sue: Garcia / New Albertson's, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government code section 12960. This constitutes service of the complaint pursuant to Government Code Section 12962. The complainant has requested an authorization to file a lawsuit. This completed is not being investigated by the DFEH and is being closed immmediately. A copy of the closing letter and Right to Sue notice is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

This letter is for informational purposes only. No response to DFEH is requested or required.

Sincerely,

Department of Fair Employment and Housing

EXHIBIT____4
PAGE__216



STATE OF CALIFORNIA | Department of Fair Employment and Housing                                      EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

COMPLAINANT
Reyna Garcia

NAMED IS THE EMPLOYER, PERSON, AGENCY, ORGANIZATION OR GOVERNMENT ENTITY WHO DISCRIMINATED AGAINST ME

| RESPONDENT | ADDRESS | PHONE |
|---|---|---|
| New Alnertson`s, Inc. Paul Rowan | Executive Vice President General Counsel 250 E. Parkcenter Blvd. Boise ID 83706 | |

| AGENT FOR SERVICE | ADDRESS | PHONE |
|---|---|---|
| CT Corporation System | 818 West Seventh St.  Los Angeles CA 90017 | |

| NO. OF EMPLOYEES | MOST RECENT DISCRIMINATION TOOK PLACE | TYPE OF EMPLOYER |
|---|---|---|
| 0 | Apr 22; 2013 | Private Employer |

| CO-RESPONDENT(S) | ADDRESS |
|---|---|
| Legal Department SUPERVALU INC. | P.O. Box 20  Boise  ID 83726 |
| Charles Compston New Albertson`s Inc./SUPERVALUE INC. | 8200 El Camino Real  Atascadero  CA 93422 |
| Lauren Mosley New Albertson`s Inc./SUPERVALU INC. | 8200 El Camino Real  Atascadero  CA.93422 |

DATE FILED Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 1/3

EXHIBIT      4
PAGE   217



STATE OF CALIFORNIA I Department of Fair Employment and Housing                                                    EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

| | |
|---|---|
| I ALLEGE THAT I EXPERIENCED | Discrimination, Retaliation |
| ON OR BEFORE | Apr 22, 2013 |
| BECAUSE OF MY | Disability, Engagement in Protected Activity, Family Care or Medical Leave, Medical Condition - Including Cancer, Sex- Gender, Sex - Pregnancy |
| AS A RESULT, I WAS | Demoted, Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied family care or medical leave, Denied pregnancy leave, Denied reasonable accommodation, Denied reinstatement |

### STATEMENT OF FACTS

Reyna Galan Garcia is an employee at an Albertson's store located at 8200 El Camino Real in Atascadero, California. Ms. Garcia's employer failed to accommodate her pregnancy-related disabilities, which caused her to go into labor when she was twenty weeks pregnant and give birth to a baby girl who died approximately 10 minutes later. Albertson's also stripped Ms. Garcia of her managerial job duties when she returned from leave after her baby's death, and has now started disciplining her without cause. On the basis of these actions, which are detailed below, Ms. Garcia alleges that Albertson's has violated the California Fair Employment by discriminating against her based on sex, discriminating against her based on disability, failing to engage in an interactive process, failing to provide reasonable accommodations to Ms. Garcia during her pregnancy, and retaliating against Ms. Garcia for taking pregnancy disability leave. The following statement of facts details the facts and circumstances out of which this DFEH charge arises. A. Reyna Garcia's Employment with Albertson's Ms. Garcia began working at Albertson's in Paso Robles, California in November 2007 as a customer service clerk. A representative from Albertson's corporate office praised Ms. Garcia's job performance and encouraged her to apply for a management position, which she did. Because of her excellent work performance, Albertson's promoted Ms. Garcia to General Merchandise Manager in about November or December 2009, and Ms. Garcia transferred to the Albertson's store in Atascadero. Ms. Garcia's job duties as a General Merchandise Manager included all the duties of a regular store clerk, plus supervising other clerks, ordering merchandise, stocking store shelves, stocking merchandise above freezers using a ladder, and covering the Customer Service Front Desk as needed. The job is extremely physically demanding. Ms. Garcia is required to pull and push heavy pallets stacked with blue totes of merchandise that must be stocked and to lift heavy crates of merchandise on and off pallets. The pallets that must be pushed and pulled on a "6-wheeler" are comprised of several totes each weighing between 20 and 50 pounds. The totes are stacked high, requiring Ms. Garcia to frequently stretch up over her head and to bend over. Certain loads, such as those containing boxes of shampoo, charcoal, cat litter, and firewood are particularly heavy, requiring Ms. Garcia to lift while kneeling on her knees in a forward motion. The physical demands of the job are especially pronounced before major holidays when seasonal displays must be built and shipments of seasonal merchandise must be unloaded and stocked. Ms. Garcia initially had help from an assistant General Merchandise Clerk but, as detailed below, management transferred him to the night shift while she was pregnant. Ms. Garcia is an hourly employee who makes $15.32/hour and is eligible for quarterly discretionary bonuses, which she has earned at least three times during her employment with Albertson's based on store profits and meeting store goals. B. Management Ignores Ms. Garcia's First Request for a Pregnancy-Related Accommodation In about July 2012, Ms. Garcia became pregnant and began receiving prenatal care from an obstetrician. Her obstetrician grew concerned with the physical demands of Ms. Garcia's job at Albertson's and the implications for Ms. Garcia's pregnancy, particularly in light of Ms. Garcia's previous history of delivering a baby prematurely at 6 months' gestation. On about August 9, 2012, Ms. Garcia's obstetrician provided her with a note restricting her from lifting more than 15 pounds. Ms. Garcia presented the note to Store Director Charles "Marty" Compston and informed him that she needed an accommodation to do her job, and that she had a past history of pre-term delivery. Mr. Compston and Assistant Store Director Lauren Mosley ignored Ms. Garcia's request for an accommodation and instead increased her work load. Upon receiving Ms. Garcia's medical note in his private office, Mr. Comptson said, "I thought you said nothing was

EXHIBIT     4
PAGE     218

going to change?" Thereafter, Mr. Compston and Ms. Mosley reassigned Ms. Garcia's assistant General
Merchandise Clerk to a night shift position, which meant that for at least a week, Ms. Garcia had to do all of the
heavy pushing, pulling, and lifting alone. Albertson's hired a new General Merchandise Clerk, Samantha Brazil,
but she quit after a short time because the position was too strenuous. While Ms. Brazil was working with Ms.
Garcia, she took several days off, so Ms. Garcia was frequently left alone again, without an assistant to help with
the extreme physical demands of the job. After Ms. Brazil quit, Ms. Garcia went without an assistant for another 2
weeks. C. Management Ignores Ms. Garcia's Second Request for An Accommodation As a result of the heavy
pushing, pulling, and lifting, Ms. Garcia began to experience serious discomfort related to her pregnancy. A
regular part of her job was using a ladder, lifting while on a ladder, and stretching high above her head to stock
merchandise on top of freezers. Since she also frequently used to cover the Customer Service Front Desk, she
often had to climb on and off the ladder to go between her stocking and Customer Service duties. When Ms.
Garcia informed her doctor's office that her supervisor, Mr. Compston, continued to require her to engage in
strenuous physical activity, including climbing ladders, her doctor issued a second medical note, again restricting
her ability to lift heavy items and stating that she could not climb ladders. In case there was any confusion or
misunderstanding, the doctor's office also issued a Proof of Pregnancy letter for Ms. Garcia to provide to her
employer, confirming that Ms. Garcia was pregnant with an estimated due date of April 3, 2013. When Ms.
Garcia presented the second medical note and Proof of Pregnancy to Mr. Compston in his office, he once again
did nothing. Rather than engage in any kind of conversation about possible accommodations, Mr. Compston
rolled his eyes each time Ms. Garcia protested that she was unable to perform a specific job responsibility.
Because Ms. Garcia is a hard-working employee and she did not want to be fired, she continued to handle all
aspects of her job during her pregnancy, including pulling and pushing heavy pallets, climbing heavy totes, and
climbing ladders, because that is what her job required. On at least two occasions, Ms. Mosely asked Ms. Garcia
to stock the liquor department, a particularly demanding request because of the weight involved in pushing and
pulling pallets of liquor bottles and lifting cases of liquor off pallets for stocking. Nevertheless, Ms. Garcia dutifully
did what she was told. Ms. Garcia had additional meetings with management in an attempt to receive an
accommodation, and specifically suggested to Mr. Compston and Ms. Mosley various accommodations that
could be made to address her and her doctor's concerns, but she was ignored. For example, Ms. Garcia
suggested she could switch roles with the store clerk who cuts fruit for fruit platters all day. Ms. Garcia felt she
could have reasonably been accommodated by being temporarily moved to a Pharmacy Technician position, the
Customer Service Desk [especially because she frequently covered this position during the day anyway], the
Front Service Deli, Meat Counter, or Starbucks. Ms. Garcia would have also willingly accepted a temporary
position at another store in Paso Robles, Morro Bay, or San Luis Obispo, if one had been offered to her. Any of
these accommodations would have been reasonable without creating an "undue hardship" for Albertson's
because accommodations for pregnancy-related disabilities are relatively short in duration, and other disabled
employees have received similar accommodations. D. Management Ignores Ms. Garcia's Third Request for An
Accommodation Management's failure to accommodate Ms. Garcia's pregnancy-related disability caused her to
suffer pain, discomfort, anxiety, and extreme exhaustion. On about October 24, 2012, Ms. Garcia's doctor
issued a third note severely limiting Ms. Garcia's workplace duties on account of ongoing "work stress" and the
fact that "no accommodations [are] being made for her preg[nancy]." The medical records noted that Ms. Garcia
would need to be placed on disability pregnancy leave if the employer continued to refuse to make
accommodations. This time, when Ms. Garcia presented the third medical note to Mr. Compston upon returning
to work that same day, she did so at the front of the store in direct view of the overhead security camera. Once
again, Mr. Compston refused Ms. Garcia's request for an accommodation, and refused to engage in an
interactive discussion with Ms. Garcia about her pregnancy-related disability. E. Ms. Garcia Goes into Premature
Labor and Delivers Baby Girl Jade, Who Dies the Same Day Shortly after Mr. Compston ignored her third request
for accommodation, Ms. Garcia began to feel very ill at work. By this time, approximately early November 2012,
several of Ms. Garcia's co-workers began to comment that Ms. Garcia did not look well, and that she should
slow down. But because she had no other choice, Ms. Garcia kept working. One employee specifically recalls
seeing Ms. Garcia awkwardly climbing with her pregnant belly to load toys onto the seasonal holiday display. The
employee said to Ms. Garcia in Mr. Compston's presence "you shouldn't be lifting while you're pregnant." On
about November 11, 2012, Ms. Garcia felt extremely ill and began experiencing tremendous pelvic pressure. A
co-worker urged Ms. Garcia to leave and, out of desperation, Ms. Garcia did eventually leave work without
seeking permission because she was certain permission would be denied. She went home, tried to rest, woke in
sweats, and continued to feel exhausted. The next day, Ms. Garcia returned to work and explained her condition
to Mr. Compston and asked for permission to go home early. Mr. Compston denied her request, saying that the
store was expecting a visit from representatives of Albertson's corporate office. Mr. Compston always got very
stressed out when corporate visited. Ms. Garcia ended up working overtime that day and she spent a great deal
of the day pulling and pushing pallets and handling her regular heavy lifting responsibilities. When she returned
home on November 12, 2012, Ms. Garcia's amniotic sac began to bulge from between her legs. She was rushed
to the emergency room where the on-call doctor from Ms. Garcia's OB/GYN's practice met her. Eventually, Ms.
Garcia's water broke. At around 20-weeks gestation, the doctor initially thought that it might be possible for Ms.
Garcia's body to rebuild the amniotic sac. She remained hospitalized and was able to keep her baby alive for 3
days. On November 15, 2012, the doctor said that if her body was going to rebuild the water sac, it would have
done so by now. The amniotic sac was not repaired and the baby was now losing critical fluids. Ms. Garcia could

EXHIBIT____4
PAGE___219

feel a scratching sensation caused by the baby's finger and toe nails scratching her insides with hardly any fluid surrounding it. The baby was certainly brain damaged at this point, and Ms. García's doctor said it was time to let her go. On November 17, 2012, the doctor induced labor, and Ms. García delivered a baby girl named Jade who survived for no more than 10 minutes before dying. F. Retaliation against Ms. García Following Pregnancy Disability Leave After the delivery and death of her baby, Ms. García took about 6 weeks off from work. A nurse practitioner at her doctor's office suggested she take an additional month on account of her mental state after the delivery, but Ms. García insisted on returning to work because she couldn't afford to be without a pay check. When Ms. García returned to work on January 2, 2013, her department had been reconfigured and her job duties were different. Ms. García no longer had any ordering or supervisory responsibilities. When she met with management to find out why her job had been changed, the responsibilities of other managers had not changed, she was not given a direct answer. In fact, Mr. Compston told Ms. García that she should be happy that some of her work duties had been reduced, to which Ms. García's exclaimed "I lost my baby for this job! Why didn't you give me the help when I was pregnant and asked for it?" In addition to stripping her job duties, management has recently started disciplining Ms. García without cause. On or around March 17, 2013, Ms. Mosley [in Mr. Compston's presence], issued Ms. García a write-up because her department was not properly "faced," meaning that items were not facing the right way, or properly marked by signage, on the shelves. Ms. Mosely issued the write-up to Ms. García on the day that Ms. García returned from two days of time-off that Mr. Compston had pre-approved. There was simply no basis to discipline Ms. García for an issue that arose when she was not even present in the store, and, given the timing, it appears that management is retaliating against Ms. García for having exercised her rights under the law.

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 2/3

EXHIBIT____4
PAGE___220



STATE OF CALIFORNIA | Department of Fair Employment and Housing

EMPLOYMENT RIGHT TO SUE

## COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

DFEH MATTER NUMBER
110694-49003

SIGNED UNDER PENALTY OF PERJURY

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right to sue. I understand that if I want a federal right to sue notice, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure and Right to Sue," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

By submitting this complaint, I am declaring under penalty of perjury under the laws of the State of California that, to the best of my knowledge, all information contained in this complaint is true and correct, except matters stated on my information and belief, and I declare that those matters I believe to be true.

Verified by Rebecca Peterson-Fisher   and dated on April 22, 2013 at Atascadero, CA.

DATE FILED  Apr 22, 2013
MODIFIED    Apr 22, 2013

REVISED APRIL 2013
PAGE 3/3

EXHIBIT____4
PAGE___221

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| BALTODANO & BALTODANO LLP<br>Erica Flores Baltodano (SBN 222331)<br>Hernaldo J. Baltodano (SBN 222286)<br>1411 Marsh Street, Suite 102, San Luis Obispo, California 93401<br>TELEPHONE NO.: (805) 322-3412    FAX NO.: (805) 322-3413<br>ATTORNEY FOR *(Name):* Plaintiff Reyna Garcia | **FILED**<br><br>JUN 26 2013<br><br>SAN LUIS OBISPO SUPERIOR COURT<br>BY _____<br>M. Zepeda, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Luis Obispo
STREET ADDRESS: 1035 Palm Street, Room 385
MAILING ADDRESS: 1035 Palm Street, Room 385
CITY AND ZIP CODE: San Luis Obispo, CA  93408
BRANCH NAME: San Luis Obispo

CASE NAME:
Reyna Garcia v. New Albertson's, Inc., SuperValu, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: **CV   1 3 0 3 0 9** |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | ☐ Other collections (09)<br>☐ Insurance coverage (18) | ☐ Mass tort (40)<br>☐ Securities litigation (28) |
| ☐ Asbestos (04)<br>☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse<br>condemnation (14) | ☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08) | ☐ Other real property (26)<br>**Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13)<br>☐ Fraud (16) | ☐ Commercial (31)<br>☐ Residential (32) | **Miscellaneous Civil Complaint**<br>☐ RICO (27) |
| ☐ Intellectual property (19)<br>☐ Professional negligence (25) | ☐ Drugs (38)<br>**Judicial Review** | ☐ Other complaint *(not specified above)* (42) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | **Miscellaneous Civil Petition** |
| **Employment**<br>☐ Wrongful termination (36) | ☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02) | ☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
| ☑ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*  Five
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 26, 2013

Hernaldo J. Baltodano
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov*<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

EXHIBIT ____4
PAGE ____222

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

EXHIBIT____4
PAGE___223

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | |
|---|---|---|
| REYNA GARCIA | | CASE NUMBER |
| VS. | Plaintiff(s) | CV138157 |
| NEW ALBERTSON'S INC | | **Case Management Conference** |
| | Defendant(s) | |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo     CA  93401

## NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Jac Crawford, Paso Robles Br.** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed. **Defendants shall file responsive pleadings within 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1. The parties must appear for a first Case Management Conference on:
**October 30, 2013  at  9:00 am  in Paso Robles Branch - Dept. 2**
*THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
For information about telephone appearances call COURTCALL at (888) 882-6878

2. Each party must file & serve a Case Management Statement at least 15 days before the conference.
3. The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4. Trial will be set within the 11th or 12th month after the filing of the complaint. Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind. Continuances will be granted only on a clear showing of good cause.
5. All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6. Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.
***LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00. "Entered into arbitration" means the date upon which the administrator mails the arbitration list.
encs.3

EXHIBIT___4
PAGE___224

1   TRABER & VOORHEES
    Lauren Teukolsky [SBN 211381]
2   lt@tvlegal.com
    Rebecca Peterson-Fisher [SBN 255359]
3   rpf@tvlegal.com
    128 North Fair Oaks Avenue
4   Pasadena, California 91103
    Tel. (626) 585-9611
5   Fax (626) 585-1400

6   BALTODANO & BALTODANO LLP
    Hernaldo J. Baltodano [SBN 222286]
7   hjb@bbemploymentlaw.com
    Erica Flores Baltodano [SBN 222331]
8   efb@bbemploymentlaw.com
    1411 Marsh Street, Suite 102
9   San Luis Obispo, California 93401
    Tel. (805) 322-3412
10   Fax (805) 322-3413

11   Attorneys for Plaintiff
    REYNA GARCIA

12

**FILED**

**JUN 27 2013**

SAN LUIS OBISPO SUPERIOR COURT
BY: _____
    M. Landrum, Deputy Clerk

13         SUPERIOR COURT OF THE STATE OF CALIFORNIA

14               COUNTY OF SAN LUIS OBISPO

15

16   REYNA GARCIA,               CASE NO. CV138157

17                        Assigned to the Honorable Jac Crawford

18         Plaintiff,           **PLAINTIFF REYNA GARCIA'S**
                          **DECLARATION OF PREJUDICE UNDER**
19       v.                  **SECTION 170.6 OF THE CODE OF CIVIL**
                          **PROCEDURE**
20   NEW ALBERTSON'S, INC.; SUPERVALU,  **(PEREMPTORY CHALLENGE)**
    INC.; CHARLES COMPSTON, an
21   individual; LAUREN MOSLEY, an
    individual; and DOES 5-10, inclusive,
22

23         Defendants.

24

25   ///

26   ///

27

28

                                1

      DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT____4
PAGE___225

I, Reyna García, declare the following:

1. I am a party to the within action hereinafter called *Reyna Garcia v. New Albertson's, Inc. et al.* (Case No. CV130309).

2. The Honorable Jac Crawford, the Judge before whom the trial of the action is pending, is prejudiced against the Plaintiff or the interest of the Plaintiff so that Declarant cannot, or believes that she cannot, have a fair and impartial trial or hearing before such Judge.

3. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 11, 2013

Reyna García

2

DECLARATION OF PREJUDICE PURSUANT TO CCP SECTION 170.6

EXHIBIT___4
PAGE___226

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

*Civil Division*

*CERTIFICATE OF MAILING*

| REYNA GARCIA VS. NEW ALBERTSON'S INC | CV138157 |
|---|---|

Baltodano, Hernaldo J
*Attorney for Plaintiff*
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo    CA 93401

Teukolsky, Lauren
*Attorney for Plaintiff*
TRABER & VOORHEES
128 North Fair Oaks Avenue
Pasadena         CA 91103

*
*Attached Pleading:*
Notice of Reassignment and Resetting

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                                OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

SUSAN MATHERLY, Court Executive Officer

by _____, Deputy    Dated: JUN 2 3 2013 _____

EXHIBIT    4
PAGE   227

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
*Civil Division*

MINUTES

| | |
|---|---|
| REYNA GARCIA<br><br>VS.<br><br>NEW ALBERTSON'S INC | CV138157 |

Date: 06/27/13          Time:                    Room:
Judge: Hon. Martin J. Tangeman
Event Type: *Miscellaneous Minute Order(MISCMO)*

Clerk:  Kim Martin

Judge Crawford having been timely disqualified, the
above entitled action is hereby reassigned for all
purposes to Judge Tangeman.

The Case Management Conference of October 30, 2013 is
unset and reset for October 31, 3013 at 9:00 in
Department 1.

Plaintiff to give notice.

PAGE:    1                                    06/27/13  16:50:32

EXHIBIT___4
PAGE__228

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | CASE NUMBER |
|---|---|---|
| REYNA GARCIA | Plaintiff(s), | CV130309 |
| VS. | | |
| NEW ALBERTSON'S INC | Defendant(s). | Case Management Conference |

Baltodano, Hernaldo J
BALTODANO & BALTODANO LLP
1411 Marsh Street, Suite 102
San Luis Obispo     CA  93401

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Martin J. Tangeman** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice, the Standing Case Management Order of the judge assigned for all purposes and must file proofs of service within 60 days after the complaint is filed. **Defendants shall file responsive pleadings within 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1. The parties must appear for a first Case Management Conference on:
   **October 31, 2013  at  9:00 am  in Department 1**
   *THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
   For information about telephone appearances call COURTCALL at (888) 882-6878

2. Each party must file & serve a Case Management Statement at least 15 days before the conference.

3. The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.

4. Trial will be set within the 11th or 12th month after the filing of the complaint.  Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind.  Continuances will be granted only on a clear showing of good cause.

5. All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.

6. Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.

***LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00.  "Entered into arbitration" means the date upon which the administrator mails the arbitration list.

encs.3

EXHIBIT___4
PAGE___229

**SUPERIOR COURT, STATE OF CALIFORNIA**
**COUNTY OF SAN LUIS OBISPO**
Department 1

STANDING CASE MANAGEMENT ORDER
FOR CASES ASSIGNED TO THE HON. MARTIN J. TANGEMAN

---

**INSTRUCTIONS TO PLAINTIFF(S)/CROSS-COMPLAINANT(S):**

**YOU** shall serve a copy of this Standing Case Management Order on all Defendants/Cross-Defendants at the same time the complaint/cross-complaint is served.

---

## I.   GENERAL MATTERS

A.      It is the Court's policy to provide a dignified forum in which to resolve disputes in a peaceful, professional, legally correct and expeditious manner.  All of the following rules are designed to achieve these goals.  It is not the Court's intention to prohibit a party from raising any issue by any means allowed by Rule of Court, Code or statute.  If any of the rules or procedures discussed herein creates a problem, counsel should raise the matter with the Court at the earliest opportunity.

B.      Electronic communication with the courtroom clerk is permissible for routine communications having to do with scheduling, stipulated continuances, and/or joint requests.  Substantive arguments are not permitted unless approved by the Court.  In any correspondence with the clerk, opposing counsel should be copied in order to avoid ex-parte communications.  The clerk's email address is Erin.Brown@slo.courts.ca.gov.

C.      Counsel shall turn off all audible telephones and pagers and instruct their clients and witnesses to do so.  Communication devices worn on the head are not permitted in the courtroom.

## II.   CASE MANAGEMENT CONFERENCES ("CMC")

A.      Unless otherwise specifically ordered, CMC Statements are required.  The Court expects that counsel will be prepared to discuss the current status of the case, discovery, amenability to mediation, and any unusual factual, legal or evidentiary issues that may need resolution.  Counsel who fail to appear will typically be set for an OSC hearing why sanctions should not be issued.  The initial amount is ordinarily $150.00.

B.      Early mediation is strongly encouraged.  Good faith participation in mediation will ordinarily excuse participation in a Mandatory Settlement Conference.  The Court will typically sign an order to mediate at an early CMC.

C.      It is the Court's policy to resolve discovery disputes informally and efficiently.  Accordingly, the Court has instituted special procedures for the resolution of discovery disputes through Pretrial Discovery Conferences, which can be scheduled on forms that are available from the clerk's office (see section IV.C, below).

## III.   MEDIATION

A.      The parties are strongly encouraged to engage in early, meaningful mediation.  Mediation will ordinarily take place within 90-120 days of all parties' appearance, but a longer time may be allowed.  Either private or judical mediation is acceptable.

B.      Parties who select private mediation should comply with the mediator's instructions regarding briefing and payment of fees, which ordinarily should be divided equally.

---

EXHIBIT____4
PAGE___230

C.      A worthwhile mediation process means that parties, attorneys and any other person whose consent or authority is required to achieve a final disposition of the dispute shall be present, as well as a representative of any insurer who has authority to settle the case for any amount up to the limits of the policy.

D.      Plaintiff should file a one-page Notice of Mediation with the clerk's office notifying the Court of the date of the mediation and name of the mediator.

## IV.      LAW AND MOTION MATTERS

A.      To the extent practicable, the Court will post tentative rulings on law and motion matters on the Court's website no later than the evening before the hearing.   The Court's website is located at www.slocourts.net.

B.      When parties agree to submit the matter based on a tentative ruling, or to have a matter taken off calendar, counsel should promptly notify both the courtroom clerk and the research attorneys via e-mail or by phone.  This is important in order to avoid unnecessary commitment of judicial resources to moot matters.  The contact information for the research attorneys is SloCourtAttorneys@slo.courts.ca.gov .

C.      Resolution of Discovery Disputes

1.      The parties may stipulate to proceeding with an informal Pretrial Discovery Conference in lieu of filing and serving discovery motions under Sections 2016.010 through 2036.050.  In that event, the parties shall proceed as follows:

a.      All parties to the discovery dispute shall sign a written stipulation electing to resolve the specified discovery dispute(s) between them according to the procedure outlined in this section IV.C.  In such event, the parties stipulate to waive their right to proceed with regularly noticed motions and stipulate that the Court can issue binding discovery orders as a full and final resolution of such dispute(s).

b.      Any request for a Pretrial Discovery Conference must be filed with the clerk's office on the approved form (which is available online or can be requested from the clerk), must include a brief summary of the dispute, and must be served on opposing counsel in the same manner as the request is filed with the clerk.  Any opposition to a request for a Pretrial Discovery Conference must also be filed on an approved form (provided by the clerk), must include a brief summary of why the requested discovery should be denied, must be filed within two (2) business days of receipt of the request, and must be served on opposing counsel in the same manner as the opposition is filed with the clerk.

c.      No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.      The parties will be notified by minute order whether the request has been granted or denied and, if granted, the date and time of the Pretrial Discovery Conference.

e.      The Court will issue a binding order at the conclusion of the Pretrial Discovery Conference.

## V.      READINESS CONFERENCE

A.      These conferences are typically scheduled during the week before trial.  At these conferences, trial counsel should be *personally present*, and prepared to discuss at least the following topics:

1.      Estimated trial length. A jury trial will ordinarily be in session from Monday through Friday from 1:30 to 4:45 p.m., although trial days beginning at 10:00 a.m. are not uncommon.

2.      Number, timing and availability of witnesses, as well as any special witness needs, or the need to call witnesses out of order.

a.      Counsel have responsibility for arranging the appearance of all witnesses during their presentation of the case so as to eliminate delays.  Counsel should confer among themselves as to when witnesses will be needed *at least 24-48 hours in advance of a witness' testimony.*

---

EXHIBIT____4
PAGE___231

b.      Counsel are to inquire of their clients and witnesses to determine whether they are in need of any type of accommodation with an interpreter, under the Americans with Disabilities Act, or any other type of assistance.

3.      Numbering and exchange of exhibits. The parties are encouraged to agree upon a reasonable exhibit numbering system.   Exhibits to be used in the case-in-chief should be pre-marked and exchanged *no later than the morning of trial and earlier if feasible*. The use of exhibit books or binders is strongly encouraged

4.      Voir dire procedures, including mini-opening statements and preinstruction, and jury questionnaires. Counsel should attempt to agree upon a brief neutral statement of the case to be read to the prospective jury panel.

5.      Jury instructions and verdict forms.

a.      Counsel are to deliver all proposed instructions, verdict forms and requests for special findings to the Court and to opposing counsel *no later than the morning of trial*. Proposed instructions shall be complete in all respects without unfilled "blanks" or "bracketed" portions.

b.      Either before or shortly after trial starts, counsel are to meet and confer with the goal of reducing the amount of contested jury instructions and disagreement as to the form of the verdict.  Within two (2) court days after beginning trial, all counsel should notify the Court in writing as to which of the proposed instructions, and which sections of the verdict form, are acceptable to all parties, and which are disputed.

6.      Stipulations to reduce the length of trial. Counsel should consult with each other regarding all possible stipulations and reduce them to writing. In particular, counsel should consider waiving the necessity for authentication/foundational evidence regarding all trial exhibits, unless authentication is an important issue

7.      Motions in limine.  Prior to hearings on motions in limine, counsel should review *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669-677, and its progeny.  Counsel should advise their clients and witnesses about rulings on motions in limine that pertain to evidentiary issues.  Counsel will be held responsible for any violations of rulings on motions in limine.

## VI.   TRIAL

A.      The Court will typically hear organizational and scheduling matters, procedural issues and in limine motions at the beginning of trial, including any matters left over or continued from the Readiness Conference.

1.      Originals of all depositions to be used in the trial are to be lodged with the clerk at the beginning of trial. At the end of the trial, these depositions can be picked up from the clerk, or they can be returned by mail at the party's expense.

B.      Jury Selection Procedures

1.      Jury selection ordinarily begins at 1:30 p.m. the first day of trial.

2.      Mini opening statements of no more than 3 minutes per side are encouraged prior to jury selection.

3.      After the entire panel is screened for hardship, eighteen names are drawn at random, and voir dire is conducted.  Unless otherwise ordered, a time limit of thirty minutes per side for 18 prospective jurors will apply.

4.      Challenges for cause are exercised and ruled upon at sidebar. Upon request, counsel will be given the opportunity to make a record of any unreported sidebar conference once the jury is not present.

5.      At least two alternate jurors are typically selected.  If it becomes necessary to substitute an alternate juror, the first alternate chosen will be the first substitute.

6.      Trial Procedures

EXHIBIT____4
PAGE___232

a.      No charts, diagrams or other exhibits should be shown or read aloud to the jury unless by stipulation or after admission of the item into evidence.

b.      Counsel should provide hard copies of any power point presentations, audio or video recordings and the like to opposing counsel in advance of showing them to the jury

c.      If counsel will seek to introduce an audio recording (or audio portion of a video recording), please review California Rule of Court 2.1040.

d.      Marking documents out of files: Please review *Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 923-924.

e.      Any object that cannot be folded into 8½" x 11" such as models, blowups, etc. should be accompanied by either a photograph or a photocopy to be retained by the Court in lieu of the oversized exhibit.

f.      When objections are made, counsel should state only the legal basis, without speaking objections.

g.      Sidebar conferences are normally held off the record.  Counsel may make a record of any unreported sidebar conference at an appropriate opportunity in the proceedings.  During trial, if counsel wish to place matters on the record, he or she may so request and the Court will provide an opportunity to do so, ordinarily at the end of the trial day once the jury has been excused.

7.      Post-Trial Procedures

a.      After the verdict is rendered by the jury, the prevailing party is expected to prepare the judgment, which should be submitted on the next Court day following trial unless otherwise ordered.

b.      Counsel should make arrangements with the clerk to withdraw exhibits in cases that will not be appealed.  The clerk will hold the exhibits for sixty days after the filing of the notice of entry of judgment.  Any exhibits remaining after that time will be destroyed unless a notice of appeal is filed.

DATED: November 13, 2012

_____
HON. MARTIN J. TANGEMAN
*Judge of the Superior Court*
*County of San Luis Obispo*

w:\clerk\kim\MJTCMO.doc Rev 11/13/12

EXHIBIT____4
PAGE___233

# SAN LUIS OBISPO COUNTY SUPERIOR COURT

*"The mission of the court is to resolve disputes in a fair, just and efficient manner and to interpret and apply the law consistently, impartially and independently."*

## CIVIL CASE MANAGEMENT POLICY

All civil actions except those exempted by San Luis Obispo Court Rule 9.02 will be assigned to one judge for all purposes. All cases subject to these rules will be managed in a manner that will meet the case-disposition goals of the Standards of Judicial Administration Sections 2.1 and 2.3. Chapter 9 of the San Luis Obispo County Superior Court Rules describes the policies and procedures of the court for the management of litigated civil disputes. Parties shall be familiar with the rules.

Plaintiff shall serve the documents listed below at the same time the complaint is served. Plaintiff shall serve each of the defendants and file a proof of service within 60 days after the complaint is filed. Documents that must be served with a copy of the complaint include:

1. A copy of the Notice of Case Management Conference;
2. A copy of this Civil Case Management Policy statement;
3. A copy of the Court's Alternative Dispute Resolution Policy Statement
4. A blank Case Management Statement
5. A blank Stipulation to Alternative Dispute Resolution.

The first Case Management Conference will be held approximately 150 days after the complaint is filed. The clerk will enter the date of the conference on Notice of First Case Management Conference when the complaint is filed. **The case will be assigned a trial date in the 12th month after the complaint is filed unless the circumstances and the interests of justice require a different trial date.**

**Please note:** Failure to comply with the court's case management rules and policies will result in the issuance of an OSC and the imposition of monetary and other sanctions.

### Alternative Dispute Resolution Policy

The San Luis Obispo Superior Court recognizes that civil litigation can be time consuming and expensive. Delay rarely serves anyone's interests. It often imposes intolerable social and economic burdens on the parties and the court. It is the policy of the court to achieve a disposition of all litigation at the earliest date consistent with a fair and just resolution of the dispute.

Nearly all cases are resolved without trial. Many settlements are achieved only after significant amounts of time and money have been spent on pre-trial procedures and investigation. It is the goal of the San Luis Obispo County Superior Court to produce a fair and just settlement of the dispute early in the process. To achieve this goal, it is the policy of the San Luis Obispo Superior Court to encourage the parties to pursue alternative methods of dispute resolution as early in the process as possible. All cases will be assessed at the first Case Management Conference to determine which method of ADR is most likely to achieve an early resolution.

Alternative Dispute Resolution is more thoroughly explained in the form Alternative Dispute Resolution Policy Statement. It is the obligation of counsel to review the alternatives to trial with their clients and to provide them with a copy of the form.

CVDC01
Rev 07/01/02
Mandatory

CIVIL CASE MANAGEMENT POLICY

SLO Rule 9.11.1

www.slocourts.net

EXHIBIT___4
PAGE___234

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|

TELEPHONE NO.:                     FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:                     Time:                     Dept.:          Div.:          Room:
Address of court *(if different from the address above)*:

☐ **Notice of Intent to Appear by Telephone,** by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint   *(Describe, including causes of action)*:

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Page 1 of 5<br>Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |
|---|---|---|

EXHIBIT    4
PAGE   235

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:                                    f.  Fax number:
e.  E-mail address:                                        g.  Party represented:
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

---

CM-110 [Rev. July 1, 2011]                    **CASE MANAGEMENT STATEMENT**                    Page 2 of 5

EXHIBIT ___4___
PAGE ___236___

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form **are willing** to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

**CASE MANAGEMENT STATEMENT**

EXHIBIT____4
PAGE___237

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
   ☐ Bankruptcy ☐ Other *(specify):*
   Status:

**13. Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110 [Rev. July 1, 2011]          **CASE MANAGEMENT STATEMENT**          Page 4 of 5

EXHIBIT___4
PAGE___238

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other Issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20.** Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____    ▶ _____
(TYPE OR PRINT NAME)                       (SIGNATURE OF PARTY OR ATTORNEY)

_____    ▶ _____
(TYPE OR PRINT NAME)                       (SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached.

EXHIBIT _____4
PAGE _____239

## ALTERNATIVE DISPUTE RESOLUTION POLICY STATEMENT

### WAYS TO RESOLVE YOUR DISPUTE WITHOUT A TRIAL
Presented by the San Luis Obispo County Superior Court

The mission of your Superior Court is to resolve civil disputes fairly and efficiently. It is the court's policy to encourage persons involved in a lawsuit to consider methods other than a trial to resolve their disputes.

Did you know that 95% of all cases filed in court do not go to trial? Most cases are settled or decided in some other way. In fact, methods of settling disputes that do not require a trial have become the first choice of most businesses, government agencies and unions. Agreements to mediate or arbitrate disputes are now commonly found in contracts covering employment, medical care, banking and insurance.

Alternative Dispute Resolution is a catch-all term that refers to the ways other than a trial that can be used to resolve the dispute you brought to the courthouse. These options are typically less formal than trial and many provide opportunities to reach an agreement through a problem-solving approach rather than the adversarial approach of a trial. ADR can save time, reduce costs and increase your overall satisfaction with the outcome.

### THE ADVANTAGES OF ADR

**Reduce Legal Costs:** Nearly all cases are resolved without a trial. If a settlement is likely anyway, wouldn't it be better to save attorneys fees, court costs and experts fees by settling early? In a recent survey, two thirds said they saved money by using ADR.

**Reduce The Time Spent on the Dispute:** A dispute can usually be decided or settled much sooner by using ADR. It is almost always less expensive.

**Increase Control Over the Result:** Some methods of ADR allow the parties to fashion creative resolutions that are not available in a trial. Other ADR methods permit the parties to entrust a decision about the dispute to an expert in a particular field instead of to a judge or a jury without the same experience or knowledge. And in ADR, both the dispute and its resolution can remain confidential.

**Preserve Relationships:** ADR is generally a less adversarial and hostile forum for dispute resolution than a trial. An experienced mediator or arbitrator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction:** In ADR, the parties usually have a better chance to tell their side of the story than they do in trial. This increases the likelihood the case will settle as well as the parties' overall satisfaction with the outcome.

**Improve Attorney-Client Relationships:** Attorneys may benefit from ADR by being seen as problem-solvers instead of as aggressive advocates. Quick, cost-effective results are likely to produce repeat and new business from clients and their friends and associates.

### WHAT ARE THE ADR OPTIONS?

#### MEDIATION

In mediation, an independent, neutral person called a mediator helps the parties reach a mutually acceptable resolution of their dispute. The mediator does not decide the dispute but is trained to help the parties communicate so they can settle the dispute on terms they design themselves.

If mediation does not result in a settlement, the case is returned to court. And if the case goes to trial, there are laws that protect the confidentiality of the things discussed during mediation.

**Advantages:** Mediation leaves control of the outcome with the parties. It may be a particularly effective tool when the

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT____4
PAGE___240

parties have a continuing relationship to consider such as persons who work together, are neighbors or are members of the same family. Mediation is also effective where emotions are blocking a resolution. An effective neutral mediator can hear the parties out and help them communicate with each other in an effective and non-destructive manner.

**Disadvantages**: Mediation may be ineffective if one of the parties will not cooperate or is unwilling to compromise. And it may not be a good choice if the history of the parties includes abuse or victimization. Mediation may not produce a satisfactory resolution of the dispute if one of the parties has a significant advantage in power or rank than cannot be neutralized by the mediator.

## ARBITRATION

In arbitration, an independent, neutral person called an arbitrator decides what the outcome of the dispute will be. Each side presents evidence supporting its case in a setting that is more informal than a trial. Rules of evidence are relaxed.

Arbitration may be either binding or non-binding. Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's award as final. Generally, there is no right to appeal an arbitrator's final decision. Non-binding arbitration means that the parties are free to request a trial by a judge or a jury if they are unwilling to accept the arbitrator's findings and award.

**Advantages**: Arbitration is informal and usually less expensive than a trial. If the dispute involves a particularly complex matter, the parties can select an arbitrator who has training or experience in the subject matter of the dispute. If the dispute is not complex, the parties may simply wish to avoid the expense of a trial

**Disadvantages**: Generally, there is no appeal from a arbitrator's finding or award even if it is not supported by the evidence or the law. If a party to a non-binding arbitration requests a trial, there may be penalties for failing to achieve a better result.

## NEUTRAL EVALUATION

In early neutral evaluation, the parties employ an expert in the subject matter of the dispute and ask him or her to give them an opinion about how the dispute ought to be resolved. The expert's opinion is not binding and the parties use it to negotiate a resolution of the dispute.

**Advantages**: Neutral evaluation can produce early, creative settlements. If the parties are willing to listen and to compromise, the opinion of an expert they mutually select can provide a solid foundation for a long-lasting agreement.

**Disadvantages**: An expert can be expensive. The parties usually agree that neither the expert nor his or her opinion can be used in a trial if they cannot agree.

## COURT-SUPERVISED SETTLEMENT CONFERENCE

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a court-supervised settlement conference officer. The settlement conference judge or officer does not make a decision that is binding upon the parties. The judge or settlement officer helps the parties evaluate the case and to make decisions about settlement.

**Advantages**: A mandatory settlement conference gives the parties an opportunity before trial to negotiate a settlement in light of what they learned investigating the case and through discovery. The opinion of a settlement judge about the most likely outcome may inspire the parties to reevaluate their positions.

**Disadvantages**: A mandatory settlement conference is usually late in the life of a litigated dispute. It comes only after time and money has been spent preparing for trial. The parties' positions may have been hardened by what they have been through and they may be less willing to compromise.

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

EXHIBIT___4
PAGE___241

| | | FOR COURT USE ONLY |
|---|---|---|
| **SUPERIOR COURT OF SAN LUIS OBISPO COUNTY** | | |

☐ **San Luis Obispo Branch,** 1035 Palm Street, Rm 385, San Luis Obispo, CA 93408
☐ **Grover Beach Branch,** 214 South 16th Street, Grover Beach, CA 93433
☐ **Paso Robles Branch,** 901 Park Street, Paso Robles, CA 93446

Plaintiff:

Defendant:

| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 201.9)** | CASE NUMBER: |
|---|---|
| | Judge |

The parties and their attorneys hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Mediation                                    ☐ Neutral Case Evaluation

☐ Binding Judicial Arbitration                 ☐ Binding Private Arbitration

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to close 15 days before arbitration under CRC, rule 1612)

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to remain open until 30 days before trial: order required under CRC, rule 1612)

☐ Other

It is also stipulated that the arbitrator, mediator or other neutral shall be:

Name:

Date:                                          Date:

Name of Plaintiff                              Name of Defendant

_____                        _____
Signature                                      Signature

Name of Plaintiff's Attorney                   Name of Defendant's Attorney

_____                        _____
Signature                                      Signature

(Attach another sheet if additional names are necessary)
It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, rule 225.

**IT IS SO ORDERED. IT IS ALSO ORDERED** that no new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

Date:                                  _____
                                       JUDGE OF THE SUPERIOR COURT

CVDC05
Rev. 08/01/2009
Optional

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

SLO Local Rule 9.11 4

Martin Dean's
ESSENTIAL FORMS™

EXHIBIT____4
PAGE____242

EXHIBIT 5

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 | |

TELEPHONE NO.: (626) 585-9611   FAX NO. (Optional): (626) 585-1400
E-MAIL ADDRESS (Optional): lt@tvlegal.com; rpf@tvlegal.com
ATTORNEY FOR (Name): Reyna Garcia

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO (insert name of party being served): New Albertson's, Inc.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. [✓] A copy of the summons and of the complaint.
2. [✓] Other (specify):

   See Attachment A

---

(To be completed by recipient):

Date this form is signed: August 5, 2013
John R. Carrigan, Jr.
Attorney for NEW ALBERTSONS, INC.
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for
NEW ALBERTSONS, INC.

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT    5
PAGE    243

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____5
PAGE___244

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359,<br>TRABER & VOORHEES<br>128 N. Fair Oaks Ave.<br>Pasadena, CA 91103<br>TELEPHONE NO: (626) 585-9611     FAX NO. *(Optional)*: (626) 585-1400<br>E-MAIL ADDRESS *(Optional)*: lt@tvlegal.com; rpf@tvlegal.com<br>ATTORNEY FOR *(Name)*: Reyna Garcia | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CV138157 |
|---|---|

TO *(insert name of party being served)*: SuperValu, Inc.

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify)*:
   See Attachment A

*(To be completed by recipient):*

Date this form is signed: August 5, 2013

John R. Carrigan, Jr.
Attorney for SuperValu, Inc.
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for
SuperValu, Inc.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

EXHIBIT      5
PAGE    245

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____5
PAGE___246

POS-015

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359,
TRABER & VOORHEES
128 N. Fair Oaks Ave.
Pasadena, CA 91103
TELEPHONE NO: (626) 585-9611   FAX NO. *(Optional):* (626) 585-1400
E-MAIL ADDRESS *(Optional):* lt@tvlegal.com; rpf@tvlegal.com
ATTORNEY FOR *(Name):* Reyna Garcia

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO *(insert name of party being served):* Charles Compston, an individual

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ (626) 521-9151
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*
   See Attachment A

*(To be completed by recipient):*

Date this form is signed: August 5, 2013
John R. Carrigan, Jr.
Attorney for Charles Compston
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for
Charles Compston

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT    5
PAGE    247

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____5
PAGE___248

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lauren Teukolsky, SBN 211381, Rebecca Peterson-Fisher, SBN 355359, TRABER & VOORHEES 128 N. Fair Oaks Ave. Pasadena, CA 91103 TELEPHONE NO.: (626) 585-9611       FAX NO. *(Optional):* (626) 585-1400 E-MAIL ADDRESS *(Optional):* lt@tvlegal.com; rpf@tvlegal.com ATTORNEY FOR *(Name):* Reyna Garcia | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Luis Obispo
STREET ADDRESS: 1035 Palm Street Room 385
MAILING ADDRESS: 1035 Palm Street Room 385
CITY AND ZIP CODE: San Luis Obispo, CA 93408
BRANCH NAME: San Luis Obispo Superior Court

PLAINTIFF/PETITIONER: Reyna Garcia

DEFENDANT/RESPONDENT: New Albertson's, Inc. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CV138157 |
|---|---|

TO *(insert name of party being served):* Lauren Mosley, an individual

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 16, 2013

Carolyn Slaughter
_____
(TYPE OR PRINT NAME)

▶ *(signature)* (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

---

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*

    See Attachment A

*(To be completed by recipient):*

Date this form is signed: August 5, 2013
John R. Carrigan, Jr.
Attorney for Lauren Mosley
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ *(signature)* (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for
Lauren Mosley

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT      5
PAGE      249

Attachment A

1) Civil Case Cover Sheet
2) Notice of Assignment and Case Management Conference (Hon. Jac Crawford)
3) Plaintiff Reyna Garcia's Declaration of Prejudice Under Section 170.6 of the Code of Civil Procedure (Peremptory Challenge)
4) Notice of Reassignment and Resetting (6/27/2013 Miscellaneous Minute Order)
5) Notice of Assignment and Case Management Conference (Hon. Martin J. Tangeman)
6) Standing Case Management Order For Cases Assigned to the Hon. Martin J. Tangeman
7) Civil Case Management Policy
8) Case Management Statement (blank)
9) Alternative Dispute Resolution Policy Statement
10) Stipulation to Alternative Dispute Resolution (blank)

EXHIBIT____5
PAGE___250

EXHIBIT 6

1  NAOMI YOUNG (SBN 63768)
   youngn@ballardspahr.com
2  JOHN R. CARRIGAN, JR. (SBN 217534)
   carriganj@ballardspahr.com
3  ETHAN CHERNIN (SBN 273906)
   chernine@ballardspahr.com
4  **BALLARD SPAHR LLP**
   2029 Century Park East, Suite 800
5  Los Angeles, CA 90067-2909
   Telephone: 424.204.4400
6  Facsimile: 424.204.4350

7  Attorneys for Defendant New Albertsons, Inc.

**FILED**

AUG 12 2013

SAN LUIS OBISPO SUPERIOR COURT
BY _____
L. LeMay, Deputy Clerk

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF SAN LUIS OBISPO

10

11  REYNA GARCIA,                      CASE NO. CV 138157   **BY FAX**

12              Plaintiff,             [Assigned for all purposes to Honorable
                                       Martin J. Tangeman, Department 1]
13       v.
                                       **ANSWER OF DEFENDANT NEW**
14  NEW ALBERTSON'S, INC.; SUPERVALU,  **ALBERTSONS, INC. TO PLAINTIFF**
    INC.; CHARLES COMPSTON, an individual; **REYNA GARCIA'S COMPLAINT FOR**
15  LAUREN MOSLEY, an individual; and DOES **DAMAGES**
    5-10, inclusive,
16                                     Action Filed:    June 26, 2013
17              Defendants.            Trial Date:      None set

18

19       Defendant New Albertsons, Inc. (hereafter "Defendant"), for itself and itself alone, hereby

20  answers Plaintiff Reyna Garcia's ("Plaintiff") Complaint for Damages filed on June 26, 2013 (the

21  "Complaint") as follows:

22       Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies

23  generally each and every allegation contained in the Complaint and further denies that Plaintiff has

24  sustained any harm, injury, damage or loss in any amount or manner whatsoever by reason of any

25  act or omission of Defendant, and further denies that Plaintiff is entitled to any legal or equitable

26  relief in any amount or manner whatsoever from Defendant.

27

28

DMWEST #10096686 v2

ANSWER OF DEFENDANT NEW ALBERTSONS, INC. TO
PLAINTIFF REYNA GARCIA'S COMPLAINT FOR DAMAGES

EXHIBIT____6
PAGE___251

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the Complaint, and each purported cause of action therein, Defendant alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

### TO THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

(Failure to State a Cause of Action)

1.      Defendant alleges that each of the first, second, third, fourth and fifth causes of action in the Complaint fails to state facts sufficient to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### TO THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

(Failure to Mitigate Damages)

2.      Defendant alleges on information and belief, as to the first, second, third, fourth and fifth causes of action in the Complaint, that Plaintiff has failed to mitigate her alleged damages and, therefore, is barred from recovery, in whole or in part.

### THIRD AFFIRMATIVE DEFENSE

### TO THE FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION

(Failure to Exhaust and Satisfy Prerequisites to Filing)

3.      Defendant alleges that each of the first, second, third and fourth causes of action in the Complaint is barred, in whole or in part, on the ground that Plaintiff failed to satisfy one or more of the procedural and/or jurisdictional prerequisites to filing suit, including, without limitation, the procedural requirements set forth in California Government Code Section 12940 *et seq.*

1

<u>**FOURTH AFFIRMATIVE DEFENSE**</u>

2

<u>**TO THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION**</u>

3

(Avoidable Consequences)

4

    4.    Defendant alleges that Plaintiff's right to recover under the first, second, third,

5

fourth and fifth causes of action in the Complaint is barred, in whole or in part, by the avoidable

6

consequences doctrine.

7

<u>**FIFTH AFFIRMATIVE DEFENSE**</u>

8

<u>**TO THE FIFTH CAUSE OF ACTION**</u>

9

(Workers' Compensation Preemption)

10

    5.    Defendant alleges that the fifth cause of action in the Complaint is barred, in whole

11

or in part, on the ground that it is preempted by the exclusive remedy provisions of the California

12

Workers' Compensation Act, Cal. Labor Code Section 3200 *et seq.*

13

    **WHEREFORE**, Defendant prays for judgment as follows:

14

    1.    That Plaintiff take nothing by way of her Complaint, and that the Complaint be

15

dismissed in its entirety with prejudice;

16

    2.    That Defendant be awarded its costs of suit, including attorneys' fees, incurred

17

herein; and

18

    3.    For such other and further relief as the Court deems just and proper.

19

DATED:  August 12, 2013

                NAOMI YOUNG

20

                JOHN R. CARRIGAN
ETHAN CHERNIN

21

                **BALLARD SPAHR LLP**

22

                By:

23

                          JOHN R. CARRIGAN, JR.

24

                Attorneys for Defendant New Albertsons, Inc.

25

26

27

28

EXHIBIT____6
PAGE___253

<u>**PROOF OF SERVICE**</u>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is **BALLARD SPAHR LLP**, 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909. On **August 12, 2013**, I served the within document(s): **ANSWER OF DEFENDANT NEW ALBERTSONS, INC. TO PLAINTIFF REYNA GARCIA'S COMPLAINT FOR DAMAGES**

☐   **BY FAX**: by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   **BY HAND:** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☑   **BY MAIL**: by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐   **BY E-MAIL**: by attaching an electronic copy of the document(s) listed above to the e-mail address listed below.

☐   **BY OVERNIGHT MAIL**: by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐   **BY PERSONAL DELIVERY**: by causing personal delivery by First Legal Support Services of the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Lauren Teukolsky, Esq. | Hernaldo J. Baltodano, Esq. |
| lt@tvlegal.com | hjb@bbemploymentlaw.com |
| Rebecca Peterson-Fisher, Esq. | Erica Flores Baltodano, Esq. |
| rpf@tvlegal.com | efb@bbemploymentlaw.com |
| Traber & Voorhees | Baltodano & Baltodano LLP |
| 128 North Fair Oaks Avenue | 1411 Marsh Street, Suite 102 |
| Pasadena, California 91103 | San Luis Obispo, California 93401 |
| Telephone: 626-585-9611 | Telephone: 805-322-3412 |
| Facsimile: 626-585-1400 | Facsimile: 805-322-3413 |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **August 12, 2013**, at Los Angeles, California.

_____
Kristine Nakashima

DMWEST #10096686 v2

EXHIBIT____6
PAGE__254

FILED

AUG 12 2013

SAN LUIS OBISPO SUPERIOR COURT
BY _____
L. LeMay, Deputy Clerk

1  NAOMI YOUNG (SBN 63768)
   youngn@ballardspahr.com
2  JOHN R. CARRIGAN, JR. (SBN 217534)
   carriganj@ballardspahr.com
3  ETHAN CHERNIN (SBN 273906)
   chernine@ballardspahr.com
4  **BALLARD SPAHR LLP**
   2029 Century Park East, Suite 800
5  Los Angeles, CA 90067-2909
   Telephone: 424.204.4400
6  Facsimile: 424.204.4350

7  Attorneys for Defendant SUPERVALU Inc.

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF SAN LUIS OBISPO

10

11 REYNA GARCIA,                        CASE NO. CV 138157    BY FAX

12              Plaintiff,              [Assigned for all purposes to Honorable
                                        Martin J. Tangeman, Department 1]
13      v.
                                        **ANSWER OF DEFENDANT**
14 NEW ALBERTSON'S, INC.; SUPERVALU,    **SUPERVALU INC. TO PLAINTIFF**
   INC.; CHARLES COMPSTON, an individual; **REYNA GARCIA'S COMPLAINT FOR**
15 LAUREN MOSLEY, an individual; and DOES **DAMAGES**
   5-10, inclusive,
16
                                        Action Filed:    June 26, 2013
17              Defendants.             Trial Date:      None set

18

19      Defendant SUPERVALU Inc. (hereafter "Defendant"), for itself and itself alone, hereby

20 answers Plaintiff Reyna Garcia's ("Plaintiff") Complaint for Damages filed on June 26, 2013 (the

21 "Complaint") as follows:

22      Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies

23 generally each and every allegation contained in the Complaint and further denies that Plaintiff has

24 sustained any harm, injury, damage or loss in any amount or manner whatsoever by reason of any

25 act or omission of Defendant, and further denies that Plaintiff is entitled to any legal or equitable

26 relief in any amount or manner whatsoever from Defendant.

27

28

DMWEST #10102949 v1

ANSWER OF DEFENDANT SUPERVALU INC. TO
PLAINTIFF REYNA GARCIA'S COMPLAINT FOR DAMAGES

EXHIBIT_____6
PAGE___255

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the Complaint, and each purported cause of action therein, Defendant alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

### TO THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

(Failure to State a Cause of Action)

1.    Defendant alleges that each of the first, second, third, fourth and fifth causes of action in the Complaint fails to state facts sufficient to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### TO THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

(Failure to Mitigate Damages)

2.    Defendant alleges on information and belief, as to each of the first, second, third, fourth and fifth causes of action in the Complaint, that Plaintiff has failed to mitigate her alleged damages and, therefore, is barred from recovery, in whole or in part.

### THIRD AFFIRMATIVE DEFENSE

### TO THE FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION

(Failure to Exhaust and Satisfy Prerequisites to Filing)

3.    Defendant alleges that each of the first, second, third and fourth causes of action in the Complaint is barred, in whole or in part, on the ground that Plaintiff failed to satisfy one or more of the procedural and/or jurisdictional prerequisites to filing suit, including, without limitation, the procedural requirements set forth in California Government Code Section 12940 *et seq.*

EXHIBIT____  6
PAGE__ 256

## FOURTH AFFIRMATIVE DEFENSE

## TO THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

(Avoidable Consequences)

4.     Defendant alleges that Plaintiff's recovery as to each of the first, second, third, fourth and fifth causes of action in the Complaint is barred, in whole or in part, by the avoidable consequences doctrine.

## FIFTH AFFIRMATIVE DEFENSE

## TO THE FIFTH CAUSE OF ACTION

(Workers' Compensation Preemption)

5.     Defendant alleges that the fifth cause of action in the Complaint is barred, in whole or in part, on the ground that it is preempted by the exclusive remedy provisions of the California Workers' Compensation Act, Cal. Labor Code Section 3200 *et seq.*

**WHEREFORE**, Defendant prays for judgment as follows:

1.     That Plaintiff take nothing by way of her Complaint, and that the Complaint be dismissed in its entirety with prejudice;

2.     That Defendant be awarded its costs of suit, including attorneys' fees, incurred herein; and

3.     For such other and further relief as the Court deems just and proper.

DATED:  August 12, 2013

NAOMI YOUNG
JOHN R. CARRIGAN
ETHAN CHERNIN
**BALLARD SPAHR LLP**

By: _____
        JOHN R. CARRIGAN, JR.

Attorneys for Defendant SUPERVALU Inc.

DMWEST #10102949 v1

3

ANSWER OF DEFENDANT SUPERVALU INC. TO
PLAINTIFF REYNA GARCIA'S COMPLAINT FOR DAMAGES

EXHIBIT___6
PAGE___257

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is BALLARD SPAHR LLP, 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909.  On **August 12, 2013,** I served the within document(s): **ANSWER OF DEFENDANT SUPERVALU INC. TO PLAINTIFF REYNA GARCIA'S COMPLAINT FOR DAMAGES**

☐  **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐  **BY HAND:** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☑  **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐  **BY E-MAIL:** by attaching an electronic copy of the document(s) listed above to the e-mail address listed below.

☐  **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐  **BY PERSONAL DELIVERY:** by causing personal delivery by First Legal Support Services of the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Lauren Teukolsky, Esq. | Hernaldo J. Baltodano, Esq. |
| lt@tvlegal.com | hjb@bbemploymentlaw.com |
| Rebecca Peterson-Fisher, Esq. | Erica Flores Baltodano, Esq. |
| rpf@tvlegal.com | efb@bbemploymentlaw.com |
| Traber & Voorhees | Baltodano & Baltodano LLP |
| 128 North Fair Oaks Avenue | 1411 Marsh Street, Suite 102 |
| Pasadena, California 91103 | San Luis Obispo, California 93401 |
| Telephone: 626-585-9611 | Telephone: 805-322-3412 |
| Facsimile: 626-585-1400 | Facsimile: 805-322-3413 |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **August 12, 2013,** at Los Angeles, California.

_Kristine Nakashima_
Kristine Nakashima

EXHIBIT___6
PAGE___258

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is BALLARD SPAHR LLP, 2029 Century Park East, Suite 800, Los Angeles, California 90067.

On August 14, 2013, I served the foregoing document(s) described as **NOTICE OF REMOVAL OF CIVIL STATE COURT ACTION UNDER 28 U.S.C. § 1332 (DIVERSITY)** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Lauren Teukolsky, Esq.
lt@tvlegal.com
Rebecca Peterson-Fisher, Esq.
rpf@tvlegal.com
Traber & Voorhees
128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone: 626-585-9611
Facsimile: 626-585-1400

Hernaldo J. Baltodano, Esq.
hjb@bbemploymentlaw.com
Erica Flores Baltodano, Esq.
efb@bbemploymentlaw.com
Baltodano & Baltodano LLP
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Telephone: 805-322-3412
Facsimile: 805-322-3413

[X]  **BY MAIL**: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[ ]  **BY PERSONAL SERVICE**: I caused such envelope to be delivered by an employee of First Legal Support Services.

[ ]  **BY ELECTRONIC TRANSMISSION**: I transmitted a PDF version of this document by electronic mail to the party(s) identified above using the email address(es) indicated.

[ ]  **BY OVERNIGHT DELIVERY**: I deposited such envelope for collection and delivery by Federal Express, with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express. They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

[X]  (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 14, 2013, at Los Angeles, California.

Kristine Nakashima

DMWEST #10119827 v1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Christina A. Snyder_____ and the assigned Magistrate Judge is _____Jay C. Gandhi_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-5941-CAS (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 14, 2013_____
Date

By  MDAVIS_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)          NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| | |
|---|---|
| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )<br>REYNA GARCIA | **DEFENDANTS** ( Check box if you are representing yourself ☐ )<br>NEW ALBERTSONS, INC.; SUPERVALU INC.; CHARLES COMPSTON; LAUREN MOSLEY |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Lauren Teukolsky/Rebecca Peterson-Fisher<br>Traber & Voorhees<br>128 North Fair Oaks Avenue<br>Pasadena, CA 91103<br>Telephone: 626-585-9611 | **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Naomi Young/John R. Carrigan, Jr./Ethan Chernin<br>Ballard Spahr LLP<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067<br>Telephone: 424-204-4400 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi- District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** exceeds $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This action may be removed to this Court pursuant to 28 U.S.C. Section 1332 and 28 U.S.C. Section 1441(b), because it is a civil action between citizens of different states and involves an amount in controversy in excess of $75,000.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☒ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: **CV13-05941**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Charles Compston - San Luis Obispo County (sham defendant)<br>Lauren Mosley - San Luis Obispo County (sham defendant) | New Albertsons, Inc. - Ohio and Idaho<br>SUPERVALU Inc. - Delaware and Minnesota |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _John R. Carrigan, Jr._    DATE: August 13, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

CV-71 (02/13)    CIVIL COVER SHEET    Page 2 of 2

American LegalNet, Inc.
www.FormsWorkFlow.com