UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05941-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS): DEFENDANT ALBERTSON'S LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, AND DEFENDANT NEW ALBERTSON'S, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. #68, filed August 11, 2014)

## I.     INTRODUCTION

Plaintiff Reyna Garcia filed the instant action in Los Angeles Superior Court on June 26, 2013, against defendants New Albertson's, Inc. ("NAI"), SUPERVALUE INC. ("SUPERVALU"), Charles Compston ("Compston"), Lauren Mosley ("Mosley"), and five Does. Dkt. #1. On August 14, 2013, defendants removed the action to federal court on the basis of diversity. Id. On September 12, 2013, the Court issued an order granting the parties' stipulation to dismiss the individual defendants and allow plaintiff to file the First Amended Complaint ("FAC"). Dkt. #9. Plaintiff filed the FAC on September 23, 2013. Dkt. #10. On January 1, 2014, plaintiff filed the operative Second Amended Complaint ("SAC") against defendants NAI, SUPERVALU, Albertson's LLC ("LLC"), and two Does. Dkt. #26. The SAC brings claims for (1) failure to engage in a timely, good faith interactive process, Cal. Gov. Code § 12940(n); (2) failure to provide reasonable accommodation, Cal. Cov. Code § 12940(m); (3) violation of Fair Employment and Housing Act ("FEHA") provisions regarding pregnancy, Cal. Gov. Code § 12945(3); (4) retaliation in violation of Cal. Gov. Code § 12940(h); and (5) negligence. Id. In brief, the SAC alleges that plaintiff's employer failed to accommodate plaintiff's medical needs during her pregnancy, contributing to the premature birth and death of plaintiff's baby, and retaliated against plaintiff after she returned to work from medical leave.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

On August 11, 2014, defendants filed the instant motion. Dkt. #67. LLC seeks partial summary judgment as to each of plaintiff's claims on the grounds that LLC was not plaintiff's employer at the time of the alleged misconduct and there is no evidence supporting holding LLC liable for alleged actions of NAI.[1]  Id.  LLC and NAI both seek partial summary judgment as to each of plaintiff's claims for punitive damages on the ground that there is no evidence that any officer, director, or managing agent of either defendant carried out, authorized, or ratified any wrongful conduct toward plaintiff.  Id. On August 25, 2014, plaintiff filed an opposition. Dkt. #91. On September 8, 2014, defendants replied. Dkt. #118. On September 22, 2014, the Court held a hearing at which counsel for the parties appeared.[2]  After considering the parties' arguments, the Court finds and concludes as follows:

(1) That NAI is not entitled to summary judgment on plaintiff's punitive damages claim because triable issues of fact exist as to whether Compston was a managing agent; and

---

[1]SUPERVALU, originally a party to this motion, was dismissed from this action with prejudice pursuant to a stipulation on August 29, 2014. Dkt. #114. Therefore, the Court does not address any arguments relevant only to SUPERVALU.

[2]Concurrently with her opposition to the instant motion on August 25, 2014, plaintiff filed a Motion to Strike and for Sanctions Under Fed. R. Civ. P. 37(c)(1). Dkt. #92. In brief, plaintiff's motion asserted that defendants waited until the close of discovery to produce the Asset Purchase Agreement ("APA") for the sale of the supermarkets including the Atascadero store, and to disclose potential witnesses with knowledge relevant to the successor liability issue int his motion. Defendants rely on both the APA and a declaration from Bessent, one of the late-disclosed witnesses, in their arguments that LLC cannot be held liable as NAI's successor. At the hearing, the Court indicated that it would not grant the motion to strike, but that the Court was willing to permit plaintiff time to conduct additional discovery on successor liability issues to cure any prejudice from the late disclosures. Plaintiff's counsel declined the offer of additional discovery, stating that it was plaintiff's strong preference that the Court decide defendants' motion for summary judgment on the existing record. The Court denied to motion to strike, Dkt. #136, and considers the APA and Bessent declaration for purposes of this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

(2) That LLC cannot be held liable for directly retaliating against plaintiff or as NAI's general successor under <u>Ray v. Alad. Corp.</u>, 19 Cal. 3d 22 (1977); but
(3) That LLC is not entitled to summary judgment on plaintiff's claim that it can be held liable for ratifying conduct that took place while NAI was still plaintiff's employer.

## II. BACKGROUND

Except as otherwise noted, the following facts are undisputed.

### A. Plaintiff's Employment and 2012 Pregnancy

Beginning in December 2009 and continuing through the filing of the operative SAC, plaintiff worked as the manager of the general merchandise ("GM") department in a supermarket operating under the "Albertsons" name (the "Atascadero store"). Defendant's Statement of Undisputed Facts ("DSUF") ¶¶ 1, 4; Plaintiff's Statement of Genuine Issues ("PSGI") ¶ 1, 4. Compston, the Store Director at the Atascadero store, has been the highest ranking employee at the Atascadero store since plaintiff began working there. DSUF ¶ 2; PSGI ¶ 2. From February 2012 through June 2013, Mosley was the Assistant Store Director at the Atascadero Store. DSUF ¶ 3; PSGI ¶ 3. Compston supervised all other employees at the Atascadero store who, although the parties dispute the precise figure, numbered somewhere between 70 and 85 during the period from January 2012 to March 21, 2013. <u>See</u> DSUF ¶ 47; PSGI ¶ 47. Under both NAI and LLC, Compston's authority has been limited to the Atascadero store. DSUF ¶¶ 57-58; PSGI ¶ 57-58.

Plaintiff alleges that when she approached Compston requesting accommodation of medical restrictions relating to her 2012 pregnancy, Compston refused to offer her reasonable accommodations or engage in a good faith interactive process with her–allegations that defendants dispute. <u>See</u> PSS ¶¶ 1-28. Although plaintiff was not transferred to a different role as a result of her pregnancy, Compston has testified that a number of employees were directed to help plaintiff as needed. PSS ¶ 228; DRPSS ¶ 228. In mid-November 2012, plaintiff gave birth to a premature baby that died ten minutes after birth. PSS ¶ 31; DRPSS ¶ 31. Beginning in mid-November 2012, plaintiff took a medical leave. DSUF ¶ 10; PSGI ¶ 10. At no time prior to March 26, 2013 did Compston or Mosley discuss plaintiff's 2012 pregnancy or related accommodation requests with anyone outside of the Atascadero store. DSUF ¶ 7; PSGI ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

### B.   Plaintiff's Return to Work

Plaintiff returned to work at the Atascadero store on or around January 2, 2013. DSUF ¶ 10; PSGI ¶ 10.  Plaintiff alleges–and defendants dispute–that Compston and Mosley bullied and harassed plaintiff by, among other things, complaining about her job performance.  See PSS ¶ 47; DRPSS ¶ 47.  Upon her return to work, plaintiff's merchandise ordering responsibilities were taken away from her, and not returned until after the sale of the Atascadero store.  DSUF ¶ 11; PSGI ¶ 11.  On March 19, 2013, Mosley issued plaintiff a documented verbal warning or "write-up" regarding conditions in plaintiff's department.  DSUF ¶ 12; PSGI ¶ 12.  Mosley consulted and obtained approval from Compston (and no one else) before issuing the write-up, and Compston did not consult anyone else about the write-up.  DSUF ¶¶ 13-14; PSGI ¶¶ 13-14.  Although plaintiff does not contest that the write-up accurately reflected the state of her department, she states that the warning relates to days when she was on approved leave and the department was under another employee's supervision.  DSUF ¶ 16; PSGI ¶ 16.[3] On April 5, 2013, Compston informed plaintiff that the write-up would not count toward plaintiff's progressive discipline.  PSS ¶ 56; DRPSS ¶ 56.  However, the write-up remains in plaintiff's personnel file, along with two memoranda detailing tasks in the GM department and a list of "daily duties" for plaintiff's department that Mosley wrote in January 2013.[4]  PSGI ¶¶ 17-18; PSS ¶¶ 56-59; DRPSS ¶¶ 56-59.

### C.   The Sale of Albertsons-Brand Supermarkets

From June 2006 to March 21, 2013, the Atascadero store was owned and operated by NAI, and employees at the Atascadero store were employed by NAI.   DSUF ¶ 19; PSGI ¶ 19.  On March 21, 2013, SUPERVALU, NAI's parent company, sold all of the

---

[3]Plaintiff contested the issuance of the warning for these reasons.  DSUF ¶ 15; PSGI ¶ 15.  Specifically, on March 25, 2013, plaintiff contacted her union representative about the write-up.  PSS ¶ 52; DRPSS ¶ 52.  Plaintiff argues that Compston only decided not to count the write-up toward plaintiff's progressive discipline only because of the threat of litigation.

[4]Plaintiff argues–and defendants deny–that these memoranda and "daily duties" list were critical of plaintiff's job performance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

NAI stock to AB Acquisitions LLC ("ABA"). DSUF ¶ 25; PSGI ¶ 25. Subsequently, LLC, a wholly owned subsidary of ABA, purchased all of the Albertsons-branded supermarkets from NAI. DSUF ¶ 26; PSGI ¶ 26. Thus, plaintiff became an employee of LLC effective March 22, 2013. DSUF ¶¶ 34-35; PSGI ¶¶ 34-35. Prior to the sale, NAI owned and operated approximately 871 supermarkets under several names. DSUF ¶ 29; PSGI ¶ 29. From April 1, 2013 to January 31, 2014, NAI owned and operated no fewer than 445 supermarkets, but none in California. DSUF ¶¶ 27, 31; PSGI ¶ 27, 31. As of February 2014, NAI employed approximately 58,200 employees.[5] DSUF ¶ 32; PSGI ¶ 32.

After the sale, the Atascadero store continued to offer the same products and services, and the same management team remained in place. PSS ¶ 106, 111; DRPSS ¶ 106, 111. The District Manager and Associate Relations Representative for the Atascadero store have remained the same after the sale to LLC. PSS ¶ 104; DRPSS ¶ 104. Compston discussed the sale of the Atascadero store with various supervisors and managers, and the name "Albertsons LLC" appeared on documents posted in the store, but plaintiff denies having actual knowledge of the sale until late 2013. DSUF ¶¶ 36-37; PSGI ¶¶ 36-37.

At all times relevant to this motion, both NAI and LLC have had their headquarters and principal places of business in Boise, Idaho. DSUF ¶¶ 49-50; PSGI ¶¶ 49-50. Since the sale of the Atascadero store, LLC has had five divisions, including a Southern California Division, with officers in each division having separate corporate decision-making authority. DSUF ¶ 51; PSGI ¶ 51. The Southern California Division's geographic borders and approximate number of employees remain the same under LLC as they were under NAI. PSS ¶¶ 130-31; DRPSS ¶¶ 130-31. The Southern California Division has its own employment policies. PSS ¶ 166; DRPSS ¶ 166. One of the officers with responsibility for these policies is Brent Bohn ("Bohn"), Vice President of Human

---

[5]Plaintiff "disputes" paragraphs 26 through 33 of defendant's Undisputed Facts, but only on the ground that the Court should exclude the Bessent declaration, which the Court, as explained in footnote 2, has declined to do. Because the companies involved are not publicly traded, additional details concerning the companies' financial conditions and purchase agreement were redacted in publicly viewable briefing and have not been set forth herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|----------|--------------------------|------|-----------------|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

Resources for the Southern California Division under both NAI and LLC. DSUF ¶ 53; PSGI ¶ 53; PSS ¶ 159; DRPSS ¶ 159. Under NAI, Bohn and another Vice President of Human Resources had ultimate responsibility for ensuring that Store Directors and Assistant Store Directors were trained on disability policies. PSS ¶ 168; DRPSS ¶ 168. Bohn has the authority to issue policies for the Southern California Division regarding reasonable accommodation, and reviews policies for legal compliance. PSS ¶¶ 191, 195; DRPSS ¶ 191, 195.

Stefanie Gusha ("Gusha") is the Director of Labor Relations for LLC, and held the same position with NAI before the March 21, 2013 sale. PSS ¶ 98; DRPSS ¶ 98. In this role, Gusha is involved with labor and employment matters for approximately 280 Albertsons-brand supermarkets and approximately 30,000 employees. PSS ¶¶ 177, 179; DRPSS ¶ 177, 179. Her responsibilities include union negotiations, arbitrations, interpretation of collective bargaining agreements, overseeing employment litigation, responding to threatened employment litigation, overseeing the Associate Relations department, and wage and hour issues. PSS ¶ 180; DRPSS ¶ 180. Gusha could draft employment policies for NAI and is involved in drafting policies for LLC. PSS ¶ 100; DRPSS ¶ 100. For example, Gusha was involved in drafting a new version of LLC's Family Medical Leave Act Policy applicable to employees in Albertson's stores. PSS ¶ 196; DRPSS ¶ 196. Gusha also reviews new policies and proposed policy modifications to ensure they are in compliance with collective bargaining agreements and California law, and can recommend modifications or revisions to LLC policies. PSS ¶¶ 183, 186, 190; DRPSS ¶ 183, 186, 190. Under both NAI and LLC, all employees in the Associate Relations Department in Gusha's division have reported to Gusha, and Gusha has in turn reported to Bohn. PSS ¶¶ 101-02; DRPSS ¶ 101-02. Gusha authored and conducted trainings on NAI's disability policies in 2010 and 2011. PSS ¶¶ 161-63; DRPSS ¶¶ 161-63.

**D.     Events Postdating the Sale of the Atascadero Store**

On or about March 26, 2013, plaintiff's counsel sent letters to the legal departments of NAI and SUPERVALU, threatening litigation in connection with the handling of plaintiff's 2012 pregnancy and treatment of plaintiff upon her return to work. DSUF ¶ 38; PSGI ¶ 38. Gusha received a copy of this letter on approximately March 28, 2013. DSUF ¶ 38; PSGI ¶ 38. Gusha subsequently led an investigation into the threatened litigation, the results of which she shared with Bohn. PSS ¶¶ 226, 233-34;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 | |
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | | |

DRPSS ¶ 226, 233-34.  LLC initiated attempts to preserve evidence, DSUF ¶¶ 39-44; PSGI ¶¶ 39-44, which plaintiff contends were deficient in various respects, PSS ¶¶ 249-275.  Employees of LLC have invoked the attorney-client privilege and attorney work product doctrine with respect to details of the investigation.  PSS ¶¶ 224, 227; DRPSS ¶ 224, 227.

After the sale, LLC retained most of NAI's employment policies.  PSS ¶¶ 116-24; DRPSS ¶¶116-24.  The Southern California Associate Policy Guide was reviewed in March or April of 2013, and was not revised after that review.  PSS ¶ 188; DRPSS ¶ 188. The Associate Policy Guide was reviewed again in June 2014; during this review, Gusha and Bohn had the responsibility of suggesting any changes they felt were appropriate. PSS ¶ 197; DRPSS ¶ 197.  LLC has made no changes to policies or procedures regarding requests for accommodation, the interactive process, or the documentation of requests for accommodation or the interactive process.  PSS ¶ 209; DRPSS ¶ 209.  LLC has not adopted a written policy regarding the accommodation of pregnant employees.  PSS ¶ 211; DRPSS ¶ 211.  LLC has taken the position that plaintiff was properly accommodated during her 2012 pregnancy, and that LLC has no need to change its policies regarding accommodation requests.  PSS ¶ 213; DRPSS ¶ 213.

LLC's corporate representative has stated that neither Compston nor Mosley violated any company policies in handling plaintiff's 2012 pregnancy.  PSS ¶¶ 199-200; DRPSS ¶ 199-200.  Neither Compston nor Mosley has been disciplined, coached, or counseled as a result of plaintiff's allegations.  PSS ¶¶ 201-202; DRPSS ¶¶ 201-202. Compston remains the Store Director of the Atascadero store and plaintiff's supervisor. PSS ¶ 248; DRPSS ¶ 248.  In June 2013, Mosley was given the job of Assistant Store Director in a new store in Paso Robles.  PSS ¶ 205; DRPSS ¶ 205.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

Defendants' motion argues that summary judgment is appropriate as to two issues: (1) that punitive damages cannot be maintained as to either defendant, and (2) that LLC cannot be held liable on any theory and (2). The Court addresses each issue in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|----------|--------------------------|------|-----------------|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

### A.     Whether Punitive Damages Are Barred as a Matter of Law

The availability of punitive damages is governed by California Civil Code section 3294. See Hilliard v. A.H. Robins Co., 148 Cal. App. 3d 374, 392 (1983). "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). Here, the individual defendants have all been dismissed, and plaintiff seeks to hold employer defendants liable for punitive damages. Under section 3294:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Id. § 3294(b). Defendants argue that plaintiff has not provided evidence of any misconduct by an "officer, director, or managing agent" of either defendant. Specifically, they contend that neither Compston nor Gusha can be considered a managing agent under California law, and that Bohn cannot be considered a managing agent of NAI.[6] Defendants further contend that even if Gusha or Bohn were a managing agent whose actions could potentially subject NAI or LLC to liability, plaintiff has submitted no evidence that would support a finding that Gusha or Bohn themselves acted with malice or ratified any of Compston or Mosley's alleged misconduct.

---

[6] Plaintiff does not contend that Mosley is a managing agent. See Opp'n at 21 n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

    1.    Whether A Jury Could Deem Compston a Managing Agent

    In White v. Ultramar, 21 Cal. 4th 563 (1999), the California Supreme Court interpreted "managing agent" as used in section 3294.  After an extensive discussion of judicial precedents and legislative history, the court held:

> [P]rincipal liability for punitive damages [does] not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy.  Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents.  Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees. In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business.

Id. at 576-77.  The court explained that the "scope of a corporate employee's discretion and authority under our test is therefore a question of fact for decision on a case-by-case basis."  Id. at 567.

    Applying these principles, the White court reviewed a jury's award of punitive damages against a convenience store company where the plaintiff's "zone manager," named Salla, was found to have fired plaintiff in retaliation for testifying at an unemployment benefits hearing.  21 Cal. 4th at 566-68.  Salla managed eight stores and approximately sixty-five employees.  Id. at 577.  Individual store managers reported to Salla, and Salla reported to department heads in the corporation's retail management department.  Id.  These supervisors delegated "most, if not all, of the responsibility" for running the eight stores to Salla.  Id.  Salla consulted the human resources department before firing plaintiff, id., and her supervisors testified that she lacked the authority to fire plaintiff without doing so, id. at 580 (Mosk, J., concurring).  However, Salla apparently had some "ability to act independently."  Id. at 577 (majority opinion).  The court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|----------|--------------------------|------|-----------------|
| Title    | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

affirmed the jury's finding that Salla was a managing agent because she "exercised substantial discretionary authority over vital aspects of Ultramar's business that included managing numerous stores and making significant decisions affecting both store and company policy." Id. at 577.  Specifically, the court found that "[i]n firing White for testifying at an unemployment hearing, Salla exercised substantial discretionary authority over decisions that ultimately determined corporate policy in a most crucial aspect of Ultramar's business." Id.  In a concurrence, two justices noted that although Salla did not "set any firm-wide or official policy . . . . she exercised authority that 'necessarily result[ed] in the ad hoc formulation of policy' that negatively affected the plaintiff. Specifically, she engaged in a local practice of retaliating against, by firing, an employee who testified at the unemployment hearing of another Ultramar employee." Id. at 580 (Mosk, J., concurring).

In support of her contention that Compston could be considered a managing agent, plaintiff cites Egan v. Mutual of Omaha Insurance Co., 24 Cal. 3d. 809 (1979).  In that case, the California Supreme Court imputed to an insurance company for punitive damages purposes the actions of (1) the manager of the company's Los Angeles office claims department and (2) an agency claims adjuster. Id. at 822-23.  The court rejected the argument that corporate punitive liability was unavailable because neither employee was involved in "high-level policy making," holding that "the determination whether employees act in a managerial capacity . . . does not necessarily hinge on their 'level' in the corporate hierarchy." Id. at 822.  Rather, the court stated that the "critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." Id. at 823.  The court reasoned that when "employees dispose of insureds' claims with little if any supervision, they possess sufficient discretion for the law to impute their actions concerning those claims to the corporation." Id.  This discretion, the court explained, "necessarily results in the ad hoc formulation of policy." Id.

Defendants argue that Egan is inapplicable to the present case.  First, they point out that Egan was not an employment case.  But section 3294 governs punitive damages for breaches of all non-contractual obligations, and useful guidance on its applicability cannot be limited to a single factual context.  Second, defendants point out that Egan predated the adoption of section 3294's subsection (b), and therefore "provides no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

guidance whatsoever" in this case.[7]  But the California Supreme Court's opinion in White makes clear that Egan is relevant to interpreting the term "managing agent."  The White court explained that "in amending section 3294, the Legislature intended (like Egan) to limit corporate punitive damages liability to those employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy."  White, 21 Cal. 4th at 573 (citation omitted).  The court discussed Egan at length in laying out the "prior judicial construction" that the court assumed the Legislature had in mind when amending the statute, see id. at 570-73, and stated that the court's holding was adopted in part to preserve "Egan's sound reasoning," id. at 575.  See also id. at 581 (Mosk, J., concurring) ("As the majority explain, the Legislature, by referring to wrongful acts by an 'officer, director, or managing agent' intended to codify Egan and Agarwal.").  Therefore, Egan's principles–including that "ad hoc" policymaking can qualify an employee as a managing agent–are fully applicable to this case.

Plaintiff argues–and the Court agrees–that there is evidence from which a jury could conclude that Compston was a managing agent.  Compston, as Store Director, supervised as many as eighty-five employees in the Atascadero store, and was broadly responsible for the store's operations.  Although in August 2012, NAI had in place a policy that a manager in Compston's place should "consult with their Human Resources or Labor Relations representative to evaluate" requested disability accommodations and that the Human Resources department was "responsible for implementing" the accommodation policy, PSS ¶¶ 134-37, Store Directors like Compston had the discretion to handle accommodation requests and engage in the interactive process on their own, id. ¶¶ 138-39, 143.  With regard to accommodation requests, Compston had significant discretion to decide whether to involve other levels of management, id. ¶ 141, how to conduct an interactive process meeting, id. ¶ 145, what topics to cover at the meeting, id. ¶ 154, whether and how to document an interactive process meeting, id. ¶¶ 146-48, and whether to provide an accommodation, id. ¶ 153.  This evidence raises a genuine issue as to Compston's role in formulating ad hoc corporate policy, such that the Court cannot decide on a motion for summary judgment that Compston was not a managing agent.  See DesRosiers v. Hartford, 979 F. Supp. 2d 1036, 1053 (E.D. Cal. 2013) ("Whether or not

---

[7]Defendants' brief states more broadly that "Egan predated Civil Code § 3294," which is incorrect.  See White, 21 Cal. 4th at 568 ("The statute [section 3294] was originally enacted in 1872, with minor amendments in 1901 and 1905.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

[an employee] exercised ad hoc authority over [company] policy requires a factual inquiry not suitable for summary judgment.").

Defendant argues that Compston cannot be a managing agent because he only managed one store. But California's appellate courts have made clear that conduct warranting punitive damages can be imputed to a corporation even when the managing agent's authority was limited to only one or a few locations. See White, 21 Cal. 4th at 563 (imputing to a large corporation with a California-wide chain of stores and service stations the actions of a manager for eight stores and sixty-five employees); Egan, 24 Cal. 3d at 822-23 (imputing to a national insurance company the actions of a single office's manager). Nor is the fact that Compston supervised a small percentage of NAI's employees sufficient to avoid trial on whether he was a managing agent. See DesRosiers, 979 F. Supp. 2d at 1053 (finding a triable issue of fact where a "mid-level manager" supervised approximately 100 of the defendant company's 29,000 employees). Tellingly, defendants' cited cases involved less evidence of discretionary responsibility. See, e.g., Muniz v. United Parcel Serv., Inc., 731 F. Supp. 2d 961, 977 (N.D. Cal. 2010) (granting a motion for summary judgment on punitive damages where the plaintiff relied on her supervisor's place in the corporate hierarchy and presented "no probative evidence" as to a supervisors degree of discretion in determining policy); Cruz v. HomeBase, 83 Cal. App. 4th 160, 168 (2000) (reversing a jury's finding that a supervisor was a managing agent where the supervisor was subordinate to the store manager in a single outlet, supervised only a few employees, and only had authority with regard to the "narrow area" of store security); Kelly-Zurian v. Wohl Shoe Co., 22 Cal. App. 4th 397, 421 (1994) (finding no triable issue as to managing agent status where plaintiff presented no evidence that her supervisor had policymaking discretion).

It is true that the White court warned against "equat[ing] mere supervisory status with managing agent status" or "creat[ing] a rule where corporate employers are liable for punitive damages in most employment cases." 21 Cal. 4th at 575. But the Court's finding of a triable issue on this point does no such thing. Rather, it recognizes that the question of whether an employee is a managing agent "is a question of fact for decision on a case-by-case basis," and that in light of California precedent, judgment as a matter of law is inappropriate at this stage of litigation. Therefore, the Court finds that a genuine issue of material fact exists as to whether Compston was a "managing agent"of NAI's as defined by section 3294(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

2.     Whether a Jury Could Deem Gusha a Managing Agent

Defendants contend that Gusha, who works as Director of Labor Relations for LLC and carried the same title with NAI from mid-2010 to the sale of the Atascadero Store in March 2013, was not a managing agent of either company during the relevant time period.  Applying the principles discussed above, the Court disagrees.

Gusha has been involved with employment matters covering at least 25,000 employees.  PSS ¶ 179.  During the relevant period of her employment with LLC, Gusha reviewed policies "for compliance with California law."  Peterson-Fisher Decl. Ex. 5 ("Gusha Depo.") at 74:2-9.  Gusha could also recommend modifications to those policies and, at the request of Operations, assist in drafting policies.  Id. at 74:6-15.  In her similar position with NAI, Gusha also had the ability to draft new policies.  Id. at 99:10-13.  That Gusha testified that she did not "create" or "issue" policies does not entitle either defendant to judgment as a matter of law that Gusha was not a managing agent.  Viewed in the light most favorable to plaintiff, a jury could conclude that Gusha had sufficient "discretionary authority over decisions that ultimately determine corporate policy" to make her a managing agent.  Therefore, the Court finds that a genuine issue exists as to whether Gusha was a managing agent.  Because plaintiff does not dispute that Gusha did not learn of the events related to plaintiff's 2012 pregnancy until after plaintiff became employed by LLC, however, any ratifying actions by Gusha can only be imputed to LLC, not NAI.  See DSUF ¶ 9; PSGI ¶ 9.

3.     Whether a Jury Could Deem Bohn a Managing Agent of NAI

Defendants do not contest that Bohn is a managing agent of LLC, but argue that plaintiff "has failed to present any evidence to raise a dispute of fact as to whether Bohn was a managing agent of NAI's."  Reply at 11.  But Bohn was the Vice President of Labor Relations of NAI, with "ultimate responsibility for ensuring that Store Directors and Assistant Store Directors were trained on disabilities policies and procedures as of August 2012."  PSS ¶ 168.  And it is undisputed that Bohn at the least "would have had some review over the labor relations sections" of the Associate Policy Guide setting out disability accommodation procedures.  Id. ¶ 167.  This evidence raises a genuine issue as to whether Bohn was a managing agent of NAI.  However, because plaintiff does not dispute that Bohn did not learn of the events related to plaintiff's 2012 pregnancy until

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

after the sale, any ratifying actions by Bohn can only be imputed to LLC, not NAI.  See
DSUF ¶ 9; PSGI ¶ 9.

> 4.  Whether A Jury Could Find that Gusha or Bohn Acted with Malice or
> Ratified Compston and Mosley's Conduct

Because the Court finds that triable issues of fact exist as to whether Gusha or
Bohn were managing agents, the Court addresses whether Gusha or Bohn could be found
to have acted in such a way as to expose LLC to punitive damages.

Plaintiff argues that a jury could conclude that Gusha and Bohn "directly engaged
in 'malice' by exhibiting a complete disregard for the rights and safety of pregnant
employees."  Opp'n at 23.  But plaintiff fails to cite any analogous case in support of this
theory.  In Barrous v. BP P.L.C., No. 10-CV-02944-LHK, 2011 U.S. Dist. LEXIS
113597 (N.D. Cal. Oct. 3, 2011), the court held that although it was a "close question," a
"reasonable jury could find that BP's inaction for nearly ten years" in failing to clean up a
contamination site could constitute malice.  LLC's alleged failure to take proper remedial
action with regard to a single person's disputed claim of FEHA violations does not come
close to the sort of "complete lack of concern" the Barrous court found barely sufficient
to survive summary judgment.  Spinks v. Equity Residential Briarwood Apartments is
similarly inapposite. 171 Cal. App. 4th 1004, 1055 (2009) (finding that a reasonable jury
could conclude a landlord acted with conscious disregard based on evidence that the
landlord dispossessed the plaintiff despite "concerns about the legality of the acts and
with conscious disregard for plaintiff's rights").

Plaintiff also argues that Gusha and Bohn's ratification of Compston and Mosley's
conduct could support an award of punitive damages against LLC.  Because the Court
finds that summary judgment is justified with regard to plaintiff's other theories for
holding LLC liable, the ratification question is crucial to the issue of whether LLC may
be held liable in this action at all.  Therefore, the Court addresses this issue in section
IV.B.3, below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

### B.   Whether LLC May Be Held Liable

Defendant contends that all of the conduct plaintiff complains about occurred prior to LLC's acquisition of the Atascadero Store, and that summary judgment is therefore appropriate as to all claims against LLC.  Plaintiff asserts three theories under which LLC could be held liable for the alleged misconduct: direct liability, successor liability, and ratification.[8]

### 1.   Direct Liability for Retaliation

Plaintiff alleges that LLC directly engaged in unlawful conduct against plaintiff. Plaintiff argues that Compston and Mosley's "campaign of retaliation" against her continued through at least April 5, 2013, when Compston agreed that the write-up he had issued with regard to her department would not count toward plaintiff's progressive discipline.  Therefore, plaintiff argues, LLC can be held directly liable for retaliatory actions taken against her from March 23, 2013, when LLC became plaintiff's employer, through April 5, 2013.  Defendants respond that plaintiff's direct liability theory is without evidentiary support.  They assert that the only purported evidence plaintiff offers is that (1) LLC did not withdraw the March 2013 written warning immediately upon taking over the store, and (2) that the write-up and allegedly negative memoranda and "daily duties" list (which defendants deny are negative) remain in plaintiff's personnel file.

Plaintiff cites <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1060-61 (2005), for the proposition that such a campaign of retaliation can represent a continuing violation of FEHA.  In that case, the California Supreme Court determined that "a pattern of systematic retaliation" could constitute adverse employment action under FEHA.  <u>Id.</u> at 1060.  Specifically, the court held that the plaintiff had met her prima facie burden of establishing adverse employment action where L'Oreal: (1) repeatedly solicited negative feedback from the plaintiff's subordinates; (2) audited the plaintiff's travel and expense

---

[8]The SAC alleged that LLC could also be held liable pursuant to a conspiracy with SUPERVALU and NAI to violate plaintiff's rights.  SAC ¶ 20.  In her opposition to this motion, plaintiff states that she no longer intends to pursue "any alter ego or conspiracy theory."  Opp'n at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

reports; (3) refused to address the plaintiff's subordinates' administrative complaints; (4) humiliated the plaintiff in front of her subordinates; and (5) wrote critical memoranda about the plaintiff's performance, refused her the opportunity to contest the criticism, and employed the criticism to justify restrictive directive regarding her future performance. Id. at 1039-40, 1060-61.  Yanowitz is therefore different from the instant case, in which plaintiff attempts to hold LLC directly liable for (1) an approximately two-week delay in withdrawing the effect of a formal disciplinary warning and (2) a failure to remove from plaintiff's personnel file entirely that warning and arguably negative previously written notes that did not constitute formal disciplinary action.  Plaintiff's only cited authority in support of direct retaliation liability therefore provides no support for her claim that LLC *directly* participated in a "campaign of retaliation" against her.  Nor has plaintiff put forth any evidence connecting the documents in her file with any actual adverse employment action against her since LLC became her employer.  Therefore, the Court finds that plaintiff has not shown a genuine issue of material fact that could enable a reasonable jury to find LLC directly liable based on actions taken after LLC acquired the Atascadero store.

     2.     Successor Liability

Successor liability under California law is governed by the framework set forth in Ray v. Alad. Corp., 19 Cal. 3d 22, 28 (1977).  In that case, the California Supreme Court explained the general rule that

> a corporation purchasing the principal assets of another corporation . . . . does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

Id. at 28.[9]  To be entitled to summary judgment, LLC "must show the exceptions that create successor liability do not apply in this case."  Fisher v. Allis-Chalmers Corp. Prod. Liability Trust, 95 Cal. App. 4th 1182, 1188 (2002).

To show that there was no "express or implied agreement of assumption," defendants point to the Asset Purchase Agreement ("APA"), which expressly states that NAI retained, and LLC did not assume, "all Liabilities relating to the employment or termination of employment of current or former employees of [NAI] . . . accrued prior to" the sale.  DSUF ¶ 33.  Instead of directly contesting defendants' characterization of the APA, plaintiff argues that the Court should decline to consider defendants' evidence because defendants produced the APA at the last minute and, prior to that, repeatedly refused to produce the APA or related evidence.  As explained in footnote 2, the Court declines to ignore the proffered evidence entirely, and plaintiff 's counsel rejected an offer to conduct additional discovery.  Because plaintiff has not rebutted defendant's showing that the APA expressly provided that LLC would not assume liabilities of the type at issue, and has not submitted any evidence that there was an implied assumption of liabilities, the Court finds that defendants have met their burden of showing that successor liability is not available through any agreement of assumption.

Therefore, the only potentially applicable ground for successor liability is the "mere continuation" exception.  Defendants argue that the mere continuation theory applies only "where all or substantially all of the corporation's assets are purchased."  Orthotec, LLC v. REO Spineline, LLC, 438 F. Supp. 2d 1122, 1128 (C.D. Cal. 2006) (quoting Acheson v. Falstaff Brewing Corp., 523 F.2d 1327, 1330 (9th Cir. 1975)).[10]

---

[9]Plaintiff does not contest that there is no basis for successor liability on a "de facto merger" or "fraudulent purpose" theory.  See Opp'n at 14.

[10]Plaintiff disputes that Orthotec correctly states the law in California.  First, plaintiff argues that while Orthotec purports to apply California law, it cites only federal cases that do not themselves apply "California law to the question of successor liability."  But the Orthotec court quoted Franklin v. USX Corp., 87 Cal. App. 4th 615, 621 (2001), for the same four exceptions to the general rule of non-liability discussed above, which the Franklin court stated apply "where one corporation sells or transfers all of its assets to another corporation."  Orthotec also cited the Ninth Circuit's opinion in Acheson, 523

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

Because plaintiff admits that NAI transferred less than half of its assets to LLC, Opp'n at 15, defendants argue that, as a matter of law, LLC cannot be liable as NAI's mere continuation. The Court agrees: a purchasing corporation is not a mere continuation of the seller where, as here, the seller remains a separate entity capable of satisfying judgments against it, and there is no indication that the sale worked the type of inequity that successor liability principles are designed to avoid. This conclusion is supported by ample California precedent. See Henkel Corp. v. Hartford Accident & Indemnity Co., 29 Cal. 4th 934, 941 (2003) (stating that the "mere continuation" doctrine "does not apply when recourse to the debtor corporation is available and the two corporations have separate identities" (internal quotation marks omitted)); Beatrice Co. v. State Bd. of Equalization, 6 Cal. 4th 767, 778 (1993) ("[E]ven when the same persons are officers or directors of the two corporations, liability is not imposed on the acquiring corporation when recourse to the debtor corporation is available and the two corporations have separate identities."); Franklin v. USX Corp., 87 Cal. App. 4th 615, 621 (2001) ("It has been generally stated that *where one corporation sells or transfers all of its assets* to another corporation, the latter is not liable for the debts and liabilities of the former unless [an exception applies]." (emphasis added) (internal quotation marks omitted)); see also Butler v. Adoption Media, LLC, 486 F. Supp. 2d 1022, 1064 (N.D. Cal. 2007) ("[T]he 'mere continuation' doctrine also requires that the selling entity dissolve–because only one corporation may remain after the transaction.").[11] Moreover, this rule is consonant with the principle underlying successor liability: "If a corporation organizes another

---

F.2d at 1329-30, which stated that it was "ultimately" interpreting federal law but considered the California corporations law principles that "affect the parties' reasonable expectations of whether a successor's liability will be imposed." For its rule statement on successor liability, the Acheson court cited a district court case, Kloberdanz v. Joy Manufacturing Co., 288 F. Supp. 817, 820 (D. Colo. 1968), which–as the Ninth Circuit expressly noted–applied California law in a diversity action. Kloberdanz, in turn, cited the California Court of Appeal case Pierce v. Riverside Mortage Securities Co., 25 Cal. App. 2d 248 (1938). Because ample California court authority supports defendants' position, however, the Court need not rely solely on Orthotec to decide that the mere continuation doctrine does not apply here.

[11]The Butler court made clear that it was applying "the standard articulated by the California Supreme Court in Ray." 486 F. Supp. 2d 1022, 1066 (N.D. Cal. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old."  9 Witkin, Corporations § 16 (10th ed. 2005); see McClellan v. Northridge Park Townhome Owners Ass'n, Inc., 89 Cal. App. 4th 746, 753 (2001) (citing a previous edition of Witkin for the same proposition).

The only authority plaintiff cites in support of the position that a complete or near-complete transfer of assets is not required for mere continuation liability, Cleveland v. Johnson, 209 Cal. App. 4th 1315 (2012), is unavailing. In that case, the plaintiffs had invested money in an adult-content "pay-per-call" company, ISI, for the purpose of starting a separate dial-up internet service provider business, the proceeds of which the plaintiffs were to share in.  Id. at 1320.  The defendants set up the new business within ISI's corporate structure under the fictive name "The Central Connection."  Id. at 1320-21.  Defendants later told the investors that The Central Connection had failed.  Id. at 1321.  As it turned out, however, the defendants had assigned The Central Connection's equipment leases to a new corporation, "IS West," and ceased conducting any business operations as The Central Connection.  Id. at 1323-24.  Although ISI eventually stopped doing business and went bankrupt, IS West flourished financially–but never shared any proceeds from its internet service business with the plaintiffs.  Id. at 1324.  Reviewing a jury verdict in the plaintiffs' favor, the Court of Appeal held that successor liability could be imposed even though the facts did not present "one corporation formally purchasing the assets of another corporation" and no documentation existed concerning the transfer of assets aside from the assignment of equipment leases.  Id. at 1327.  The court reasoned that successor liability is an equitable doctrine, and that it would be inequitable to deem the doctrine unavailable where, although ISI had remained a separate entity for a time after IS West was formed, plaintiffs had no recourse to ISI even before ISI's bankruptcy because what plaintiffs had contracted for was a percentage of revenues from the internet business that had fraudulently been transferred to IS West.  Id. at 1332 n.7.  Cleveland does not, as plaintiff asserts, stand for the broad principle that "California law does not require a complete transfer of assets for successor liability."  Opp'n at 14.  Rather, it shows that, in cases constituting the functional but not technical equivalent of a corporation transferring all or substantially all of its assets to another corporation, courts will not allow technicalities to effect inequitable results.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

Comparable equitable considerations are absent here.  Unlike in <u>Cleveland</u>, the entity that allegedly wronged plaintiff is an active company that retains most of its pre-sale assets, easily sufficient to satisfy a judgment for plaintiff.[12]  Although some of the details are not public, defendants have submitted evidence showing that NAI continues to operate hundreds of grocery stores, and has billions of dollars in assets.  And unlike in <u>Cleveland</u>, successor liability would not be sustainable on the independent ground that there was an effective transfer of assets "for the fraudulent purpose of escaping liability for the seller's debts."  <u>Id.</u> at 1334 (quoting <u>Ray</u>, 19 Cal. 3d at 28).  Nor does plaintiff cite any authority for the argument that successor liability is available where it otherwise would not be because the plaintiff seeks injunctive relief as well as damages.[13]  Therefore, the Court finds that defendants have met their burden of showing the absence of a triable issue that would enable a jury to hold LLC liable as NAI's successor.

        3.      Ratification

Defendants contend that plaintiff's final theory for holding LLC liable–that LLC adopted or ratified Compston and Mosley's alleged failures to accommodate plaintiff's pregnancy–also fails as a matter of law.  "An employer is responsible for the willful and malicious acts of an employee which he has ratified."  <u>Coats v. Construction & Gen. Laborers Local No. 185</u>, 15 Cal. App. 3d 908, 914 (1971).  In the employment context, ratification "may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent."  <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 621 (1989).  Ratification "may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm

---

[12]At oral argument, plaintiff's counsel conceded that there was no doubt that NAI could satisfy a judgment against it.

[13]Plaintiff's cited passage from <u>Aguilar v. Avis Rent A Cary Sys., Inc.</u>, 21 Cal. 4th 121, 131 (1999), merely conveys the proposition that courts can grant injunctive relief to prevent the recurrence of FEHA violations.  In a more on-point case, one district court rejected mere continuation liability where there was no complete transfer of assets, despite the plaintiffs' argument that their desire to obtain an injunction against the successor militated in favor of successor liability.  <u>Butler</u>, 486 F. Supp. 2d at 1065-66.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

done and punishing or discharging the employee." Id.; see also Allied Mutual Ins. Co. V. Webb, 91 Cal. App. 4th 1190, 1194 (2001) ("[A]n employer's failure to discharge an employee after learning of the employee's misconduct may be evidence of ratification.); Hart v. Nat'l Mortg. & Land Co., 189 Cal. App. 3d 1420, 1432 (1987) (explaining that a "failure to discharge or discipline the offending employees" can constitute ratification) (citing Shoopman v. Pac. Greyhound Lines, 169 Cal. App. 2d 848, 856 (1959)).

Were it not for the complicating factor of the sale of the Atascadero store to LLC, whether plaintiff's ratification theory could withstand a motion for summary judgment would be an easy question. As discussed above, plaintiff has submitted sufficient evidence to raise a triable issue as to whether Gusha is a managing agent of LLC, and defendants do not dispute that Bohn is a managing agent of LLC. Gusha received knowledge of Compston and Mosley's allegedly unlawful actions through this lawsuit, and subsequently led an investigation into the matter, the results of which she shared with Bohn. LLC has retained NAI's policies regarding disability accommodation, and has not disciplined or discharged either Compston or Mosley. Under the cases cited above, the undisputed evidence alone would be sufficient for a jury to conclude that plaintiff's employer ratified the alleged misconduct by failing to conduct an adequate investigation, failing to discipline the responsible employees despite knowledge of illegal conduct, or both. Moreover, plaintiff points out that several individuals whom Compston testified were directed to help plaintiff were not interviewed as part of Gusha's internal investigation. See, e.g., Braziel Decl. ¶ 22; Barnes Depo. at 5:11 - 6:25 (attached to Peterson-Fisher Decl., Ex. 1). Some of these employees have testified that they were not directed to help plaintiff or informed of plaintiff's medical restrictions. See PSS ¶¶ 228-32; Barnes Depo. at 39:17 - 40:19; Petrillo Depo. at 36:24 - 38:19 (attached to Peterson-Fisher Decl., Ex. 8). This evidence strengthens the Court's conclusion that a jury could conclude that Gusha and Bohn ratified Compston and Mosley's conduct by failing to sufficiently investigate or discipline plaintiff's supervisors.

Defendants argue, however, that ratification liability is unavailable as a matter of law for "a new employer's failure to investigate alleged wrongdoing said to have occurred under the prior employer." Mot. at 23-24. Plaintiffs respond that "it makes no difference to ratification that LLC and NAI are different employers," citing Bowoto v. ChevronTexaco Corp., 312 F. Supp. 2d 1229, 1247-48 (N.D. Cal. 2004) (denying summary judgment on ratification where parent corporation, which did not authorize the subsidiary's bad acts, subsequently adopted the acts by engaging in a campaign to cover

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 |
|---|---|---|---|
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | |

up the subsidiary's misdeeds).  As defendants note, that case involved a parent-subsidiary relationship, not a predecessor-successor relationship; however, the case does provide some support for the proposition that a ratification theory may be applied outside of the confines of a single corporation.

The district court in In re Related Asbestos Cases, 566 F. Supp. 818 (N.D. Cal. 1983), did consider ratification in the successor context.  There, the plaintiffs claimed that Celotex was liable for punitive damages for activities of Phillip Carey Corporation undertaken eight to ten years before Celotex purchased one of Carey's successors.  Id. at 819.  The court stated that "[p]unitive damage liability may be imposed upon a successor corporation under three possible theories," including "by analogy to section 3294(b), that is, on the basis of the principal's knowledge, authorization or ratification of an agent's malicious act."  Id. at 821.  The court, however, went on to note that "section 3294(b) would seem to have, at best, an attenuated applicability to a successor corporation," and that the court was "aware of no case authority wherein the concept [of ratification] has been applied in the context of successor liability." Id. at 825.  The court reasoned that section 3294(b) recognized the power of a corporate employer to control the future conduct of its employees by imposing sanctions for past malicious conduct, and that a subsequent employer "would not, by the mere act of employment, 'ratify' that malfeasance and render itself liable therefor."  Id. at 825.  Because there was no evidence that Celotex had knowledge of the prior misconduct, the court concluded that there was no genuine issue of material fact concerning Celotex's ratification of alleged misconduct. Id.  The court went on to state that it was "of the opinion that, in [the successor] context, the concept [of ratification] would be relevant only in the extreme."  Id.  The court ventured that a "corporate employer, whose identity is distinct and separate from its predecessor, should generally be liable only if, with knowledge of the clearly malicious tendencies or recklessness of a predecessor's employee, hires such employee, who subsequently acts in accordance with those propensities."  Id.  In this case, the court reasoned the "fault of the successor . . . is personal; it is culpable for having recklessly employed such an individual."  Id.

Although the question is a close one, the Court finds that the fact that Gusha and Bohn's employer changed just before they allegedly ratified Compston and Mosley's alleged misconduct does not entitle LLC to summary judgment on the issue of damages for ratifying that conduct.  Unlike in In re Related Asbestos Cases, where the conduct undertaken by the subordinate employees while employed by the predecessor company

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:13-CV-05491-CAS (JCGx) | Date | October 3, 2014 | |
| Title | REYNA GARCIA v. NEW ALBERTSON'S, INC., ET AL. | | | |

occurred long before Celotex retained the employees and there was no evidence that Celotex had knowledge of that conduct, LLC's arguable managing agents undisputedly learned of Compston and Mosley's alleged misconduct just days after the sale.  Neither Gusha's nor Bohn's job responsibilities changed significantly with the sale and, to plaintiff and similarly situated employees, it did not matter that Gusha and Bohn were receiving paychecks from a different company when they investigated the alleged misconduct and declined to revise corporate policy in light of it.  Indeed, holding section 3294(b) inapplicable as a matter of law to these facts would run counter to the statute's purpose of deterring unlawful conduct.  See Century Sur. Co. v. Polisso, 139 Cal. App. 4th 922, 946-47 (2006).  Therefore, the Court finds that LLC is not entitled to summary judgment on plaintiff's ratification theory.  The Court stresses that, in light of its findings that LLC cannot be held liable (1) for allegedly retaliatory actions taken between March 22 and April 5, 2013, or (2) as NAI's liable successor under Ray, LLC can only be held liable if a jury determines that Gusha and Bohn ratified prior malicious conduct of NAI employees.

## V.    CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment or, in the alternative, partial summary judgment is GRANTED in part and DENIED in part.  Specifically, the motion is GRANTED insofar as defendants assert that LLC cannot be held liable (1) for direct retaliatory action postdating the sale of Albertsons-branded grocery stores on March 21, 2013, or (2) as NAI's liable corporate successor.  The motion is otherwise DENIED.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |